UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                        :

DAVID E. KAPLAN, et al.,           :

                           :

              Plaintiffs,      :   No. 12 Civ. 9350 (VM) (KNF) (Kaplan)

                           :

          - against -        :   **ECF CASE**

                           :

S.A.C. CAPITAL ADVISORS, L.P., et al.,  :

                           :

            Defendants.     :

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR RELIEF FROM PSLRA DISCOVERY STAY**

Ethan D. Wohl
Krista T. Rosen
Sara J. Wigmore
**WOHL & FRUCHTER LLP**
570 Lexington Avenue, 16th Floor
New York, New York  10022
Telephone: (212) 758-4000

Marc I. Gross
Jason S. Cowart
Emma Gilmore
**POMERANTZ GROSSMAN HUFFORD**
**DAHLSTROM & GROSS LLP**
600 Third Avenue, 20th Floor
New York, New York  10016
Telephone: (212) 661-1100

*Attorneys for the* Kaplan *Plaintiffs and Co-Lead*
*Counsel for the Proposed Elan Investor Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

SUMMARY OF THE ACTION ................................................................................... 2

PROCEDURAL HISTORY ........................................................................................... 7

A.      Prior Proceedings in this Action and Related Actions ........................................ 7

B.      Proceedings Concerning the Present Motion ..................................................... 11

ARGUMENT .............................................................................................................. 14

I.      DEFENDANTS SHOULD BE ORDERED TO PRODUCE SAC'S TRADING
        RECORDS FORTHWITH ................................................................................. 15

II.     DEFENDANTS SHOULD BE REQUIRED TO PRODUCE THE MERITS
        DOCUMENT DISCOVERY THEY HAVE RECEIVED FROM THE
        GOVERNMENT ................................................................................................ 19

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Baan Co. Sec. Litig.*, 81 F. Supp. 2d 75 (D.D.C. 2000) ........................................17

*Brodzinsky v. FrontPoint Partners LLC*,
   No. 11CV10, 2012 WL 1468507 (D. Conn. Apr. 26, 2012) ....................................16

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   No. MDL-1446, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) ...........................22

*In re Firstenergy Corp. Sec. Litig.*,
   229 F.R.D. 541 (N.D. Ohio 2004) ........................................................................22

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*,
   No. 99 CIV 342 (DLC), 1999 WL 223158 (S.D.N.Y. Apr. 16, 1999) ...................18

*In re LaBranche Sec. Litig.*,
   333 F. Supp. 2d 178 (S.D.N.Y. 2004) ..............................................................19, 20

*In re Metro. Sec. Litig.*,
   No. CV-04-25-FVS, 2005 WL 940898 (E.D. Wash. Mar. 31, 2005)......................23

*Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.*,
   No. 12-CV-884-JPS, 2013 WL 1878943 (E.D. Wis. May 3, 2013) ..................22, 24

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   220 F.R.D. 246 (D. Md. 2004).........................................................................23, 24

*SEC v. Citigroup Global Markets, Inc.*, Nos. 11-5227, 11-5242 and 11-5375 (2d Cir.)...............8

*SEC v. CR Intrinsic Investors, LLC*,
   No. 12 Civ. 8466 (VM), 2013 WL 1614999 (S.D.N.Y. Apr. 16, 2013).....................8

*Seippel v. Sidley, Austin, Brown & Wood LLP*,
   No. 03 CIV.6942(SAS), 2005 WL 388561 (S.D.N.Y. Feb. 17, 2005)....................23

*Singer v. Nicor, Inc.*,
   No. 02 C 5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ..............................22

*Thomas v. Metro. Life Ins. Co.*,
   540 F. Supp. 2d 1212 (W.D. Okla. 2008) .............................................................17

*Vacold LLC v. Cerami*,
   No. 00 CIV. 4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) .................18

*Waldman v. Wachovia Corp.*,
    No. 08 CIV. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009).....................................20

*Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*,
    No. 08 CIV. 9528SAS, 2009 WL 1285845 (S.D.N.Y. May 8, 2009) ....................................21

*In re Williams Sec. Litig.*,
    No. 02-CV-72H (M), 2003 WL 22013464 (N.D. Okla. May 22, 2003)................................24

*Wilson v. Comtech Telecomms. Corp.,*
    648 F.2d 88 (2d Cir. 1981)..................................................................................................16

*In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...............................21, 24

**OTHER CASES**

*Freeman v. Williamson,*
    890 N.E.2d 1127 (Ill. App. Ct. 2008) ...................................................................................24

**FEDERAL STATUTES AND RULES**

Section 21D(a)(3), Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)...............15, 16, 18

Section 21D(b)(3)(B), Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(b)(3)(B)................14

Lead Plaintiffs David E. Kaplan, Roxy D. Sullivan, Lindsey Rankin, Michael S. Allen and Chi-Pin Hsu, together with plaintiff Gary W. Muensterman (collectively, the "*Kaplan* Plaintiffs"), respectfully submit this memorandum of law in support of their motion for relief from the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## PRELIMINARY STATEMENT

This action is a consolidated securities class action asserting insider trading claims against S.A.C. Capital Advisors, L.P. and its affiliates (collectively, the "SAC Defendants" or "SAC"), among other defendants.  This action arises out of Defendants' misappropriation of and trading on material nonpublic information concerning the Phase 2 clinical trial of bapineuzumab ("bapi"), an Alzheimer's disease treatment jointly developed by two pharmaceutical companies, Elan Corporation, plc ("Elan") and Wyeth.  The *Kaplan* Plaintiffs traded in Elan securities; Wyeth investors are represented by a separate lead plaintiff and lead counsel.

The *Kaplan* Plaintiffs originally asserted claims with respect to a nine-day period, July 21-29, 2008, during which SAC sold out of its entire position in Elan, worth $365 million, and then sold short an additional $152 million in Elan securities, following receipt of adverse inside information about bapi.  In their Consolidated Class Action Complaint (the "Consolidated Complaint"), filed May 13, 2013, the *Kaplan* Plaintiffs also asserted claims with respect to the prior two-year period, during which SAC built up its long position while obtaining positive inside information regarding bapi.  The Court, the Honorable Victor Marrero, directed that new PSLRA notice be issued in light of the substantially expanded class period and addition of claims on behalf of Elan sellers, and new lead plaintiff motions are now due July 23, 2013.

This motion seeks relief from the PSLRA discovery stay and an Order directing production of two categories of documents: (i) trading records evidencing SAC's trades in Elan securities during the class periods specified in the Consolidated Complaint (the "Trading Records"), and (ii) documents produced by the Securities and Exchange Commission ("SEC") and the U.S. Attorney's Office for the Southern District of New York ("USAO") to Defendants (the "Merits Discovery").

With respect to the Trading Records, such records are needed forthwith to enable the Court to determine, as required by the PSLRA, which lead plaintiff movant has the "largest financial interest in the relief sought by the class," and also to allow Plaintiffs to determine who among the over 40 investors who have contacted them is best qualified to serve as lead plaintiff.

With respect to the Merits Discovery, relief from the PSLRA stay has been approved by numerous courts under similar circumstances, and Plaintiffs' motion follows Judge Marrero's observation at a case management conference on May 24, 2013 that relief from the stay as to documents produced to or by the government may be warranted here.

## SUMMARY OF THE ACTION

As set forth in the Consolidated Complaint, annexed as Exhibit A to the accompanying Declaration of Ethan D. Wohl dated June 24, 2013 ("Wohl Decl."), this action arises from the most profitable insider trading conspiracy ever uncovered.  By trading on material nonpublic information, Defendants illegally realized at least $549 million in profits gained and losses avoided from trades in Elan securities, together with over $56 million in profits gained and losses avoided from their Wyeth trades.  ¶¶ 1, 5, 282[1]; *SEC v. CR Intrinsic Investors, LLC*, No. 12 Civ. 8466 (VM), ECF No. 25 ¶ 58.

---

[1]  Unless otherwise indicated, citations in the form "¶ __" are to the Consolidated Complaint.

The conduct and events at issue in this action are the subject of a pending criminal prosecution, *United States v. Martoma*, No. 12 Cr. 973 (PGG) (the "Criminal Action"), and an SEC enforcement action, *SEC v. CR Intrinsic Investors, LLC*, No. 12 Civ. 8466 (VM) (the "SEC Action"). ¶¶ 3, 71.

As described in the Consolidated Complaint, the SAC Defendants illegally traded in Elan ADRs and options between 2006 and 2008 while in the possession of nonpublic information concerning the Phase 2 clinical trial of bapi, an Alzheimer's disease treatment that was the focus of Elan's drug development efforts. ¶¶ 6, 83-130.

The SAC Defendants obtained the inside information regarding the bapi clinical trial (the "Inside Information") from Defendant Sidney Gilman ("Gilman"), the medical doctor who chaired the Safety Monitoring Committee that oversaw the bapi clinical trial on behalf of Elan and Wyeth. Gilman secretly disclosed the Inside Information to an SAC portfolio manager, Defendant Mathew Martoma ("Martoma"). ¶¶ 7, 74-81.

Martoma is the defendant in the Criminal Action and is also a defendant in the SEC Action. In November 2012, Gilman entered into a nonprosecution agreement with the U.S. Department of Justice that required him to serve as a cooperating witness, and he consented to a judgment against him in the SEC Action requiring him to disgorge over $200,000, representing his profits from his unlawful conduct. ¶¶ 8, 82.

Martoma discussed bapi with Gilman numerous times between 2006 and July 2008. Gilman received approximately $1,000 per hour for these consultations. During their discussions, Gilman provided Martoma with material nonpublic information concerning the ongoing bapi clinical trials. Over this period, SAC purchased a total of at least 16.9 million Elan

ADRs while in possession of the Inside Information, which it sold for profits presently estimated at $178 million.  ¶¶ 9, 83, 282.

By June 30, 2008, SAC's holdings totaled over 10.5 million Elan ADRs, worth more than $365 million, and it had also acquired a similarly large long position in Wyeth.  SAC's positions in Wyeth and Elan represented its second and fifth largest positions out of the more than 1,200 companies in which it was then invested.  ¶¶ 10, 19, 21, 116, 126.

SAC's trades were directly supervised by Defendant Steven A. Cohen ("Cohen"), its founder, Chief Executive Officer and Chief Investment Officer, and Cohen based his approval of the trades on his direct communications with Martoma.  ¶¶ 11, 112-116, 130.

Cohen approved SAC's acquisition and retention of its massive position in Elan over the objections of other, more experienced SAC fund managers, despite Martoma's junior position and lack of track record.  Martoma had joined SAC in 2006, shortly before his consultations with Gilman began and SAC opened its position in Elan.  Illustrating his lack of proven performance as a portfolio manager both before and after the insider trading detailed in the Consolidated Complaint, when Martoma was later terminated in 2010, an officer of SAC described him as a "one trick pony with Elan."  ¶¶ 12, 70, 94-99.

A majority of SAC's Elan holdings were acquired through Defendant CR Intrinsic Investors, LLC ("CR Intrinsic"), the SAC subsidiary that directly employed Martoma.  Cohen had much of his personal net worth, estimated at $8.8 billion, invested with CR Intrinsic, and exercised unusually close control over it.  ¶ 13.

On June 17, 2008, Elan and Wyeth released top-line (summary) results from the Phase 2 bapi clinical trial (the "June 17 Announcement").  The market reacted positively, with Elan ADRs rising 10.7% after the announcement.  Martoma reaffirmed his positive outlook on Elan

after the June 17 Announcement, predicting on June 30 that, after detailed trial results were to be released a month later, "I think stock breaks $40."  ¶¶ 14, 100, 101.

Gilman learned in late June 2008 that he would be presenting the results of the bapi clinical trials at the International Conference on Alzheimer's Disease ("ICAD"), a widely-anticipated event to be held in Chicago on July 29, 2008.  In the weeks before ICAD, Gilman learned the complete safety and efficacy results for the trials.  ¶¶ 15, 102.

On Thursday, July 17, 2008, Gilman briefed Martoma in detail and provided him an encrypted presentation of the full trial results.  ¶¶ 17, 107-109.

On the morning of Sunday, July 20, 2008, Martoma emailed Cohen to say that he would like to speak with him and that "[i]t's important."  Thereafter, they spoke for nearly 20 minutes.  ¶¶ 18, 112.

The following day, while no new public information had been disclosed regarding bapi since the June 17 Announcement, and only three weeks had passed since Martoma's bullish statements regarding Elan's target price, SAC's head trader, identified in news reports as Phillipp Villhauer ("Villhauer"), began aggressively selling SAC's positions in both Elan and Wyeth.  Over the seven trading days leading up to the announcement of Phase 2 clinical trial results on July 29 (the "July 29 Announcement"), SAC liquidated its entire positions in Elan and Wyeth, worth $365 million and $335 million, respectively.  ¶¶ 19, 113.

In addition, SAC opened large short positions in both Elan and Wyeth toward the end of the same seven day period.  ¶¶ 20, 120, 268.

Villhauer's emails reflect that he actively concealed the sales from both the market and others at SAC, excepting Cohen and Martoma.  On July 21, he emailed Martoma regarding the sales, stating that "obviously no one knows except me[,] you and [Cohen]."  Villhauer later

reported to Cohen that "[w]e executed a sale of over 10.5 million ELN for [various portfolios at CR Intrinsic and SAC LP] at an avg price of 34.21. This was executed quietly and efficiently over a 4 day period through algos and darkpools and booked into two firm accounts that have very limited viewing access."  ¶¶ 21, 114, 116.

In total, by causing SAC to both liquidate its long positions in Elan and Wyeth and establish short positions in the companies during the seven trading days before the July 29 Announcement, Cohen, Martoma and Villhauer permitted SAC to avoid losses from its long positions and secure profits from its short positions in and options on Elan totaling approximately $218.5 million following the July 29 Announcement.  ¶¶ 5, 267.

In addition, as a result of trading on the Inside Information, the SAC Defendants further gained profits and avoided losses totaling an additional approximately $152 million two days later, on August 1, 2008, after other adverse information concerning Elan was disclosed to the market.  ¶¶ 5, 268.

Martoma received a $9.3 million bonus for 2008, a significant portion of which was attributable to the illegal profits that SAC had generated in the Elan and Wyeth short sales in late July.  He was subsequently unsuccessful as a portfolio manager, and was terminated by SAC in 2010.  ¶¶ 28, 69, 70, 283.

The insider trading detailed herein fits a pattern and practice of illegal use of inside information at SAC: Martoma is the third employee of Defendant CR Intrinsic to be criminally indicted or charged by the SEC with insider trading since 2011, and he is the eighth SAC employee to be charged with or to admit insider trading at SAC since 2009.  Within the past year, three other SAC employees have also been identified by the government or cooperators as active participants in various insider trading schemes.  ¶¶ 29, 176-233.

## PROCEDURAL HISTORY

**A.      Prior Proceedings in this Action and Related Actions**

On November 19, 2012, the USAO filed the Criminal Action against Defendant

Martoma, *United States v. Martoma*, No. 12 Cr. 973 (PGG), now pending before the Honorable

Paul G. Gardephe, and on November 20, 2012, the SEC filed the SEC Action, *SEC v. CR*

*Intrinsic Investors, LLC*, No. 12 Civ. 8466 (VM), now pending before the Honorable Victor

Marrero.  Defendant Gilman simultaneously settled the SEC Action, paying $234,868 in

disgorgement.

On December 21, 2012, the *Kaplan* Plaintiffs commenced this action.  The *Kaplan*

Plaintiffs' original complaint was limited to the period July 21-29, 2008 – the nine days leading

up to ICAD, during which SAC sold out of its long position and then massively shorted Elan.

The *Kaplan* Plaintiffs had a pre-existing relationship arising out of their investments in

Elan dating back to at least 2006, and collectively sustained losses on their July 21-29, 2008 Elan

trades of over $3.4 million.  *See* ECF Nos. 17, Ex. B and 18 ¶ 7.

On January 11, 2013, the Court held an initial case management conference in the SEC

Action at which counsel for the *Kaplan* Plaintiffs was present.  The Court observed that the

present action is "based essentially on the same or related underlying facts as in the SEC case,

against essentially, the same or most of the same defendants" and accordingly directed that this

action and the SEC Action "should proceed on a form of coordinated schedule" and the parties

should "find ways of making coordination and efficiency work."  Tr. 3:22-4:2, 6:19-22.  The

Court further emphasized its interest in efficiency, coordination, minimizing costs to the parties,

and "moving the matter along as expeditiously as possible, with minimal amount of unnecessary

effort."  *Id*. at 3:22-4:2, 6:12-18, 10:8-18, 13:24-14:2.

The *Kaplan* Plaintiffs subsequently moved for appointment as lead plaintiff and approval of their selection of lead counsel on February 19, 2013; no competing motions were filed. *See* ECF Nos. 15-18.

On March 15, the SAC Defendants announced that they had settled with the SEC and agreed to pay a total of $601.7 million, representing $274,972,541 in disgorgement, $51,802,381 in prejudgment interest, and a $274,972,541 civil penalty. By letter the same date, Defendants asserted that this action would be mooted upon approval of such settlement [ECF No. 29]. As directed by the Court, the *Kaplan* Plaintiffs responded by letter dated March 20, 2013, which was not docketed, setting forth additional amounts subject to disgorgement in their action.

On April 12, a securities class action on behalf of Wyeth investors arising out of the same events was filed, *Birmingham Retirement and Relief System v. S.A.C. Capital Advisors, L.P.*, No. 13 Civ. 2459 (VM) (the "Birmingham Action").

On April 15, the *Kaplan* Plaintiffs' lead plaintiff motion was granted by the Court [ECF No. 45].

On April 16, Judge Marrero conditionally approved the SEC-SAC settlement, noting his reservations about the "neither admit nor deny" provision therein, and reserving the issue of whether he would require removal of such provision pending the Second Circuit's decision in *SEC v. Citigroup Global Markets, Inc.*, Nos. 11-5227, 11-5242 and 11-5375 (2d Cir.) ("*Citigroup*"), which appeals now remain under submission. *See SEC v. CR Intrinsic Investors, LLC*, No. 12 Civ. 8466 (VM), 2013 WL 1614999, at *3, *13 (S.D.N.Y. Apr. 16, 2013).

On April 25, the parties in this action submitted a joint letter to the Court, presenting their dispute regarding whether motions to dismiss should proceed immediately upon the filing of a consolidated complaint, or be deferred pending a final decision by the Court regarding whether

to approve the SEC-SAC settlement [ECF No. 55].  Defendants then submitted a separate letter on April 26, arguing in favor of deferral [ECF No. 54]; Plaintiffs responded by letter dated April 29 [ECF No. 53].

On May 9, the Court sua sponte consolidated the Birmingham Action with this action for all pretrial purposes [ECF No. 56].

On May 13, the *Kaplan* Plaintiffs filed their Consolidated Complaint [ECF No. 57].  The Consolidated Complaint added claims based on Defendants' insider buying during the period July 2006 through July 18, 2008 based on positive inside information from Gilman about bapi, which resulted in unlawful profits estimated at $178 million.  ¶¶ 5, 8.

As set forth in the Consolidated Complaint, the *Kaplan* Plaintiffs seek total damages, together with prejudgment interest thereon, of $685 million, net of the amounts disgorged and prejudgment interest paid in the SAC Defendants' settlement with the SEC.  ¶ 5.

On May 14, Judge Marrero held a telephone conference with the parties concerning the case management dispute presented in their April 25, 26 and 29 letters, which was not transcribed.  The Court rejected Defendants' position that motion to dismiss briefing be deferred pending a final determination of the SEC-SAC settlement and also directed, over Defendants' objection, that they send Plaintiffs the three-page pre-motion to dismiss letters contemplated by the Court's Individual Practices.  Judge Marrero also directed, however, that a single consolidated complaint be filed on behalf of both Wyeth and Elan investors, and that motion to dismiss briefing not proceed until that occurred.

On May 16, the SAC Defendants informed the *Kaplan* Plaintiffs by letter that they believed new PSLRA notice was required in light of the substantially expanded class period and assertion of claims on behalf of sellers in the earlier period.  By letter dated May 23 [ECF No.

59], Plaintiffs requested direction from the Court on the issue.  By Order dated May 24 [ECF No. 60], the Court directed that new PSLRA notice issue.  Plaintiffs issued such notice the same day.

The PSLRA provides a 60-day period for moving for appointment as lead plaintiff, and the deadline for doing so in this case is therefore July 23, 2013.

On May 21, Judge Marrero entered an Order [ECF No. 58], confirming and clarifying his May 9 Order concerning consolidation of the Birmingham Action.  The Court confirmed that the Birmingham Action would be consolidated with this action for all pretrial purposes and "reiterate[d] its expectation that all parties will endeavor to cooperate to ensure" the "maximum feasible consolidation and coordination" in pretrial matters.  The Court further "suggested that such efforts should extend, insofar as possible, to preparation of a consolidated amended complaint covering both actions, and to any motion to dismiss addressing issues common to both actions."  Finally, the Court directed that "[w]here a filed document pertains to either the Birmingham Action and the Kaplan Action but not the other, the filing party is directed to include in parentheses after the docket number in the caption either 'Birmingham' or 'Kaplan,' as appropriate."

On June 5, at a conference in the Criminal Action, Judge Gardephe scheduled Defendant Martoma's criminal trial to begin November 4, 2013.  With respect to document discovery, the government reported to Judge Gardephe that Defendant Martoma had received "essentially everything that is referred to in the indictment" in January 2013, Tr. 14:17, and thereafter received additional documents produced by SAC and third parties.  Tr. 14:21-15:3.

On June 11, Birmingham Retirement and Relief System sought appointment as lead plaintiff on behalf of Wyeth investors in the Birmingham Action.  Such motion was unopposed, and the Court granted the motion by Order entered June 17, 2013 [ECF No. 66].

**B.**     <u>**Proceedings Concerning the Present Motion**</u>

At a case management conference in the SEC Action held on May 24, 2013 (the "May 24

CMC"), following the Court's announcement that it would be directing new PSLRA notice, the

*Kaplan* Plaintiffs' counsel raised the issue of access to the Trading Records, Wohl Decl. Ex. B,

Transcript, at 10:10, and after a colloquy with counsel, the Court directed the parties to confer on

the issue.  Tr. 13:8-10.

Judge Marrero then raised an alternative approach to the issue, noting "[l]et me see if we

can possibly also skin the cat another way coming back to the SEC case and the issues left open

there" relating to document discovery.  Tr. 13:11-13.

Judge Marrero then ruled that document discovery should proceed in the SEC Action and

observed:

> ```
> Now, document discovery conceivably might bear on the
> issues that Mr. Wohl is raising.  It is not inconceivable
> that within the documentation that the SEC provides some
> or all of what Mr. Wohl is referring to concerning the
> trade dates and classes might be dealt with so that we
> don't need therefore to address that issue separately.
> ```

Tr. 13:24-14:4.

Judge Marrero then engaged in the following colloquy with counsel for the SAC

Defendants:

> ```
> MR. KRAMER:  Yes, your Honor.  Several courts in the past
> have addressed exact legal issue your Honor is focusing
> on; and, that is, whether the PSLRA stay should be
> modified to permit discovery and parallel actions to be
> made available to other parties.  There are pros and
> cons.  The way that the authorities not to allow that.
> Congress did want class plaintiffs to not to go through
> putting their complaint together and surviving the motion
> to dismiss first.  If that is an issue that is front and
> center now for your Honor, I would request the
> opportunity to brief it so that you could have all the
> law in front of you and all the policy issues before
> going down that path.
> ```

THE COURT:  Mr. Kramer, let's take the matter as an issue of practicality.

MR. KRAMER:  Yes.

THE COURT:  The SEC has the material.

MR. KRAMER:  Yes, your Honor.

THE COURT:  It is going to turn it over to you.

MR. KRAMER:  Correct.

THE COURT:  What would there -- what is there to be gained by -- if you have the material keeping it from Mr. Wohl who at some point down the line may ask you for discovery of whatever material you may have.

MR. KRAMER:  Correct.

THE COURT:  And at that point you would be obliged to turn it over to him.

MR. KRAMER:  And we could turn it over to him within days of the decision on a motion to dismiss.  Most courts -- not all, your Honor, but most courts -- who have faced this issue do find that private plaintiffs are different than the government; do find that Congress in the PSLRA meant what it said when it said there is a stay and plaintiffs must plead a claim before being entitled to discovery.  What we can do is have the discovery and have it ready to go within 24, 48 hours of a decision on a motion should we lose, and --

THE COURT:  And that motion might be decided, let's say, a year and a half from now.

MR. KRAMER:  But, your Honor, there really can't be anything that can happen in the class cases appropriately in our view until that motion is up and decided.  That is what Congress decreed with the PSLRA.  I think we would argue that we're entitled to those protections that the Court should keep, as I know you will, an open mind about whether the complaint is sufficient or not; should keep an open mind as to whether parts of the complaint are sufficient or not.  Is it an eight day complaint?  Is it a two and a half year complaint?  That makes a very big difference in terms of discovery.

So, I agree with you we should be efficient and ready to go, but the great weight is authority with usually - not always, but usually -- the courts say is you have this stuff, and if I allow this complaint to go forward, I don't want there to be any delay in turning it over as opposed to undoing the PSLRA stay.  There are high hurdles for doing that.

THE COURT:  Let me add a dimension, Mr. Kramer, that bears on what the PSLRA Congress intended.

If this were a situation where your client had the
discovery or had to produce it and spend a million
dollars creating records, and then it turns out that
plaintiffs don't have a case, your client would be out a
million dollars and unnecessary discovery costs.  That is
one of the things that the PSLRA contemplated; to not to
put a burden on the defendant on claims that may not
survive a motion to dismiss.

What we have here is a slightly different situation. The
SEC has the material.

MR. KRAMER:  Yes, your Honor.

THE COURT:  They were going to produce it to Mr. Martoma
for some other purpose.

MR. KRAMER:  Yes, your Honor.

THE COURT:  They're going to give you a copy, so it's
going to cost the SEC whatever it costs them to produce
it and to send you a copy, and what you are going to be
out is the cost of a postage stamp to give back to Mr.
Wohl.

MR. KRAMER:  Your Honor, it is not merely – number one,
that's always the case when the great weight of authority
and the great -- your colleagues overwhelmingly decide
that the cost issue alone is not the determining issue
here.  There will be costs in us having to go through
those documents; but putting that aside, that is always
the case, and, nevertheless -- and I'd like to be able to
present the law to your Honor -- nevertheless, the great
majority of courts still find that the reasons behind the
PSLRA stay should be in effect and should preclude the
discovery although admonishing defendants that as soon as
the decision is made, should it go against them, the
materials have to go over.

But you're absolutely, one of the issues, one of the cost
issues would not be present.  But even with that, it is
the view of most of your colleagues that that's not
enough to satisfy the standard that's necessary to impair
the statutory stay.

THE COURT:  Yes.  I've come across the issue, and I'm
aware that, as you say, the majority --

MR. KRAMER:  Correct.

THE COURT:  -- the majority is not a hundred percent.

MR. KRAMER:  Correct.

THE COURT:  And the majority that may have weighed on
this may have weighed it in a different context, perhaps
in the context that I laid out to you before.

Be that as it may, I remain, I am not going to prejudge
the issue.  If it is an issue, the parties will have an

- 13 -

```
opportunity to address it, but I just give you my
preliminary thinking that we should look at this in the
most practical way that achieves an equitable result for
all parties.
```

Tr. 14:6-18:8.

Following the May 24 CMC, counsel for the *Kaplan* Plaintiffs contacted counsel for Defendants the next business day, May 28, to request a meet-and-confer.  Defense counsel were unavailable until a week later, June 4.  Following the June 4 meet-and-confer, at Defendants' request, Plaintiffs supplied caselaw supporting their position.  At Defendants' suggestion, Plaintiffs also provided a list of targeted document requests to narrow the scope of production sought.  The parties met and conferred again on June 7.  The SAC Defendants objected to production of documents previously produced to the SEC on the grounds that such production would be overbroad; Defendant Martoma further objected to providing the productions received by him from the SEC or USAO.  Plaintiffs then sent two follow-up emails requesting further response; the SAC Defendants ultimately replied on June 14 that they would not consent to any waiver of the PSLRA stay; counsel for Mr. Martoma did not reply to either of Plaintiffs' emails.

The next business day, June 17, counsel for the *Kaplan* Plaintiffs requested a pre-motion conference for relief from the PSLRA discovery stay in accordance with Judge Marrero's Individual Practices.  By Order of Reference and endorsed letter dated June 18, 2013, Judge Marrero referred this matter to the Honorable Kevin N. Fox [ECF Nos. 67, 68].

## **ARGUMENT**

The PSLRA discovery stay, from which the *Kaplan* Plaintiffs now seek relief, is set forth in Section 21D(b)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B).  Such provision limits pre-motion to dismiss discovery as follows:

(B) Stay of discovery

In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

Here, the *Kaplan* Plaintiffs seek: (i) the Trading Records, evidencing the SAC Defendants' trades in Elan during the class periods specified in the Consolidated Complaint, and (ii) the Merits Discovery, consisting of documents produced by the SEC and USAO to Defendants.

Plaintiffs understand that SAC has produced most of the requested trading records to the SEC; counsel for Defendant Martoma responded evasively, and then declined to further respond, to Plaintiffs' inquiry whether such records had been produced to him by the USAO.  *See* Wohl Decl. Ex. E.

Each category of requested documents is discussed separately below.

## I.   DEFENDANTS SHOULD BE ORDERED TO PRODUCE SAC'S TRADING RECORDS FORTHWITH

As noted above (at 1, 9), the District Court directed that new lead plaintiff notice be issued by Plaintiffs in light of the substantially expanded class period and addition of claims on behalf of Elan sellers.  Such notice was issued by the *Kaplan* Plaintiffs the same day, and lead plaintiff motions are therefore due on July 23, 2013.  The Trading Records are necessary for the Court to adjudicate such motions consistent with the mandate of the PSLRA.

The PSLRA adopts a rebuttable presumption that the Court should appoint as lead plaintiff the movant with, *inter alia*, the "largest financial interest in the relief sought by the

class . . . ."  Section 21D(a)(3)(B)(iii)(I)(bb), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).[2]  Under both

Section 10(b) and Section 20A, private plaintiffs can assert an insider trading claim only if they

traded "contemporaneously" with the defendant.  Section 20A(a); *Wilson v. Comtech*

*Telecomms. Corp.,* 648 F.2d 88, 94 (2d Cir. 1981) (adopting this requirement under Section

10(b)).

Accordingly, unlike a typical securities fraud class action, in which a claim arises from a

trade made at any point between the time an actionable misrepresentation or omission is made

and a later corrective disclosure occurs, investors here have claims only if they traded within the

class period *and* did so "contemporaneously" with the SAC Defendants.

Regarding the period of time deemed "contemporaneous," courts in this Circuit "have

tended to find that five or even seven days between the trades" qualifies as contemporaneous.

*Brodzinsky v. FrontPoint Partners LLC*, No. 11CV10, 2012 WL 1468507, at *5 (D. Conn. Apr.

26, 2012).

Accordingly, the Trading Records are necessary for the Court to fulfill a basic directive

of the PSLRA – to determine which movant has the "largest financial interest in the relief sought

---

[2]  Exchange Act Section 21D(a)(3)(B)(iii), 15 U.S.C. § 78u-4(a)(3)(B)(iii), provides, in relevant part, as follows:

      (iii) Rebuttable presumption

      (I) In general

      Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that--

      (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

      (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

      (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. . . .

- 16 -

by the class" and is therefore the presumptive "most adequate plaintiff."  Exchange Act Section 21D(a)(3)(B)(iii), 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Indeed, absent the Trading Records, the Court might select a lead plaintiff who is later determined to have *no* contemporaneous trades and therefore no claim at all.[3]

Without the Trading Records, Plaintiffs, and any competing movants, will also be prejudiced in selecting the investors among them who have the largest contemporaneous trades and are therefore the best qualified movants.

Courts have previously granted relief from the PSLRA stay to allow discovery from defendants regarding standing and other threshold, jurisdictional matters.  In *Thomas v. Metropolitan Life Insurance Co.*, 540 F. Supp. 2d 1212 (W.D. Okla. 2008), the defendant challenged the plaintiffs' standing as purchasers of its mutual funds and other proprietary financial products, and the court agreed that the plaintiffs had not adequately pled which products they had purchased during the class period.  The court then granted the plaintiffs' request for relief from the PSLRA stay, holding that in light of the "complex matrix" of claims and range of proprietary products at issue "it is understandable that plaintiffs may need some particularized discovery to help them determine exactly which plaintiffs purchased exactly which MetLife proprietary products during the time period relevant to the federal claims."  *Id.* at 1222.

In *In re Baan Co. Securities Litigation*, 81 F. Supp. 2d 75 (D.D.C. 2000), two defendants moved to dismiss for lack of personal jurisdiction.  The court directed jurisdictional discovery,

---

[3]  In their pre-motion to dismiss letter, the SAC Defendants asserted that Plaintiffs have failed to adequately plead contemporaneousness, and therefore lack standing.  While Plaintiffs disagree that their allegations regarding contemporaneousness are insufficient at the pleading stage, they have now been contacted by Elan investors with trades during each week in the Class Period.  They therefore expect to be able to dispose of any possible standing objection in a further amended complaint, but doing so without the Trading Records will likely necessitate joining a large number of investors as plaintiffs.

noting that while the PSLRA stay generally bars pre-motion to dismiss discovery, undue prejudice existed and "[l]imited discovery must be permitted to prevent the unfairness of a party's being denied access to information which his opponent possesses and which, if produced, would establish the legitimacy of his being before the court." *Id.* at 83.

Other courts have also required production of narrowly-targeted discovery, including trading records, when the plaintiff has otherwise pled a meritorious claim and would suffer undue prejudice if particularized information were not provided. In *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 CIV 342 (DLC), 1999 WL 223158, at *1-2 (S.D.N.Y. Apr. 16, 1999), the plaintiff corporation alleged that the defendant investment funds engaged in a scheme to drive down its price through short selling. Judge Cote granted relief from the PSLRA stay, allowing the plaintiff to obtain discovery from the defendants and third parties regarding the defendants' trading in the plaintiff's securities. Similarly, in *Vacold LLC v. Cerami*, No. 00 CIV. 4024 (AGS), 2001 WL 167704, at *5-7 (S.D.N.Y. Feb. 16, 2001), Judge Schwartz granted relief from the PSLRA stay to obtain discovery with respect to a specific issue – the date of a third party's investment, which was the focus of the matter allegedly misrepresented, noting that this request "does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint."

In addition, the PSLRA itself specifically authorizes discovery in connection with lead plaintiff determinations. Exchange Act Section 21D(a)(3)(B)(iv), 15 U.S.C. § 78u-4(a)(3)(B)(iv), provides:

> (iv) Discovery
>
> For purposes of this subparagraph, discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

This provision, by its terms, is oriented to obtaining discovery to rebut another movant's claim to be the "most adequate plaintiff," but it expressly contemplates that discovery be allowed in connection with the selection by the Court of the lead plaintiff, and allows such discovery without limitation as to the persons from whom discovery may be obtained.

Here, the Trading Records are necessary to fulfill the mandate of the PSLRA and are supported by cases authorizing discovery with respect to both threshold matters and also narrowly drawn matters going to the merits.

As set forth in the letter to the Court from Plaintiffs' counsel dated June 21, 2013 (Wohl Decl. Ex. C), the *Kaplan* Plaintiffs respectfully request expedited consideration of their application for the Trading Records.  To insure that the *Kaplan* Plaintiffs and any competing lead plaintiff movants are placed on an equal footing, paragraph 4 of the proposed Order submitted herewith directs that the *Kaplan* Plaintiffs issue notice that they have received such records, and make such records available to other movants upon request.

## II.   DEFENDANTS SHOULD BE REQUIRED TO PRODUCE THE MERITS DOCUMENT DISCOVERY THEY HAVE RECEIVED FROM THE GOVERNMENT

Plaintiffs also seek relief from the PSLRA discovery stay to obtain production of documents produced to Defendants by the SEC and USAO.

The principal purposes of the PSLRA discovery stay are to "prevent plaintiffs from filing securities class actions with the intent of using the discovery process to force a coercive settlement [or] conduct discovery in the hopes of finding a sustainable claims not alleged in the complaint."  *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) (citing H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (further citations and internal quotation marks omitted)).  Many courts have therefore recognized that relief from the

PSLRA stay is appropriate with respect to documents already produced to or by the defendants, where one or more other factors also tilt in favor of disclosure.

Three separate sets of circumstances described in these cases support the disclosure that Plaintiffs seek here.

Production Following Regulatory Settlements Affecting Plaintiffs' Litigation or Settlement Strategy.  Judges in this District have lifted the PSLRA stay on several occasions where a regulatory settlement has been reached and the settlement will affect the private securities plaintiffs' litigation or settlement strategy.  In *LaBranche*, 333 F. Supp. 2d at 180-81, the defendant trading firm agreed to pay $63.5 million to settle enforcement proceedings brought by the SEC and New York Stock Exchange charging it with "trading ahead" of customer orders and other improprieties.  In deciding whether to lift the PSLRA discovery stay, Judge Sweet concluded that failure to produce the requested materials would be unduly prejudicial and that production of the documents previously produced to the SEC and NYSE was required, observing that "[t]he requested discovery is essential to determine [the lead plaintiffs' litigation] strategy and to assist in formulating an appropriate settlement demand."  *Id.* at 183.  He further noted that, in deciding whether to lift the PSLRA discovery stay, many courts consider whether production will place a burden on the defendants, and held that production of the requested materials would place no burden on defendants in that case.  *Id.* at 183.

Similarly, in *Waldman v. Wachovia Corp.*, No. 08 CIV. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009), the defendants settled claims with the SEC arising out of their sale of auction rate securities.  Judge Scheindlin emphasized the distinctive problems presented to the plaintiffs as a result of the defendants' settlement with the SEC, observing that "lead plaintiffs

must determine whether to continue with this case despite the settlement reached between defendants and the SEC, which will afford some compensation to the plaintiff class." *Id.* at *2.

Here, the SAC Defendants have repeatedly asserted that their settlement in the related SEC action should be held to resolve Plaintiffs' claims, *see* ECF No. 29.  Plaintiffs do not dispute that the settlement significantly affects the litigation landscape.  Because the documents Plaintiffs seek consist of the electronic production of documents produced *to* Defendants by the government, the burden on Defendants will be extremely minimal.  Consistent with *LaBranche* and *Waldman*, Plaintiffs should now therefore be allowed to fully evaluate their claims and strategy in light of the SEC settlement.

Production in Complex, Multiparty Litigations.  Judges in this District and elsewhere have also granted relief from the PSLRA stay where the securities plaintiffs would suffer prejudice vis-à-vis other litigants in parallel, multiparty litigation.  In *In re WorldCom, Inc. Securities Litigation*, 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002), Judge Cote lifted the discovery stay because absent relief from the stay, the lead plaintiff "would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape" involving multiple other parties and "would essentially be the only major interested party in the criminal and civil proceedings against WorldCom without access to documents that currently form the core of those proceedings."  More recently, in *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*, No. 08 CIV. 9528SAS, 2009 WL 1285845, at *1-2 (S.D.N.Y. May 8, 2009), Judge Scheindlin lifted the PSLRA discovery stay as to an internal investigative report that had already been produced to shareholders in a parallel Brazilian action, noting that "[g]iven the existence of parallel litigation, without access to the report, plaintiffs are disadvantaged vis-à-vis Brazilian litigants. In balancing the burden to defendants against the

potential prejudice to plaintiffs, the balance favors plaintiffs, based on the lack of any cost to

defendants to produce those documents and plaintiffs' unusual need for an early review of

crucial records."

Other decisions in this District and elsewhere also support the production of documents

where other, parallel litigation is proceeding and the securities plaintiffs face prejudice as a

consequence.  *See Pension Trust Fund for Operating Engineers v. Assisted Living Concepts,*

*Inc.*, No. 12-CV-884-JPS, 2013 WL 1878943, at *3 (E.D. Wis. May 3, 2013) (lifting stay for

documents produced to and by the defendants in other litigation, noting that an SEC

investigation and litigation between the co-defendants was proceeding, and the securities

plaintiffs would face undue prejudice from "fighting this lawsuit in a rapidly shifting landscape,

at an informational disadvantage when compared to the many other interested parties"); *In re*

*Firstenergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (partially lifting discovery

stay to allow plaintiffs to obtain materials defendant had already produced to government

investigators and a federal grand jury because without such materials, the plaintiffs "would be

unfairly disadvantaged in pursuing litigation and settlement strategies"); *Singer v. Nicor, Inc.*,

No. 02 C 5168, 2003 WL 22013905, at*1-2 (N.D. Ill. Apr. 23, 2003) (lifting stay where state

government investigations were ongoing and the SEC had announced proceedings against the

corporate defendant's joint venture; observing that plaintiffs "may well be unfairly

disadvantaged if they do not have access to the documents that the governmental and other

agencies already have"); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. MDL-1446,

2002 WL 31845114, at *2 (S.D. Tex. Aug. 16, 2002) (lifting discovery stay because there would

be only a "slight" burden on the defendant to produce documents that had already been gathered,

reviewed and produced to government investigators; "[i]n a sense this discovery has already

been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse"); *In re Metro. Sec. Litig.*, No. CV-04-25-FVS, 2005 WL 940898, at *3 (E.D. Wash. Mar. 31, 2005) (partially lifting PSLRA discovery stay, holding that the plaintiffs "may well be unfairly disadvantaged if they do not have access to documents the governmental agencies and other civil claimants possess"); *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 CIV.6942(SAS), 2005 WL 388561, at *2 (S.D.N.Y. Feb. 17, 2005) (lifting stay as to state law claims, observing that "[h]ere, defendants have been subject to governmental investigations and many other private lawsuits. These governmental investigations and lawsuits are ongoing, and the Seippels will be prejudiced if they lack access to documents which have been produced to others."); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 252 (D. Md. 2004) ("Without access to key documents that have already been produced to government investigators and that soon will be produced to the ERISA plaintiffs, the securities plaintiffs could suffer a severe disadvantage in formulating their litigation and settlement strategy – particularly if the parties proceed quickly to settlement negotiations, as the court has urged them to do.").

Here, both civil and criminal litigation is proceeding against Defendant Martoma.  In addition, news reports indicate that a number of senior SAC officials, including Defendant Cohen, have been subpoenaed to appear before a grand jury, and that negotiations between the government and the SAC Defendants are occurring, including a possible deferred prosecution agreement.  Wohl Decl. Ex. D, Saijel Kishan & Patricia Hurtado, *Five Top SAC Employees Said to Get Insider Probe Subpoenas*, Bloomberg, May 24, 2013.  The *Kaplan* Plaintiffs should not suffer the prejudice of being the only parties without access to the relevant documents while other litigation advances and settlement discussions occur.

     <u>Defendants Facing Insolvency or Other Major Corporate Changes</u>.  Courts have also granted relief from the PSLRA stay where a principal defendant faces insolvency or other major corporate changes.  *See Assisted Living Concepts, Inc.*, 2013 WL 1878943, at *3 (acquisition of defendant corporation by private equity group); *Royal Ahold*, 220 F.R.D. at 251 (corporate restructuring); *WorldCom*, 234 F. Supp. 2d at 302, 306 (securities plaintiff would be severely disadvantaged absent discovery due to delay; defendant's insolvency introduced "the very real risk that [the plaintiff] will be left to pursue its action against defendants who no longer have anything or at least as much to offer"); *In re Williams Sec. Litig.*, No. 02-CV-72H (M), 2003 WL 22013464, at *1 (N.D. Okla. May 22, 2003) (stay lifted where the defendant corporation was "fighting for its corporate life").

     Here, it has been widely reported that SAC may return outside capital and become a "family office" devoted to managing Defendant Cohen's personal funds.  *See* Kishan & Hurtado, *supra*.  If that occurs and Plaintiffs later obtain a judgment against the SAC entities but not Defendant Cohen, collection against former investors could be difficult or impossible.  *See, e.g.*, *Freeman v. Williamson,* 890 N.E.2d 1127, 1134-35 (Ill. App. Ct. 2008) (clawback claims against limited partners of defunct Delaware investment fund subject to three year statute of repose under Delaware law).

     In sum, courts have approved relief from the PSLRA stay in a variety of circumstances – where regulatory settlements that affect the plaintiffs' litigation or settlement strategy have occurred; where the plaintiffs would suffer prejudice vis-à-vis other litigants in complex multiparty litigation; and where insolvency or other corporate changes could result in prejudice – all of which are present here.

**CONCLUSION**

For the foregoing reasons, the *Kaplan* plaintiffs respectfully request that the Court grant

relief from the PSLRA discovery stay, as set forth in the proposed Order submitted herewith, and

grant such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
       June 24, 2013

                Respectfully submitted,

                **WOHL & FRUCHTER LLP**

                By: _____
                   Ethan D. Wohl
                   Krista T. Rosen
                   Sara J. Wigmore
                570 Lexington Avenue, 16th Floor
                New York, New York  10022
                Telephone: (212) 758-4000
                Facsimile: (212) 758-4004

                Marc I. Gross
                Jason S. Cowart
                Emma Gilmore
                **POMERANTZ GROSSMAN HUFFORD
                DAHLSTROM & GROSS LLP**
                600 Third Avenue, 20th Floor
                New York, New York  10016
                Telephone: (212) 661-1100
                Facsimile: (212) 661-8665

                *Attorneys for the* Kaplan *Plaintiffs and Co-Lead
                Counsel for the Proposed Elan Investor Class*