UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID E. KAPLAN, ROXY D. SULLIVAN,
LINDSEY RANKIN, MICHAEL S. ALLEN,
GARY W. MUENSTERMAN, and CHI-PIN HSU,
Individually and on Behalf of All Others Similarly
Situated,

                Plaintiffs,

              - against -

S.A.C. CAPITAL ADVISORS, L.P., S.A.C.
CAPITAL ADVISORS, INC., CR INTRINSIC
INVESTORS, LLC, CR INTRINSIC
INVESTMENTS, LLC, S.A.C. CAPITAL
ADVISORS, LLC, S.A.C. CAPITAL
ASSOCIATES, LLC, S.A.C. INTERNATIONAL
EQUITIES, LLC, S.A.C. SELECT FUND, LLC,
STEVEN A. COHEN, MATHEW MARTOMA,
and SIDNEY GILMAN,

              Defendants.

No. 12 Civ. 9350 (VM)
(KNF) (Kaplan Action)

ECF Case

Oral Argument Requested

# MEMORANDUM OF LAW ON BEHALF OF THE SAC DEFENDANTS IN OPPOSITION TO PLAINTIFFS' MOTION TO LIFT THE PSLRA STAY

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3020
Fax: (212) 492-0020

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8102
Fax: (212) 728-9102

*Attorneys for the SAC Defendants*

TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   PROCEDURAL HISTORY ............................................................................ 4

      A.    Procedural History Of This Action.................................................. 4

      B.    Plaintiffs' Motion To Lift The PSLRA Stay ................................... 6

III.  ARGUMENT ............................................................................................. 7

      A.    Plaintiffs' Request That The Court Lift The PSLRA Stay And Order
            "Merits Discovery" Should Be Denied........................................... 9

            1.    Plaintiffs Have Failed To Establish The Undue Prejudice
                  Required To Conduct Particularized Discovery .............................. 10

            2.    Plaintiffs' Request Should Also Be Denied Because The
                  "Merits Discovery" Sought Is Not "Particularized Discovery" ........ 18

      B.    Plaintiffs' Request That The Court Lift The PSLRA Stay And Order
            Discovery Of Trading Records Should Be Denied........................................ 19

            1.    Plaintiffs Have Failed To Establish The PSLRA Requirements
                  For Discovery In Connection With Lead Plaintiff Adequacy .......... 19

            2.    Plaintiffs Have Failed To Establish That They Will Suffer
                  Undue Prejudice If They Do Not Receive The Trading
                  Records ................................................................................................ 21

            3.    Plaintiffs' Request For Trading Records Is Overbroad .................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*380544 Canada, Inc.* v. *Aspen Tech., Inc.*,
    2007 WL 2049738 (S.D.N.Y. July 18, 2007) (Keenan, J.) ...........................................9, 10, 17

*In re Am. Funds Sec. Litig.*,
    493 F. Supp. 2d 1103 (C.D. Cal. 2007) ...........................................................................19

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2003 U.S. Dist. LEXIS 12846 (S.D.N.Y. July 21, 2003) (Kram, J.)...........................10, 17, 22

*In re AST Research Sec. Litig.*,
    887 F. Supp. 231 (C.D. Cal. 1995) ...................................................................................22

*In re Baan Co. Sec. Litig.*,
    81 F. Supp. 2d 75 (D.D.C. 2000)................................................................................21, 23

*Brigham* v. *Royal Bank of Canada*,
    2009 WL 935684 (S.D.N.Y. Apr. 7, 2009) (Pauley, J.) .........................................9, 10, 11, 12

*In re Carnegie Int'l Corp. Sec. Litig.*,
    107 F. Supp. 2d 676 (D. Md. 2000)...................................................................................8

*Edward J. Goodman Life Income Trust* v. *Jabil Circuit, Inc.*,
    560 F. Supp. 2d 1221 (M.D. Fla. 2008)............................................................................22

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) ...................................................................15

*In re Fannie Mae Sec. Litig.*,
    362 F. Supp. 2d 37 (D.D.C. 2005)....................................................................................19

*Faulkner* v. *Verizon Commc'ns*,
    156 F. Supp. 2d 384 (S.D.N.Y. 2001) (Conner, J.) ............................................................18

*Global Intellicom, Inc.* v. *Thomson Kernaghan & Co.*,
    1999 WL 223158 (S.D.N.Y. Apr. 16, 1999) (Cote, J.).....................................................21, 23

*In re Initial Pub. Offering Sec. Litig.*,
    236 F. Supp. 2d 286 (S.D.N.Y. 2002) (Scheindlin, J.).........................................................11

*Kazenercom TOO* v. *Ibar Dev., LLC*,
    464 F. App'x 588 (9th Cir. 2011) ....................................................................................22

*King* v. *Livent, Inc.*,
    36 F. Supp. 2d 187 (S.D.N.Y. 1999) (Sweet, J.) ...................................................20

*In re Kit Digital, Inc. Sec. Litig.*,
    2013 WL 1200324 (S.D.N.Y. Mar. 13, 2013) (Marrero, J.) .................................20

*Kuriakose* v. *Fed. Home Loan Mortg. Co.*,
    674 F. Supp. 2d 483 (S.D.N.Y. 2009) (Keenan, J.) ...................................... passim

*In re LaBranche Sec. Litig.*,
    333 F. Supp. 2d 178 (S.D.N.Y. 2004) (Sweet, J.) ................................................12

*In re LaBranche Sec. Litig.*,
    405 F. Supp. 2d 333 (S.D.N.Y. 2005) (Sweet, J.) ................................................12

*McIntire* v. *China Midexpress Holds., Inc.*,
    2013 WL 752954 (S.D.N.Y. Feb. 28, 2013) (Marrero, J.) ....................................16

*In re Merrill Lynch & Co.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) (Pollack, J.) .............................................21

*In re Metro. Sec. Litig.*,
    2005 WL 940898 (E.D. Wash. Mar. 31, 2005) ...................................................15

*NECA-IBEW Pension Trust Fund* v. *Bank of Am. Corp.*,
    2011 WL 6844456 (S.D.N.Y. Dec. 29, 2011) (Pitman, M.J.) ...................9, 10, 11

*Novak* v. *Kasaks*,
    1996 WL 467534 (S.D.N.Y. Aug. 16, 1996) (Schwartz, J.) ...................................8

*Pension Trust Fund for Operating Engineers* v. *Assisted Living Concepts, Inc.*,
    2013 WL 1878943 (E.D. Wis. May 3, 2013) ................................................15, 17

*Podany* v. *Robertson Stephens, Inc.*,
    350 F. Supp. 2d 375 (S.D.N.Y. 2004) (Lynch, J.) .................................................8

*Police & Fire Ret. Sys. of Detroit* v. *IndyMac MBS, Inc.*,
    2013 WL 3214588 (2d Cir. June 27, 2013) .......................................................4, 24

*Rampersad* v. *Deutsche Bank Secs. Inc.*,
    381 F. Supp. 2d 131 (S.D.N.Y. 2003) (Swain, J.) ...............................................10

*In re Refco, Inc. Sec. Litig.*,
    2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006) (Lynch, J.) ................................ passim

*In re Royal Ahold N.V. Securities & ERISA Litig.*,
    220 F.R.D. 246 (D. Md. 2004) ............................................................................18

*Seippel* v. *Sidley, Austin, Brown & Wood LLP*,
  2005 WL 388561 (S.D.N.Y. Feb. 17, 2005) (Scheindlin, J.) .................................................. 15

*SG Cowen Sec. Corp.* v. *U.S. Dist. Ct.*,
  189 F.3d 909 (9th Cir. 1999) ........................................................................................................ 22

*In re Smith Barney Transfer Agent Litig.*,
  2006 WL 1738078 (S.D.N.Y. June 26, 2006) (Pauley, J.) ...................................... 9, 10, 11, 14

*Thomas* v. *Metro. Life Ins. Co.*,
  540 F. Supp. 2d 1212 (W.D. Okla. 2008) ................................................................................ 21, 22

*Union Cent. Life Ins. Co.* v. *Ally Fin., Inc.*,
  2012 WL 3553052 (S.D.N.Y. Aug. 17, 2012) (Francis, M.J.) ................................................... 8

*Vacold LLC* v. *Cerami*,
  2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) (Schwartz, J.) ................................................ 21, 23

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 129 (S.D.N.Y. 2003) (Berman, J.) ....................................................... 8, 10, 22

*Waldman* v. *Wachovia Corp.*,
  2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) (Scheindlin, J.) ..................................................... 12

*Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds* v. *Sadia
  S.A.*, 2009 WL 1285845 (S.D.N.Y. May 8, 2009) (Scheindlin, J.) ......................................... 15

*In re Worldcom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002) (Cote, J.) ........................................................ 14, 15, 16, 17

STATUTES

28 U.S.C. § 1658(b) ................................................................................................................................ 24

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ................................... passim

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j ................................ passim

Section 20A of the Securities Exchange Act of 1934, 15 U.S.C. § 78t-1 .............................. passim

Defendants S.A.C. Capital Advisors, L.P., S.A.C. Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, S.A.C. Select Fund, LLC, and Steven A. Cohen (together, the "SAC Defendants") respectfully submit this memorandum of law in opposition to plaintiffs' motion to lift the discovery stay mandated by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(3)(B) (the "PSLRA"), dated June 24, 2013.[1]

## I.      PRELIMINARY STATEMENT

Plaintiffs' motion to lift the PSLRA stay of discovery is contrary to the plain language of the statute, and to the decisions of the courts in this District and elsewhere that have considered such motions in substantially similar circumstances and rejected the very same arguments on which plaintiffs rely.

Plaintiffs seek discovery, including broad "Merits Discovery" (Pl. Br. 2, 15), before lead plaintiff motions are due, lead plaintiffs have been appointed, plaintiffs have filed the consolidated complaint directed by the Court, or defendants have moved to dismiss, and thus before any determination that plaintiffs can state a legally sufficient claim.  But the PSLRA requires that "*all discovery* and other proceedings *shall be stayed* during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery *is necessary to preserve evidence or to prevent undue prejudice* to that party."  15 U.S.C. § 78u-4(b)(3)(B) (emphases added).  As the courts have repeatedly held, it is irrelevant under the statute whether, as plaintiffs urge, discovery would impose only a limited burden on defendants.  Congress has determined that the appropriate inquiry is whether plaintiffs would be

---

[1]     In submitting this memorandum, the SAC Defendants, particularly those that are offshore entities, do not consent to the court's jurisdiction or waive any of their defenses in this action.  Defendants also do not concede that any of the named SAC Defendants are proper defendants in this action; for example, one of the SAC Defendants, S.A.C. Capital Advisors, L.P., did not even exist at the time of the conduct alleged in the complaint.

unduly prejudiced by the stay, not whether defendants would be burdened by lifting it.  While plaintiffs rely heavily on comments made by Judge Marrero at a conference asking whether a purported lack of burden would justify lifting the stay here, Judge Marrero did not have the benefit of briefing on this issue—which had been orally raised by plaintiffs without prior notice to defendants—and made clear that he would not "prejudge the issue."  And far from prejudging the issue, when plaintiffs submitted their pre-motion letter in anticipation of this motion, Judge Marrero referred the matter to Your Honor so that the legal issues it raised could be fully considered.

Plaintiffs' arguments for lifting the statutory stay are without merit.  Courts have repeatedly rejected generic assertions by plaintiffs, such as those here, that the stay will impede their "litigation or settlement strategy" (Pl. Br. 20-21), or that unless the stay is lifted they will be "the only parties without access to the relevant documents" (*id.* at 21-23).  This is because "[t]he discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently."  *In re Refco, Inc. Sec. Litig.*, 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006) (Lynch, J.).  Plaintiffs' speculation that SAC "may" become a family office, and that "if that occurs," "collection could be . . . difficult" (Pl. Br. 24) also falls well short of satisfying their statutory burden to show that discovery "is necessary . . . to prevent undue prejudice," as numerous cases in this District illustrate.  (Plaintiffs do not contend that discovery is necessary to preserve evidence, the other narrow ground for lifting the stay that the statute permits.)  Finally, even if plaintiffs could show undue prejudice—which they cannot—courts have repeatedly held that sweeping demands for *all* documents contained in a prior production, such as plaintiffs seek here, is far from the "particularized discovery" the statute permits even when that showing is

made.  Indeed, plaintiffs' request for "Merits Discovery" is not even limited to the Elan stock at

issue in this case, and seeks documents collected by the SEC and the U.S. Attorney's Office that

even the SAC Defendants do not have, because they were produced only to Martoma.

Plaintiffs' alternative request for the SAC Defendants' trading records, which

they claim are necessary for their anticipated lead plaintiff motion, suffers from the same and

other defects.  While plaintiffs quote the applicable clause of the PSLRA governing discovery in

connection with lead plaintiff appointments (Pl. Br. 18-19), they ignore the express requirement

of that clause that "discovery relating to whether a member or members of the purported plaintiff

class is the most adequate plaintiff may be conducted by a plaintiff *only if* the plaintiff ***first***

***demonstrates*** a reasonable basis for a finding that the presumptively most adequate plaintiff is

incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iv) (emphases

added).  Here, plaintiffs have made no such showing, and, because the statutory period for

potential lead plaintiffs to seek appointment has not expired yet, they cannot do so.  Nor can

plaintiffs establish undue prejudice if they are not permitted pre-motion discovery of trading

records.  Plaintiffs contend that they need such discovery to determine which if any of the

plaintiffs contemporaneously traded with defendants (a necessary element of their claims).  But,

as numerous courts have held, that argument is contrary to Congress's express determination that

a plaintiff in a securities action must establish a legally sufficient claim *before* being entitled to

discovery; plaintiffs cannot use the discovery process to determine whether they have a claim.

Finally, plaintiffs' request for trading records is overbroad because the vast

majority of the claims for which they seek such records are time-barred.  Plaintiffs assert claims

based on alleged insider trading violations that supposedly took place during an "Insider Buying

Class Period" of July 1, 2006 to July 18, 2008, but those claims were first asserted on May 13,

2013.  Under the applicable five-year statutes of repose, all claims based on purported violations prior to May 13, 2008—*i.e.*, all but two months of this two-year period—are time-barred. Indeed, just last week, the Second Circuit reemphasized that statutes of repose are strictly enforced.  *Police & Fire Ret. Sys. of Detroit* v. *IndyMac MBS, Inc.*, 2013 WL 3214588 (2d Cir. June 27, 2013).

For these and other reasons discussed below, plaintiffs' motion to lift the PSLRA stay should be denied.

## II.    PROCEDURAL HISTORY

### A.    Procedural History Of This Action

On November 20, 2012, the Securities and Exchange Commission ("SEC") filed a complaint in a related action (the "SEC Action") alleging that, in July 2008, Dr. Sidney Gilman passed material non-public information to Mathew Martoma concerning drug trials for bapineuzumab, a joint venture between Elan Corporation, plc ("Elan") and Wyeth.  Complaint, ECF No. 1, 12-cv-8466 (S.D.N.Y. Nov. 20, 2012).  The complaint named as defendants Dr. Gilman, Mr. Martoma, and Mr. Martoma's employer, CR Intrinsic Investors LLC ("CR Intrinsic").  Against the latter two defendants, the SEC's complaint sought, among other relief, disgorgement of approximately $220 million with respect to allegedly improper gains from trading in American Depository Receipts of Elan ("Elan ADRs") between July 21, 2008 and July 29, 2008.  *See id.* ¶¶ 44-54.

On December 21, 2012, plaintiffs filed the present action ("*Kaplan*"), relying on factual allegations copied from the SEC's complaint to assert claims under Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act").  *See* Pl. Br. 7.  Plaintiffs named the same defendants as the SEC Action, together with other individuals and entities related to CR Intrinsic.  Plaintiffs purported to represent investors who purchased Elan ADRs in

4

the eight-day period between July 21, 2008 and July 29, 2008 (the "Initial Class Period"), and they sought to recover the $220 million that was the subject of the SEC Action. (Compl. ¶¶ 1, 2, 116.)[2] Following the PSLRA's 60-day public notice period, plaintiffs were appointed lead plaintiffs, and plaintiffs' counsel were appointed lead counsel, on April 15, 2013. ECF No. 45.

Meanwhile, SAC and the SEC agreed to settle the SEC Action on terms including full disgorgement of the allegedly improper gains claimed by the SEC with respect to the July 2008 trading in Elan ADRs, together with interest. On April 15, 2013, the Court conditionally approved that settlement. *See SEC* v. *CR Intrinsic Investors, LLC*, 2013 WL 1614999 (S.D.N.Y. Apr. 15, 2013).

Shortly after the announcement of the SEC settlement, on May 13, 2013, plaintiffs filed a Consolidated Complaint, asserting sweeping new claims and radically extending the Class Period. (Consol. Compl. ¶ 2.) In particular, plaintiffs purported to discover additional liability based on transactions in the two years before the Initial Class Period, together with other alleged liabilities, none of which were alleged either by the SEC or by plaintiffs themselves before the SEC settlement threatened to moot their case. Because plaintiffs "add[ed] more than two years . . . to the original class period . . . and assert[ed] new claims," Decision and Order at 2, ECF No. 60, the Court directed plaintiffs to republish a PSLRA notice in order to provide other potential lead plaintiffs with fair notice of the claims, restarting the PSLRA's 60-day period for motions to appoint lead plaintiff and lead counsel. *Id.* Motions to appoint *Kaplan* lead plaintiff and lead counsel are now due on July 23, 2013.

On May 9, 2013, a related action—*Birmingham Retirement & Relief System* v. *S.A.C. Capital Advisors, LLC*, No. 13 Civ. 2459 (S.D.N.Y.) ("*Birmingham*"), brought on behalf

---

[2]   Citations to Compl. refer to the Complaint dated December 21, 2012 (ECF No. 1). Citations to Consol. Compl. refer to the Consolidated Complaint dated May 13, 2013 (ECF No. 57). Unless noted otherwise, citations to electronically filed documents refer to documents filed on the docket in this action (12-cv-9350).

of a putative class of persons who sold Wyeth common stock between July 21 and July 29, 2008—was consolidated for all pre-trial purposes with this action.  ECF No. 56.  On May 21, 2013, the Court directed the *Birmingham* and *Kaplan* plaintiffs to file a "consolidated amended complaint covering both actions" in order to allow a "motion to dismiss addressing issues common to both actions."  Order at 2, ECF No. 58.  That consolidated amended complaint has not yet been filed, and will not be filed until after lead plaintiffs are appointed in *Kaplan*. Birmingham Retirement and Relief System ("Birmingham") was appointed lead plaintiff, and its counsel were appointed lead counsel, in *Birmingham* on June 17, 2013.  ECF No. 66.

### B.    Plaintiffs' Motion To Lift The PSLRA Stay

The SAC Defendants first learned of the *Kaplan* plaintiffs' intention to move to lift the stay of discovery mandated by Congress when, at a conference on May 24, 2013 in the SEC Action (an action to which the *Kaplan* plaintiffs are not party), *Kaplan* plaintiffs' counsel appeared and made an oral request that the stay be lifted to allow discovery of certain trading records of the SAC Defendants.  Plaintiffs' only prior communication on that issue had been their contrary representation to the Court a few weeks earlier that "[t]he PSLRA discovery stay bars any progress in this litigation until motions to dismiss are decided."  Letter from E. Wohl to Judge Marrero at 2, Apr. 29, 2013, ECF No. 53.

At the conference, the SAC Defendants responded to plaintiffs' request to lift the PSLRA stay by pointing out that the issue had not been properly raised, and that it should be discussed further by the parties and then, if necessary, formally presented to the Court in the appropriate manner so that both parties could present arguments on the issue.  *See* Wohl Declaration, Ex. B, at 11:19-13:10.  Judge Marrero agreed, and emphasized that:  "I am not going to prejudge the issue."  *Id.* at 18:3-4.  Judge Marrero asked whether this case involved a "different situation" and "different context" from other cases in which courts had refused to lift

the PSLRA stay, because the discovery at issue (production from the SEC) would not burden the defendants. *Id.* at 16:9-19, 17:25-18:2. In fact, as we show below, in numerous cases involving exactly the same situation as this case, courts have refused to lift the stay even when that would not burden the defendant, because burden is irrelevant to whether a plaintiff has established the threshold statutory requirement of undue prejudice.

After discussions among the parties, on June 17, 2013, plaintiffs submitted a pre-motion letter in anticipation of a motion to lift the PSLRA stay. ECF No. 68. The following day, Judge Marrero referred the matter to Your Honor for consideration. *Id.* The referral makes clear that, consistent with his statements at the conference, Judge Marrero had not determined the merits of plaintiffs' motion—if he had, the referral would have been unnecessary—and intended that the motion be given full and independent consideration by Your Honor.

On June 24, 2013, the *Kaplan* plaintiffs filed their motion to lift the PSLRA stay. The *Kaplan* plaintiffs sought (a) records showing the SAC Defendants' trading in Elan ADRs from July 1, 2006 through July 29, 2008 (the "Trading Records"), and (b) "documents produced by the [SEC] and by the U.S. Attorney's Office ('USAO') . . . to Defendants" (the "Merits Discovery," *see* Pl. Br. 2), although Martoma is the only defendant who has received any relevant productions from the SEC and the USAO and therefore the only party who could provide them to plaintiffs. While the SAC Defendants (and Martoma) maintained that plaintiffs' request for an expedited briefing schedule was unwarranted—particularly for plaintiffs' request for "Merits Discovery"—they nevertheless agreed to the expedited schedule in the interests of cooperation and presenting these issues to the Court as efficiently as possible.

### III.   ARGUMENT

The discovery stay contained in the PSLRA applies "[i]n any private action arising under [the Exchange Act]." 15 U.S.C. § 78u-4(b)(3)(B). The stay mandates that "all

discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." *Id.* "[C]ourts have broadly construed the scope of the PSLRA stay provision." *Union Cent. Life Ins. Co.* v. *Ally Fin., Inc.*, 2012 WL 3553052, at *2 (S.D.N.Y. Aug. 17, 2012) (Francis, M.J.) (citation omitted). Thus, "unless exceptional circumstances are present, discovery in securities actions is permitted only after the court has sustained the legal sufficiency of the complaint." *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003) (Berman, J.) (citation omitted); *see also Podany* v. *Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (Lynch, J.) (the PSLRA creates "a strong presumption that *no* discovery should take place until a court has affirmatively decided that a complaint *does* state a claim under the securities laws, by denying a motion to dismiss"); *Novak* v. *Kasaks*, 1996 WL 467534, at *1 (S.D.N.Y. Aug. 16, 1996) (Schwartz, J.) ("This stay provision gives effect to Congress' intent that 'discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint.'" (quoting Senate Comm. on Banking, Housing, & Urban Affairs, Private Securities Litigation Reform Act of 1995, S. Rep. No. 98, 104th Cong., 1st Sess. 14 (1995))).

Plaintiffs do not dispute that no discovery is permitted unless the Court lifts the PSLRA stay. *See, e.g.*, Pl. Br. 2, 14-15; *see also In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 681 (D. Md. 2000) ("Until the opportunity to test the sufficiency of the complaint has passed, the congressional intent is clear—no discovery should commence.").

The statutory prohibition of discovery can be rebutted only if a plaintiff shows that lifting the stay is necessary to avoid undue prejudice (or to preserve evidence, although, as noted, plaintiffs do not seek to justify discovery on that ground). 15 U.S.C. § 78u-4(b)(3)(B)

(discovery "shall be stayed" "unless the court finds" it "necessary" to prevent undue prejudice). "Undue prejudice . . . means improper or unfair treatment amounting to something less than irreparable harm." *Kuriakose* v. *Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 488 (S.D.N.Y. 2009) (Keenan, J.) (citation omitted).

The contention that defendants would not be burdened by discovery (*see* Pl. Br. 20-22) is "irrelevant" to the consideration of undue prejudice, because "[t]here is no exception to the discovery stay for cases in which discovery would not burden the defendant." *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006) (Pauley, J.); *see id.* ("Plaintiffs . . . claim that because Defendants have previously produced much of the requested material to the SEC, Defendants could easily produce the same material to Plaintiffs. This consideration is irrelevant."); *Kuriakose*, 674 F. Supp. 2d at 487 ("Counter to Plaintiffs' contention, even where the goals of the PSLRA are not frustrated and a plaintiffs' discovery request is limited to documents already produced to government regulators, courts have refused to lift the discovery stay if the narrow statutory exceptions . . . have not been met" (quoting *380544 Canada, Inc.* v. *Aspen Tech., Inc.*, 2007 WL 2049738, at *2 (S.D.N.Y. July 18, 2007) (Keenan, J.))); *Refco*, 2006 WL 2337212, at *2 ("[T]he mere fact that documents have been provided to a third party does not entitle plaintiffs to a modification of the stay to obtain those documents."); *accord NECA-IBEW Pension Trust Fund* v. *Bank of Am. Corp.*, 2011 WL 6844456, at *2 (S.D.N.Y. Dec. 29, 2011) (Pitman, M.J.) (same); *Brigham* v. *Royal Bank of Canada*, 2009 WL 935684, at *2 (S.D.N.Y. Apr. 7, 2009) (Pauley, J.) (similar).

### A.    Plaintiffs' Request That The Court Lift The PSLRA Stay And Order "Merits Discovery" Should Be Denied

Plaintiffs argue that they will suffer undue prejudice if they do not receive the SEC and USAO productions (the "Merits Discovery") at the present time because (i) there is a

related regulatory settlement, (ii) this is "complex, multiparty litigation" and (iii) the SAC Defendants supposedly "fac[e] insolvency." Pl. Br. 20-24. Those reasons have been rejected as insufficient in numerous other cases, and they should be rejected here. Further, even if plaintiffs had established undue prejudice, their demand for all documents in the requested productions should be denied because it does not seek "particularized discovery."

### 1. Plaintiffs Have Failed To Establish The Undue Prejudice Required To Conduct Particularized Discovery

Courts in this District, applying the PSLRA's mandate, have repeatedly rejected arguments by securities plaintiffs that they would be unduly prejudiced if they did not receive productions made in related cases or regulatory investigations. *See, e.g.*, *NECA*, 2011 WL 6844456; *Kuriakose*, 674 F. Supp. 2d at 487 ("courts do not routinely lift the PSLRA discovery stay when the requested documents have already been provided to government investigators"); *Brigham*, 2009 WL 935684; *Aspen Tech.*, 2007 WL 2049738, at *2 ("the mere fact that . . . the documents at issue already have been provided to the SEC and USAO is not sufficient to warrant lifting the stay"); *Refco*, 2006 WL 2337212, at *2 ("[P]laintiffs' inability to make informed decisions due to a lack of access to documents does not rise to the level of undue prejudice. . . . '[D]elay is an inherent part of every stay of discovery required by the PSLRA.'" (internal citation omitted)); *Smith Barney*, 2006 WL 1738078; *Vivendi*, 381 F. Supp. 2d 129; *Rampersad v. Deutsche Bank Secs. Inc.*, 381 F. Supp. 2d 131, 133-34 (S.D.N.Y. 2003) (Swain, J.) (rejecting plaintiffs' contention that "the PSLRA stay of discovery does not apply when the information sought has already been provided to a government agency"); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2003 U.S. Dist. LEXIS 12846 (S.D.N.Y. July 21, 2003) (Kram, J.).

(a)      There Is No Undue Prejudice Because Of The SEC Settlement

Plaintiffs argue that the court should not follow the above cases because, in this case, "a regulatory settlement has been reached and the settlement will affect the private securities plaintiffs' litigation or settlement strategy." Pl. Br. 20.  But that argument provides no principled basis for disregarding these cases or the sound policy underlying them.  Indeed, plaintiffs sought discovery following regulatory settlements in a number of those cases also.  *See, e.g.*, *Brigham*, 2009 WL 935684, at *2 (refusing to lift PSLRA stay to allow discovery of SEC production following the defendant's settlement with the SEC, because "[t]here is no risk that [plaintiff] will be left at a disadvantage compared to the [SEC] or other plaintiffs"); *Smith Barney*, 2006 WL 1738078, at *1 (rejecting request to lift stay to allow discovery of documents produced to the SEC in a settled action "based on similar facts to those alleged here").

Plaintiffs advance the general assertion that they should "be allowed to fully evaluate their claims and strategy in light of the SEC settlement." Pl. Br. 21.  But the argument that plaintiffs need documents "to plan their litigation strategy" has been repeatedly rejected as a basis for lifting the discovery stay, because it "can be used in virtually every case subject to the PSLRA and, if accepted, would create an exception that would swallow the PSLRA's automatic discovery stay." *NECA*, 2011 WL 6844456, at *3.  Indeed, the law is clear that undue prejudice does ***not*** "arise from a delay in the gathering of evidence or the development of settlement or litigation postures," *Smith Barney*, 2006 WL 1738078, at *2, because "delay is an inherent part of every stay of discovery required by the PSLRA."  *In re Initial Pub. Offering Sec. Litig.,* 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002) (Scheindlin, J.); *see, e.g.*, *NECA*, 2011 WL 6844456, at *3; *Kuriakose*, 674 F. Supp. 2d at 489 ("[T]he mere fact that the discovery stay will prevent Plaintiffs from collecting evidence to assist in potential settlement negotiations or plan their litigation strategy does not constitute undue prejudice."  (citation omitted)); *Refco*, 2006 WL

2337212, at *2 ("Plaintiffs' inability to gather evidence for settlement negotiations or to plan a litigation strategy is not evidence of undue prejudice.").  Here, plaintiffs never identify *any* specific prejudice that they might suffer as a result of the settlement with the SEC by not receiving documents.  And they certainly do not identify any such prejudice that they will suffer by not receiving those documents *now*, rather than if and when their complaint survives a motion to dismiss.  While discovery might expedite the progress of their case, Congress's determination is that, absent specific undue prejudice, plaintiffs must demonstrate a legally viable claim before being entitled to any discovery.

Plaintiffs' argument is not even supported by the cases they cite in which the PSLRA stay was lifted, *Waldman* v. *Wachovia Corp.*, 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) (Scheindlin, J.) and *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178 (S.D.N.Y. 2004) (Sweet, J.).  In both cases, discovery was only ordered to allow plaintiffs to investigate, in light of related regulatory settlements, whether to continue their own actions.  *See Waldman*, 2009 WL 86763, at *2 (lifting stay so plaintiffs could determine "whether to continue with this case"); *LaBranche*, 333 F. Supp. 2d at 184 (lifting stay so plaintiffs could determine "whether or not to seek an early settlement to benefit the class without further expense"); *see also Kuriakose*, 674 F. Supp. 2d at 489 (noting that *LaBranche* involved "unique circumstances").[3]  Other cases have taken the opposite approach, holding that plaintiffs do not suffer undue prejudice even if they are deprived of documents when deciding whether or not to continue litigation.  *See, e.g.*, *Brigham*, 2009 WL 935684, at *2 ("While [plaintiff's] decision about whether to continue this litigation may be made easier by access to the documents produced to the Regulators, 'plaintiff's inability to plan a

---

[3]   In fact, the *LaBranche* court never required defendants to produce even a single document—defendants moved for reconsideration of the decision lifting the PSLRA stay and plaintiffs moved to compel, and the court effectively granted defendants' motion by deferring its final decision until ruling on the motion to dismiss, well over a year later. *In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 335-36 (S.D.N.Y. 2005).

litigation strategy is not evidence of undue prejudice'" (citation omitted)).  Even under *Waldman* and *LaBranche*, though, plaintiffs' request should be denied because they do not seek discovery to consider whether to pursue this action.  To the contrary, they have made clear to the Court that they "absolutely intend to pursue [this action] to the ends of the earth" (Tr. of 3/28/13 Hearing at 29:8-9, Hurwitz Declaration Ex. 1), and that legal issues "will need to be decided by the Court regardless of whether the SEC settlement is ultimately consummated" because "no issue in this case would be 'narrowed' or 'simplified' at all by waiting until the status of the SEC settlement is finally determined."  Letter from E. Wohl to Judge Marrero at 1-2, Apr. 29, 2013, ECF No. 53.  Rather than reconsidering whether to proceed with this action in light of the SEC settlement, plaintiffs instead filed a consolidated complaint on May 13 attempting to assert claims for alleged gains that had not been the subject of that settlement.

> (b)  There Is No Undue Prejudice Because This Action Is "Complex, Multiparty Litigation"

Plaintiffs also contend that they are "suffer[ing] the prejudice of being the only parties without access to the relevant documents while other litigation advances and settlement discussions occur."  Pl. Br. 23; *see also id.* at 21.  That contention just identifies the natural consequence of the PSLRA stay and labels it prejudice.  As courts have repeatedly held, however, that is not enough.

Though plaintiffs claim they are "the only parties without access" to Merits Discovery, that is not true.  In fact, plaintiffs' request for "Merits Discovery" (all documents produced by the USAO and SEC to any defendant) is so broad that even the SAC Defendants do not have that discovery, because they have never received *any* productions from the USAO or the SEC related to the allegations in this action (only Martoma has).  The PSLRA stay also applies equally to the other private plaintiff in these actions, lead plaintiff in *Birmingham*.  The

13

only other plaintiff in a related action, the SEC, has already submitted a settlement to the Court; plaintiffs will be affected by that settlement whether or not they receive discovery now.  Indeed, the only purportedly prejudicial development plaintiffs can muster is "a possible deferred prosecution agreement" with the SAC Defendants, but plaintiffs cannot explain how such an agreement would prejudice them in the absence of discovery.  Pl. Br. 23.

   Moreover, courts have repeatedly held that there is no undue prejudice merely because private civil plaintiffs are deprived of discovery available to parties in other proceedings. As Judge Lynch explained in *Refco*:

> Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this action has been stayed.  That stay does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions.  ***The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions. This Court may not second-guess that judgment.***

2006 WL 2337212, at \*2 (emphasis added); *see also Kuriakose*, 674 F. Supp. 2d at 489.

   Plaintiffs rely principally on two cases, but neither supports their position.  They cite *In re Worldcom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) (Cote, J.), suggesting that the stay was lifted in that case because there was a "rapidly shifting landscape" and plaintiffs were "the only major interested party" without documents. Pl. Br. 21.  In *Worldcom*, however, the critical fact driving the court's decision was that the movant was competing with other plaintiffs for a limited pool of settlement funds.  Thus, unless the stay was lifted, the movant would be prejudiced because it would "face[] the very real risk that it will be left to pursue its action against defendants" from which it could not recover.  *Id.* at 305-06.  Indeed, in lifting the

stay, Judge Cote herself emphasized that the decision was based on "the unique circumstances of this case." *Id.*; *see also Smith Barney*, 2006 WL 1738078, at *2 (noting that *Worldcom* involved an "exceptional" and "unique set of circumstances"). As discussed below, *see infra* at 16-18, plaintiffs identify no facts even remotely suggesting that such a situation is present here.

Plaintiffs also cite *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds* v. *Sadia S.A.*, 2009 WL 1285845 (S.D.N.Y. May 8, 2009) (Scheindlin, J.), but that case does not support them either. In *Sadia*, an investigation report had been disclosed in a parallel securities action in Brazil, and the stay placed New York litigants at a unique "disadvantage[] vis-à-vis Brazilian litigants," because the competing Brazilian plaintiffs could progress their competing claims unaffected by the stay while the New York plaintiffs could not. *Id.* at *1. No such circumstances are present here, particularly because the parallel action by Wyeth investors has also been filed in New York and is also subject to the PSLRA stay. Further, in *Sadia*, Judge Scheindlin only lifted the PSLRA stay because plaintiffs had an "unusual need for an early review of crucial records." *Id.* at *1.[4] In contrast, as discussed above, plaintiffs have failed to identify any specific need for receiving the "Merits Discovery" at this time.[5]

---

[4]   Judge Scheindlin also balanced plaintiff's "unusual need" for the document sought with the PSLRA's mandate by directing that "the report cannot be used—as plaintiffs envision—to buttress their opposition to defendants' motion to dismiss" because "[t]his would be an improper end run around the statutory stay of discovery." *Id.*; *see also id.* at *2 (directing that defendants produce the report "the day *after* plaintiffs respond to defendants' motion to dismiss," and forbidding plaintiffs from using it in any further responses to a motion to dismiss).

[5]   Plaintiffs cite a number of other cases in support of this point, all but one from other Districts (Pl. Br. 22-23), but none of those cases supports them. *See, e.g., Seippel* v. *Sidley, Austin, Brown & Wood LLP*, 2005 WL 388561, at *3 (S.D.N.Y. Feb. 17, 2005) (Scheindlin, J.) (lifting stay for federal claims where related state law claims had already survived a motion to dismiss); *Pension Trust Fund for Operating Engineers* v. *Assisted Living Concepts, Inc.*, 2013 WL 1878943 (E.D. Wis. May 3, 2013) (lifting stay where defendant was "in the midst of being acquired by a private equity group"); *In re Metro. Sec. Litig.*, 2005 WL 940898 (E.D. Wash. Mar. 31, 2005) (lifting stay to allow discovery from entity that, like Worldcom, was actually bankrupt); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) (same).

(c)   There Is No Undue Prejudice Because Of Plaintiffs' Speculative
and Unsupported Allegations That SAC "Fac[es] Insolvency"

Finally, plaintiffs contend that the stay should be lifted because SAC "fac[es]
insolvency or other major corporate changes." Pl. Br. 24. These arguments are pure conjecture.
Plaintiffs rely on a single news article suggesting that SAC "may" restructure and become a
"family office" (Pl. Br. 23-24), although they identify no facts showing that these events will
occur or that, if they did, plaintiffs would be unable to collect any judgment. The same article
states that SAC has assets of *$15 billion* (Wohl. Ex. D), and plaintiffs state that Mr. Cohen's
"personal net worth [is] estimated at $8.8 billion." Pl. Br. 4. Instead, plaintiffs express the
concern that Mr. Cohen may not be liable to them. Pl. Br. 24. That concern is well placed—
nowhere in plaintiffs' six-page recitation of factual allegations (Pl. Br. 2-6) or in their 332-
paragraph complaint do plaintiffs allege that Martoma actually conveyed the information that he
supposedly obtained from Gilman to Cohen, or that Cohen had any reason to know that Martoma
allegedly had such information. But plaintiffs do not even purport to explain how a restructuring
of SAC would prevent them from enforcing a judgment against that entity, if they could obtain
one; instead, they simply assert that enforcing a judgment "could be difficult."[6]

As made clear in both *Worldcom* and numerous other cases in this District—
including many of the same cases rejecting requests for productions in related proceedings—
mere speculation that future events *may* make it difficult for plaintiffs to recover a judgment are

---

[6]   Further, if plaintiffs have no claim against Cohen, then they have no claim against the SAC Defendants either.
In that event, the SAC Defendants could only be liable for alleged insider trading violations committed by
Martoma, but Section 20A(b)(3) provides that an employer cannot be liable for violations of an employee under
the principle of respondeat superior. Rather, an entity can only be liable if the employer is liable as a
controlling person of the employee under Section 20(a), but that would require plaintiffs to demonstrate that a
high-level officer of the entity (and Cohen is the only such officer identified) culpably participated in the
violation, *i.e.*, acted knowingly or recklessly. *See McIntire* v. *China Midexpress Holds., Inc.*, 2013 WL 752954,
at *11 (S.D.N.Y. Feb. 28, 2013) (Marrero, J.) (holding that a plaintiff pleading a control person claim under
Section 20(a) must "allege, at a minimum, particularized facts of the controlling person's conscious
misbehavior or recklessness"). Potentially fatal issues like these explain why Congress decided that discovery
is premature before a private securities action survives a motion to dismiss.

insufficient as a matter of law to establish undue prejudice. *See Refco*, 2006 WL 2337212, at *3 ("Mere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is 'necessary . . . to prevent undue prejudice'" (quoting the PSLRA)). In *Refco*, the court reasoned that although "it might come to pass that, at some future date, plaintiffs' lack of access to discovery will . . . result[] in some risk that the defendant might not have sufficient funds to satisfy plaintiffs' claims . . . that situation is not now before the Court." 2006 WL 2337212, at *3. Similarly, in *Kuriakose*, the delay caused by the PSLRA stay created no undue prejudice, even though the defendant had been placed in federal conservatorship, had received "several bailouts from the Treasury," and "[t]here may be doubts regarding [its] ongoing viability." 674 F. Supp. 2d at 489-90. *See also Aspen Tech.*, 2007 WL 2049738, at *3 ("[T]he mere possibility that Plaintiffs could be prejudiced if settlement talks ensue in the future between the Individual Defendants and the SEC is not enough for the Court to find that Plaintiffs will suffer undue prejudice as a result of the discovery stay."); *AOL*, 2003 U.S. Dist. LEXIS 12846, at *6 (argument that an impending settlement could cause insolvency was "premature").

Plaintiffs' cases do not suggest otherwise. Plaintiffs do not cite a single case from this District other than *Worldcom* in support of this argument, despite the numerous cases that are directly on point. *See supra.* As discussed above, *Worldcom* concerned "unique circumstances" that are not present in this case, including "the very real risk" that other plaintiffs would deplete or exhaust a limited pool of settlement funds. 234 F. Supp. 2d at 305-06.

The out-of-District cases that plaintiffs cite do not support their position either. For example, in *Pension Trust Fund for Operating Engineers* v. *Assisted Living Concepts, Inc.*, 2013 WL 1878943, at *3 (E.D. Wis. May 3, 2013), where the court described the undue prejudice inquiry as a "difficult question," the defendant was "in the midst of being acquired by a

private equity group," which had already entered into an agreement to acquire the defendant. *Id.* at *2-3; *see also* Plaintiff's Brief at 4 & n.3, 12-14, ECF No. 38-1, 12-cv-884 (Mar. 28, 2013) (describing the acquisition agreement). Likewise, in *In re Royal Ahold N.V. Securities & ERISA Litigation*, 220 F.R.D. 246 (D. Md. 2004), the defendant was "undertaking a wide-ranging corporate reorganization" and had "divested itself of key subsidiaries, and it plan[ned] to divest itself of more—including some . . . that allegedly played central roles in the company's purported fraud." *Id.* at 251. No such facts are or could be shown here.

### 2.   Plaintiffs' Request Should Also Be Denied Because The "Merits Discovery" Sought Is Not "Particularized Discovery"

Finally, even if plaintiffs were able to establish undue prejudice, they would only be entitled to "particularized discovery." 15 U.S.C. § 78u-4(b)(3)(B). Yet, in disregard of that restriction, plaintiffs have requested *all* "documents produced by the SEC and USAO to Defendants" (Pl. Br. 15; *see also id.* at 2), which they candidly characterize as "Merits Discovery." This request is not limited to documents relating to Elan or trading in Elan, and it is not even limited to documents produced in connection with the SEC Action or the government's criminal proceeding against Martoma. Instead, it simply seeks all documents that the SEC and the USAO have ever produced to any defendant. Plaintiffs therefore seek documents in excess of those to which even the SAC Defendants have access. Plaintiffs have made clear that they will refuse to accept *any* restriction on the scope of the productions sought—for example, they have not sought any specific categories of documents in the productions or proposed any search terms to be applied to the productions. That is not a request for "particularized discovery."

Courts have repeatedly rejected broad requests for entire productions where those requests were not limited to specific documents or categories of documents relevant to the claims asserted by plaintiffs. *See, e.g.*, *Faulkner* v. *Verizon Commc'ns*, 156 F. Supp. 2d 384, 404

(S.D.N.Y. 2001) (Conner, J.) (rejecting request for "all documents, testimony and transcripts" produced by another party, totaling over 45,000 pages, because it was not "particularized"); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38-39 (D.D.C. 2005) (rejecting request for documents produced in government and regulatory investigations, which were "voluminous and possibly irrelevant to the claims," because it "demonstrate[d] a lack of particularity inconsistent with satisfying the burden required to justify a lift of the stay"); *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1007 (C.D. Cal. 2007) (rejecting request for documents produced to state government in pending litigation on the ground that it was not particularized, because "[p]laintiffs have not identified specific categories or types of documents sought or how the documents sought will be relevant to the claims Plaintiffs intend to assert").

**B.    Plaintiffs' Request That The Court Lift The PSLRA Stay And Order Discovery Of Trading Records Should Be Denied**

Plaintiffs also seek records of the SAC Defendants' trading in Elan from July 1, 2006 to July 18, 2008.  Plaintiffs assert that these records will be relevant to the Court's consideration of the adequacy of potential lead plaintiffs because, they contend, the records will show which of them traded contemporaneously with defendants, as required to assert insider trading claims under Sections 10(b) and 20A of the Exchange Act.  Pl. Br. 16-17.  Plaintiffs' request for those documents should be rejected, because plaintiffs do not even attempt to meet the burden expressly set by the PSLRA for discovery in connection with the adequacy of lead plaintiffs and have failed to demonstrate undue prejudice, and because their request is overbroad.

**1.    Plaintiffs Have Failed To Establish The PSLRA Requirements For Discovery In Connection With Lead Plaintiff Adequacy**

Plaintiffs ignore the express requirements of the governing section of the PSLRA, which provides that "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff ***only if*** the plaintiff

*first demonstrates* a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv) (emphases added). This provision means exactly what it says: "discovery is available 'only if' such reasonable basis is demonstrated by another plaintiff." *In re Kit Digital, Inc. Sec. Litig.*, 2013 WL 1200324, at *7 (S.D.N.Y. Mar. 13, 2013) (Marrero, J.); *see id.* (where a plaintiff seeking lead plaintiff appointment failed to demonstrate such a reasonable basis, no discovery was available); *King* v. *Livent, Inc.*, 36 F. Supp. 2d 187, 190 (S.D.N.Y. 1999) (Sweet, J.) ("The only discovery rights with respect to the appointment are granted to a plaintiff demonstrating a reasonable basis for inadequate representation.").

Plaintiffs quote this clause of the PSLRA, but they make no effort to show that they satisfy its stringent requirements for discovery in connection with lead plaintiff motions. Instead, they wave away these requirements, claiming, without any supporting authority, that although "[t]his provision, by its terms, is oriented to obtaining discovery to rebut another movant's claim to be the 'most adequate plaintiff,'" it nevertheless also "expressly contemplates that discovery be allowed in connection with the selection by the Court of the lead plaintiff . . . ." Pl. Br. 19. However, plaintiffs never grapple with the bald fact that they have not made the statutory threshold showing that the presumptively most adequate plaintiff is inadequate.

Indeed, a "presumptively most adequate plaintiff" *will not exist* until motions for lead plaintiff come due on July 23, 2013. *See supra* at 5-6. There are currently no potential lead plaintiffs known to the SAC Defendants other than the *Kaplan* plaintiffs. If no other potential lead plaintiffs emerge, then no discovery in connection with lead plaintiff appointment will be available, and none will be needed. Discovery on lead plaintiff motions will be appropriate "*only if*" (1) other potential lead plaintiffs come forward, (2) a potential lead plaintiff argues that

the presumptively most adequate lead plaintiff is inadequate because it failed to adequately allege contemporaneous trades, and (3) the Court finds that this potential lead plaintiff has demonstrated a "reasonable basis" for finding inadequacy. Given these many contingencies, conducting discovery about these issues now is premature, inefficient, and directly contrary to Judge Marrero's directive to strive for the "minimal amount of unnecessary effort" in these actions. Tr. of 1/11/13 Hearing at 14:1-2, ECF No. 23, 12-cv-8466. This is precisely why such premature discovery is expressly precluded by the PSLRA.

The cases cited by plaintiffs are not to the contrary. None of those four cases involved a motion for lead plaintiff status, and they therefore did not consider the specific standard that a plaintiff must meet to seek discovery in connection with such a motion.[7] Indeed, only two of those cases involved insider trading, and neither one considered whether a plaintiff is entitled to discovery to determine whether he or she traded contemporaneously with the defendant.

### 2.   Plaintiffs Have Failed To Establish That They Will Suffer Undue Prejudice If They Do Not Receive The Trading Records

Plaintiffs' request for trading records should also be denied because plaintiffs have failed to establish that the PSLRA stay will cause them undue prejudice. Plaintiffs' real reason for seeking trading records is, as they candidly admit, their concern that they may be "later determined to have *no* contemporaneous trades and therefore no claim at all." Pl. Br. 17. Plaintiffs' attempt to resolve their own uncertainty about whether or not they have any valid claims by seeking discovery is an entirely improper one, because it "flies in the face of the objective of the PSLRA's stay of discovery, namely, that plaintiffs be able to plead legally

---

[7]   *See Thomas* v. *Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1222 (W.D. Okla. 2008); *Vacold LLC* v. *Cerami*, 2001 WL 167704, at *6-7 (S.D.N.Y. Feb. 16, 2001) (Schwartz, J.); *In re Baan Co. Sec. Litig.*, 81 F. Supp. 2d 75, 83 (D.D.C. 2000); *Global Intellicom, Inc.* v. *Thomson Kernaghan & Co.*, 1999 WL 223158 (S.D.N.Y. Apr. 16, 1999) (Cote, J.).

sufficient claims prior to any discovery." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 391 n.6 (S.D.N.Y. 2003) (Pollack, J.); *see also In re Vivendi*, 381 F. Supp. 2d at 130 (lifting discovery stay inappropriate because "evidence from discovery might . . . be the subject of controversy as to a claim in the complaint if leave to replead were granted"); *AOL*, 2003 U.S. Dist. LEXIS 12846, at *6 (lifting stay inappropriate because plaintiffs might "attempt to use the discovery materials in opposition" to a motion to dismiss).

Consistent with these principles, numerous courts have dismissed insider trading claims brought by plaintiffs who could not plead contemporaneous trading, instead of granting them discovery, as plaintiffs request here, so that they could attempt to do so. *See, e.g.*, *Kazenercom TOO* v. *Ibar Dev., LLC*, 464 F. App'x 588, 591 (9th Cir. 2011) (affirming dismissal of 20A claims for "fail[ing] to . . . allege with particularity that any plaintiff bought or sold . . . stock contemporaneously with the alleged insiders"); *Edward J. Goodman Life Income Trust* v. *Jabil Circuit, Inc.*, 560 F. Supp. 2d 1221, 1245-46 (M.D. Fla. 2008) (dismissing 20A claims on that ground); *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 235 (C.D. Cal. 1995) (dismissing "[a]morphous allegations that individuals sold stock on unspecified inside information, and on unspecified dates, which may or may not have been contemporaneous with plaintiffs' trades"); *see also SG Cowen Sec. Corp.* v. *U.S. Dist. Ct.*, 189 F.3d 909, 912-13 (9th Cir. 1999) (overturning order lifting PSLRA stay to allow discovery of trading information, which was likely to be solely within defendants' possession and without which plaintiffs could not state a claim, because it improperly allowed plaintiffs "to conduct discovery so that they might uncover facts sufficient to satisfy the Act's pleading requirements").

By contrast, plaintiffs can muster only four citations to cases that purportedly support their request for the Trading Records. Pl. Br. 17-18. None of these four cases concerned

a motion for appointment of lead plaintiff; two are out-of-Circuit; two granted discovery only to establish jurisdiction; and all are inapposite.  Plaintiffs' leading case, *Thomas* v. *Metropolitan Life Insurance Co.*, 540 F. Supp. 2d 1212 (W.D. Okla. 2008), is an opinion on a motion to dismiss that granted limited discovery on plaintiffs' standing.  The *Thomas* court's discussion of the PSLRA stay issue is less than a page long and does not include a single case citation.  *See id.* at 1222.  The court's undue prejudice rationale—that "[a]bsent particularized discovery on [which financial instruments plaintiffs bought and when], the federal claims are subject to dismissal," *id.*—does not square with the insider trading cases cited in the preceding paragraph, which ordered dismissal of complaints that failed to adequately allege contemporaneous trades. Indeed, that rationale would support discovery whenever a plaintiff failed to plead a claim.

   Plaintiffs also cite *Global Intellicom, Inc.* v. *Thomson Kernaghan & Co.*, 1999 WL 223158 (S.D.N.Y. Apr. 16, 1999) (Cote, J.), a case that illustrates quite well what undue prejudice looks like.  Defendants had filed a separate suit in Nevada state court, attempting to use the fruits of the securities fraud alleged in the New York action to gain control of the ***plaintiff company*** in that action.  *Id.* at *1-2.  That would have allowed defendants to dismiss the New York action in which they were defendants.  *Id.*  Here, there is no threat of defendants taking control of plaintiffs and dismissing their claims.  The fact that plaintiffs even cited *Global Intellicom* underscores the dearth of case law supportive of their argument.[8]

---

[8]   Plaintiffs cite two additional cases, *In re Baan Co. Sec. Litig.*, 81 F. Supp. 2d 75 (D.D.C. 2000) and *Vacold LLC* v. *Cerami*, 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) (Schwartz, J.).  *Baan* is an opinion that does not so much as mention the PSLRA until the penultimate paragraph, 81 F. Supp. 2d at 83, and only grants limited discovery concerning personal jurisdiction because "[the D.C.] Circuit permits limited discovery [on personal jurisdiction] if the opponent of the motion has made [sufficiently specific] allegations" and "refusing to permit legitimate discovery on [these] jurisdictional issues is an abuse of discretion."  *Id.* at 77, 82.  That is not this case.

   *Vacold*, another decision on a motion to dismiss, held defendants' motion to dismiss in abeyance—rather than granting or denying it outright—pending limited discovery on the timing of an investment that would be dispositive.  2001 WL 167704, at *6-7.  The court cited only one case lifting the stay, *Global Intellicom*, which is inapplicable for the reasons set out above.  *Id.* at *6.  And as plaintiffs concede, *Vacold* is a case where the court had found that "plaintiff ha[d] otherwise pled a meritorious claim" and dismissal for want of limited

### 3.   Plaintiffs' Request For Trading Records Is Overbroad

Finally, plaintiffs' request for records showing the SAC Defendants' Elan trading during the "Insider Buying Class Period," *i.e.*, from July 1, 2006 to July 18, 2008, is overbroad because it seeks discovery for claims that are barred by the applicable statutes of repose. Claims under Sections 10(b) based on alleged insider trading violations may not be brought more than five years after those violations. *See* 28 U.S.C. § 1658(b). Plaintiffs only filed the consolidated complaint asserting the "Insider Buying Class Period" claims (on behalf of those who sold Elan ADRs between July 1, 2006 to July 18, 2008) on May 13, 2013. As a result, claims based on supposed insider trading violations prior to May 13, 2008 are time-barred. Indeed, just last week, the Second Circuit reemphasized that statutes of repose are "'absolute' and not subject to equitable tolling," and that they run "even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *IndyMac*, 2013 WL 3214588, at *5 (citations omitted).

The same applies to plaintiffs' claims under Section 20A, because the statute of repose under that section is no different: claims under Section 10(b) become barred "5 years after [the] violation," 28 U.S.C. § 1658(b), and claims under Section 20A become barred "5 years after the date of the last transaction that is the subject of *the violation*." 15 U.S.C. § 78t-1(b)(4) (emphasis added). Because the alleged violations occurred more than five years ago for purposes of plaintiffs' Section 10(b) claims, the last transactions that were part of those same violations necessarily occurred at that time also.

The fact that plaintiffs' claims are largely barred by the applicable statutes of repose again demonstrates why Congress has determined that it is more efficient for defendants'

---

discovery would have constituted undue prejudice. Pl. Br. 8. Here, there will be no motion to dismiss—and thus no decision finding that plaintiffs have "otherwise pled a meritorious claim"—for many months, and the PSLRA mandates that discovery be stayed until then.

motion to dismiss to be decided before conducting discovery.  The parties should not be put to the burden and expense of unnecessary discovery on claims that lack merit and may well be dismissed when the court rules on defendants' motion.

**CONCLUSION**

For the foregoing reasons, plaintiffs have failed to establish the requisite grounds for lifting the discovery stay mandated by the PSLRA, and their motion to lift the stay should be denied.


Dated:   New York, New York
        July 1, 2013


PAUL, WEISS, RIFKIND, WHARTON          WILLKIE FARR & GALLAGHER LLP
    & GARRISON LLP

By: _/s/ Daniel J. Kramer_____    By:_____
        Daniel J. Kramer                        Martin B. Klotz
        Michael E. Gertzman                     Michael S. Schachter
        Audra J. Soloway                        Sameer Advani
        Jonathan H. Hurwitz

1285 Avenue of the Americas              787 Seventh Avenue
New York, New York 10019                 New York, New York 10019
(212) 373-3000                           (212) 728-8102
dkramer@paulweiss.com                    mklotz@willkie.com
mgertzman@paulweiss.com                  mschachter@willkie.com
asoloway@paulweiss.com                   sadvani@willkie.com
jhurwitz@paulweiss.com

*Attorneys for the SAC Defendants*