UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                :
DAVID E. KAPLAN, et al.,                        :
                                                :
                        Plaintiffs,             :   No. 12 Civ. 9350 (VM) (KNF) (Kaplan)
                                                :
            - against -                         :   **ECF CASE**
                                                :
S.A.C. CAPITAL ADVISORS, L.P., et al.,          :
                                                :
                        Defendants.             :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF PLAINTIFFS' MOTION FOR
RELIEF FROM PSLRA DISCOVERY STAY**


    Ethan D. Wohl
    Krista T. Rosen
    Sara J. Wigmore
    **WOHL & FRUCHTER LLP**
    570 Lexington Avenue, 16th Floor
    New York, New York 10022
    Telephone: (212) 758-4000

    Marc I. Gross
    Tamar A. Weinrib
    **POMERANTZ GROSSMAN HUFFORD
    DAHLSTROM & GROSS LLP**
    600 Third Avenue, 20th Floor
    New York, New York 10016
    Telephone: (212) 661-1100

    *Attorneys for the* Kaplan *Plaintiffs and Co-Lead
    Counsel for the Proposed Elan Investor Class*

## **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

I. THE TRADING RECORDS ARE NEEDED NOW TO FULFILL THE
MANDATE OF THE PSLRA ........................................................................................1

    A. Defendants Flatly Ignore the Court's Need for the Trading Records to
Perform the "Largest Financial Interest" Analysis Mandated by the
PSLRA ................................................................................................................1

    B. Plaintiffs' Claims Are Timely and Defendants' Assertion to the Contrary
Is Not Properly Now Before the Court ...............................................................3

II. THE FACTS HERE ESTABLISH UNDUE PREJUDICE, SUPPORTING
MERITS DISCOVERY NOW ......................................................................................4

    A. The SEC Settlement, the Ongoing SEC and Criminal Actions, the Widely-
Reported Plea Deal Negotiations, and the Prospect SAC Will Close Down
– Facts SAC *Does Not Dispute* – Collectively Support Merits Discovery
Now .....................................................................................................................4

    B. None of the Cases on Which Defendants Rely Addressed Circumstances
Similar to Those Here .........................................................................................7

    C. Courts Granting Relief from the PSLRA Stay Have Uniformly Held that
Discovery Is Sufficiently "Particularized" When, as Here, It Seeks
Documents Previously Produced to or from the Government ...........................8

III. THE PROTECTIVE ORDER IN *UNITED STATES v. MARTOMA*, BY ITS
TERMS, PERMITS THE DISCLOSURE PLAINTIFFS SEEK ..................................9

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*380544 Canada, Inc. v. Aspen Tech., Inc.*,
    No. 07 Civ. 1204 (JFK), 2007 WL 2049738 (S.D.N.Y. July 18, 2007) ...................................7

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. 1500, 02 Civ. 5575 (SWK), 2003 WL 21729842 (S.D.N.Y. July 25, 2003) (cited
    by Defendants as 2003 U.S. Dist. LEXIS 12846).......................................................................7

*In re AST Research Sec. Litig.*,
    887 F. Supp. 231 (C.D. Cal. 1995) ...........................................................................................2

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    No. 09 MDL 2058 (DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009)..............................4, 9

*Brigham v. Royal Bank of Canada*,
    No. 08 Civ. 4431 (WHP), 2009 WL 935684 (S.D.N.Y. Apr. 7, 2009) .....................................8

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
    560 F. Supp. 2d 1221 (M.D. Fla. 2008).....................................................................................2

*In re Firstenergy Corp. Sec. Litig.*,
    229 F.R.D. 541 (N.D. Ohio 2004) .............................................................................................9

*In re Global Crossing, Ltd. Sec. Litig.*,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004)........................................................................................5

*Kazenercom TOO v. Ibar Dev., LLC*,
    464 F. App'x 588 (9th Cir. 2011) ..............................................................................................2

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
    674 F. Supp. 2d 483 (S.D.N.Y. 2009)........................................................................................8

*In re LaBranche Sec. Litig.*,
    333 F. Supp. 2d 178 (S.D.N.Y. 2004)........................................................................................5

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003).......................................................................................................3

*NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*,
    No. 10 Civ. 440 (LAK)(HBP), 2011 WL 6844456 (S.D.N.Y. Dec. 29, 2011) .........................8

*Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.*,
    No. 12-CV-884-JPS, 2013 WL 1878943 (E.D. Wis. May 3, 2013) ..........................................9

*In re Refco, Inc. Sec. Litig.*,
 No. 05 Civ. 8626 (GEL), 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006) ................................... 8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
 220 F.R.D. 246 (D. Md. 2004) ............................................................................................... 9

*SG Cowen Sec. Corp. v. U.S. Dist. Court*,
 189 F.3d 909 (9th Cir. 1999) ................................................................................................. 3

*Short v. Belleville Shoe Mfg. Co.*,
 908 F.2d 1385 (7th Cir. 1990) ............................................................................................... 4

*In re Smith Barney Transfer Agent Litig.*,
 No. 05 Civ. 7583 (WHP), 2006 WL 1738078 (S.D.N.Y. June 26, 2006) ............................. 8

*Waldman v. Wachovia Corp.*,
 No. 08 CIV. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) ................................ 5, 9

*In re WorldCom, Inc. Sec. Litig.*,
 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ................................................................................ 4, 9

**OTHER CASES**

*Freeman v. Williamson,*
 890 N.E.2d 1127 (Ill. App. Ct. 2008) .................................................................................... 7

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 1658(b) ...................................................................................................................... 3

Section 10(b), Securities Exchange Act of 1934, 15 U.S.C. § 78j ................................................ 3

Section 20A, Securities Exchange Act of 1934, 15 U.S.C. § 78t-1 ........................................... 3, 4

Section 21D(a)(3), Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3) ............................ 1

The *Kaplan* Plaintiffs[1] respectfully submit this reply memorandum of law in further support of their motion for relief from the PSLRA discovery stay [ECF No. 73] and in response to the memoranda in opposition thereto submitted by the SAC Defendants [ECF No. 77] ("SAC Mem.") and by Defendant Mathew Martoma [ECF No. 79] ("Martoma Mem.").

## ARGUMENT

### I. THE TRADING RECORDS ARE NEEDED NOW TO FULFILL THE MANDATE OF THE PSLRA

#### A. Defendants Flatly Ignore the Court's Need for the Trading Records to Perform the "Largest Financial Interest" Analysis Mandated by the PSLRA

As Plaintiffs explained in their Opening Memorandum, production of the Trading Records is necessary if the Court is to fulfill a basic directive of the PSLRA – to determine which movant has the "largest financial interest in the relief sought by the class" and is therefore the presumptive "most adequate plaintiff." Section 21D(a)(3)(B)(iii).[2]

Defendants *entirely ignore this crucial – and indisputable – fact*. None of the Defendants' arguments support withholding the highly-targeted disclosure that Plaintiffs seek.

First, Defendants argue that the PSLRA lead plaintiff discovery provision, Section 21D(a)(3)(B)(iv), should bar access to the trading records. SAC Mem. at 19-21. By its express terms, however, this provision assumes that a "presumptively most adequate plaintiff" has already been identified. Here, no "presumptively most adequate plaintiff" *can* be identified without the Trading Records.

---

[1] Capitalized terms not defined herein have the respective meanings ascribed in Plaintiffs' opening memorandum of law [ECF No. 74] ("Opening Memorandum" or "Opening Mem.").

[2] References herein to a "Section" are to the Securities Exchange Act of 1934.

Second, Defendants sidestep the explicit grounds for Plaintiffs' application – the inability to identify the presumptive "most adequate plaintiff" and configure their lead plaintiff group accordingly, Opening Mem. at 16-17 – by badly misstating what Plaintiffs say.  Defendants assert that Plaintiffs' "real reason for seeking trading records is, as they candidly admit, their concern that they may be 'later determined to have no contemporaneous trades and therefore no claim at all.' "  SAC Mem. at 21-22.  This is not at all what Plaintiffs stated, let alone "candidly admit[ted]," and the parties should not be taking these kinds of liberties with the facts.  In fact, as Plaintiffs stated, and hereby specifically affirm, they "have now been contacted by Elan investors with trades during each week in the Class Period" and "expect to be able to dispose of any possible standing objection in a further amended complaint, but doing so without the Trading Records will likely necessitate joining a large number of investors as plaintiffs."  Opening Mem. at 17 n.3.

Third, Defendants cite a string of cases dismissing insider trading claims for want of contemporaneousness.  SAC Mem. at 22.  In none of these cases, however, was the absence of defendants' trading data even mentioned as a possible issue.  In *Kazenercom TOO v. Ibar Dev., LLC*, 464 F. App'x 588 (9th Cir. 2011), the plaintiff did not allege trading dates by *any* party, and the insider trading claims were incidental to a massive RICO complaint.  *See* No. 8:09-cv-00059-JVS-MLG (C.D. Cal. June 29, 2009), D.E. No. 237.  In *In re AST Research Securities Litigation*, 887 F. Supp. 231, 234 (C.D. Cal. 1995), the tippees who allegedly traded were not even named.  In *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 560 F. Supp. 2d 1221 (M.D. Fla. 2008), all of the defendants' trades were publicly disclosed in Form 4 filings; the plaintiffs' "contemporaneousness" problem did not result from a lack of trading data.

Defendants also cite *SG Cowen Sec. Corp. v. U.S. District Court*, 189 F.3d 909 (9th Cir. 1999), but there, the plaintiff sought discovery "to *learn the identity* of [the remote tippee

traders], and to determine the nature of the relationship between" the tippee and tipper. *Id.* at 912 (emphasis added). The disclosure sought thus did not concern trading records for known parties at all, let alone named defendants.

Finally, Defendants seek to distinguish the four cases in Plaintiffs' Opening Memorandum that authorized discovery concerning threshold, jurisdictional matters. SAC Mem. at 22-23. All four cases cited by Plaintiffs support exactly the kind of limited discovery at issue here, and Defendants resort to drawing inapposite distinctions, that the cases did not "concern[] a motion for appointment of lead plaintiff," that "two are out-of-Circuit," and that "two granted discovery only to establish jurisdiction" – apparently overlooking the fact that the standing issue presented here is itself "jurisdictional." *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir. 2003).

Instructively, Defendants cite no case – *not one* – in which a similar request for targeted discovery to address a threshold standing or other jurisdictional issue was denied.

### B. Plaintiffs' Claims Are Timely and Defendants' Assertion to the Contrary Is Not Properly Now Before the Court

Defendants also assert that Plaintiffs' request for trading records should be denied because their claims are not timely. SAC Mem. at 24-25. This assertion is both wrong as a matter of law, and is not properly now before the Court.

Defendants' claim that the limitations period applicable to Section 20A is "no different" than the one for Section 10(b) is unambiguously wrong. While 28 U.S.C. § 1658(b) bars actions more than five years after "[the] violation," Section 20A has its own express limitations period, Section 20A(b)(4), which only bars actions brought "more than 5 years after the date of the *last transaction* that is the subject of the violation." (Emphasis added.) As SAC's tipper, Defendant

- 3 -

Sidney Gilman, has confessed, the insider trading scheme set forth in the Consolidated Complaint continued until late July 2008, well within the five year limit.

There is also support for the proposition that Section 20A's limitations period is a statute of limitations and not a statute of repose, and is therefore subject to tolling pending discovery. *See Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1391-92 (7th Cir. 1990).

## II. THE FACTS HERE ESTABLISH UNDUE PREJUDICE, SUPPORTING MERITS DISCOVERY NOW

### A. The SEC Settlement, the Ongoing SEC and Criminal Actions, the Widely-Reported Plea Deal Negotiations, and the Prospect SAC Will Close Down – Facts SAC *Does Not Dispute* – Collectively Support Merits Discovery Now

Defendants' fragmentary, selective focus on individual factors relevant to the undue prejudice analysis misses the forest for the trees, and violates the consistent directive of the caselaw to evaluate all of the relevant factors *collectively*. *See In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002) ("While none of the above-stated circumstances may alone be sufficient to justify a lifting of the statutory stay in order to prevent undue prejudice, their collective weight tips the scale by a considerable measure in favor of plaintiffs' request."); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) ("In determining whether to lift the stay, courts may take all facts into account to determine whether undue burden would exist.").

This is the point that Judge Marrero emphasized on May 24, noting to SAC's counsel that cases denying relief from the stay "may have weighed it *in a different context*, perhaps in the context that I laid out to you before." Wohl Decl. Ex. B, at 18:1-2.

Here, an extensive array of facts, viewed collectively, warrant relief from the PSLRA stay. They include a historically large settlement with the SEC, *and* ongoing SEC and criminal actions, *and* widely-reported negotiations over a plea deal or deferred prosecution agreement

- 4 -

with SAC, *and* the significant prospect that SAC will close down and return investor funds, creating major collection challenges for Plaintiffs.  None of the cases refusing relief from the PSLRA stay has faced facts like this – as the discussion below in Point B (at 7) shows.

Defendants' attempts to minimize the cited factors and distinguish the precedents Plaintiffs cite rely on distinctions not recognized by the cases, and also misstate the facts here.

With respect to the cases involving regulatory settlements, Defendants argue that *Waldman v. Wachovia Corp.*, No. 08 CIV. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009), and *In re LaBranche Securities Litigation*, 333 F. Supp. 2d 178 (S.D.N.Y. 2004), allowed discovery to proceed only "to allow plaintiffs to investigate, in light of related regulatory settlements, whether to continue their own actions."  SAC Mem. at 12.  They then argue that the *Kaplan* Plaintiffs' stated intention to proceed with their case warrants depriving them of the same access to documents.  *Id.* at 12-13.  In fact, neither *Waldman* nor *LaBranche* was contingent on any stated intention by the plaintiffs to withdraw their claims, as Judge Sweet's reference to "seek[ing] an early settlement," 333 F. Supp. 2d at 184, confirms.

With respect to cases where parallel, multiparty litigation was proceeding, Defendants seek to distinguish *Worldcom* as involving "a limited pool of settlement funds" and " 'the very real risk that [the plaintiff] will be left to pursue its action against defendants' from which it could not recover."  SAC Mem. at 14 (quoting *Worldcom*, 234 F. Supp. 2d at 305-06).

Defendants' emphasis of this point from *Worldcom* aptly underscores the central risk that Plaintiffs face here – the inability to later collect a judgment in the event SAC closes down and liquidates.  The risk of prejudice in this situation has been recognized in other cases as well.  *See In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 352-53 (S.D.N.Y. 2004) (granting relief from stay where "the entity being sued [was] winding down").

While Defendants characterize the prospect of SAC's closure as "pure conjecture" and based on "a single news article," SAC Mem. at 16, they know better. In fact, this prospect has been widely reported, as reflected in the margin.[3]

Even more instructive, while the SAC Defendants assert that the reports of SAC's closure are "pure conjecture," they ***do not dispute their accuracy***. It would have been a simple matter for them to say that the news story Plaintiffs cited was untrue. ***They do not***.[4]

The fact that numerous other prominent hedge funds have been forced to close as a result of far less wide-ranging and well-documented insider trading charges provides further grounds to doubt SAC's survival.[5]

---

[3]  *See* Charlie Gasparino & Julie VerHage, *Cohen Mulls Plans to Shutter SAC, Open 'Family Office'*, Fox Bus., May 25, 2013 ("The embattled hedge fund SAC Capital is drawing up plans to close down and convert itself into a so-called 'family office,' where it will only manage the multi-billion-fortune of its founder, Steven Cohen, FOX Business has learned."); John Cassidy, *Will the Feds Kill SAC Capital?*, New Yorker, June 5, 2013 ("Cohen appears to be willing to return money to his outside investors and convert SAC into a 'family office' that invests the capital owned by him and his associates."); *Cohen Down to Last Outside $1B*, N.Y. Post, June 4, 2013 ("The withdrawals increase the odds that Cohen will convert SAC into a family office managing his own fortune.").

[4]  Nor do Defendants dispute the media reports of a pending plea deal. *See* Michael Rothfeld & Jenny Strasburg, *Criminal Charges Weighed Against SAC*, Wall St. J., May 20, 2013 ("SAC and its lawyers have also discussed with federal prosecutors the possibility of alternatives including negotiating a deferred-prosecution agreement, in which criminal charges could be filed against the company and basically settled at the same time, the people said."); Kaja Whitehouse, *SAC Investors Fleeing as Cohen Faces Prosecutors*, N.Y. Post, May 21, 2013 ("SAC lawyers have been discussing making a proposal to prosecutors that would voluntarily shut the firm to outside investors in exchange for a so-called deferred prosecution agreement. Such a deal would call for SAC to admit wrongdoing but allow it to avoid prosecution unless the law is broken again.").

   As the recent SEC settlement shows, Plaintiffs' right to recovery could well be affected by any agreement reached between the USAO and SAC or other defendants.

[5]  *See* Gregory Zuckerman & Kara Scannell, *Top Fund to Shut as Firm Faces Probe*, Wall St. J., May 28, 2009 ("Pequot Capital Management – a pioneering and well-connected hedge fund that gained fame for racking up years of strong returns – is shutting its doors amid a revived insider-trading probe."); Emily Chasan, *Raided Hedge Fund Level Global to Shut Down*, Reuters, Feb. 11, 2011 ("Level Global Investors, one of four hedge funds raided by authorities last November in a broad investigation into insider trading, told investors on Friday it would shut down, citing the pressure of the probe and investor redemptions."); Peter Lattman & Azam Ahmed, *FrontPoint to Shut Most Funds After Insider Trading Charges*, N.Y. Times, May 19, 2011 ("FrontPoint Partners,

*(continued . . .)*

With respect to the impact of closure on Plaintiffs' ability to collect any judgment, Defendants assert that Plaintiffs "do not even purport to explain" how it could impair collection. SAC Mem. at 16. In fact, Plaintiffs explained clearly that collection against former investors of a shuttered fund faces major impediments, notably including a short repose period, citing *Freeman v. Williamson,* 890 N.E.2d 1127, 1134-35 (Ill. App. Ct. 2008). Defendants ignore both the case and the argument.[6]

### B. None of the Cases on Which Defendants Rely Addressed Circumstances Similar to Those Here

None of the cases on which Defendants rely reflect the range of relevant factors discussed above. *See 380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07 Civ. 1204 (JFK), 2007 WL 2049738, at *3 (S.D.N.Y. July 18, 2007) (court emphasized that there was no threat of an inability to recover from the defendant, and there was no suggestion that settlement discussions "[were] underway or even imminent"); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1500, 02 Civ. 5575 (SWK), 2003 WL 21729842 (S.D.N.Y. July 25, 2003) (cited by Defendants as 2003 U.S. Dist. LEXIS 12846) (no concern regarding the plaintiffs' ability to collect and accordingly, "assertions of an impending settlement that could prejudice plaintiffs' possible

---

*(. . . continued)*

once a multibillion-dollar hedge fund before it was battered by allegations of insider trading, will shut down most of its funds by the end of the month."); Svea Herbst-Bayliss, *Hedge Fund Diamondback to Close After Clients Pull Out*, Reuters, Dec. 6, 2012 ("Hedge fund Diamondback Capital Management, one of a handful of firms embroiled in a government insider trading investigation, told investors it would close down after nervous clients demanded the return of more than a quarter of its assets.").

[6] Defendants assert that if Defendant Cohen is not found liable at trial, neither could SAC be. SAC Mem. at 16 n.6. This is wrong as a matter of settled law. As the Second Circuit held in *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008), "it is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant." In any event, this is again a merits argument well beyond the scope of the present motion.

- 7 -

recovery [were] premature"); *Brigham v. Royal Bank of Canada*, No. 08 Civ. 4431 (WHP), 2009 WL 935684, at *2 (S.D.N.Y. Apr. 7, 2009) (court emphasized there was no collection risk and "no risk that [the plaintiff] will be left at a disadvantage compared to the Regulators or other plaintiffs"); *Kuriakose v. Fed. Home Loan Mortg. Co.*, 674 F. Supp. 2d 483, 489 (S.D.N.Y. 2009) (no criminal or civil actions pending against any defendant, and no settlement discussions with anyone pending or planned); *NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, No. 10 Civ. 440 (LAK)(HBP), 2011 WL 6844456, at *3 (S.D.N.Y. Dec. 29, 2011) ("there [were] no parallel proceedings" at all, and the government action from which the plaintiff sought documents was "substantially different" from the matter there before the court); *In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (GEL), 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006) (no indication that the defendants were engaged in settlement discussions with other parties at the time; court recognized the possibility of undue prejudice if such discussions occurred in the future and further emphasized that, unlike in *WorldCom*, there was no present concern about the ability to collect any settlement); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006) (no ongoing parallel proceedings and the court emphasized that "Plaintiffs offer no evidence that Defendants lack the resources needed to reach a settlement or to satisfy a judgment").

    **C.**     **Courts Granting Relief from the PSLRA Stay Have Uniformly Held that Discovery Is Sufficiently "Particularized" When, as Here, It Seeks Documents <u>Previously Produced to or from the Government</u>**

Defendants also argue that the discovery Plaintiffs seek is not "particularized discovery" within the meaning of the PSLRA. SAC Mem. at 18-19; Martoma Mem. at 5-8. Defendants misstate both the scope of the discovery requested and the applicable law. Contrary to Defendants' claim, Plaintiffs do not seek "all documents that the SEC and the USAO have ever

produced to any defendant." SAC Mem. at 18. Rather, as stated in the proposed Order submitted by Plaintiffs, they seek only those documents produced in connection with the pending enforcement and criminal actions arising out of the very same events as this action.

Defendants are equally wrong on the law. Cases granting relief from the PSLRA discovery stay *uniformly* deem requests for all documents previously produced to the government to be sufficiently particularized. *See Waldman v. Wachovia Corp.*, No. 08 CIV. 2913(SAS), 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12, 2009) ("It is undisputed that the discovery plaintiffs request is sufficiently particularized, as it is limited to a set of documents already provided to state and federal regulators."); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002) (request for documents was sufficiently particularized as it "involves a clearly defined universe of documents, specifically certain documents which WorldCom has already produced in connection with other identified proceedings"); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (same); *Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.*, No. 12-CV-884-JPS, 2013 WL 1878943, at *1, *2 (E.D. Wis. May 3, 2013) (same); *In re Firstenergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (same); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250, 254 (D. Md. 2004) (same).

### III. THE PROTECTIVE ORDER IN *UNITED STATES v. MARTOMA*, BY ITS TERMS, PERMITS THE DISCLOSURE PLAINTIFFS SEEK

Defendant Martoma also asserts that the discovery requested by Plaintiffs is "particularly troublesome" because it is subject to a protective order (the "Protective Order") in the criminal action against him. Martoma Opp. at 8. Reflecting perhaps less candor than the Court is due, Martoma then asserts that the Protective Order would "require a court order from *another judge* in a separate proceeding." *Id.* (emphasis in original). This is directly contradicted by the

Protective Order itself, which Martoma neglected to submit. In fact, as the Protective Order explicitly states, confidential information subject to it "may be disclosed by the defendant and/or his counsel only to the following designated persons: . . . (iv) such other persons as hereafter may be authorized . . . by order issued *by any Court*." Reply Declaration of Ethan D. Wohl dated July 3, 2013, Ex. F, ¶ 2 (emphasis added). Accordingly, an application to Judge Gardephe is not required by the clear terms of the Protective Order itself.

## CONCLUSION

For the foregoing reasons, and for those set forth in the Opening Memorandum, the *Kaplan* plaintiffs respectfully request that the Court grant relief from the PSLRA discovery stay, as set forth in the proposed Order previously submitted, and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
July 3, 2013

Respectfully submitted,

**WOHL & FRUCHTER LLP**

By: /s/ Ethan Wohl

| | |
|---|---|
| Marc I. Gross | Ethan D. Wohl |
| Tamar A. Weinrib | Krista T. Rosen |
| **POMERANTZ GROSSMAN HUFFORD** | Sara J. Wigmore |
| **DAHLSTROM & GROSS LLP** | |
| 600 Third Avenue, 20th Floor | 570 Lexington Avenue, 16th Floor |
| New York, New York  10016 | New York, New York  10022 |
| Telephone: (212) 661-1100 | Telephone: (212) 758-4000 |
| Facsimile: (212) 661-8665 | Facsimile: (212) 758-4004 |

*Attorneys for the* Kaplan *Plaintiffs and Co-Lead Counsel for the Proposed Elan Investor Class*