UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID E. KAPLAN, et al.,<br><br>        Plaintiffs,<br><br>        - against -<br><br>S.A.C. CAPITAL ADVISORS, L.P., et al.,<br><br>        Defendants. | No. 12 Civ. 9350 (VM)<br>(KNF)<br><br>ECF Case |
| BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, et al.,<br><br>        Plaintiffs,<br><br>        - against -<br><br>S.A.C. CAPITAL ADVISORS, L.P., et al.,<br><br>        Defendants. | No. 13 Civ. 2459 (VM)<br>(KNF)<br><br><u>Oral Argument Requested</u> |

## SAC'S MEMORANDUM OF LAW IN SUPPORT OF <u>ITS MOTION TO DISMISS PLAINTIFFS' RICO CLAIMS</u>

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3020

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8102

*Attorneys for Defendants S.A.C. Capital Advisors,
L.P., Point72 Capital Advisors, Inc., CR Intrinsic
Investors, LLC, CR Intrinsic Investments, LLC,
S.A.C. Capital Advisors, LLC, Point72 Associates,
LLC, Point72 Strategies, LLC, Point72 Select
Investments, LLC, Steven A. Cohen (together,
"SAC")*

**<u>Table of Contents</u>**

**<u>Page</u>**

Preliminary Statement ................................................................................................ 1

Background.................................................................................................................. 4

Legal Standard ........................................................................................................... 6

Argument .................................................................................................................... 6

I.      Plaintiffs Lack RICO Standing Because They Did Not Suffer "Concrete"
      Injuries That Were "Directly" Caused By SAC's Trading............................................6

II.    Plaintiffs Cannot Invoke Civil RICO's Criminal Conviction Exception ...................14

III.   Plaintiffs Have Not Alleged The Required "Distinctness" Between the
      "Persons" That Committed The Violation And The "Enterprise" Through
      Which the Violation Was Committed..........................................................................20

IV.   The SAC Management Companies Are Not Vicariously Liable Under RICO ...........23

V.    Plaintiffs Fail To Allege A RICO "Enterprise" Since The Alleged Enterprise
      Is Comprised Exclusively Of Corporate Entities.......................................................24

Conclusion .................................................................................................................25

<u>**Table of Authorities**</u>

**Page(s)**

**Cases**

*Abrahams* v. *Young & Rubicam, Inc.*,
    79 F.3d 234 (2d Cir. 1996) ....................................................................................7

*Anza* v. *Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ...................................................................................7, 8, 14

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ............................................................................................6

*Bankers Trust Co.* v. *Rhoades*,
    859 F.2d 1096 (2d Cir. 1988) ............................................................................6

*Bridge* v. *Phx. Bond & Indem. Co.*,
    553 U.S. 639 (2008) ............................................................................................7

*Cedric Kushner Ltd.* v. *King*,
    533 U.S. 158 (2001) ..........................................................................................20

*Cruz* v. *FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ............................................................................21

*Curtis & Associates, P.C.* v. *Law Offices of David M. Bushman, Esq.*,
    758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...............................................................6

*Discon, Inc.* v. *NYNEX Corp.*,
    93 F.3d 1055 (2d Cir. 1996) ........................................................................20, 22

*Dura Pharm., Inc.* v. *Broudo*,
    544 U.S. 336 (2005) ..........................................................................................14

*E & L Consult., Ltd.* v. *Doman Indus. Ltd.*,
    472 F.3d 23 (2d Cir. 2006) .................................................................................4

*Elkind* v. *Liggett & Myers, Inc.*,
    635 F.2d 156 (2d Cir. 1980) ....................................................................*passim*

*In re Enron Corp. Sec. Deriv. & ERISA Litig.*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ..............................................................15

*Estate of Gottdiener* v. *Sater*,
    No. 13 Civ. 01824, 2014 WL 1100133 (S.D.N.Y. March 19, 2014) ......................*passim*

*Evans* v. *City of Chicago*,
    434 F.3d 916 (7th Cir. 2013) ..................................................................6, 10

*First Capital Asset Mgmt., Inc.* v. *Brickelbush, Inc.*,
    150 F. Supp. 2d 624 (S.D.N.Y. 2001) ...................................................22, 23

*Fridrich* v. *Bradford*,
    542 F.2d 307 (6th Cir. 1976) ...................................................................9, 13

*Goldstein* v. *S.E.C.*,
    451 F.3d 873 (D.C. Cir. 2006).......................................................................22

*Gross* v. *Waywell*,
    628 F. Supp. 2d 475 (2009) ...........................................................................17

*U.S.* v. *Gupta*,
    904 F. Supp. 2d 349 (S.D.N.Y. 2012) ...........................................................12

*Haroco, Inc.* v. *Am. Nat. Bank & Trust Co. of Chicago*,
    747 F.2d 384 (7th Cir. 1984) .........................................................................20

*Haviland* v. *J.Aron & Co.*,
    796 F. Supp. 95 (S.D.N.Y. 1992) ....................................................................8

*Hemi Grp., LLC* v. *City of New York, N.Y.*,
    559 U.S. 1 (2010)........................................................................................8, 14

*Holmes* v. *Sec. Invest. Prot. Corp.*,
    503 U.S. 258 (1992).....................................................................................7, 14

*U.S.* v. *Huber*,
    603 F.2d 387 (2d Cir. 1979) ...........................................................................24

*Krear* v. *Malek*,
    961 F. Supp. 1065 (E.D. Mich. 1997) .................................................. *passim*

*Lerner* v. *Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) .............................................................................7

*Lerner* v. *Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003) .............................................................................8

*Makowski* v. *United Bhd. Of Carpenters & Joiners*,
    No. 08 Civ. 6150, 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010)...............7, 8, 9

*United States* v. *Martoma*,
    No. 12 Cr. 973, 2014 WL 4419682 (S.D.N.Y. Sept. 8, 2014).........................12

iii

*McLaughlin* v. *Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ...................................................................................7, 11

*MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*,
   651 F.3d 268 (2d Cir. 2011) ...........................................................................................15

*In re Motel 6 Sec. Litig.*,
   No. 93 Civ. 2183, 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997)........................................14

*Motorola Credit Corp.* v. *Uzan*,
   388 F.3d 39 (2d Cir. 2004) ...............................................................................................6

*Oak Beverages, Inc.* v. *Tomra of Mass., L.L.C.*,
   96 F. Supp. 2d 336 (S.D.N.Y. 2000) ................................................................................9

*Palatkevich* v. *Choupak*,
   No. 12 Civ. 1681, 2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014)....................................20

*In re Parmalat Sec. Litig.*,
   479 F. Supp. 2d 332 (S.D.N.Y. 2007) .............................................................................21

*Physicians Mut. Ins. Co.* v. *Greystone Servicing Corp., Inc.*,
   No. 07 Civ. 10490, 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009) ...................................21

*U.S.* v. *Philip Morris USA Inc.*,
   396 F.3d 1190 (D.C. Cir. 2005)........................................................................................11

*Press* v. *Quick & Reilly, Inc.*,
   218 F.3d 121 (2d Cir. 2000) ..............................................................................................4

*Qatar Nat'l Navigation & Transp. Co. Ltd.* v. *Citibank, N.A.*,
   No. 89 Civ. 0464, 1992 WL 276565 (S.D.N.Y. Sept. 24, 1992)....................................23

*Red Ball Interior Demolition Corp.* v. *Palmadessa*,
   874 F. Supp. 576 (S.D.N.Y. 1995) ..........................................................................7, 8, 10

*Reed Const. Data Inc.* v. *McGraw-Hill Cos.*,
   745 F. Supp. 2d 343 (S.D.N.Y. 2010) .......................................................................21, 22

*Riverwoods Chappaqua Corp.* v. *Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994) .....................................................................................3, 20, 22

*Rogers* v. *Nacchio*,
   No. 05 Civ. 60667, 2006 WL 7997562 (S.D. Fla. Jun. 6, 2006)........................15, 17, 19

*Rogers* v. *Nacchio*,
   241 F. App'x 602, 608 (11th Cir. 2007)...........................................................................17

*Roth* v. *Jennings*,
   489 F.3d 499 (2d Cir. 2007) ..................................................4

*Sedima, S.P.R.L.* v. *Imrex Co., Inc.*,
   473 U.S. 479 (1985)..................................................6

*Shapiro* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   495 F.2d 228 (2d Cir. 1974) ..................................................13, 14

*U.S.* v. *Twentieth Century Fox Film Corp.*,
   882 F.2d 656 (2d Cir. 1989) ..................................................23

*USA Certified Merchants, LLC* v. *Koebel*,
   262 F. Supp. 2d 319 (S.D.N.Y. 2003) ..................................................23, 24

*World Wrestling Entm't, Inc.* v. *Jakks Pac., Inc.*,
   530 F. Supp. 2d 486 (S.D.N.Y. 2007) ..................................................5

*In re Zyprexa Prods. Liab. Litig.*,
   253 F.R.D. 69 (E.D.N.Y. 2008)..................................................11

## Statutes

18 U.S.C. § 1964..................................................*passim*

18 U.S.C. § 1962..................................................*passim*

Crime Victims' Rights Act, 18 U.S.C. § 377 ..................................................2, 19

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(4)..................................................*passim*

§ 20A of the Securities Exchange Act of 1934, 15 U.S.C. § 78t-1 ..................................................*passim*

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6)..................................................8

*In re Cady, Roberts & Co.*, Exchange Act Release No. 6668, 1961 WL
   60638, at *3 (Nov. 8, 1961)..................................................13

S. Rep. No. 104–98 (1995) ..................................................16

United States Sentencing Guidelines § 2B1.4 cmt. ..................................................12

**<u>Preliminary Statement</u>**

Plaintiffs cannot satisfy the formidable hurdles Congress imposed for pleading treble damages civil RICO claims, and their claims fail as a matter of law for the following reasons:

*First*, Plaintiffs cannot establish RICO standing, which requires them to allege a "concrete and actual" injury that was "directly and proximately" caused by the defendants' conduct.  Plaintiffs—persons who traded "contemporaneously" with SAC—cannot plead a concrete, actual and direct injury because, as the Second Circuit explained in *Elkind* v. *Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980), the only "direct market repercussion" of insider trading is "erosion" of market integrity, which is amorphous and indirect.  *Id*. at 171.

Plaintiffs argue in their pre-motion letter that they were injured because defendants failed to disclose inside information they possessed, but the mere violation of a duty does not establish either direct injury or proximate cause.  Indeed, as the United States Attorney's Office concluded about these very Plaintiffs:  "investors who trade without the benefit of inside information are not properly understood as the direct and proximate victims of those who do" and are not harmed by virtue of the fact that they are "denied the opportunity to make the same illegal profits obtained by the defendant."  The United States Attorney's Office concluded that "[a]ny proximate and direct harm to the purchasers of Elan and Wyeth securities that Class Counsel seeks to represent resulted from the negative drug trial results announced in July 2008 that caused the price of the securities to fall," and not

1

from the fact defendants traded while in possession of material, nonpublic information. (Ex. 1, at 2.)[1]

It is not surprising then that neither the Supreme Court nor any Court of Appeals has ever held that contemporaneous traders may assert claims under RICO based on alleged insider trading. And the one district court case Plaintiffs rely upon—*Motel 6*—is an outlier that did not analyze the RICO statute's proximate cause requirements and has never been followed in the seventeen years since it was decided.

*Second*, Plaintiffs' RICO claims fail because the PSLRA bars the use of securities fraud as a civil RICO predicate act unless defendants have been "criminally convicted in connection with the fraud." 18 U.S.C. § 1964(c). Courts have held that this exception must be interpreted "as narrowly as possible," and is available only to plaintiffs "against whom a defendant has *specifically* been convicted of criminal fraud." *Krear* v. *Malek*, 961 F. Supp. 1065, 1076 (E.D. Mich. 1997) (emphasis added). Here, the SAC Management Companies did not plead guilty to Martoma's conduct, or to the conduct of anyone else who traded in Elan and Wyeth securities. As a result, transactions in the securities of Elan and Wyeth cannot serve as civil RICO predicate acts. Moreover, Plaintiffs were not specifically identified as victims in the SAC criminal case—in fact, Plaintiffs sought recognition as victims under the Crime Victims' Rights Act, but the United States Attorney's Office rejected Plaintiffs' contention that they were victims of SAC's trading and the Court never accorded Plaintiffs victim status.

---

[1] Citations in the form of "Ex. __" refer to exhibits to the Declaration of Jonathan H. Hurwitz, dated September 22, 2014. Citations in the form of ¶ _ refer to paragraphs of the Joint Consolidated Second Amended Class Action Complaint. Citations in the form "ECF No. __" refer to docket entries in this action (No. 12 Civ. 9350), unless otherwise noted.

*Third*, Plaintiffs have failed to identify a defendant "person" who is distinct from the alleged RICO "enterprise."  Section 1962(c), the predicate RICO violation for all of Plaintiffs' claims, makes it unlawful for a "person employed by or associated with" an "enterprise" to conduct the affairs of the "enterprise" through a pattern of racketeering.  Here, the most appropriate "persons" to serve as RICO defendants—the individuals actually convicted of insider trading—are unattractive defendants because they have no significant assets.  Instead, Plaintiffs attempt to sue deep-pocketed corporate entities that are part of the same SAC family of companies as the alleged "enterprise."  RICO, however, does not permit the same entity to be both the defendant "person" and the "enterprise," *Riverwoods Chappaqua Corp.* v. *Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994), and Plaintiffs' allegations are insufficient to support a RICO claim.

*Fourth*, Plaintiffs' RICO claims rest on the improper assumption that the SAC defendants are vicariously liable under RICO for the actions of their former employees.  Typical *respondeat superior* principles, however, do not apply in the RICO context.  Corporate entities may be vicariously liable under RICO only where the entity itself is an "active perpetrator" of the violation.  Plaintiffs' claims fall far short of this standard.

*Fifth*, Plaintiffs have failed to plead a RICO enterprise because the alleged enterprise is comprised exclusively of corporate entities, contrary to the statutory requirement of 18 U.S.C. § 1961(4).

For all these reasons, Plaintiffs' RICO claims should be dismissed.

3

## Background[2]

### A.   Plaintiffs' Contemporaneous Trader Complaints

Shortly after the SEC brought charges against Mathew Martoma and CR Intrinsic Investors, LLC ("CR Intrinsic"), Plaintiffs' counsel filed purported class actions on behalf of certain shareholders in Elan and Wyeth.  (ECF No. 1); Complaint, *Birmingham Retirement and Relief System* v. *S.A.C. Capital Advisors, L.P.*, No. 13 Civ. 2459 (Apr. 12, 2013).  The complaints mimicked the allegations brought by the SEC, and sought disgorgement of profits from trading during the eight-day period from July 21, 2008 to July 29, 2008 (the "Selling Period").

After CR Intrinsic agreed to a settlement with the SEC, which mooted Plaintiffs' claims due to the statutory offset under § 20A of the Securities Exchange Act of 1934, Plaintiffs filed amended complaints.  They expanded their claims to include a "Buying Period" stretching back to 2006, and a claim based on a drop in the price of Elan stock that occurred after the Selling Period, following an announcement concerning Elan's Tysabri drug.

### B.   Plaintiffs' RICO Complaint

Plaintiffs asserted RICO Claims for the first time in their Joint Consolidated Second Amended Class Action Complaint dated September 3, 2014.  (ECF No. 162).  They bring RICO claims against three SAC entities:  SAC LLC, SAC LP, and CR Intrinsic (the "SAC Management Companies"), each of which pleaded guilty to one count of wire fraud

---

[2]   Solely for purposes of this motion to dismiss, we accept as true the complaint's non-conclusory factual allegations.  *See E & L Consult., Ltd.* v. *Doman Indus. Ltd.*, 472 F.3d 23, 28 (2d Cir. 2006).  In ruling on this motion, the Court may refer to documents incorporated by reference in the complaint, matters of public record, and authentic documents that Plaintiffs' claims are based upon, *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), and should disregard allegations of the complaint that are inconsistent with those documents, *see Press* v. *Quick & Reilly, Inc.*, 218 F.3d 121, 128-29 (2d Cir. 2000).  All of the exhibits referenced herein are matters of public record, and many are referenced in the complaint.

and one count of securities fraud, based upon the conduct of three former employees.  (*See* Ex. 4.)  The employee convictions that were the basis for the guilty pleas of the SAC Management Companies did not include Mathew Martoma, and did not involve trading in Elan or Wyeth.  (*Id.*)  No SAC entity has been criminally charged with RICO violations.

Plaintiffs allege that the SAC Management Companies were investment management entities that operated within the broader corporate structure of SAC, and "[e]ach of the SAC Management Companies was wholly-owned, directly or indirectly, by [Steven A.] Cohen."  (¶ 549.)  Plaintiffs claim that these SAC Management Companies "allocated investment capital" and "provided investment management services" to certain "SAC Investment Funds," which were "holding SAC's investment capital."  (¶¶ 45, 542.) They contend that the SAC Management Companies were "persons" within the meaning of the RICO statute, and the relevant racketeering "enterprise" was comprised of certain SAC Investment Funds.  (¶¶ 701, 702, 705.)

Based upon these allegations, Plaintiffs bring three RICO claims:  (1) a claim against CR Intrinsic under § 1962(c), alleging that CR Intrinsic conducted racketeering activities through the "enterprise" of  the fund known as CR Intrinsic Investments, LLC; (2) a claim against SAC LP, SAC LLC and CR Intrinsic under § 1962(c), alleging that they conducted racketeering activities through the "enterprise" of the SAC Investment Funds; and (3) a conspiracy claim against SAC LP, SAC LLC, and CR Intrinsic under § 1962(d), alleging that the defendants conspired to violate § 1962(c) by committing racketeering activities through the "enterprise" of the SAC Investment Funds.  Through these RICO claims, Plaintiffs demand treble the disgorgement they seek through their § 20A claim, as well as costs, attorneys' fees and prejudgment interest.  (¶ 629.)

### Legal Standard

To survive a motion to dismiss, Plaintiffs' civil RICO claims must "allege every essential element of each predicate act," *Estate of Gottdiener* v. *Sater*, No. 13 Civ. 01824, 2014 WL 1100133, at *4 (S.D.N.Y. March 19, 2014), and must "state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Courts are "particularly mindful of these standards in the context of a civil RICO claim . . . [given] the potential for abuse of RICO's potent provisions." *Curtis & Associates, P.C.* v. *Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010), *aff'd* 443 F. App'x 582 (2d Cir. 2011).

### Argument

### I.   Plaintiffs Lack RICO Standing Because They Did Not Suffer "Concrete" Injuries That Were "Directly" Caused By SAC's Trading

RICO's standing requirement is significantly more stringent than the general standing requirements of Article III. *See Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 55 (2d Cir. 2004). To establish RICO standing, plaintiffs must show that they have been "injured in [their] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "[E]very court that has addressed this issue has held that injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous." *Evans* v. *City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2013), *overruled on other grounds by Hill* v. *Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).[3]

---

[3]   S*ee also Sedima, S.P.R.L.* v. *Imrex Co., Inc.*, 473 U.S. 479, 496-97 (1985) ("a defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured" (citations omitted)); *Motorola Credit Corp.*, 388 F.3d at 55 (dismissing plaintiffs' claims for failure to plead injury as a requisite element of RICO "statutory standing"); *McLaughlin* v. *Am. Tobacco Co.*, 522 F.3d 215, 225, 227 (2d Cir. 2008), *abrogated on other grounds by Bridge* v. *Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008) (requiring plaintiffs to show a "concrete and actual" injury); *Bankers Trust Co.* v. *Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) (noting that to bring a RICO claim, plaintiffs must show that they have suffered "clear" and "definite" loss);

Plaintiffs also must show that their injury was "directly" and "proximately" caused by the defendant's RICO violation. *Holmes* v. *Sec. Invest. Prot. Corp.*, 503 U.S. 258, 266 (1992).[4] As the Supreme Court held in *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006): "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Id*. at 461 (emphasis added). And in *Holmes*, the Court explained that "the general tendency of the law . . . is not to go beyond the first step." 503 U.S. at 271-72 (citation omitted).

Courts routinely dismiss civil RICO claims at the pleading stage where plaintiffs have failed to allege a "concrete" injury or a "direct" causal link between their injury and defendant's alleged RICO violation. In fact, the Supreme Court has twice recently ruled that RICO claims are subject to dismissal at the pleading stage for failure to plead a "direct" causal link between defendant's conduct and plaintiff's injury. *See Hemi Grp., LLC* v. *City of New York, N.Y.,* 559 U.S. 1, 18 (2010); *Anza*, 547 U.S. at 457. And the

---

*Makowski* v. *United Bhd. Of Carpenters & Joiners*, No. 08 Civ. 6150, 2010 WL 3026510, at \*8, \*15 (S.D.N.Y. Aug. 2, 2010) ("Courts have regularly held that a plaintiff who alleges injuries that are indefinite and unprovable does not have standing under, and cannot recover damages pursuant to, RICO.") (internal quotations and citations omitted); *World Wrestling Entm't, Inc.* v. *Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520-21 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) ("[T]he requirement of a concrete financial loss proximately caused by the wrongful conduct of RICO defendants is not easily met." (citations omitted)).

[4]   The Supreme Court has interpreted the civil RICO statute to require that a defendant's conduct not only be the "but-for" cause of plaintiff's injury, but also the "proximate cause." *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006); *Holmes*, 503 U.S. at 268. To satisfy civil RICO's "proximate cause" requirement, a plaintiff must allege and prove a "direct" causal connection between the defendant's conduct and the plaintiff's injury. The Second Circuit has held that this "a more stringent showing of proximate cause than would be required at common law." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 285 n.5 (2d Cir. 2006) (quoting *Moore* v. *PaineWebber, Inc.*, 189 F.3d 165, 179 (2d Cir.1999) (Calabresi, J., concurring) (citations omitted); *see also Abrahams* v. *Young & Rubicam, Inc.*, 79 F.3d 234, 237 n.3 (2d Cir. 1996) (noting that the use of the term "proximate cause" in a statutory context often results in courts erroneously conflating that requirement with common law proximate cause); *Red Ball Interior Demolition Corp.* v. *Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995) (dismissing plaintiffs' claims for failure to satisfy RICO's proximate cause standing requirement which requires plaintiffs to show "that they were *directly* harmed" by the predicate violations (emphasis in original)).

Second Circuit held in *Lerner* v. *Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003), that the lack of statutory standing under RICO is "an element of the merits addressed under a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim."[5] *Id. at* 129-30.  In short, the question whether, under RICO, an open-market contemporaneous trader suffers a "concrete" injury that is "directly" caused by the presence of an insider trader in the market is a question that is ripe for disposition on a motion to dismiss.

Here, Plaintiffs claim that they have been harmed by defendants in the following way:  (1) Mathew Martoma induced a consultant to Elan (Dr. Gilman) to breach his duty of confidentiality to Elan and disclose material, nonpublic information; (2) SAC thereby inherited a duty, derivative of Dr. Gilman's duty, to disclose the information or abstain from trading; (3) SAC breached that duty by trading Elan and Wyeth securities; (4) but if SAC had disclosed the information it learned from Dr. Gilman, then "Plaintiffs would not have purchased [or sold] their Elan and Wyeth securities, would have delayed purchasing [or selling], or would have purchased [or sold] at lower prices"; and (5) Plaintiffs would have suffered less of a loss when Elan and Wyeth disclosed the disappointing results of the bapineuzumab clinical trial.  (¶¶ 111, 114, 511-15, 653.)

This is a very attenuated, speculative and indirect claim of injury.[6]  Indeed, in *Elkind,* the Second Circuit considered the injury contemporaneous traders sustained from

---

[5]     *See also Makowski,* 2010 WL 3026510, at *1 (S.D.N.Y. Aug. 2, 2010) (dismissing RICO claims because the plaintiff "fail[ed] to allege a cognizable injury, and [] therefore lacks standing to sue under RICO"); *Red Ball*, 874 F. Supp. at 587 (dismissing plaintiffs' claims for lack of standing, noting that, "[i]n the RICO area, standing under § 1964 is an issue appropriate for consideration under Rule 12(b)(6) (citing *Burdick* v. *Am. Exp. Co.*, 865 F.2d 527, 528 (2d Cir. 1989)); *Haviland* v. *J.Aron & Co.*, 796 F. Supp. 95, 98 (S.D.N.Y. 1992), *aff'd*, 986 F.2d 499 (2d Cir. 1992) ("[I]n order to have standing to sue under RICO . . . the RICO pattern or [predicate] acts must proximately cause the alleged injury.").

[6]     *See, e.g.*, *Makowski*, 2010 WL 3026510, at *8 (S.D.N.Y. Aug. 2, 2010) (Crotty, J.) ("When factors other than the defendant's RICO violation 'are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.'" (citations omitted)); *Oak*

insider traders and found that "the uninformed investor" "has not been harmed by the informational imbalance" because that investor "is in the same position as he would have been had the insider abstained from trading."  635 F.2d at 171; *see also Fridrich* v. *Bradford*, 542 F.2d 307, 318-19 (6th Cir. 1976) (holding that "[d]efendants' [insider trading] caused no injury to [contemporaneous traders]. . . . Defendants' trading did not alter plaintiffs' expectations when they sold their stock, and in no way influenced plaintiffs' trading decision[s]").  In other words, Plaintiffs made their own decision to buy or sell Elan and Wyeth stock.  They did not lose money because defendants had material, nonpublic information when they traded the stocks.  They lost money because the clinical trial results for bapineuzumab turned out to be disappointing.

    *Elkind*'s analysis is both binding and persuasive.  The Court explained that in the ordinary securities fraud case direct injury would be plaintiffs' out of pocket losses (*i.e.*, the difference between the amount plaintiffs paid for the stock and the price of the stock after the nonpublic information was disclosed), since that measure of damages "compensate[s] a person for losses directly traceable to the defendant's fraud upon him." 635 F.2d at 170.  The Court found, however, that contemporaneous traders could not receive out of pocket damages because they were not directly injured by the insider trader as no "fraud or inducement may be attributed to a tipper or tippee trading on an impersonal market."  *Id*.  Instead, the Court held that the only "direct result of the tippee's conduct" and the "actual harm caused by the [] wrongful conduct," is entirely indirect—an "erosion" of the integrity for the market prices of securities.  *Id*. at 171-72.  Significantly, the Court declined to award damages based on even this indirect harm because of the "difficult if not

---

*Beverages, Inc.* v. *Tomra of Mass., L.L.C.*, 96 F. Supp. 2d 336, 343 (S.D.N.Y. 2000) (McMahon, J.) (same).

impossible burden . . . of proving the time when and extent to which the integrity of the market was affected." *Id.*

The Court, however, did not leave these traders without a remedy.  It ruled that, under the securities laws, contemporaneous traders may seek disgorgement of defendants' gains, which it viewed as "roughly commensurate" to the harm caused by the defendants' conduct.  *Id.* at 172.  *Elkind*'s approach was subsequently adopted by Congress when it enacted § 20A, which provides a disgorgement measure of damages to contemporaneous traders, as well as an offset dollar-for-dollar for amounts already disgorged by the defendant to the SEC.

RICO, however, has much more stringent injury and proximate cause requirements than § 20A.  The "market-repercussion" injury described in *Elkind*, is precisely the kind of "speculative," "amorphous" and "indirect" injury that courts have found insufficient under RICO.  *Evans*, 434 F.3d at 932.  Whereas RICO injury must be "concrete" and "quantifiable," "market-repercussion" injury is nebulous, indirect and, as the Second Circuit noted, virtually impossible to quantify.  *See Elkind*, 653 F.2d at 171; *see also Red Ball*, 874 F. Supp. at 587 ("Sound policy counsels against granting the additional relief of RICO where the causal connection between plaintiffs' alleged injury and the acts of the defendant is so remote.").

Unable to allege that they suffered actual, concrete damages from defendants' conduct, Plaintiffs seek RICO damages consisting of treble the amount of profit made or loss avoided that defendants have disgorged to the government (¶¶ 30, 629)—the exact same *disgorgement* amount that they seek as an equitable remedy in their § 20A claims.  However, unlike § 20A, the RICO statute expressly forbids plaintiffs from obtaining

10

equitable remedies such as disgorgement or unjust enrichment. *See U.S.* v. *Philip Morris USA Inc.*, 396 F.3d 1190, 1200-01 (D.C. Cir. 2005); *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 161 (E.D.N.Y. 2008), *rev'd on other grounds*, 620 F.3d 121 (2d Cir. 2010).  This is because RICO does not permit "roughly commensurate" approximations of injury.  It requires "concrete financial loss," *McLaughlin*, 522 F.3d 215, which, as the Second Circuit explained in *Elkind*, contemporaneous traders cannot show, *Elkind*, 635 F.2d at 171-72.

Other courts and the Government have recognized that contemporaneous traders, such as Plaintiffs in this case, do not suffer "concrete" and "quantifiable" injuries proximately caused by alleged insider trading.  The United States Attorney's Office rejected the claim by Plaintiffs that they be considered victims who had been harmed by defendants' conduct.  The United States Attorney's Office advised the Court in SAC's related criminal sentencing that "investors who trade without the benefit of inside information are not properly understood as the direct and proximate victims of those that do."  (Ex. 1, at 2, 3.) The United States Attorney's Office explained:

> [T]here is no evidence that individuals in the putative class would not have engaged in the transactions claimed to have resulted in losses in the absence of trading by the SAC Defendants. . . .  [They are not injured] merely because [they were] denied the opportunity to make the same illegal profits obtained by the defendant.

*Id.* at 1.

> Likewise, Judge Rakoff has recently stated:

> While insider trading may work a huge unfairness on innocent investors, Congress has never treated it as a fraud on investors, the Securities Exchange Commission has explicitly opposed any such legislation, and the Supreme Court has rejected any attempt to extend coverage of the securities fraud laws on such a theory.  Prosecution of insider trading therefore proceeds, as in this case, on one or more theories of defrauding the institution (or its shareholders) that owned the information.

*U.S.* v. *Gupta*, 904 F. Supp. 2d 349, 352 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2014).

Similarly, the United States Sentencing Guidelines do not base sentencing enhancements in insider trading cases on "victims' losses." The Commentary explains that this is because "victims and their losses are difficult *if not impossible* to identify." U.S.S.G. § 2B1.4 cmt. Background (emphasis added). Judge Gardephe, in sentencing Mathew Martoma for insider trading, explained that the Sentencing Guidelines do not focus on contemporaneous trader losses because insider traders do not cause their losses. He wrote:

> Insider trading is different. When an insider trades on the basis of material, non-public information, the insider usually does not cause any price inflation or deflation . . . . Similarly, when a stock declines after a company announces worse than expected earnings or rises when a company announces better than expected earnings, the decline or rise itself does not result from the defendant's insider trading . . . . Indeed, the change in stock price following the public announcement of information that an insider traded on in advance does not measure the difference between a world in which the defendant acted lawfully and a world in which the defendant acted unlawfully.

*U.S.* v. *Martoma*, No. 12 Cr. 973, 2014 WL 4419682, at * 12 (S.D.N.Y. Sept. 8, 2014) (quoting *U.S.* v. *Rajaratnam*, No. 09 Cr. 1184, 2012 WL 362031, at *6 (S.D.N.Y. Jan. 31, 2012)).

Plaintiffs argued in their pre-motion letter that they were injured by defendants' alleged "*breach of the duty to disclose* the inside information in the SAC defendants' possession." (ECF No. 146, at 2 (emphasis in original).) They posited that if defendants had disclosed the information then Plaintiffs would not have traded or would have traded at different prices. As we explain above, this is too speculative and indirect to satisfy RICO's injury and proximate cause requirements. It also improperly assumes that the relevant "duty" is one of disclosure, as opposed to a duty to abstain from trading. In fact, where it would have been improper for the trader to disclose the information it

12

obtained, the SEC and courts have recognized that the duty to "disclose or abstain" operates in practice as a duty to *abstain*.[7]  Had Defendants abstained from trading here, Plaintiffs' positions would have been unaffected and they would have sustained precisely the same losses as they actually sustained.  As a result, as the Second Circuit explained in *Elkind,* a breach of a duty to disclose or abstain alone does not "cause" injury to contemporaneous traders.  Contemporaneous traders cannot allege causation in the context of insider trading on an open exchange because "no such fraud or inducement may be attributed to [an insider] trading on an impersonal market."  *Elkind*, 635 F.2d at 170.

Plaintiffs also cited *Shapiro* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228 (2d Cir. 1974), for the proposition that contemporaneous traders may prove "causation in fact" on the basis of an omission.  *Shapiro*, however, was a § 10(b) case, not a RICO case.  Its holding was grounded in the "underlying purpose of § 10(b) and Rule 10b-5"—to "secure fair dealing in the securities markets" and "promot[e] full disclosure"— public policy concerns that are specific to the securities laws.  *See id.* at 235, 241.  Its discussion of "causation-in-fact" referred only to the principle of "but-for" causation, or "reliance," as applied in the context of securities claims, not to RICO's proximate cause requirement.  *Id*.  And to the extent *Shapiro* did not analyze proximate cause separately from "causation in fact,"  it has been overruled even in the securities context by the Private Securities Litigation Reform Act of 1995, ("PSLRA"), 15 U.S.C. § 78u-4(b)(4), and by the Supreme Court's holding in *Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336, 343, 346 (2005),

---

[7]    As the SEC acknowledged in *Cady, Roberts*, "[i]f . . . disclosure prior to effecting a purchase or sale would be improper or unrealistic under the circumstances, we believe the alternative is to forego the transaction."  *In re Cady, Roberts & Co.*, Exchange Act Release No. 6668, 1961 WL 60638, at *3 (Nov. 8, 1961); *see also Fridrich*, 542 F.2d at 318 (noting that it is an error to "presuppos[e] that the duty to disclose is absolute, and that the plaintiff is injured when the information is denied him.  The duty to disclose . . . is not an absolute one.").

which holds that the PSLRA "makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation *and* loss." *Id*. at 346 (emphasis added). In short, *Shapiro* did not address RICO's "stringent" proximate cause requirement, which, as three recent Supreme Court decisions have made clear, imposes the further obligation on plaintiffs to plead that their alleged injury was "direct." *See Hemi*, 559 U.S. at 9; *Anza*, 547 U.S. at 463; *Holmes*, 503 U.S. at 267.

Finally, Plaintiffs cited a single district court decision permitting plaintiffs to satisfy their burden of demonstrating RICO proximate cause based on an insider trader's failure to disclose material, nonpublic information. *See In re Motel 6 Sec. Litig*., No. 93 Civ. 2183, 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997). In *Motel 6*, the court considered causation from a securities law perspective, did not analyze the RICO proximate cause requirement and did not cite to, or address, binding Supreme Court precedent—*Holmes*—which had been decided five years earlier. No court has followed *Motel 6* since it was decided nearly twenty years ago, and subsequent Supreme Court decisions, discussed above, have reemphasized the strict proximate cause requirement under RICO. *See Hemi,* 559 U.S. 1, 9; *Anza,* 547 U.S. 451, 457-58.

## II.    Plaintiffs Cannot Invoke Civil RICO's Criminal Conviction Exception

Plaintiffs' RICO claims are all premised on the fact that the SAC Management Companies pleaded guilty to one count of securities fraud. (¶¶ 568-73.) They hope to fall within a section of the PSLRA that provides that civil RICO claims may be premised on "conduct that would have been actionable as fraud in the purchase or sale of securities" only where the defendant "is criminally convicted in connection with the fraud." 18 U.S.C. § 1964(c). Courts, however, have repeatedly emphasized that the "criminal

conviction exception" to the PSLRA bar is "narrow[]" and available only to victims who are "specifically" defrauded by the defendant's criminal conduct.  *See Krear* v. *Malek*, 961 F. Supp. 1065, 1076 (E.D. Mich. 1997); *see also In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 284 F. Supp. 2d 511, 623 (S.D. Tex. 2003) ("[T]he [conviction] exception is only available to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud.") (quoting *Krear*, 961 F. Supp. at 1076).

      Here, the SAC Management Companies did not plead guilty to any conduct by Mathew Martoma or any other person who traded in Elan and Wyeth securities, so Elan and Wyeth trading cannot serve as a civil RICO predicate act.  Moreover, the Court did not accept Plaintiffs' argument that contemporaneous traders in Elan and Wyeth stock were "specifically" defrauded by defendants' trading, so those traders may not rely upon the "criminal conviction exception."  *Rogers* v. *Nacchio*, No. 05 Civ. 60667, 2006 WL 7997562, at *4 (S.D. Fla. Jun. 6, 2006).  Accordingly, Plaintiffs, who are persons who traded in Elan and Wyeth stock, cannot rely on the criminal conviction exception in this case.

      Congress enacted the PSLRA bar "to correct the misapplication of RICO in the securities fraud context." *Krear*, 961 F. Supp. at 1076.  It was designed to "prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages."  *MLSMK Inv. Co.* v. *JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011) (internal quotation marks omitted).  As then-SEC Chairman Arthur Levitt explained in testimony before the Senate in connection with the passage of the PSLRA: "[b]ecause the securities laws generally provide adequate remedies for those injured by securities fraud, it is both unnecessary and unfair to expose defendants in securities cases to

the threat of treble damages and other extraordinary remedies provided by RICO."  S. Rep. No. 104–98, at 19 (1995).

Following this clear Congressional mandate to distinguish between securities cases and RICO cases, courts have narrowly circumscribed both the fraudulent conduct that can serve as a civil RICO predicate act *and* the plaintiffs who can avail themselves of the exception.  In *Krear*, for example, the court explained that the exception applied only to conduct that was "specifically" part of a conviction (either a jury finding or guilty plea), and that the only persons who could invoke the exception are "named victims" of that specific conduct.  *Krear*, 961 F. Supp. at 1076-77.  Even though the plaintiffs in that case—alleged victims of a securities fraud Ponzi scheme—were purported victims of the scheme, the court held that they could not proceed with civil RICO claims because they had not been "named" by the government as specific victims of the defendant's offense of conviction.  *Id.* at 1077.  The court acknowledged that not even all "named victims" in an indictment could avail themselves of the exception because a defendant "could plead guilty to defrauding only certain plaintiffs as part of a plea agreement.  This "court . . . must presume that Congress was sufficiently familiar with the criminal prosecution process, including plea bargaining, so that it understood that a defendant who may have defrauded many plaintiffs could be convicted of defrauding only certain of those plaintiffs."  *Id.*

Similarly, in *Estate of Gottdiener* v. *Salek*, No. 13 Civ. 01824, 2014 WL 1100133, at *7 (S.D.N.Y. Mar. 19, 2014), the court held that plaintiffs were precluded from bringing RICO claims even though they had bought the same securities that the defendants had been convicted of fraudulently selling.  The court reasoned that "[t]o hold otherwise could mean that anyone who purchased the five stocks named in Defendants' [Criminal]

16

Informations during the relevant period for each security, together totaling more than five years, could bring a substantive RICO claim." *Id.*

The court in *Rogers* v. *Nacchio* applied *Krear* to the insider trading context, and held that shareholders in a public company could not maintain a RICO claim against an insider trader. Plaintiffs in *Rogers* were shareholders in Qwest Communications, and sued various individuals under RICO, including Robin Szeliga, the former CFO of Qwest, who had been convicted of insider trading in Qwest shares. *Rogers*, 2006 WL 7997562, at *4. Because there were "no allegations that Defendant Szeliga defrauded Plaintiffs," and because the criminal conviction exception must be construed "as narrowly as possible," the Court dismissed the civil RICO claims against Szeliga. *Id.* ("[T]he exception is only available to those plaintiffs against whom a defendant has been specifically convicted of criminal fraud.").[8]

Here, the SAC Management Companies did not plead guilty to securities fraud based on Mathew Martoma's conduct or the conduct of any person who traded Elan or Wyeth securities, so there is no predicate act that could serve as the basis for shareholders of Elan and Wyeth—the Plaintiffs in this lawsuit—to bring civil RICO claims. (*See* Ex. 4, Tr. 25:12-30:3); *see also Krear*, 961 F. Supp. at 1077; *Gottdiener,* 2014 WL 1885789, at *2 (dismissing plaintiffs' claims for failure to "allege a sufficient connection between Defendants' convictions and the predicate acts" or the requisite "racketeering activity").

Plaintiffs themselves have acknowledged that the SAC Management Companies did not plead guilty to any conduct related to trading in Elan or Wyeth. In fact, they unsuccessfully petitioned the Court in SAC's criminal case to reject the guilty pleas on

---

[8] The Eleventh Circuit affirmed the dismissal of claims against Szeliga and others on the ground that plaintiffs had failed to plead a RICO claim, without reaching the application of the criminal conviction exception. *Rogers* v. *Nacchio,* 241 F. App'x 602, 608 (11th Cir. 2007).

that very basis, noting that "[u]nder the Plea Agreement . . . SAC is not required to plead guilty to insider trading in Elan and Wyeth" and arguing that "[t]he Court should reject the Plea Agreement because it allows SAC to plead guilty without admitting that it is guilty of the principal criminal conduct charged in the Indictment—insider trading in the securities of Elan Corporation, plc (Elan) and Wyeth."  (Ex. 5, at 1, 4; *see also* Ex. 6, at 2.)  Judge Swain rejected Plaintiffs' request, accepting the pleas as offered.  (Ex. 7, Tr. 8:17-9:2.)

In short, there can be no dispute that the SAC Management Companies were not criminally convicted of insider trading in Elan and Wyeth.  As such, the criminal conviction exception provided by § 1964(c) does not apply, and Plaintiffs' civil RICO claims are barred by the PSLRA.

We also note that the criminal conviction exception could not possibly support Plaintiffs' attempt to bring RICO claims that extend to the Buying Period or the Tysabri stock drop because that trading was never mentioned in the SAC Management Companies' indictment, and certainly was not part of defendants' plea allocutions.  The law is clear that the "criminal conviction" exception to the PSLRA bar is narrowly construed and applies only when a defendant has been criminally convicted "in connection with the fraud." 18 U.S.C. § 1964(c); *Estate of Gottdiener* v. *Sater*, No. 13 Civ. 01824, 2014 WL 1100133, *7 (S.D.N.Y. Mar. 19, 2014), *affirmed in relevant part on reconsideration*, No. 13 Civ. 01824, 2014 WL 1885789 (S.D.N.Y. May 12, 2014).  Here, the indictment did reference Martoma's trading in Elan and Wyeth, but *only* during the Selling Period, not during the Buying Period, and it did not mention the Tysabri stock drop.  (*See* Ex. 8, ¶¶ 14(f), 31(a); *see also* Ex. 4, Tr. 25:12-30:3.)  The SAC Management Companies did not allocute to *any* unlawful conduct related to Elan or Wyeth, much less any conduct that occurred during the

18

Buying Period or to the Tysabri stock drop, which was not even charged in the indictment. *See id*. Indeed, when the FBI calculated SAC's avoided losses for the purposes of Martoma's criminal trial, it noted that "[t]he loss avoidance would be much larger" if the Tysabri stock drop were included, but admitted that this would be "an inappropriate way to calculate loss avoidance." (Ex. 2, at 2.) In fact, in the Government's summation at the end of trial, the prosecutor argued that the Tysabri stock drop was a "distraction" and a "mirage"—it clearly was not part of the criminal charge the Government had asserted. (Ex. 3, Tr. 2985:21-2986:22.) For these reasons, Plaintiffs' RICO claims cannot be predicated on any trading in Elan and Wyeth, which was not the subject of defendants' guilty plea, and certainly not to the Buying Period or the Tysabri stock drop, which was not even included in the indictment. (Ex. 8.)

　　　　Moreover, just as in *Rogers* and *Krear*, none of the Plaintiffs are "specific" victims of the conduct in the indictment to which the SAC Management Companies pleaded guilty. (Ex. 8.) Indeed, as noted above, in the SAC criminal case Plaintiffs sought recognition that they were "victims" under the Crime Victims' Rights Act, 18 U.S.C. § 377. (Ex. 5, at 5, 6; Ex. 6, at 1.) The United States Attorney's Office opposed Plaintiffs' application, (Ex. 1.), and the court did not accord them victim status. As such, Plaintiffs cannot avail themselves of the criminal conviction exception. *Gottdeiner*, 2014 WL 1100133, at *7 ("To hold otherwise could mean that anyone who purchased the five stocks named in Defendants' Informations during the relevant period for each security, together totaling more than five years, could bring a substantive RICO claim."). Accordingly, Plaintiffs' civil RICO claims are barred by the PSLRA.

### III.   Plaintiffs Have Not Alleged The Required "Distinctness" Between the "Persons" That Committed The Violation And The "Enterprise" Through Which the Violation Was Committed

Section 1962(c)—the predicate violation for all of Plaintiffs' RICO claims—requires plaintiffs to distinguish between the "person" that committed the predicate RICO violation and the "enterprise" through which the "person" conducted the violation.  *Cedric Kushner Ltd.* v. *King*, 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name."); *Gross* v. *Waywell*, 628 F. Supp. 2d 475, 498-99 (2009) (Marrero, J.) (internal quotations omitted). This requirement stems from the text of the RICO statute, which mandates a clear separation between the culpable party and the alleged racketeering enterprise—and forbids any claims against the alleged enterprise itself.  *See* 18 U.S.C. § 1962(c); *Haroco, Inc.* v. *Am. Nat. Bank & Trust Co. of Chicago*, 747 F.2d 384, 400 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985) ("[S]ection 1962(c) requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity.").

The Second Circuit has held that the requisite "distinctness" between the "person" and the "enterprise" cannot be established among related corporate entities when they "operate within a unified corporate structure" and are "guided by a single corporate consciousness."  *Discon, Inc.* v. *NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998); *see also Riverwoods Chappaqua Corp.* v. *Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("[W]here a corporate entity is named as the defendant 'person,' it is not distinct from any alleged 'enterprise' consisting of that corporate defendant together with related companies, employees, or agents."); *Palatkevich* v. *Choupak*, No. 12 Civ. 1681, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) ("For

distinctness purposes, the related companies . . . add nothing to the corporate defendant itself.").

Simply put, a plaintiff cannot establish distinctness by alleging that one corporate entity is the "person" and that a related company or companies are the "enterprise."  *See Cruz* v. *FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) ("[C]orporations that are legally separate but 'operate within a unified corporate structure' and 'guided by a single corporate consciousness' cannot be both the 'enterprise' and the 'person' under § 1962(c)"); *Physicians Mut. Ins. Co.* v. *Greystone Servicing Corp., Inc.*, No. 07 Civ. 10490, 2009 WL 855648, at *7 (S.D.N.Y. Mar. 25, 2009) (finding insufficient distinctness when complaint alleged that management company and individuals were the RICO persons and that the insurance company they controlled was the enterprise); *Reed Const. Data Inc.* v. *McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 350 (S.D.N.Y. 2010) (dismissing RICO claim for lack of distinctness where complaint alleged an "enterprise" consisting of the defendant corporation, its subsidiary, and agents); *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 346 (S.D.N.Y. 2007) (dismissing RICO claim for lack of distinctness and noting that "inclusion of affiliates and subsidiaries located around the world . . . do[es] not distinguish the enterprise from the person").

Here, Plaintiffs fail to allege distinctness.  They contend that the SAC Management Companies are "persons" who acted through, and to benefit, the RICO "enterprise," which was comprised of the SAC Investment Funds.  (¶¶ 542-53; 561-64; 579-81.)  The SAC Investment Funds, however, are passive investment pools that operate through their respective management companies.  Indeed, investment decisions for the SAC Investment Funds are made by the SAC Management Companies.  (¶¶ 552, 581.)  And,

according to Plaintiffs' own allegations, all the SAC Investment Funds as well as the SAC Management Funds were "collectively managed and controlled" by a single individual. (¶ 553.)  In other words, Plaintiffs allege that the entities operated within a "unified corporate structure" that was "guided by a single corporate consciousness." *See Discon,* 93 F.3d at 1064.

Plaintiffs attempt to evade the requirement of distinctness by alleging that the SAC Investment Funds held money both for SAC employees and for external investors. (¶ 550.)  Even if this were true, the ultimate source of some of the funds in the SAC Investment Funds is irrelevant.[9]  As the Second Circuit has explained, "[t]he distinctness requirement may not be circumvented" by "alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Riverwoods,* 30 F.3d at 344 (internal quotations omitted); *Reed Const. Data,* 745 F. Supp. 2d at 350.

Plaintiffs' failure to allege the distinctness required under § 1962(c) is a fatal defect in their pleading.  Since all of Plaintiffs' RICO claims are predicated on violations of § 1962(c), including their claims for conspiracy under § 1962(d), their failure to allege distinctness requires dismissal of all their RICO claims.  *See, e.g.*, *First Capital Asset Mgmt., Inc.* v. *Brickelbush, Inc.*, 150 F. Supp. 2d 624, 636 (S.D.N.Y. 2001) *aff'd sub nom*. *First Capital Asset Mgmt., Inc.* v. *Satinwood, Inc.,* 385 F.3d 159 (2d Cir. 2004) ("Because plaintiffs' substantive RICO claims are infirm, there is no basis for a claim of conspiracy.").

---

[9]     As the United States Court of Appeals for the D.C. Circuit has noted, "[t]he fund manager—the adviser—controls the disposition of the pool of capital in the fund . . . .  Having bought into the fund, the investor fades into the background; his role is completely passive." *Goldstein* v. *S.E.C.*, 451 F.3d 873, 879-80 (D.C. Cir. 2006).

## IV.   The SAC Management Companies Are Not Vicariously Liable Under RICO

Following the "basic principle that RICO is intended to protect and not victimize organizations," courts have held that corporations may be held liable for the actions of their employees in violation of RICO only where the corporation itself was an "active perpetrator of the fraud or a central figure in the criminal scheme." *USA Certified Merchants, LLC* v. *Koebel*, 262 F. Supp. 2d 319, 328 (S.D.N.Y. 2003) (Marrero, J.) (quoting *Qatar Nat'l Navigation & Transp. Co. Ltd.* v. *Citibank, N.A.*, No. 89 Civ. 0464, 1992 WL 276565, at *7 (S.D.N.Y. Sept. 24, 1992)) (internal quotation marks omitted).  Holding a "corporation liable for the RICO violations of its employees conflicts with the purpose of the RICO statute." *Qatar Nat'l*, 1992 WL 276565, at *8.  Accordingly, the scope of vicarious liability under RICO is far more limited than the expansive nature of corporate vicarious criminal liability.  *See U.S.* v. *Twentieth Century Fox Film Corp.*, 882 F.2d 656, 660 (2d Cir. 1989).

Here, while the SAC Management Companies have pleaded guilty to criminal violations, those pleas were based entirely on common law principles of *respondeat superior* that do not apply in the RICO context.  (¶¶ 565–67; 575–77; 582–84.)  Plaintiffs do not adequately allege, and cannot prove, that the SAC Management Companies were "active perpetrator[s]" or "central figure[s]" in a criminal scheme.  No SAC senior executives are named defendants on the RICO claims.  (¶¶ 687–720.)  Nor could they be, since none have been charged, much less convicted, of securities fraud.  Further, Plaintiffs fail to allege knowing or reckless involvement by any SAC senior executives in the alleged predicate acts.  In the sections entitled "The Predicate Racketeering Acts," Plaintiffs describe violations allegedly committed by the corporate entities "through the actions of" nine SAC employees, none of whom are alleged to be officers or directors of SAC.  (¶¶ 565–567,

23

582–584.)  A corporation cannot be held vicariously liable under RICO for violations that were only committed "through the actions" of low-level employees.  *See Koebel*, 262 F. Supp. 2d at 328 ("In order to demonstrate that a corporation is directly involved or central to the RICO scheme alleged, [p]laintiffs must show that a corporate officer or director had knowledge of or was recklessly indifferent toward the unlawful activity.").

## V.   Plaintiffs Fail To Allege A RICO "Enterprise" Since The Alleged Enterprise Is Comprised Exclusively Of Corporate Entities

Section 1962(c) requires plaintiffs to prove the existence of a RICO "enterprise," defined in 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  Under the plain meaning of § 1961(4), "associated in fact" enterprises cannot be composed exclusively of partnerships or corporations because those entities are listed in the first clause of § 1961(4)—which extends to any individual, partnership, corporation, association, or other legal entity—but not the second clause— which is limited to "union[s]" or "group[s] of individuals associated in fact."  Here, Plaintiffs allege an "associated in fact" enterprise composed exclusively of corporate entities, which fails to meet the requirements of § 1961(4).  *But see U.S.* v. *Huber*, 603 F.2d 387, 394 (2d Cir. 1979).

Dated:   New York, New York
         September 22, 2014


PAUL, WEISS, RIFKIND, WHARTON          WILLKIE FARR & GALLAGHER LLP
& GARRISON LLP

By: _Daniel J. Kramer_                  By: _Martin Klotz_
        Daniel J. Kramer                        Martin B. Klotz
        Michael E. Gertzman                     Michael S. Schachter
        Audra J. Soloway                        Sameer Advani
        Jonathan H. Hurwitz

1285 Avenue of the Americas             787 Seventh Avenue
New York, NY 10019-6064                 New York, NY 10019-6099
(212) 373-3000                          (212) 728-8102
dkramer@paulweiss.com                   mklotz@willkie.com
mgertzman@paulweiss.com                 mschachter@willkie.com
asoloway@paulweiss.com                  sadvani@willkie.com
jhurwitz@paulweiss.com

*Attorneys for Defendants S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR
Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC,
Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC,
Steven A. Cohen*