UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID E. KAPLAN, et al., Individually and on Behalf of All Others Similarly Situated, | : |
| Plaintiffs, | : No. 12 Civ. 9350 (VM) (KNF) |
| - against - | : <u>ECF CASE</u> |
| S.A.C. CAPITAL ADVISORS, L.P., et al., | : <u>ORAL ARGUMENT REQUESTED</u> |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, et al., Individually and on Behalf of All Others Similarly Situated, | : |
| Plaintiffs, | : No. 13 Civ. 2459 (VM) (KNF) |
| - against - | : <u>ECF CASE</u> |
| S.A.C. CAPITAL ADVISORS, L.P., et al., | : <u>ORAL ARGUMENT REQUESTED</u> |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO <u>SAC'S MOTION TO DISMISS PLAINTIFFS' RICO CLAIMS</u>

**SCOTT+SCOTT,**
**ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York  10174
Telephone: (212) 223-6444

**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina  29464
Telephone: (843) 216-9000

*Co-Lead Counsel for the* Birmingham *Plaintiffs and the Wyeth Investor Class*

**WOHL & FRUCHTER LLP**
570 Lexington Avenue, 16th Floor
New York, New York  10022
Telephone: (212) 758-4000

**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York  10016
Telephone: (212) 661-1100

*Co-Lead Counsel for the* Kaplan *Plaintiffs and the Elan Investor Class*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

CITATION CONVENTIONS AND DEFINITIONS ................................................. vii

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 2

A.     SAC's Insider Trading Scheme ............................................................. 2

B.     The SAC Indictment, Guilty Plea and Sentence ................................... 3

ARGUMENT ........................................................................................................... 4

I.     PLAINTIFFS HAVE SUFFICIENTLY PLED RICO STANDING BY SETTING
       FORTH A CONCRETE INJURY DIRECTLY AND PROXIMATELY CAUSED
       BY DEFENDANTS' FRAUD ......................................................................... 4

       A.     Plaintiffs Have Pled RICO Proximate Cause ........................................ 4

              1.     Defendants Ignore Controlling Second Circuit Decisions Holding
                     that RICO Proximate Cause Is the Same as Causation Under the
                     Exchange Act ............................................................................... 4

              2.     Plaintiffs Have Pled Loss Causation ........................................... 7

              3.     Plaintiffs Have Pled Transaction Causation/Reliance ................. 7

              4.     Defendants' Assertion That Insider Trading Is Not a Fraudulent
                     Omission Violates Long-Settled Supreme Court Precedent ....... 12

       B.     Plaintiffs Have Pled a Concrete Injury ................................................ 13

II.    THE RICO DEFENDANTS WERE "CRIMINALLY CONVICTED IN
       CONNECTION WITH THE FRAUD" ON PLAINTIFFS AND RICO'S
       CRIMINAL CONVICTION EXCEPTION THEREFORE APPLIES .............. 14

       A.     Insider Trading in Elan and Wyeth Was the Principal Conduct Charged in
              the SAC Indictment and Was the Basis for Most of the Criminal Fine
              Imposed ............................................................................................... 14

       B.     Neither Prior Case Law Nor the PSLRA's Legislative History Supports
              the SAC Defendants'Arguments .......................................................... 16

       C.     The Phrase "in Connection with" Has Been Broadly Construed in Related
              Contexts ............................................................................................... 19

III.   THE COMPLAINT ESTABLISHES THE REQUISITE "DISTINCTNESS"
       BETWEEN THE PERSONS VIOLATING RICO AND THE RELATED RICO
       ENTERPRISES ............................................................................................ 20

IV.     THE COMPLAINT AMPLY ALLEGES GROUNDS FOR FINDING THE RICO
DEFENDANTS VICARIOUSLY LIABLE ...................................................................24

V.     A RICO "ENTERPRISE" MAY BE COMPRISED EXCUSIVELY OF
CORPORATE ENTITIES, AS PLED IN THE COMPLAINT........................................25

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Affiliated Ute Citizens of Utah v. United States,*
    406 U.S. 128 (1972)................................................................8

*Bankers Trust Co. v. Rhoades,*
    859 F.2d 1096 (2d Cir. 1988).......................................................13

*Boudinot v. Shrader,*
    No. 09 Civ. 10163 (LAK), 2012 WL 489215 (S.D.N.Y. Feb. 15, 2012) ...............20

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639 (2008)..............................................................6, 12

*Cedric Kushner Promotions Ltd. v. King,*
    533 U.S. 158 (2001)..........................................................1, 21, 23

*Chiarella v. United States,*
    445 U.S. 222 (1980)..............................................................10, 13

*Cruz v. FXDirectDealer, LLC,*
    720 F.3d 115 (2d Cir. 2013)......................................................23, 24

*Dirks v. SEC,*
    463 U.S. 646 (1983)..............................................................11, 13

*Discon, Inc. v. NYNEX Corp.,*
    93 F.3d 1055 (2d Cir. 1996).......................................................22, 23

*Elkind v. Liggett & Myers, Inc.,*
    635 F.2d 156 (2d Cir. 1980).........................................................9

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ...............................................16

*Evans v. City of Chicago,*
    434 F.3d 916 (7th Cir. 2013) ......................................................13

*First Nationwide Bank v. Gelt Funding Corp.,*
    27 F.3d 763 (2d Cir. 1994), explained ...........................................4, 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
    574 F.3d 29 (2d Cir. 2009)..........................................................7

*Fridrich v. Bradford*,
   542 F.2d 307 (6th Cir. 1976) .................................................................................9

*Estate of Gottdiener v. Sater*,
   No. 13 Civ. 01824, 2014 WL 1100133 (S.D.N.Y. Mar. 19, 2014) ........................17

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009)...................................................................4

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)............................................................................................12

*Krear v. Malek*,
   961 F. Supp. 1065 (E.D. Mich. 1997)............................................................16, 17

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*,
   967 F.2d 742 (2d Cir. 1992)..............................................................................5, 8

*Makowski v. United Bhd. of Carpenters & Joiners*,
   No. 08 Civ. 6150, 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010) ...........................13

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008).............................................................................5, 13

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006).............................................................................................19

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
   651 F.3d 268 (2d Cir. 2011)...............................................................................20

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999)................................................................................5

*In re Motel 6 Sec. Litig.*,
   No. 93 Civ. 2183 (JFK), 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997)..................5, 14

*Palatkevich v. Choupak*,
   No. 12 Civ. 1681 (CM), 2014 WL 1509236 (S.D.N.Y. Jan 24, 2014)...................24

*In re Parmalat Sec. Litig.*,
   479 F. Supp. 2d 332 (S.D.N.Y. 2010)..................................................................24

*Physicians Mut. Ins. Co. v. Greystone Serv. Corp.*,
   No. 07 Civ. 10490 (NRB), 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009)...............24

*Powers v. British Vita, P.L.C.*,
   57 F.3d 176 (2d Cir. 1995)..................................................................................5

*Reed Const. Data Inc. v. McGraw-Hill Cos.*,
  745 F. Supp. 2d 343 (S.D.N.Y. 2010)....................................................................................24

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
  30 F.3d 339 (2d Cir. 1994)..................................................................................................23

*Rogers v. Nacchio*,
  241 F. App'x 602 (11th Cir. 2007) .....................................................................................18

*Rogers v. Nacchio*,
  No. 05-60667-Civ, 2006 WL 7997562 (S.D. Fla. June 6, 2006), *aff'd in part on other
  grounds, appeal dismissed in part*, 241 F. App'x 602 (11th Cir. 2007)...........................17, 18

*Rogers v. Nacchio*,
  No. 05-60667-Civ, 2007 WL 1064314 (S.D. Fla. Apr. 6, 2007)...........................................17

*Saxe v. E.F. Hutton & Co.*,
  789 F.2d 105 (2d Cir. 1986).................................................................................................20

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  495 F.2d 228 (2d Cir. 1974)...............................................................................................7, 8

*Thomas H. Lee Equity Fund V, L.P. v. Mayer, Brown, Rowe & Maw LLP*,
  No. 07 MDL 1092 (JSR), ECF No. 707 (S.D.N.Y. May 3, 2010), *objections overruled
  on other grounds*, 2010 WL 3911780 (S.D.N.Y. Sept. 28, 2010) .........................................16

*U1IT4less, Inc. v. FedEx Corp.*,
  896 F. Supp. 2d 275 (S.D.N.Y. 2012)...............................................................................22, 23

*United States v. Falcone*,
  257 F.3d 226 (2d Cir. 2001).................................................................................................13

*United States v. Gupta*,
  904 F. Supp. 2d 349 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014).....................10, 11

*United States v. Huber*,
  603 F.2d 387 (2d Cir. 1979).................................................................................................25

*United States v. Martoma*,
  No. 12 Cr. 973 PGG, 2014 WL 4384143 (S.D.N.Y. Sept. 4, 2014)..................................12, 19

*United States v. Martoma*,
  No. 12 Cr. 973 PGG, 2014 WL 4419682 (S.D.N.Y. Sept. 8, 2014)........................................11

*United States v. O'Hagan*,
  521 U.S. 642 (1997).............................................................................................................13

*United States v. Ortega,*
   385 F.3d 120 (2d Cir. 2004)..................................................................................20

*USA Certified Merchants, LLC v. Koebel,*
   262 F. Supp. 2d 319 (S.D.N.Y. 2003)....................................................................24

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,*
   530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).....................13

**FEDERAL STATUTES AND RULES**

18 U.S.C. § 1962(c) ...........................................................................................20, 21

18 U.S.C. § 1964(c) ...............................................................................................14

Fed. R. Civ. P. 9(b) ...............................................................................................24

Fed. R. Civ. P. 12(b)(6)............................................................................................4

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b)................................5, 19, 20

Securities Exchange Act of 1934, Section 20A, 15 U.S.C. § 78t-1.....................................4, 6, 10

U.S. Sentencing Guidelines § 2B1.4.............................................................................11

**LEGISLATIVE HISTORY**

*Insider Trading: Hearing Before the H. Subcomm. on Telecomms. and Fin.*, 100th Cong.
   (1988), *available at* 1988 WL 1096435..................................................................6, 9

**OTHER AUTHORITIES**

Gregory P. Joseph, *Civil RICO: A Definitive Guide* (3d ed. 2010) .......................................21, 25

Robert A. Prentice, *Clinical Trial Results, Physicians, and Insider Trading*, 20 J. LEGAL
   MED. 195 (1999) ...........................................................................................11

## <u>CITATION CONVENTIONS AND DEFINITIONS</u>

<u>Citation Conventions</u>

Citations in the form "¶ __ (p. __)" are to the Joint Consolidated Second Amended Class Action Complaint [ECF No. 162].

References to "Section 10(b)" and "Section 20A" are to the Exchange Act.  References to a "Rule" are to the applicable Federal Rule of Civil Procedure.

<u>Definitions</u>

| | |
|---|---|
| bapi | Bapineuzumab, an Alzheimer's disease drug under joint development by Elan and Wyeth |
| Cohen | Defendant Steven A. Cohen |
| Complaint or Compl. | Joint Consolidated Second Amended Class Action Complaint [ECF No. 162] |
| Elan | Elan Corporation, plc |
| Exchange Act | Securities Exchange Act of 1934 |
| *Fairfax* | *Fairfax Financial Holdings Ltd. v. SAC Capital Management LLC*, No. L-2032-06 (N.J. Super. Ct.) |
| Gilman | Defendant Sidney Gilman |
| Hurwitz Decl. | Declaration of Jonathan H. Hurwitz in Support of SAC's Motion to Dismiss Plaintiffs' RICO Claims, dated September 22, 2014 [ECF No. 166] |
| Indictment | Indictment filed in *United States v. S.A.C. Capital Advisors, L.P.*, No. 13 Cr. 541 (LTS) [ECF No. 1] |
| Insider Buying Claims | Claims asserted with respect to Defendants' trades during the period August 23, 2006 to July 18, 2008 for the Elan investor class and January 14, 2008 to July 18, 2008 for the Wyeth investor class |
| Martoma | Defendant Mathew Martoma |
| Plaintiffs | David E. Kaplan, Michael S. Allen, Chi Pin Hsu, Gary W. Muensterman, Fred M. Ross, City of Birmingham Retirement and Relief System, and KBC Asset Management NV |

| | |
|---|---|
| Plea Agreement | Plea Agreement, dated November 1, 2013, in *United States v. S.A.C. Capital Advisors, L.P.*, No. 13 Cr. 541 (LTS) (Wohl Decl. Ex. A) |
| Plea Hearing | Plea hearing, held November 8, 2013, in *United States v. S.A.C. Capital Advisors, L.P.*, No. 13 Cr. 541 (LTS) (Hurwitz Decl. Ex. 4) |
| Pre-Motion Letter | Letter, dated Aug. 1, 2014, from D. Kramer to E. Wohl (Wohl Decl. Ex. B) |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| Response Letter | Letter, dated Aug. 5, 2014, from E. Wohl to D. Kramer (Wohl Decl. Ex. C) |
| RICO | Racketeer Influenced and Corrupt Organizations Act |
| SAC | Defendant S.A.C. Capital Advisors, L.P. together with its affiliates |
| SAC Defendants | S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC and Steven A. Cohen |
| SAC Investment Funds | The entities holding SAC's investment capital that profited from the SAC Management Companies' insider trading, which entities are named as defendants in rem in *United States v. S.A.C. Capital Advisors, L.P.*, No. 13 Civ. 5182 (RJS) |
| SAC Management Companies | Defendants S.A.C. Capital Advisors, L.P., S.A.C. Capital Advisors, LLC and CR Intrinsic Investors, LLC |
| SAC Mem. | SAC's Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' RICO Claims, filed September 22, 2014 [ECF No. 165] |
| SEC | United States Securities and Exchange Commission |
| SLUSA | The Securities Litigation Uniform Standards Act of 1998 |
| USAO | United States Attorney's Office for the Southern District of New York |
| Wohl Decl. | Declaration of Ethan D. Wohl in Opposition to the SAC Defendants' Motion to Dismiss Plaintiffs' RICO Claims, dated October 14, 2014 |

Plaintiffs respectfully submit this memorandum of law in opposition to SAC's Motion to Dismiss Plaintiffs' RICO Claims, dated September 22, 2014 [ECF No. 164].  RICO is pled as the Fourth, Fifth and Sixth Counts in the Complaint.  *See* ¶¶ 687-720 (pp. 194-98).

## <u>INTRODUCTION</u>

Each of the principal arguments Defendants make in support of dismissal is foreclosed by RICO's statutory language or by controlling Supreme Court or Second Circuit precedent.

First, Defendants' proximate cause arguments ignore the many Second Circuit decisions holding that when RICO is predicated on fraud, RICO's causation requirements are the same as those under the securities laws.  The premise of Defendants' argument – that RICO requires something more – is thus incorrect, and their principal contention – that causation does not exist because their insider trading did not affect Plaintiffs' trading decisions – is as wrong here as it was when Defendants made the same argument in the prior round of motion to dismiss briefing. There is similarly no support for Defendants' claim that Plaintiffs' trading losses are insufficiently "concrete" to support a RICO claim.  *See* Point I below (at 4).

Second, RICO's "criminal conviction" exception applies because the RICO defendants named in the Complaint – the SAC Management Companies – (1) were indicted for a scheme that included the Elan and Wyeth trades, (2) pled guilty to that scheme, and (3) paid a criminal fine based almost entirely on the Elan and Wyeth trades.  *See* Point II below (at 14).

Third, Defendants' distinctness argument is foreclosed by *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158 (2001).  *See* Point III below (at 20).

Fourth, Defendants' vicarious liability argument is defeated by the Complaint's extensive allegations that SAC's institutional practices enabled and encouraged the predicate acts, and that SAC's owner, Cohen, was directly involved.  *See* Point IV below (at 24).

Fifth, Defendants' claim that an "association in fact" enterprise cannot be comprised only of corporate entities is refuted by controlling Second Circuit law.  *See* Point V below (at 25).

### STATEMENT OF FACTS

**A.   SAC's Insider Trading Scheme**

Plaintiffs' RICO claims are predicated on an extensive pattern of insider trading that the Government described in its Indictment of the SAC Management Companies as "substantial, pervasive and on a scale without known precedent in the hedge fund industry."  ¶ 609 (p. 178). As detailed in the Complaint, the relevant predicate acts of insider trading spanned 22 securities, ¶¶ 565, 582 (pp. 167, 170-72), and have resulted in guilty pleas by six SAC portfolio managers and analysts, the conviction after trial of two other portfolio managers, including Martoma, and the citation of two other portfolio managers as unindicted co-conspirators.  ¶ 422 (pp. 130-31).

This pattern of insider trading was facilitated by institutional practices at SAC.  ¶ 608 (p. 178).  As detailed in the Indictment, SAC "enabled and promoted the Insider Trading scheme" by: (1) seeking out and hiring portfolio managers and research analysts "with proven access to public company contacts likely to possess Insider Information;" (2) "financially incentiviz[ing]" their employees "to recommend to [Cohen] 'high conviction' trading ideas in which the [portfolio manager] had an 'edge' over other investors, but repeatedly were not questioned when making trading recommendations that appeared to be based on Inside Information;" and (3) "on numerous occasions . . . fail[ing] to employ effective compliance procedures or practices to prevent . . . insider trading."  ¶¶ 610-11 (p. 178-79).

Plaintiffs' Complaint further details (1) Cohen's repeated access to overtly inside information in connection with the trades in Elan and Wyeth at issue here, ¶¶ 175-83, 232-38 (pp. 60-62, 78-81); (2) SAC's practice of paying large fees to sell-side analyst firms as a quid-pro-quo for tips, ¶¶ 454-65 (pp. 138-40); (3) Cohen's demonstrated indifference to compliance,

as reflected in his testimony in the *Fairfax* case, ¶¶ 467-87 (pp. 140-50); and (4) SAC's systematic failure to detect or discipline employees for insider trading, ¶¶ 488-99 (pp. 150-52).

**B.**    **The SAC Indictment, Guilty Plea and Sentence**

The USAO indicted the SAC Management Companies on July 25, 2013.  Count One of the Indictment charged all four defendants with wire fraud; Counts Two through Five charged each of the defendants, respectively, with one count of securities fraud.  *See* Hurwitz Decl. Ex. 8. Count One of the Indictment was expressly based on a single, unified "Insider Trading scheme," *see id.* ¶ 6, that encompassed all of the predicate acts listed in the Complaint, ¶¶ 565, 582 (pp. 167, 170-72).  Count One also detailed the institutional practices discussed above.  *See* Hurwitz Decl. Ex. 8, ¶¶ 1, 6-7, 15-29.

On November 1, 2013, the SAC Management Companies entered into the Plea Agreement and simultaneously settled the related civil forfeiture action.  At the Plea Hearing held on November 8, 2013, the SAC Management Companies were informed that Count One of the Indictment required the government to prove that, among other things, (i) "there was a *scheme or artifice* to obtain money or property by materially false and fraudulent pretenses, representations or promises *as alleged in the indictment*," and (ii) that each defendant "knowingly and willfully participated in the *scheme or artifice to defraud* with knowledge of its fraudulent nature and with specific intent to defraud . . . ."  Hurwitz Decl. Ex. 4, at 15:7-13 (emphases added).  The SAC Management Companies each then pled guilty to Count One of the Indictment.  *See id.* at 39:11-22.

According to the Indictment, the insider trading in Elan and Wyeth securities generated profits and avoided losses of approximately $276 million.  Hurwitz Decl. Ex. 8, ¶ 31.a.  Only one other trade in the Indictment is assigned any dollar value – a trade through which Cohen avoided a $1.7 million loss in shares of Dell, Inc.  *Id.* ¶ 32.a.  Based on Plaintiffs' research, none of the

other insider trading schemes charged in the Indictment individually resulted in profits or

avoided losses of more than $6.4 million.  *See* Hurwitz Decl. Ex. 5, at 3.

The sentencing guideline stipulations in the Plea Agreement (Wohl Decl. Ex. A, at 4-6)

confirm that the profits and avoided losses from the Elan and Wyeth trades were more than an

order of magnitude larger than those of all other insider trades charged in the Indictment,

combined.  Indeed, the insider trading in Elan and Wyeth accounts for <u>93.6%</u> of the collective

Guidelines Fine for all Defendants.  *See* Hurwitz Decl. Ex. 5, at 1, 4.

<u>**ARGUMENT**</u>

<u>Legal Standard</u>.  In reviewing a motion to dismiss a RICO claim under Rule 12(b)(6), the

Court applies the same "plausibility" pleading standard as in other types of cases.  *See Gross v.*

*Waywell*, 628 F. Supp. 2d 475, 484-85 (S.D.N.Y. 2009).

**I.**   **PLAINTIFFS HAVE SUFFICIENTLY PLED RICO STANDING**
       **BY SETTING FORTH A CONCRETE INJURY DIRECTLY**
       <u>**AND PROXIMATELY CAUSED BY DEFENDANTS' FRAUD**</u>

       **A.**   <u>**Plaintiffs Have Pled RICO Proximate Cause**</u>

             **1.**   **Defendants Ignore Controlling Second Circuit**
                    **Decisions Holding that RICO Proximate Cause Is**
                    <u>**the Same as Causation Under the Exchange Act**</u>

Defendants contend that RICO "has much more stringent injury and proximate cause

requirements than § 20A," SAC Mem. at 10, but they simply ignore the series of Second Circuit

decisions holding that RICO proximate cause for claims based on fraud is the same as causation

for the underlying securities claims – "transaction causation/reliance" plus "loss causation."

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994), explained:

> In the context of [RICO] predicate acts grounded in fraud, the proximate cause
> requirement means that the plaintiff must prove both transaction and loss
> causation. Thus, in addition to showing that but for the defendant's
> misrepresentations the transaction would not have come about, the defendant

> must also show that the misstatements were the reason the transaction turned out to be a losing one.

*Id.* at 769 (citations omitted).  *First Nationwide*'s causation holding has been repeatedly reaffirmed in subsequent Second Circuit RICO decisions.  *See Powers v. British Vita, P.L.C.*, 57 F.3d 176, 189 (2d Cir. 1995) (applying *First Nationwide* to RICO claims premised on securities fraud; claims involved fraudulent omissions); *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169-70 (2d Cir. 1999); *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).

The Second Circuit also specifically equated Exchange Act and RICO causation in an insider trading case – *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742 (2d Cir. 1992).  There, the Court considered an insider trading claim brought by a tender offeror, addressed causation at length, and held that the same elements – transaction causation/reliance and loss causation – were required under both Section 10(b) and RICO.  *Id.* at 747.

Judge Keenan's decision in *In re Motel 6 Securities Litigation*, No. 93 Civ. 2183 (JFK), 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997), holding that class claims by contemporaneous traders satisfied RICO's proximate cause requirement, thus fits squarely in line with precedent.  In *Motel 6*, Judge Keenan specifically recognized that "the RICO proximate cause requirement means that a plaintiff must prove both transaction and loss causation," *id.* at *3, and held the causation requirements of RICO to be satisfied by the insider trading predicate acts pled there.  *Id.*

Defendants attempt to explain away *Motel 6* on the grounds that the Court "did not analyze the RICO proximate cause requirement" and "[n]o court has followed *Motel 6* since it was decided nearly twenty years ago . . . ."  SAC Mem. at 14.  As shown above, the first claim is simply wrong: the Court squarely addressed RICO's proximate cause requirement in a 616-word section titled "**1. RICO's Proximate Cause Requirement**."  The second claim is economical

with the facts: "[n]o court has followed *Motel 6*," but no court has disagreed with it either, and the PSLRA virtually eliminated RICO claims based on insider trading by the time it was decided.

As the cases above show, Defendants' argument that RICO "has much more stringent injury and proximate cause requirements than § 20A," SAC Mem. at 10, is flatly wrong. Unsurprisingly, that assertion is totally unsupported in Defendants' brief. Defendants' suggestion that causation for RICO should consider different factors than causation for the underlying predicate acts is also directly refuted by the Supreme Court's ruling in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008).

In *Bridge*, the defendants argued that the Court should engraft a requirement of "first-party" reliance, *i.e.*, reliance directly by the plaintiff, as an element of RICO proximate cause, based on the common law of fraud. The Court rejected this argument, explaining that a common law requirement "simply has no place in a remedial scheme keyed to the commission of mail fraud, a statutory offense that is distinct from common-law fraud," *id.* at 656.

*Bridge* thus recognizes that RICO's causation requirement should be informed by the underlying predicate act's requirements, and this is particularly true in the present case, where the specific purpose of the relevant statute, Section 20A, was to overrule the restrictive causation rules that Defendants seek to resurrect. *See Insider Trading: Hearing Before the H. Subcomm. on Telecomms. and Fin.*, 100th Cong. (1988), *available at* 1988 WL 1096435, at *24 n.25.

Defendants avoid characterizing their causation arguments as a challenge either to transaction causation/reliance or to loss causation – both of which are well-defined by extensive case law. Instead, they subdivide the conduct at issue into a series of steps, and then generically deem it to state "a very attenuated, speculative and indirect claim of injury." SAC Mem. at 8.

In fact, both recognized prongs of Exchange Act/RICO causation are fully satisfied here.

2.      **Plaintiffs Have Pled Loss Causation**

In the Complaint, Plaintiffs expressly plead loss causation and incorporate those paragraphs into their RICO allegations.  *See* ¶ 628 (p. 181) (citing ¶¶ 510-15 (pp. 155-56)). When the parties briefed motions to dismiss the Exchange Act claims, Defendants elected not to further challenge loss causation in light of these allegations.  *See* ECF No. 138, at 19.  In their present brief, Defendants similarly do not address or challenge Plaintiffs' loss causation allegations.  Nor could they: there is no question that if Defendants had fulfilled their duty to disclose the material, non-public information they received, the share prices of Elan and Wyeth would have reacted, as Plaintiffs allege.  *See* ¶¶ 511-12 (p. 155).

By sufficiently pleading loss causation, Plaintiffs have also sufficiently pled proximate cause, because loss causation is ordinarily understood as the fraud analog of proximate cause. *See*, *e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) ("we have repeatedly analogized the concept of loss causation to proximate cause").

Rather than directly challenge loss causation, Defendants assert that causation is absent here because their misconduct did not actually cause Plaintiffs to buy or sell Elan and Wyeth stock.  *See* SAC Mem. at 9 ("Plaintiffs made their own decision to buy or sell Elan and Wyeth stock. They did not lose money because defendants had material, nonpublic information when they traded the stocks.").  In order to avoid controlling case law, Defendants attempt to label this an argument about proximate cause.  But it is plainly an argument about transaction causation and, accordingly, is addressed in the section below.

3.      **Plaintiffs Have Pled Transaction Causation/Reliance**

As Defendants acknowledge, SAC Mem. at 13, *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228 (2d Cir. 1974), squarely addresses the issue of transaction causation/

reliance, which it also referred to as "causation in fact."[1]  *Shapiro* is dispositive on the issue of transaction causation/reliance, and directly refutes Defendants' central claim – that causation is absent here because Plaintiffs "made their own decision to buy or sell Elan and Wyeth stock" and purportedly were not affected by Defendants' illegal trading.  SAC Mem. at 9-12.

In *Shapiro*, 495 F.2d at 238, the defendants argued the same as Defendants do here – that "since defendants' sales were unrelated to plaintiffs' purchases and all transactions took place on anonymous public stock exchanges, there is lacking the requisite connection between defendants' alleged violations and the alleged losses sustained by plaintiffs."  The Second Circuit rejected this argument, holding that the presumption of reliance in *Affiliated Ute* "surely warrants our conclusion that the requisite element of causation in fact has been established by the admitted withholding by defendants of material inside information which they were under an obligation to disclose," 495 F.2d at 240.  The Court then summarized: "defendants were under a duty to the investing public, including plaintiffs, not to trade in or to recommend trading in Douglas stock without publicly disclosing the revised earnings information which was in their possession.  They breached that duty.  Causation in fact therefore has been established."  *Id.*

Defendants do not challenge these holdings.  Instead, they simply say that they are arguing proximate cause, and thus *Shapiro* is irrelevant because it addressed "causation in fact," *i.e.*, transaction causation.  *See* SAC Mem. at 13.  But no matter how Defendants try to characterize their argument, it challenges transaction causation and is foreclosed by *Shapiro*. *Shapiro* did not address loss causation, but that is not a reason to discount its transaction causation holding.

---

[1]     *Litton Industries*, 967 F.2d at 747-48, explains that "causation in fact" is just another term for transaction causation, and is drawn from the Supreme Court's decision in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

In lieu of addressing *Shapiro* on the merits, Defendants extensively quote "binding and persuasive" statements from *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980), that, they claim, support their "no causation" position.  SAC Mem. at 8-10.[2]  Defendants' use of these quotations is highly misleading: all are drawn from portions of the decision discussing *the alternative measures of damages that the Court rejected*.

*Elkind* in fact *upheld* the plaintiffs' claim for damages, and it did so based on a causation analysis that Defendants simply ignore.  Specifically, the Court noted that "[t]he entry into the market of a tippee with superior knowledge poses the threat that if he trades on the basis of the inside information he may profit *at the expense of investors who are disadvantaged by lack of the inside information*.  For this both the tipper and the tippee are liable."  635 F.2d at 169 (emphasis added).  Next, in adopting the disgorgement measure, the Court explained its proportionality to the *harm inflicted on contemporaneous investors*:

> In most cases the damages recoverable under the disgorgement measure would be roughly commensurate to the actual harm caused by the tippee's wrongful conduct.  In a case where the tippee sold only a few shares, for instance, the likelihood of his conduct ***causing any substantial injury to intervening investors buying without benefit of his confidential information*** would be small. If, on the other hand, *the tippee sold large amounts of stock, realizing substantial profits, the likelihood of **injury to intervening uninformed purchasers** would be greater and the amount of potential recovery thereby proportionately enlarged*.

635 F.2d at 172 (emphasis added).

Defendants' arguments overlook the key point made by *Elkind*: that the gain from insider trading is at the expense of the investors with whom they trade.  Insider trading does not create value.  SAC's gains from the illegal trades were necessarily equal to the loss to the uninformed

---

[2]      Defendants also cite *Fridrich v. Bradford*, 542 F.2d 307 (6th Cir. 1976).  As Plaintiffs previously explained in their Response Letter (at 3-4), however, *Fridrich*'s reasoning was rejected by the Second Circuit in *Elkind*, 635 F.2d at 168 n.23, and later by Congress when it enacted Section 20A, as the statute's legislative history explains.  *Insider Trading: Hearing Before the H. Subcomm. on Telecomms. and Fin.*, 100th Cong. (1988), *available at* 1988 WL 1096435, at \*24 n.25.

investors on the opposite side of those trades. The disgorgement measure adopted by *Elkind* and later enacted by Congress in Section 20A thus accurately reflects the harm to class members from Defendants' illegal trades.

Defendants also contend that "[o]ther courts and the Government" support their contention that contemporaneous traders do not suffer "concrete" injuries "proximately caused by insider trading." SAC Mem. at 11. In fact, none of the court decisions they cite address contemporaneous trader causation or injury at all.

First, Defendants rely on the USAO's November 8, 2013 letter to Judge Swain in SAC's criminal case. *Id.*; Hurwitz Decl. Ex. 1. In that letter, the USAO argued (at 2) that under the Crime Victims' Rights Act, "particular investors who trade without the benefit of inside information are not properly understood as the direct and proximate victims of those that do." In support, the USAO cited *Chiarella v. United States*, 445 U.S. 222 (1980), and Judge Rakoff's decision in *United States v. Gupta*, 904 F. Supp. 2d 349, 352 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014). The USAO's letter – drafted hastily to respond to Plaintiffs' motion the previous day – is both irrelevant, because it addresses an entirely separate statute, and fundamentally incorrect, because it miscites both of the opinions upon which it relies.

*Chiarella* held that insider trading is actionable as fraud when the insider or tipper owes a fiduciary duty to the stockholders of the company whose securities are traded. 445 U.S. at 227-29. Correspondingly, *Chiarella* held that in the absence of such a fiduciary duty, there can be no liability. *Id.* at 234-35. Thus, an outsider like the financial printer in *Chiarella* is not liable to stockholders under the "disclose or abstain" rule *Chiarella* adopted because, as the Supreme Court explained, "[h]e was not their agent, he was not a fiduciary, he was not a person in whom the sellers had placed their trust and confidence." *Id.* at 232-33.

*Gupta* makes the same point, though in language susceptible to misinterpretation, citing *Chiarella* and explaining that Congress, the SEC and the Supreme Court have "never treated [insider trading] as a fraud on investors" but instead have proceeded "on one or more theories of defrauding the institution (*or its shareholders*) that owned the information."  904 F. Supp. 2d at 352 (emphasis added).  Defendants obscure Judge Rakoff's reliance on *Chiarella* by omitting his citation to it from the middle of their block quote, without notation.  *See* SAC Mem. at 11-12.

The USAO's error was thus to view the SAC Defendants as in the same position as the financial printer in *Chiarella* – strangers to Plaintiffs who owed them no duty.  They were not.  Rather, the SAC Defendants were the tippees of a (temporary) insider, Dr. Gilman, and thus assumed the duty he owed to Plaintiffs to disclose or abstain from trading.  *See Dirks v. SEC*, 463 U.S. 646, 655 n.14 (1983); Robert A. Prentice, *Clinical Trial Results, Physicians, and Insider Trading*, 20 J. LEGAL MED. 195, 205 (1999) (physicians who act as "consultants to clinical drug trials typically will be temporary insiders because they are shown the results of the trial for a business purpose and certainly with an expectation of confidentiality").

Defendants also cite Judge Gardephe's sentencing ruling in *United States v. Martoma*, No. 12 Cr. 973 PGG, 2014 WL 4419682 (S.D.N.Y. Sept. 8, 2014), and assert that he "explained that the Sentencing Guidelines do not focus on contemporaneous trader losses because insider traders do not cause their losses."  SAC Mem. at 12.[3]  Judge Gardephe suggested no such thing.  Rather, his ruling addressed the unrelated issue of whether extrinsic market factors should be considered in calculating "gain" under the Sentencing Guidelines.  2014 WL 4419682, at *12.

---

[3]     Defendants also cite the U.S. Sentencing Guidelines.  SAC Mem. at 12.  The Sentencing Guidelines, however, observe simply that in the case of insider trading, "victims and their losses are difficult if not impossible to identify," § 2B1.4 cmt. – they do not purport to express a view as to who is a victim, or support the contention that contemporaneous traders are not harmed.

Judge Gardephe did address Defendants' argument in his recent ruling on Martoma's

motion for acquittal – and forcefully rejected it.  Addressing Martoma's claim that there were

"'no victims' of his crime," *United States v. Martoma*, No. 12 Cr. 973 PGG, 2014 WL 4384143,

at *7 (S.D.N.Y. Sept. 4, 2014), Judge Gardephe ruled, in words equally applicable here, that:

> While Martoma and SAC Capital were able to make profits and avoid losses
> totaling $275 million because of the inside information Martoma had wrongfully
> obtained, *countless other investors who were not privy to this information were
> forced to bear the full brunt of the steep declines in Elan and Wyeth stock prices*,
> once the final efficacy data from the bapineuzumab clinical study was made
> publicly available. *The assertion that there are no victims of Martoma's crimes is
> as astounding as it is meritless.*

*Id.* (emphases added).[4]

### 4.    Defendants' Assertion That Insider Trading Is Not a Fraudulent Omission Violates Long-Settled Supreme Court Precedent

Defendants try to create distance between the controlling Exchange Act case law

discussed above and the causation argument they make by asserting that insider trading should

be viewed as something other than a fraudulent nondisclosure, arguing that Plaintiffs' analysis

---

[4]    Defendants also briefly refer to the Supreme Court's case law on RICO proximate cause.
SAC Mem. at 7.  But those decisions fully support a finding of proximate cause here.  In *Holmes v.
Securities Investor Protection Corp.*, 503 U.S. 258 (1992), the Court identified three considerations
relevant to the RICO proximate cause determination: (1) avoiding the difficulties associated with
attempting "to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct
from other, independent, factors," 503 U.S. at 269; (2) preventing courts from having "to adopt
complicated rules apportioning damages among plaintiffs removed at different levels of injury from
the violative acts, to obviate the risk of multiple recoveries," *id.*, which would, in turn, "undermin[e]
the effectiveness of treble-damage suits," *id.* at 274; and (3) recognizing the fact that "directly injured
victims can generally be counted on to vindicate the law as private attorneys general, without any of
the problems attendant upon suits by plaintiffs injured more remotely."  *Id.* at 269-70.  *Accord
Bridge*, 553 U.S. at 654-55 (restating these factors).

Here, (1) Plaintiffs have shown a direct connection between their losses and information
Defendants illegally used to trade, ¶¶ 510-15 (pp. 155-56); (2) there are no issues of apportionment;
and (3) there is no more directly injured victim who can be counted on to sue.

Indeed, these factors point up the true gist of Defendants' argument: Defendants do not
maintain that there are other parties who are better suited to sue; Defendants think that no one should
be able to sue.

"improperly assumes that the relevant 'duty' is one of disclosure, as opposed to a duty to abstain from trading." *Id.* at 12.  This argument gets the law flatly wrong.

As Plaintiffs explained in their Response Letter (Wohl Decl. Ex. C, at 2), under the "classical" disclose-or-abstain theory of insider trading adopted and articulated by the Supreme Court in *Chiarella*, "the relationship between a corporate insider and the stockholders of his corporation gives rise to a disclosure obligation," 445 U.S. at 227, and trading without disclosure by insiders therefore defrauds the stockholders with whom the insider trades.  *Id.* at 230.  In turn, when tippees – like the SAC Defendants here – obtain inside information with knowledge that it was provided by the insider in exchange for a personal benefit, "the tippee inherits the duty to disclose or abstain." *Dirks*, 463 U.S. at 664.[5]  Defendants' position thus rests on sidestepping settled Supreme Court jurisprudence.

## B.   Plaintiffs Have Pled a Concrete Injury

Plaintiffs suffered concrete, actual trading losses when the inside information at issue was publicly disclosed, and as shown in the margin, none of the cases Defendants cite involved anything like the actual trading losses at issue here.[6]

---

[5]     This analysis has been repeatedly reaffirmed.  *See United States v. O'Hagan*, 521 U.S. 642, 652 (1997) (explaining that "[t]he classical theory targets a corporate insider's breach of duty to shareholders with whom the insider transacts"); *United States v. Falcone*, 257 F.3d 226, 229 (2d Cir. 2001) (under the disclose or abstain rule, "the duty of disclosure being breached is to persons with whom the insider is engaging in securities transactions").

[6]     *See Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2013) (payment of attorney's fees was not a cognizable RICO injury); *Makowski v. United Bhd. of Carpenters & Joiners*, No. 08 Civ. 6150, 2010 WL 3026510, at *14-15 (S.D.N.Y. Aug. 2, 2010) (damages due to lost days of work too speculative where plaintiff made no attempt to quantify days or pay lost, or key facts regarding replacement workers); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 519-21 (S.D.N.Y. 2007) (loss of business opportunity due to corrupt bidding process was insufficiently concrete), *aff'd*, 328 F. App'x 695 (2d Cir. 2009); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 225, 227 (2d Cir. 2008) (plaintiffs' lost expectancy of a safer cigarette was not an injury to business or property under RICO); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) (damages insufficiently definite where contingent on the outcome of another pending proceeding).

Defendants argue that the disgorgement cap converts the damages payable into an "equitable remedy" barred by RICO.  SAC Mem. at 10-11.  As the Second Circuit ruled in *Elkind* and as discussed above (at 9), however, the disgorgement measure can properly be viewed as reflecting the actual harm from the fraud.  In any event, the issue of how to calculate damages need not be decided at this early stage of the proceedings.  *See Motel 6*, 161 F. Supp. 2d at 245 (deferring damages issue raised on summary judgment as premature).

## II.  THE RICO DEFENDANTS WERE "CRIMINALLY CONVICTED IN CONNECTION WITH THE FRAUD" ON PLAINTIFFS AND RICO'S CRIMINAL CONVICTION EXCEPTION THEREFORE APPLIES

Defendants next maintain that they cannot be liable under RICO because Plaintiffs' claims do not fall within the "criminal conviction" exception.  SAC Mem. at 14-19.  Defendants did not raise this issue in their Pre-Motion Letter, and their arguments now ignore the facts surrounding their guilty plea and misapply the relevant case law.

### A.  Insider Trading in Elan and Wyeth Was the Principal Conduct Charged in the SAC Indictment and Was the Basis for Most of the Criminal Fine Imposed

As amended by the PSLRA, RICO provides in relevant part:

> no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted ***in connection with the fraud***, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c) (emphasis added).  The "fraud" in this case is SAC's trading of Elan and Wyeth securities while in possession of inside information concerning bapi between 2006 and 2008.  The argument that the SAC Management Companies were not "criminally convicted in connection with" insider trading in Elan and Wyeth securities depends on ignoring (1) the Indictment, (2) the guilty plea itself, and (3) the sentence imposed.

*First*, in the Indictment, the Government charged a single, unified "Insider Trading scheme" that specifically cited Martoma's indictment for insider trading in Elan and Wyeth as one of eight instances of criminal charges against SAC portfolio managers and research analysts for insider trading.  Hurwitz Decl. Ex. 8, ¶¶ 6, 14.f.  The Indictment further cited Cohen's receipt of overtly inside information regarding the bapi Phase 2 trial from a doctor involved in the trial, and Cohen's failure to "question or express concern" about the source of that information.  *Id.* ¶ 21.d.  The Indictment further detailed Martoma and Cohen's insider trading in Elan and Wyeth in July 2008 as one of two instances of insider trading by agents of CR Intrinsic.  *Id.* ¶ 31.a.

*Second*, at the Plea Hearing, each of the SAC Management Companies pled guilty to Count One of the Indictment after being informed that it required the Government to prove that (i) "there was a *scheme or artifice* to obtain money or property by materially false and fraudulent pretenses, representations or promises *as alleged in the indictment*," and (ii) each defendant "knowingly and willfully participated in the *scheme or artifice to defraud*,"  Hurwitz Decl. Ex. 4, at 15:7-13, 39:11-22 (emphases added).

*Third*, the profits and avoided losses from the illegal Elan and Wyeth trades accounted for ***more than 90%*** of the total Guidelines Fine to which the SAC Management Companies were sentenced.  *See* Hurwitz Decl. Ex. 5, at 1, 4.  The Government also later stated in its sentencing memorandum that "the Stipulated Guidelines Sentence is based on all of the conduct charged in the Indictment, *including all insider trading profits earned and losses avoided by* Steinberg and *Martoma*."  *See* Wohl Decl. Ex. D, at 8-9 n.1.[7]

Under any analysis, these facts warrant a determination that the SAC Management Companies were "criminally convicted in connection with the fraud" at issue here.

---

[7]   Earlier in the present case, the SAC Defendants likewise acknowledged that the criminal fine was "based in large part on the same trading" at issue here.  *See* ECF No. 130, at 4.

### B.   Neither Prior Case Law Nor the PSLRA's Legislative <br> History Supports the SAC Defendants' Arguments

Defendants cite to the legislative history of the PSLRA, SAC Mem. at 15-16, but as the case on which they principally rely recognizes, "[w]hile there is legislative history regarding the [PSLRA's RICO] amendment generally, none of it addresses the 'conviction exception' specifically." *Krear v. Malek*, 961 F. Supp. 1065, 1074-75 (E.D. Mich. 1997).

In the only class action to construe the criminal conviction exception, *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F. Supp. 2d 511 (S.D. Tex. 2003), the court considered whether the plaintiffs could rely on an auditor's conviction for obstruction of justice to support their RICO claims. Although the auditor was not convicted of any type of fraud, the court in *Enron* still held the "in connection with" requirement satisfied, reasoning that:

> Because in the trial of Arthur Andersen, the evidence demonstrated the alteration and the destruction of documents were motivated by Arthur Andersen's desire to conceal its role in the alleged Enron fraud on the investing public from the SEC investigators, the Court finds that the cause of action in this case is a crime in connection with fraud.

*Id.* at 624 n.113.

In *Thomas H. Lee Equity Fund V, L.P. v. Mayer, Brown, Rowe & Maw LLP*, a special master likewise rejected a defendant's claim that the criminal conviction exception did not apply because the criminal defendant was "convicted of a fraud that was much narrower – in terms of time span and predicate acts – than the fraud alleged in the [plaintiff's complaint]." No. 07 MDL 1092 (JSR), ECF No. 707, at 11 (S.D.N.Y. May 3, 2010), *objections overruled on other grounds*, 2010 WL 3911780 (S.D.N.Y. Sept. 28, 2010). As the special master observed, the statute requires the defendant to have been convicted "only of acts that were committed 'in connection with' the securities fraud," and "[a]ny other reading of the statute would require the type of speculative inquiry into the jury verdict that [the defendant] in fact undertakes." *Id.* at 11-12.

- 16 -

By contrast, the cases on which Defendants rely are facially inapposite.

*Krear v. Malek* involved claims arising out of a Ponzi scheme in which a defendant was convicted of defrauding certain of the plaintiffs.  Addressing whether the other plaintiffs could also rely on the criminal conviction exception, the Court held they could not, because the defendant "was not convicted of a scheme to defraud all of the thirty-three named plaintiffs. Nor was he, of course, convicted of a 'Ponzi scheme.'  Instead, he was convicted of a scheme to defraud as to only those individuals named in the information."  961 F. Supp. at 1076-77.[8]

In *Estate of Gottdiener v. Sater*, No. 13 Civ. 01824, 2014 WL 1100133 (S.D.N.Y. Mar. 19, 2014), Judge Schofield considered claims against two defendants who were convicted of a pump-and-dump scheme with respect to the stock of certain companies.  The plaintiffs were clients of a different brokerage firm (D.H. Blair), whose broker (Palagonia) had fraudulently invested their funds in two of the same companies.  Judge Schofield held that the defendants were not convicted "in connection with" D.H. Blair and Palagonia's fraud on the plaintiffs because "[n]othing except surmise connects Defendants' criminal convictions with Palagonia or Plaintiffs. Their criminal Informations do not mention Blair, Palagonia, or [plaintiffs]."  *Id.* at *7.

Finally, *Rogers v. Nacchio*, No. 05-60667-Civ, 2006 WL 7997562 (S.D. Fla. June 6, 2006), *aff'd in part on other grounds, appeal dismissed in part*, 241 F. App'x 602 (11th Cir. 2007), involved a 25-count *pro se* complaint arising out of the securities fraud at Qwest.  In dismissing all counts, the Court described the *pro se* pleadings as "abusive and improper," imposed sanctions, and later awarded the defendants attorney's fees.  *See Rogers v. Nacchio*, No. 05-60667-Civ, 2007 WL 1064314 (S.D. Fla. Apr. 6, 2007).  The district court summarily

---

[8]     The Court further explained that although the criminal information referred to "a scheme to defraud numerous individuals," it was "quite possible that certain transactions between those plaintiffs and [the defendant] were entirely legal, notwithstanding that those plaintiffs may have lost money on their investment."  *Id.* at 1077.

concluded that because the defendants were "each charged with crimes having nothing to do with defrauding Plaintiffs specifically," the RICO claims would be dismissed.  2006 WL 7997562, at *4.  On appeal, the Eleventh Circuit affirmed on other grounds, noting specifically that "it is unclear whether the district court erred in determining that the claims were barred" by the securities fraud exclusion.  *Rogers v. Nacchio*, 241 F. App'x 602, 608 n.2 (11th Cir. 2007).

Defendants cite the statement from *Krear*, that "the exception is only available to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud," *id.* at 1076, and assert it as a general rule.  Of course, if extended from face-to-face frauds like *Krear* to open market class actions, the criminal conviction exception would never apply.  There is nothing in the language of the statute that supports this result, and *Enron* directly refutes it.

Defendants also argue that they were not convicted "in connection with" the Elan and Wyeth trades because they did not allocute "to" them.  SAC Mem. at 17, 18.  Defendants offer no support, however, for the argument that a party is convicted "in connection with" a fraud only when that party specifically includes it in their plea allocution.[9]

Defendants further assert that the criminal conviction exception "could not possibly" reach Plaintiffs' Insider Buying Claims or the claims arising from the July 31 Tysabri disclosure because, they claim, the Indictment did not reference those events.  SAC Mem. at 18.  However, the Martoma indictment was cited in the SAC Indictment, *see* Hurwitz Decl. Ex. 8, ¶ 14.f, and it specifically charged conduct back to 2006.  Wohl Decl. Ex. E, ¶¶ 7, 12.  In addition, as Judge

---

[9]       Instructively, Defendants never actually dispute that they were "criminally convicted *in connection with* the fraud."  Rather, they argue only that they did not plead "to" the fraud.  *See* SAC Mem. at 2 ("Here, the SAC Management Companies did not plead guilty *to* Martoma's conduct"); *id.* at 15 (identical statement); *id.* at 17 ("Here, the SAC Management Companies did not plead guilty *to* securities fraud based on Mathew Martoma's conduct"); *id.* ("Plaintiffs themselves have acknowledged that the SAC Management Companies did not plead guilty *to* any conduct related to trading in Elan or Wyeth") (all emphases added).

Gardephe ruled, the "evidence demonstrated an ongoing conspiratorial relationship between Martoma and Dr. Gilman," and "showed that over the course of two years Dr. Gilman repeatedly and consistently shared information with Martoma about the Phase II trial following [Safety Monitoring Committee] meetings." *United States v. Martoma*, 2014 WL 4384143, at *10.

With respect to the July 31 Tysabri disclosure, the connection is even stronger, because Defendants' liability is premised entirely on the specific conduct charged in the Indictment.[10]

### C.   The Phrase "in Connection with" Has Been Broadly Construed in Related Contexts

While Plaintiffs' claims fall within the criminal conviction exception even if "in connection with" is construed narrowly, a broad construction is warranted because the phrase has been construed broadly in related contexts.  As the Supreme Court has held in another case construing Congress' use of this very phrase in SLUSA, "when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.' " *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006).

Addressing the scope of the phrase "in connection with," the Supreme Court observed in *Dabit* that "when this Court has sought to give meaning to the phrase in the context of § 10(b) and Rule 10b–5, it has espoused a broad interpretation," and that "Congress can hardly have been unaware of the broad construction adopted by both this Court and the SEC when it imported the key phrase – 'in connection with the purchase or sale' – into SLUSA's core provision." *Id.* (emphasis omitted).

---

[10]   The Government's views regarding how to calculate avoided losses in a criminal case, and its effort to avoid confusion at trial, do not alter the fact that Plaintiffs' claims relating to Tysabri are premised on the specific conduct charged in the Indictment and proved at Martoma's trial.

There is good reason to think that Congress also had the Section 10(b) meaning in mind when drafting the PSLRA's RICO amendment, because it is integral to the amendment's scope. In *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 n.11, 280 (2d Cir. 2011), the Second Circuit endorsed decisions in other circuits that define the scope of RICO's general securities fraud exclusion by reference to whether the frauds were "undertaken in connection with the purchase and sale of securities," and in *Boudinot v. Shrader*, No. 09 Civ. 10163 (LAK), 2012 WL 489215, at *5 (S.D.N.Y. Feb. 15, 2012), Judge Kaplan directly explained that "[c]ourts determine whether the PSLRA applies by focusing on whether the fraudulent conduct underlying RICO claims is 'in connection with the purchase or sale of any security.'"[11]

### III.   THE COMPLAINT ESTABLISHES THE REQUISITE "DISTINCTNESS" BETWEEN THE PERSONS VIOLATING RICO AND THE RELATED RICO ENTERPRISES

Defendants also argue that Plaintiffs have not alleged the requisite "distinctness" between the "persons" they name as RICO defendants (the SAC Management Companies) and the "enterprise" through which the violations were committed (comprised of the SAC Investment Funds).  SAC Mem. at 20-22.  In their Pre-Motion Letter, the SAC Defendants did not raise the issue of distinctness, and their argument is foreclosed by controlling Supreme Court precedent.

RICO makes it "unlawful for any ***person*** employed by or associated with any ***enterprise*** . . . to conduct or participate . . . in the conduct of such ***enterprise's*** affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c) (emphasis added).  The statute foresees two separate entities, a "person" who is the RICO defendant, and a distinct "enterprise"

---

[11]     The broad interpretation given to the phrase in the securities context is consistent with its broad meaning in other contexts.  *See, e.g.*, *United States v. Ortega*, 385 F.3d 120, 123 (2d Cir. 2004) (use of firearm was "in connection with" a felony if it "served some purpose with respect to the felonious conduct"); *Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 110-11 (2d Cir. 1986) (endorsing the Seventh Circuit's interpretation of a Commodities Exchange Act provision using the phrase, which held that "[t]he plain meaning of such broad language cannot be ignored.").

which is the "tool" through which the defendant "person" commits a pattern of racketeering activity. *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 160, 162 (2001). As the Supreme Court held in *Cedric Kushner*, this so-called "distinctness" requirement is met when the person and enterprise are "legally different entit[ies] with different rights and responsibilities due to [their] different legal status." *Id.* at 163.

For example, in *Cedric Kushner* itself, the plaintiff alleged a natural person as the RICO "person" and the corporation of which he was the president and sole shareholder as the RICO "enterprise." The defendant moved to dismiss, arguing that the individual was not sufficiently distinct from the corporation that he owned and controlled. The Second Circuit agreed and affirmed the dismissal, but the Supreme Court reversed. The Supreme Court acknowledged that a RICO plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner*, 533 U.S. at 161. But the Court held that "the corporate owner/employee, a natural person, **is distinct** from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Id.* at 163 (emphasis added). "[N]othing in the statute," the Court explained, "requires more 'separateness' than that." *Id.* Indeed, the legal effect of incorporation compelled that result, because "incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Id.*

Although *Cedric Kushner* involved a natural person and the corporation he owned, the same principle applies where one corporation owns or is affiliated with another. *See* Gregory P. Joseph, *Civil RICO: A Definitive Guide* 101 (3d ed. 2010) (explaining that "if the enterprise were [a] subsidiary, the parent **could** be named the § 1962(c) [person] without violating the

distinctness principle") (emphasis added).   For instance, in *U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275 (S.D.N.Y. 2012), the plaintiff alleged that a parent corporation and one of its subsidiaries were the RICO "persons," and that a separately incorporated subsidiary was the RICO "enterprise."  Citing pre-*Cedric Kushner* case law, including *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996), the defendants argued that the alleged enterprise was not sufficiently distinct from them because they "all are businesses operating in a unified corporate structure."  *Id.* at 287 (internal quotation marks omitted).  Judge Seibel rejected that argument and held that, under *Cedric Kushner*, the alleged enterprise was sufficiently distinct because it was a separately incorporated legal entity with its own "legal rights, obligations, powers, and privileges[.]"  *Id.* at 288 (quoting *Cedric Kushner*, 533 U.S. at 163).

The enterprises alleged in the Complaint likewise satisfy *Cedric Kushner*'s distinctness requirement.  Plaintiffs allege that the SAC Management Companies are the "persons" that committed the RICO violations.  *See* ¶¶ 561, 579 (pp. 166, 170).   Each of the alternative RICO enterprises, on the other hand, consists exclusively of one or more of the SAC Investment Funds.  *Id.* ¶¶ 562-63, 580 (pp. 166, 170).   The SAC Investment Funds are separate and legally distinct entities from the SAC Management Companies.  In addition, there is no overlap between them.  Specifically, none of the SAC Investment Funds is alleged to be a RICO "person," and none of the SAC Management Companies is alleged to be part of the RICO "enterprise."  Thus, the legal distinctness required by *Cedric Kushner* is fully met here.

Moreover, during the relevant time period, the SAC Management Companies and the SAC Investment Funds had sharply different ownership and functions.  The SAC Management Companies were owned, directly or indirectly, by Cohen.  ¶ 550 (p. 164).  They provided investment management services to the SAC Investment Funds pursuant to investment

management contracts.  ¶ 545 (p. 163).  The purpose of the SAC Management Companies was to generate management fee income for Cohen.  The SAC Investment Funds, on the other hand, were legally separate entities that "pooled investment capital belonging to Cohen with investment capital belonging to outside investors and SAC employees, and were generally jointly owned in proportion to the capital contributed."  ¶ 550 (p. 164).  In sum, the SAC Investment Funds were not only legally distinct entities from the SAC Management Companies – which is all that is required under *Cedric Kushner* – but also factually distinct because they had different owners and served different purposes.

Defendants do not attempt to show that the enterprise pled in the Complaint fails the distinctness test articulated in *Cedric Kushner*.  Indeed, Defendants barely acknowledge the decision.  Instead, they rely principally on broad – and now outdated – language in two pre-*Cedric Kushner* decisions: *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994), and *Discon. Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996).  *See* SAC Mem. at 20.  But as the Supreme Court itself explained in *Cedric Kushner*, those cases actually addressed a different issue:  whether a corporation is sufficiently distinct from an enterprise consisting of the corporation itself "together with all its employees and agents[.]"  *Cedric Kushner*, 533 U.S. at 164.  *Riverwoods* and *Discon* concluded that the answer to that question is "no," and they remain good law for that specific holding.  *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013).  But after *Cedric Kushner*, it is simply wrong to assert, as Defendants do, that separate corporations are not distinct because they "operate within a unified corporate structure."  *See U1IT4less*, 896 F. Supp. 2d at 287.

None of the post-*Cedric Kushner* decisions cited by Defendants are to the contrary.  Rather, with one exception, each of them addresses the viability of an alleged RICO association-

in-fact enterprise that ***includes*** the alleged RICO "person."  *See Cruz*, 720 F.3d at 121; *In re*

*Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 346 (S.D.N.Y. 2010); *Palatkevich v. Choupak*, No. 12

Civ. 1681 (CM), 2014 WL 1509236, at *15 (S.D.N.Y. Jan 24, 2014); *Reed Const. Data Inc. v.*

*McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 351 (S.D.N.Y. 2010).  The one exception, *Physicians*

*Mutual Insurance Co. v. Greystone Servicing Corp.*, No. 07 Civ. 10490 (NRB), 2009 WL

855648 (S.D.N.Y. Mar. 25, 2009), involved a contract dispute where the plaintiff also asserted

claims for breach of fiduciary duty, conversion, fraud and RICO against affiliated parties.  Judge

Buchwald dismissed all claims other than the breach of contract, and held, without citing *Cedric*

*Kushner*, that two corporations were insufficiently distinct where the plaintiff had alleged they

were alter egos and "fail[ed] to distinguish [their] roles in the allegedly wrongful activities,

indicating instead that those roles overlapped significantly."  *Id.* at *7.[12]

## IV.    THE COMPLAINT AMPLY ALLEGES GROUNDS FOR FINDING THE RICO DEFENDANTS VICARIOUSLY LIABLE

Defendants also argue that the SAC Management Companies were not " 'active

perpetrator[s]' or 'central figure[s]' in a criminal scheme," as required to impose liability on them

for their employees' acts under RICO.  SAC Mem. at 23 (quoting *USA Certified Merchants, LLC*

*v. Koebel*, 262 F. Supp. 2d 319, 328 (S.D.N.Y. 2003)).

As set forth at length in the Complaint, however, the predicate acts of insider trading

were performed in the portfolio manager and analysts' capacity as SAC employees, *see* ¶¶ 343-

422 (pp. 109-131) and benefitted SAC.  ¶ 580 (p. 170).  In addition, the Complaint pleads in

detail that SAC's institutional practices enabled and encouraged the predicate acts, and further

pleads the direct involvement of SAC's owner, Cohen, in several of the predicate acts, including

---

[12]     The Court also ruled that no RICO pattern had been pled and that the predicate acts were not pled with sufficient particularity under Rule 9(b).  *Id.* at *8-9.

the insider trading in Elan and Wyeth.  ¶¶ 58-75 (pp. 16-22), ¶¶ 168-241 (pp. 57-82), ¶¶ 252-292

(pp. 85-97), ¶¶ 339-504 (pp. 108-153).  These allegations sufficiently plead that the SAC

Management Companies were "active perpetrators" and "central figures" in the scheme.

## V.   A RICO "ENTERPRISE" MAY BE COMPRISED EXCUSIVELY OF CORPORATE ENTITIES, AS PLED IN THE COMPLAINT

Finally, Defendants contend that an "association in fact" enterprise cannot be comprised

exclusively of corporate entities.  SAC Mem. at 24.  This argument was directly rejected by the

Second Circuit in *United States v. Huber*, 603 F.2d 387, 394 (2d Cir. 1979).  It has also been

rejected by "all [other] circuits that have examined the issue."  Joseph, *supra*, at 98.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in its entirety.

Dated:  New York, New York
             October 14, 2014                                  Respectfully submitted,

**SCOTT+SCOTT,**
**ATTORNEYS AT LAW, LLP**                        **WOHL & FRUCHTER LLP**


By: *Deborah Clark Weintraub* /EDW      By: *Ethan Wohl*
      Deborah Clark-Weintraub                         Ethan D. Wohl
      Joseph P. Guglielmo                               Krista T. Rosen
      Tom Laughlin                                          Sara J. Wigmore
The Chrysler Building                              570 Lexington Avenue, 16th Floor
405 Lexington Avenue, 40th Floor            New York, New York 10022
New York, New York  10174                    Telephone: (212) 758-4000
Telephone: (212) 223-6444                     Facsimile: (212) 758-4004

Gregg S. Levin                                      Marc I. Gross
David P. Abel                                        Tamar A. Weinrib
**MOTLEY RICE LLC**                            **POMERANTZ LLP**
28 Bridgeside Boulevard                         600 Third Avenue, 20th Floor
Mt. Pleasant, South Carolina  29464         New York, New York  10016
Telephone: (843) 216-9000                     Telephone: (212) 661-1100
                                                            Facsimile: (212) 661-8665

*Co-Lead Counsel for the* Birmingham        *Co-Lead Counsel for the* Kaplan *Plaintiffs*
*Plaintiffs and the Wyeth Investor Class*        *and the Elan Investor Class*