UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID E. KAPLAN, et al.,<br><br>       Plaintiffs,<br><br>    - against -<br><br>S.A.C. CAPITAL ADVISORS, L.P., et al.,<br><br>       Defendants. | No. 12 Civ. 9350 (VM) (KNF)<br><br>ECF Case |
| BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, et al.,<br><br>       Plaintiffs,<br><br>    - against -<br><br>S.A.C. CAPITAL ADVISORS, L.P., et al.,<br><br>       Defendants. | No. 13 Civ. 2459 (VM) (KNF)<br><br><u>Oral Argument Requested</u> |

## SAC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' RICO CLAIMS

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3020

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8102

*Attorneys for Defendants S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC, and Steven A. Cohen (together, "SAC")*

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................................... ii

Table of Authorities...................................................................................................................... iii

Preliminary Statement .....................................................................................................................1

Argument .........................................................................................................................................2

    I.    Plaintiffs Cannot Meet RICO's Strict Causation Requirements .............................2

    II.    Plaintiffs' RICO Claims Are Barred By the PSLRA Because the SAC Management Companies Were Not Convicted In Connection With Trading in Elan and Wyeth ..........................................................................................................4

    III.    Plaintiffs Have Not Alleged "Distinctness" Between the "Person" and "Enterprise" ................................................................................................................8

    IV.    Plaintiffs Fail to Plead Vicarious Liability Under RICO ......................................10

Conclusion.....................................................................................................................................10

## TABLE OF AUTHORITIES

| CASES | PAGE(S) |
| --- | --- |

*Anza* v. *Ideal Steel Supply Corp.*,
   547 U.S. 501 (2006) .................................................................................................. 1, 2

*Bridge* v. *Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008) ......................................................................................................4

*Cedric Kushner Promotions Ltd.* v. *King*,
   533 U.S. 158 (2001) ................................................................................................. 1, 9

*Chadbourne & Parke LLP* v. *Troice*,
   134 S.Ct. 1058 (2014) ...................................................................................................8

*Commissioner* v. *Clark*,
   489 U.S. 726 (1989) ......................................................................................................8

*Crabhouse of Douglaston Inc.* v. *Newsday Inc.*,
   418 F. Supp. 2d 193 (E.D.N.Y. 2006) ..........................................................................9

*Cruz* v. *FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) ..................................................................................... 1, 8

*DeSilva* v. *N.Shore-Long Island Jewish Health System, Inc.*,
   770 F. Supp. 2d 497 (E.D.N.Y. 2011) ..........................................................................9

*Discon, Inc.* v. *Nynex Corp.*,
   93 F.3d 1055 (2d Cir. 1996) .........................................................................................8

*Dubai Islamic Bank* v. *Citibank, N.A.*,
   126 F. Supp. 2d 659 (S.D.N.Y. 2000) ........................................................................10

*Emergent Capital Investment Management., LLC* v. *Stonepath Group, Inc.*,
   343 F.3d 189 (2d Cir. 2003) .........................................................................................4

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
   284 F. Supp. 2d 511 (S.D. Tex. 2003) ..........................................................................7

*Estate of Gottdiener* v. *Sater*,
   No. 13 Civ. 01824, 2014 WL 1100133 (S.D.N.Y. Mar. 19, 2014) ...............................7

*Goodridge* v. *Harvey Group, Inc.*,
   728 F. Supp. 275 (S.D.N.Y. 1990) ...............................................................................5

*Gruber* v. *Prudential-Bache Securities, Inc.*,
  679 F. Supp. 165 (D. Conn. 1987) .................................................................................. 10

*United States* v. *Gupta*,
  904 F. Supp. 2d 349 (S.D.N.Y. 2012) ................................................................................ 3

*Holmes* v. *Securities Investor Protection Corp.*,
  503 U.S. 258 (1992) ....................................................................................................... 1, 2

*United States* v. *Huber*,
  603 F.2d 387 (2d Cir. 1979) .............................................................................................. 10

*Krear* v. *Malek*,
  961 F. Supp. 1065 (E.D. Mich. 1997) ................................................................................ 7

*Lerner* v. *Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ....................................................................................... 1, 3, 4

*Makowski* v. *United Brotherhood. of Carpenters & Joiners of America*,
  No. 08 Civ. 6150, 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010) ...................................... 10

*Maracich* v. *Spears*,
  133 S.Ct. 2191 (2013) ........................................................................................................ 7

*United States* v. *Martoma*,
  No. 12 Cr. 973, 2014 WL 4419682 (S.D.N.Y. Sept. 8, 2014) ........................................... 3

*New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*,
  514 U.S. 645 (1995) ........................................................................................................... 7

*Palatkevich* v. *Choupak*,
  No. 12 Civ. 1681, 2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014) ................................. 9, 10

*Panix Promotions, Ltd.* v. *Lewis*,
  No. 01 Civ. 2709, 2002 WL 72932 (S.D.N.Y. Jan. 17, 2002) ........................................... 9

*In re Parmalat Securities Litigation*,
  479 F. Supp. 2d 332 (S.D.N.Y. 2007) ............................................................................... 9

*Physicians Mutual Insurance Co.* v. *Greystone Serving Corp.*,
  No. 07 Civ. 10490, 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009) ............................... 9, 10

*Qatar National Navigation & Transportation Co.* v. *Citibank, N.A.*,
  No. 89 Civ. 0464, 1992 WL 276565 (S.D.N.Y. Sept. 29, 1992) ..................................... 10

*Reed Construction Data Inc.* v. *McGraw-Hill Cos.*,
  745 F. Supp. 2d 343 (S.D.N.Y. 2010) ......................................................................... 9, 10

*In re Refco Securities Litigation,*
   No. 07 MDL 1902, 2010 WL 3911780 (S.D.N.Y. Sept. 28, 2010) ...................................7

*Riverwoods Chappaqua Corp.* v. *Marine Midland Bank, N.A.,*
   30 F.3d 339 (2d Cir. 1994)...............................................................................................8

*Rogers* v. *Nacchio,*
   No. 05 Civ. 50557, 2006 WL 7997562 (S.D. Fla. June 6, 2006).......................................7

*S.E.C.* v. *800america.com, Inc.,*
   No. 02 Civ. 9046, 2006 WL 3422670 (S.D.N.Y. Nov. 28, 2006).......................................5

*Shapiro* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   495 F.2d 228 (2d Cir. 1974).............................................................................................4

*Sykes* v. *Mel Harris and Associates, LLC,*
   757 F. Supp. 2d 413 (S.D.N.Y. 2010)...............................................................................9

*Thomas H. Lee Equity Fund V, L.P.* v. *Mayer, Brown, Rowe & Maw LLP,*
   No. 07 MDL 1092, ECF No. 707 (S.D.N.Y. May 3, 2010) ................................................7

*U1IT4Less, Inc.* v. *FedEx Corp.,*
   896 F. Supp. 2d 275 (S.D.N.Y. 2012) ..............................................................................9

*USA Certified Merchants, LLC* v. *Koebel,*
   262 F. Supp. 2d 319 (S.D.N.Y. 2003) .........................................................................2, 10

*United States* v. *Watts,*
   519 U.S. 148 (1997) ........................................................................................................6

*Zito* v. *Leasecomm Corp.,*
   No. 02 Civ. 8074, 2003 WL 22251352 (S.D.N.Y. Sept. 30, 2003) ...................................9

**STATUTES**

18 U.S.C. § 1964 ....................................................................................................................4

18 U.S.C. § 3661 ....................................................................................................................6

U.S.S.G. § 1B1.4 Cmt. ...........................................................................................................6

**OTHER AUTHORITIES**

Securities and Exchange Commission, *Public Statement by SEC Staff: Recent Policy Change* (Jan. 7, 2012) .....................................................................................5

**Preliminary Statement**

Plaintiffs' RICO claims must be dismissed.

*First*, Plaintiffs cannot satisfy RICO's strict proximate cause standard as set out in *Holmes* v. *Securities Investor Protection Corp.*, 503 U.S. 258 (1992), and *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 501 (2006). As the Second Circuit explained in *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006), "'our cases have held RICO plaintiffs to a more stringent showing of proximate cause than would be required at common law.'" *Id.* at 285 n.5 (quoting *Moore* v. *PaineWebber, Inc.*, 189 F.3d 165, 179 (2d Cir. 1999) (Calabresi, J., concurring)).

*Second*, Plaintiffs' RICO claims, which are predicated on Elan and Wyeth trading, are barred by the PSLRA because the SAC Management Companies were not criminally convicted in connection with insider trading in Elan and Wyeth. Plaintiffs cannot seriously dispute this fact since, at the time of the plea, they complained that none of the SAC Management Companies were pleading guilty to Elan and Wyeth trading and urged the court (unsuccessfully) to reject the plea on that basis. The mere fact that Elan and Wyeth trading was *charged* in the Indictment is irrelevant to whether the SAC Management Companies were *convicted* of that conduct.

*Third*, Plaintiffs misstate the law concerning RICO's distinctness requirement. The Second Circuit has held that affiliated corporations cannot serve as both the RICO "enterprise" and RICO "person," even after the Supreme Court's ruling in *Cedric Kushner Promotions Ltd.* v. *King*, 533 U.S. 158 (2001). *Kushner* emphasized the difference between *natural* and *corporate* persons, but explicitly did not alter established Second Circuit law on related corporate entities. *See Cruz* v. *FXDirectDealer, LLC*, 720 F.3d 115, 120-21 (2d Cir. 2013). As Plaintiffs define all relevant SAC entities as directed by a "unified corporate consciousness," their allegations do not establish the required distinctness. *Id.* at 121.

*Fourth*, Plaintiffs' allegations do not meet the heightened standards for RICO vicarious liability. *See USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 328 (S.D.N.Y. 2003) (Marrero, J.). Nebulous allegations about the role of the owner of the SAC entities—who has not been accused, let alone convicted, of any crime—cannot establish corporate vicarious liability under RICO.

## Argument

### I. Plaintiffs Cannot Meet RICO's Strict Causation Requirements

*Holmes* and *Anza* preclude the RICO claims Plaintiffs seek to assert here. In *Holmes*, defendants' stock manipulation scheme caused enormous losses at a broker-dealer, which became insolvent and was unable to pay customer claims. 503 U.S. at 262-63. The Supreme Court, assuming that the defendants' conduct was a but-for cause of the customer losses, nonetheless held that these losses were too indirect to permit a civil RICO claim. *Id.* at 274. In *Anza*, the defendant did not collect, or pay to the state, sales tax on cash sales, and it used this cost advantage to undercut its competitor's prices and take away business. 547 U.S. at 454. Again, the Supreme Court did not dispute a but-for causal link between defendant's conduct and plaintiff's injury, but again it held the injury was too indirect to permit the competitor's civil RICO claim. *Id.* at 460. Here, unlike *Holmes* and *Anza*, Plaintiffs cannot even show but-for causation: they would have engaged in the same trades, and sustained the same losses, if SAC had never obtained inside information, or never traded on it.[1]

Moreover, permitting a RICO claim here would raise the same issues of duplicative, speculative and excessive damages that concerned the Supreme Court in *Holmes* and *Anza*. As

---

[1] Even if Defendants had disclosed the alleged inside information, it is completely speculative whether Plaintiffs would have refrained from trading altogether, or traded at different volumes and/or prices, with different economic results.

2

in *Holmes* and *Anza*, other parties here—the SEC and the Department of Justice—have a more direct interest in pursuing appropriate remedies against Defendants, and have already done so.

For these reasons, other authorities have consistently made the point that contemporaneous traders are not victims of, and are not directly injured by, insider trading. Unable to distinguish the USAO's letter rejecting Plaintiffs' argument that they are victims of SAC's conduct, Plaintiffs dismiss the letter as "drafted hastily" and "fundamentally incorrect." (Pls. Mem. 10.) Plaintiffs also cannot explain Judge Rakoff's decision in *United States* v. *Gupta*, 904 F. Supp. 2d 349 (S.D.N.Y. 2012) *aff'd*, 747 F.3d 111 (2d Cir. 2014), which states that insider trading is not a "fraud on investors," *id.* at 352, meekly stating that it is "susceptible to misinterpretation." (Pls. Mem. 11.) And they brush aside Judge Gardephe's observation that "the Sentencing Guidelines do not focus on contemporaneous trader losses because insider traders do not cause their losses." (*Id.*); *see United States* v. *Martoma*, No. 12 Cr. 973, 2014 WL 4419682, at *12 (S.D.N.Y. Sept. 8, 2014).

Finally, Plaintiffs are wrong when they argue that the causation requirements for a RICO claim are identical to the causation requirements for a § 10(b) claim. First, on a fuller record Defendants will show that Plaintiffs cannot satisfy the causation requirement for a § 10(b) claim. Second, even if Plaintiffs could succeed in a § 10(b) claim, it does not follow that Plaintiffs' RICO claim should be allowed to proceed. As the Second Circuit has recognized, there are "important differences between assessing proximate causation for RICO claims and for common-law torts." *Lerner*, 459 F.3d at 285 n.5. The court explained: "'[O]ur cases have held RICO plaintiffs to a more stringent showing of proximate cause than would be required at common law . . . . [I]t is usually easier for interven[ing events] to break the chain of causation in RICO . . . .'" *Id.* (quoting *Moore*, 189 F.3d at 179 (Calabresi, J., concurring)). By contrast, the

3

causal requirements for actions under § 10(b) are grounded in the common law. *See, e.g., Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) ("We have often compared loss causation to the tort law concept of proximate cause."); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 239 (2d Cir. 1974) ("[T]he test is properly one of tort causation in fact." (internal quotations omitted)). So, while Plaintiffs quote several Second Circuit cases for the proposition that RICO claims and § 10(b) claims both require "but for" causation and "loss causation," (Pls. Mem. 4-5), that is irrelevant as none of those cases state that the standard for proving causation is the same.[2]

This is not to say that insider trading has no victims or that contemporaneous shareholders are left without a remedy. But their remedy derives from Section 20A of the Securities Exchange Act, which requires disgorgement of defendants' profits, not RICO and its treble damages regime, which, Plaintiffs do not dispute, does not permit disgorgement remedies.

## II. Plaintiffs' RICO Claims Are Barred By the PSLRA Because the SAC Management Companies Were Not Convicted In Connection With Trading in Elan and Wyeth

Plaintiffs do not dispute that Section 107 of the PSLRA bars any conduct actionable as securities fraud from serving as a RICO predicate act unless the defendant has been "criminally convicted in connection with the fraud." 18 U.S.C. § 1964(c). Rather, they argue that the SAC entities were convicted of Elan and Wyeth trading because the Indictment charged such trading and the SAC entities pleaded guilty to a "scheme." (Pls. Mem. 15.) This is plainly wrong.

---

[2] Plaintiffs cite *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), for the proposition that "RICO's causation requirement should be informed by the underlying predicate act's requirements" (Pls. Mem. 6), and they argue that the causation requirements for securities fraud cases should thus apply here. But *Bridge* never addressed this argument, and the Second Circuit rejected it in *Lerner*, 459 F.3d at 285. *Bridge* actually stands for the contrary proposition that RICO standing is determined by RICO's unique statutory requirements. *See Bridge*, 553 U.S. at 654 (citing *Holmes* and *Anza*).

4

*First*, in determining the scope of a conviction, it is what is admitted in the plea, not what is charged in the Indictment, that controls. Plaintiffs cite no case in which a defendant who allocuted to only specific conduct in an indictment has been found to have been convicted of other conduct to which he did not allocute. Courts that have addressed the collateral estoppel effect of a guilty plea focus on the scope of the allocution. *See, e.g., S.E.C. v. 800america.com, Inc.*, No. 02 Civ. 9046, 2006 WL 3422670, at *3 (S.D.N.Y. Nov. 28, 2006) ("Where there is a plea allocution, as in this case, the court must examine the plea allocution to make this determination."); *Goodridge v. Harvey Grp., Inc.*, 728 F. Supp. 275, 280, 283 (S.D.N.Y. 1990) (no collateral estoppel where a plea allocution to tax fraud did not contain sufficient admissions to establish liability under Rule 10b-5). Similarly, the SEC has acknowledged that the only "admitted" facts in a criminal proceeding are those "facts admitted during the plea allocution."[3]

*Second*, the SAC Management Companies did not plead guilty to Elan or Wyeth conduct. The prosecutor made it clear that criminal liability for the SAC entities attached on the basis of "corporate responsibility" for the actions of specific individuals. (Hurwitz Decl. Ex. 4, at 14:14-15:3.) And the SAC entities did not plead guilty based on Martoma's conduct, but based on the conduct of three individuals—Noah Freeman, Donald Longueuil, and Richard Lee—none of whom traded in Elan or Wyeth stock:

- "S.A.C. Capital Advisors, L.P. pleads guilty to Counts One and Two based on the conduct of two of its former employees, Noah Freeman and Richard Lee." (Hurwitz Decl. Ex. 4, at 25:16-26:25.)

- "S.A.C. Capital Advisors LLC pleads guilty to Counts One and Three also based on the conduct of Mr. Freeman." (Hurwitz Decl. Ex. 4, at 27:1-18.)

- "CR Intrinsic Investors, LLC pleads guilty to Counts One and Four based on the conduct of its employee, Donald Longueuil." (Hurwitz Decl. Ex. 4 at 27:19-28:4.)

---

[3] Securities and Exchange Commission, *Public Statement by SEC Staff: Recent Policy Change* (Jan. 7, 2012), http://www.sec.gov/News/PublicStmt/Detail/PublicStmt/1365171489600#.VEqwmvldWrg.

5

The SAC Management Companies *never* allocuted to a "scheme" encompassing all conduct alleged in the indictment. Indeed, recognizing that the SAC entities were not pleading to Elan or Wyeth conduct, Plaintiffs urged that the court not accept the plea. (Def. Mem. 17-18.) Plaintiffs complained to Judge Swain that "[u]nder the Plea Agreement, however, **SAC is not required to plead guilty to insider trading in Elan and Wyeth**" and argued that "[t]he Court should reject the Plea Agreement because it allows SAC to plead guilty without admitting that it is guilty of the principal criminal conduct charged in the Indictment—insider trading in the securities of Elan Corporation, plc (Elan) and Wyeth." (Hurwitz Decl. Ex. 5, at 1, 4 (emphasis in original); *see also* Ex. 6, at 2.) Judge Swain rejected Plaintiffs' request.

And, of course, the SAC Management Companies were not charged with, and certainly did not plead guilty to, either the Buying Period claims or the Tysabri stock drop. Plaintiffs argue that the "Insider Buying Period" claims are incorporated in the Indictment because it "cited" the Martoma indictment, which had charged earlier conduct. (Pls. Mem. 15.) But they offer no support for the notion that the allegations in one indictment are somehow incorporated into a separate indictment—or, as noted above, that the charge controls over the plea.

*Third*, the stipulated financial penalty does not alter these basic precepts. It is black letter law that a sentencing court may "consider," with "no limitation," any "information concerning the background, character and conduct" of the defendant. 18 U.S.C. § 3661. The commentary to the Sentencing Guidelines also explicitly recognizes that conduct for which the defendant did not plead guilty may still be considered at sentencing. U.S.S.G. § 1B1.4 Cmt. *See, e.g., United States* v. *Watts*, 519 U.S. 148, 153-55 (1997) (uncharged or even acquitted conduct may be considered at sentencing). Thus, the existence of a stipulated financial penalty—even one that includes profits or losses avoided from securities trading—does not alter the analysis of the basis

6

of the criminal conviction, which is based on the allocution, not the charge or the penalty.

*Finally*, every court to have addressed the issue has held that the criminal conviction exception must be interpreted "narrowly" to effect Congress's clear purpose. *See Krear* v. *Malek*, 961 F. Supp. 1065, 1076 (E.D. Mich. 1997); *Rogers* v. *Nacchio*, No. 05 Civ. 50557, 2006 WL 7997562, at *4 (S.D. Fla. June 6, 2006), *aff'd in part, appeal dismissed in part*, 241 F. App'x 602 (11th Cir. 2007); *Estate of Gottdiener* v. *Sater*, No. 13 Civ. 01824, 2014 WL 1100133, at *7 (S.D.N.Y. Mar. 19, 2014), *affirmed in relevant part on reconsideration*, No. 13 Civ. 01824, 2014 WL 1885789 (S.D.N.Y. May 12, 2014). Plaintiffs cite two cases in support of their argument that the "in connection with" requirement encompasses the SAC entities' trading in Elan and Wyeth. But both cases concerned the interpretation of a jury verdict, and both reflect an unwillingness to inquire into what conduct had been the basis for the jury's findings.[4] Here, in contrast, the plea agreement and allocution detailed precisely the factual admissions made by the SAC entities, making it clear that they were not pleading guilty to Elan or Wyeth trading and rendering any such speculative inquiries unnecessary.[5]

---

[4] In *In re Enron Corporation Securities, Derivative & ERISA Litigation*, 284 F. Supp. 2d 511 (S.D. Tex. 2003), the court agreed that the conviction exception must be interpreted "'as narrowly as possible,'" *id.* at 623 (quoting *Krear*, 961 F. Supp. at 1077), and did not reach the extent of the criminal conviction exception because Arthur Anderson's conviction was not yet final. In *Thomas H. Lee Equity Fund V, L.P.* v. *Mayer, Brown, Rowe & Maw LLP*, No. 07 MDL 1092, ECF No. 707 (S.D.N.Y. May 3, 2010), a special master recommended not dismissing claims on the basis of the criminal conviction exception out of a reluctance to make a "speculative inquiry into the jury verdict," *id.* at *11, but this portion of the recommendation was never considered by the district court, which dismissed plaintiffs' RICO claims on separate grounds. *See In re Refco Sec. Litig.*, No. 07 MDL 1902, 2010 WL 3911780, at *2-3 (S.D.N.Y. Sept. 28, 2010).

[5] Plaintiffs' argument that the phrase "in connection with" as used in the PSLRA's criminal conviction exception should be read "broadly" so as to be consistent with the Supreme Court's construction of the phrase "in connection with the purchase or sale of a security" in SLUSA is misguided. First, SLUSA's language is not identical to that in the criminal conviction exception—the only overlapping language is the partial phrase "in connection with." The Supreme Court has noted that "the phrase 'in connection with' provides little guidance without a limiting principle consistent with the structure of the statute and its other provisions." *Maracich* v. *Spears*, 133 S.Ct. 2191, 2200 (2013); *see also New*

7

### III. Plaintiffs Have Not Alleged "Distinctness" Between the "Person" and "Enterprise"

Plaintiffs do not dispute that all their RICO claims require them to plead and prove distinctness between the "person" that committed a predicate RICO violation and the "enterprise" through which the "person" conducted the violation. *See Cruz*, 720 F.3d at 121. Instead, they mistakenly argue that they have alleged distinctness based on two arguments—one factual and one legal.

*First*, they contend that they have alleged sufficient facts to establish distinctness between the RICO persons (the SAC Management Companies) and the RICO enterprise (the SAC Investment Funds). But the cases are clear that differences in ownership or function do not satisfy the distinctness requirement when both the RICO persons and the RICO enterprise are affiliated corporations within a unified corporate structure. *Cruz*, 720 F.3d at 121 ("[C]orporations that are legally separate but 'operate within a unified corporate structure' and 'guided by a single corporate consciousness' cannot be both the 'enterprise' and the 'person' under § 1962(c)."); *Discon, Inc. v. Nynex Corp.*, 93 F.3d 1055, 1063-64 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343-44 (2d Cir. 1994). Here, Plaintiffs themselves have alleged that a single corporate consciousness guided all of the relevant entities (e.g., ¶ 553), and so they cannot maintain that they have pled facts sufficient to establish distinctness.

*Second*, Plaintiffs incorrectly suggest that Second Circuit law has been altered by the

---

York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995) ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining ['connection with'], and look instead to the objectives of the ERISA statute."). Second, the Supreme Court narrowed the construction of the very SLUSA phrase upon which Plaintiffs rely. *See Chadbourne & Parke LLP v. Troice*, 134 S.Ct. 1058, 1069 (2014). Ultimately, the most relevant canon of statutory interpretation here is that an exception to a "general statement of policy"—such as the criminal conviction exception—is "usually read . . . narrowly in order to preserve the primary operation of the provision." *Commissioner v. Clark*, 489 U.S. 726, 739 (1989).

8

Supreme Court's decision in *Kushner*, which held that the required distinctness could be established between an individual and a wholly-controlled corporation. 533 U.S. at 163-64. But *Kushner* explicitly noted and preserved the distinctness argument articulated in *Discon* and its progeny concerning affiliated corporations, and focused instead solely on the difference between "natural" and "corporate" persons. *Id.* at 164. Since *Kushner*, courts within the Second Circuit—and the Second Circuit itself—have recognized the continuing viability of *Riverwoods* and *Discon* in cases involving related corporate entities. "*Kushner* did not overturn the *Riverwoods* line of cases, and the Second Circuit has since reaffirmed those precedents in *Cruz*." *Palatkevich* v. *Choupak*, No. 12 Civ. 1681, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) (citing *Cruz*, 720 F.3d at 121). As Judge McMahon explained in *Palatkevich*, the analysis in *Kushner* applies only to cases involving "natural" persons: "[t]he analysis is different [] where the defendant 'person' is a natural person" because a natural person "is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent." *Id.* at *14-15. *See also In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 346 n.81 (S.D.N.Y. 2007) (rejecting the argument that *Kushner* overturned *Discon* and *Riverwoods*). Indeed, since *Kushner*, numerous courts in the Second Circuit have continued to reject RICO claims involving related corporate entities for failure to allege distinctness.[6]

Plaintiffs' reliance on *U1IT4Less, Inc.* v. *FedEx Corporation*, 896 F. Supp. 2d 275 (S.D.N.Y. 2012), is also misplaced. The alleged RICO enterprise in that case had been an

---

[6] *See Palatkevich*, 2014 WL 1509236, at *13; *DeSilva* v. *N.Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 529 (E.D.N.Y. 2011); *Sykes* v. *Mel Harris and Assocs., LLC*, 757 F. Supp. 2d 413, 426-27 (S.D.N.Y. 2010); *Reed Const. Data Inc.* v. *McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 351 (S.D.N.Y. 2010); *Physicians Mutual Insurance Co.* v. *Greystone Serving Corp.*, No. 07 Civ. 10490, 2009 WL 855648, at *7 (S.D.N.Y. Mar. 25, 2009); *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d at 346; *Crabhouse of Douglaston Inc.* v. *Newsday Inc.*, 418 F. Supp. 2d 193, 205 (E.D.N.Y. 2006); *Zito* v. *Leasecomm Corp.*, No. 02 Civ. 8074, 2003 WL 22251352, at *6 (S.D.N.Y. Sept. 30, 2003); *Panix Promotions, Ltd.* v. *Lewis*, No. 01 Civ. 2709, 2002 WL 72932, at *6 (S.D.N.Y. Jan. 17, 2002).

independent corporation before being acquired by one of the RICO corporate persons, and maintained a separate principal place of business. *Id.* at 280. And every other court within the Second Circuit has continued to reject claims of distinctness among affiliated corporations, including after *UIIT4Less* was decided. *See, e.g., Palatkevich*, 2014 WL 1509236, at *12-13.[7]

## IV. Plaintiffs Fail to Plead Vicarious Liability Under RICO

Plaintiffs do not dispute that, because RICO was intended to protect corporations, the scope of vicarious liability is far more limited than in typical cases. *See Koebel*, 262 F. Supp. 2d at 328 (Marrero, J.). In their opposition brief, Plaintiffs claim their allegations meet this standard, but they rely upon the conduct of low-level employees to establish vicarious liability under RICO, and their nebulous allegations concerning the role of the owner of the SAC entities do not suffice. Courts routinely reject RICO claims for failure to adequately allege corporate vicarious liability under RICO on a motion to dismiss,[8] and Plaintiffs' claims should be dismissed with prejudice.[9]

## Conclusion

Plaintiffs' RICO claims should be dismissed with prejudice.

---

[7] Plaintiffs also attempt to distinguish the governing cases by claiming that they only apply when a "RICO association-in-fact enterprise [] includes the alleged RICO 'person.'" (Pls. Mem. 23-24.) But they cite no authority, and fail to distinguish *Physicians Mutual Insurance Co.*, 2009 WL 855648, at *6-7, which held to the contrary. Moreover, none of the other cases cited focused on the fact that the RICO person was part of the alleged enterprise. Instead, they focused on whether the *other* entities in the association-in-fact were sufficiently distinct from the defendant—and held that they were not. *See, e.g., Reed Const. Data*, 745 F. Supp. 2d at 350.

[8] *See, e.g., Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08 Civ. 6150, 2010 WL 3026510, at *7 (S.D.N.Y. Aug. 2, 2010) (dismissing RICO claims on motion to dismiss due to failure to adequately allege vicarious liability); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 671-72 (S.D.N.Y. 2000) (same); *Qatar Nat. Navigation & Transp. Co. v. Citibank, N.A.*, No. 89 Civ. 0464, 1992 WL 276565, at *9 (S.D.N.Y. Sept. 29, 1992) *aff'd*, 182 F.3d 901 (2d Cir. 1999) (same); *Gruber v. Prudential-Bache Sec., Inc.*, 679 F. Supp. 165, 181-82 (D. Conn. 1987) (same).

[9] Further, a RICO enterprise cannot be comprised solely of corporate entities by the plain meaning of § 1961(4). In their opening brief, SAC acknowledged contrary precedent, *United States v. Huber*, 603 F.2d 387, 394 (2d Cir. 1979). But this issue has not yet been decided by the Supreme Court.

Dated:   New York, New York
         October 28, 2014

| | |
|---|---|
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br><br>By: /s/ Daniel J. Kramer<br>       Daniel J. Kramer<br>       Michael E. Gertzman<br>       Audra J. Soloway<br>       Jonathan H. Hurwitz<br><br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>(212) 373-3000<br>dkramer@paulweiss.com<br>mgertzman@paulweiss.com<br>asoloway@paulweiss.com<br>jhurwitz@paulweiss.com | WILLKIE FARR & GALLAGHER LLP<br><br>By: /s/ Martin B. Klotz<br>       Martin B. Klotz<br>       Michael S. Schachter<br>       Sameer Advani<br><br>787 Seventh Avenue<br>New York, NY 10019-6099<br>(212) 728-8102<br>mklotz@willkie.com<br>mschachter@willkie.com<br>sadvani@willkie.com |

*Attorneys for Defendants S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC, Steven A. Cohen*