USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/28/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
DAVID E. KAPLAN, et al.,              :
                                      :  12-cv-9350 (VM)
              Plaintiffs,             :
                                      :
     -against-                        :
                                      :
S.A.C. CAPITAL ADVISORS, L.P, et al., :
                                      :
              Defendants.             :
----------------------------------------X
BIRMINGHAM RETIREMENT AND RELIEF      :
SYSTEM, et al.                        :  13-cv-2459 (VM)
              Plaintiffs,             :
                                      :
     -against-                        :  **DECISION AND ORDER**
                                      :
S.A.C. CAPITAL ADVISORS, L.P., et al., :
                                      :
              Defendants.             :
----------------------------------------X
**VICTOR MARRERO, United States District Judge.**

Lead Plaintiffs David E. Kaplan, et al., individually
and on behalf of a putative class of investors in Elan
Corporation securities ("Elan Investor Class") in Case No.
12-cv-9350, together with Lead Plaintiffs City of Birmingham
Retirement and Relief System, et al., individually and on
behalf of a putative class of investors in Wyeth securities
("Wyeth Investor Class") (collectively, "Plaintiffs") in Case
No. 13-cv-2459, filed this Joint Consolidated Second Amended
Class Action Complaint (the "SACAC") against defendants
S.A.C. Capital Advisors, L.P. ("SAC LP"), S.A.C. Capital

Advisors, Inc., CR Intrinsic Investors ("CR Intrinsic"), LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC ("SAC LLC"), S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, S.A.C. Select Fund, LLC, and Steven Cohen ("Cohen") (collectively, "SAC"); defendant Mathew Martoma ("Martoma"); and defendant Sidney Gilman ("Gilman"). (Dkt. No. 162.)

The SACAC added Plaintiffs' Fourth, Fifth, and Sixth Claims for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. The Fourth Claim is brought against CR Intrinsic for violations of RICO Sections 1962(c) and 1964(c), the Fifth Claim is brought against SAC LP, SAC LLC, and CR Intrinsic (collectively, the "RICO Defendants") for violations of the same RICO sections, and the Sixth Claim is brought against the RICO Defendants for conspiracy under RICO Section 1862(c) in violation of 1962(d) and 1964(c) (collectively, the "RICO Claims"). (Id.) The RICO Defendants filed a Motion to Dismiss the RICO Claims (the "Motion"). (Dkt. No. 164.) The Plaintiffs filed opposition papers (the "Opposition") (Dkt. No. 168) and the RICO Defendants filed a reply on (the "Reply"). (Dkt. No. 170.) For the following reasons, the RICO Defendants' Motion is **GRANTED**.

## I. BACKGROUND[1]

A.   INSIDER TRADING IN WYETH AND ELAN

The Court has previously addressed in detail the facts surrounding SAC's involvement in insider trading of Elan Corporation and Wyeth securities during the clinical trials of the drug bapineuzamab ("bapi") in its Decision and Order dated August 14, 2014 ("August Order," Dkt. No. 152). See Kaplan v. S.A.C. Capital Advisors, LP, 40 F. Supp. 3d 332 (S.D.N.Y. 2014). The Court assumes familiarity with the facts as described in its prior decision.

Briefly restated, SAC employee Martoma obtained inside information regarding bapi's clinical trials through relationships he cultivated with Gilman and Joel Ross, two doctors who were supervising the trials. Martoma allegedly provided reports containing this inside information to Cohen -- SAC's founder, CEO, and owner. SAC then traded on the nonpublic information Martoma had provided, first in accumulating large positions in Elan and Wyeth and later in selling those positions just before the companies publicly

---

[1] Except where otherwise noted explicitly, the factual summary below is derived from the SACAC and the documents cited or relied upon for the facts pled therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Technology Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Unless specifically quoted, no further citation will be made to the SACAC or the documents referred to in it.

disclosed negative results of the clinical trials that
triggered major selling and a corresponding drop in the market
value of Elan and Wyeth securities.

A.  PLAINTIFFS' CLAIMS

The Plaintiffs in this action consist of two groups, the
Elan Investor Class and the Wyeth Investor Class. The Elan
Investor Class is composed of all persons who traded Elan
American Depositary Receipts ("ADRs") and other related
options contemporaneously with and opposite to SAC during the
period of August 23, 2006 to 4:00 P.M Eastern Daylight Time
on July 29, 2008 ("Elan Class Period"), while the Wyeth
Investor Class is composed of all persons who traded Wyeth
common stock and related options contemporaneously with and
opposite to SAC during the period of January 14, 2008 to 4:00
P.M. Eastern Daylight Time on July 29, 2008 ("Wyeth Class
Period").

Plaintiffs allege the following: (1) the RICO Defendants
are "persons" as defined in Section 1962(c); (2) the RICO
"enterprises" are the SAC Investment Funds, or alternatively
an association-in-fact comprised of some or all of the SAC
Investment Funds that profited from insider trading; (3) the
predicate racketeering acts are the acts of securities fraud
as they are alleged in SAC's criminal indictment; and (4) the
Plaintiffs, by trading contemporaneously with SAC while SAC

was in possession of insider information, suffered damages that are recoverable under RICO.

## II. **LEGAL STANDARD**

### A.   STANDARD OF REVIEW UNDER RULE 12(B)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

## III. **DISCUSSION**

A.   THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995
(THE "PSLRA")

The RICO Defendants argue that Plaintiffs' RICO Claims
are not actionable because they are predicated on allegations
of fraud in securities transactions. As revised by Section
107 of the PSLRA, the RICO statute provides that "any conduct"
that would be "actionable as fraud in the purchase or sale of
securities" cannot be relied upon to establish a RICO
violation. See 18 U.S.C. § 1964(c) ("1964(c)"). This bar on
securities fraud as a predicate for RICO claims, however,
"does not apply to an action against any person that is
criminally convicted in connection with the fraud." Id.

Plaintiffs do not contest that their RICO Claims rely on
fraud in the purchase and sale of securities as predicate
acts. They argue instead that their RICO Claims fall into the
criminal conviction exception permitting a RICO claim based
on securities fraud where the RICO Defendants were criminally
convicted in connection with the fraud. The RICO Defendants
disagree, claiming the exception does not apply. The Court
turns now to the scope of RICO's criminal conviction
exception.

B. RICO'S CRIMINAL CONVICTION EXCEPTION

Only a few courts have examined the scope of RICO's criminal conviction exception. In Krear v. Malek, a case arising in the Eastern District of Michigan, the court conducted an extensive review of the legislative history behind Section 107 of the PSLRA, which excluded securities fraud as a basis for claims brought under RICO and created the criminal conviction exception to that bar. See 961 F. Supp. 1065 (E.D. Mich. 1997). The Krear court found Congress "intend[ed] to correct the misapplication of RICO in the securities fraud context." Id. at 1075. It held that the purpose of the PSLRA revision to 1964(c) was to reduce the cost of raising capital by removing RICO's threat of treble damages, which "imposes exorbitant litigation costs, impedes the raising of capital and ultimately puts these costs on the shoulders of consumers and emerging innovative companies." Id. (citing 141 Cong. Rec. H2773 (statement of Rep. Cox)). In light of Congress's "wear[iness] of the susceptibility of civil RICO to litigation abuses in the securities fraud area," the court in Krear concluded the criminal conviction exception must be construed narrowly. See id. at 1076 (recognizing Congress's intent to require victims of securities violations to use the "carefully crafted Federal securities laws" instead of relying on "a statute never

- 7 -

intended to apply in these civil cases in this way" just to receive treble damages, "get discovery going all the way back 10 years to show a pattern" or "gin up settlements").

Specifically the Krear court found the criminal conviction exception must be construed "[a]s narrowly as possible so that the exception is only available to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud." Id. Otherwise, the exception would swallow the rule as "plaintiffs who were not found to have been criminally defrauded would be allowed to 'bootstrap' their RICO claims to the claims of those plaintiffs who were found to have been criminally defrauded." Id. Then, any time a defendant pleaded guilty to a charge of securities fraud, any individual or class of plaintiffs alleging they were defrauded in that scheme could bring claims under RICO -- even though the defendant's plea did not extend to defrauding those particular plaintiffs. This prospect would drastically limit the scope of the PSLRA's revision to 1964(c) and would undercut the goal of generally removing RICO claims from securities fraud litigation.

The Krear court also considered the concern that construing RICO's criminal conviction exception so narrowly would mean that some legitimate victims of a defendant's securities fraud could not rely on RICO simply because the

- 8 -

injuries they allege were not specifically referenced in an indictment for practical reasons, or because a defendant pleaded guilty to defrauding some but not all potential victims. See id. at 1077. The Krear court pointed out that, while it may seem "inequitable" to allow only specifically named securities fraud victims to assert RICO claims, the court "must presume that Congress was sufficiently familiar with the criminal prosecution process, including plea bargaining, so that it understood that a defendant who may have defrauded many plaintiffs could be convicted of defrauding only certain of those plaintiffs." Id.

Other courts which have examined the RICO criminal conviction exception similarly concluded that it should be construed as narrowly as possible. See In re Enron Corp. Sec. Deriv. & ERISA Litig., 284 F. Supp. 2d 511, 623 (S.D. Tex. 2003) (agreeing with the court in Krear that only plaintiffs who have been found criminally defrauded may make use of the exception); Rogers v. Nacchio, No. 05 Civ. 50557, 2006 WL 7997562, at *4 (S.D. Fla. June 6, 2006) (agreeing with the analysis in Krear that the exception is available only "to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud"), aff'd in part, appeal dismissed in part, 241 F. App'x 602 (11th Cir. 2007); see also Estate of Gottdiener v. Sater, No. 13 Civ. 01824, 2014

WL 1100133, at *7 (S.D.N.Y. Mar. 19, 2014), aff'd in relevant part on reconsideration, No. 13 Civ. 01824, 2014 WL 1885789 (S.D.N.Y. May 12, 2014).

This Court agrees, for the reasons stated in Krear and the other decisions described above, that RICO's criminal conviction exception must be interpreted as narrowly as possible. Accordingly, in accord with Krear, the exception is "only available to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud." Krear, 961 F. Supp. at 1076. See also Estate of Gottdiener 2014 WL 1100133, at *7 (citing Krear for its holding that only named victims can rely on RICO's criminal conviction exception). Further, particular plaintiffs cannot avail themselves of RICO's criminal conviction exception where they were not specifically named in the plea allocution if there is one. See Krear, 961 F. Supp. at 1077 (finding that any broader reading of the criminal conviction exception "would be contrary to the [PSLRA's] goal to significantly limit, if not eliminate, a defendant's exposure to treble damages for securities fraud"); see also MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 274 (2d Cir. 2011) (finding the PSLRA's goal was to drastically limit litigants' ability to rely on RICO, with its threat of treble damages, in securities fraud cases).

C. <u>DEFENDANTS WERE NOT CONVICTED OF DEFRAUDING THESE PLAINTIFFS</u>

Here, Plaintiffs cite three sources of proof which they contend support their claim that the RICO Defendants were in fact found guilty of specifically defrauding them -- the indictment ("Indictment"), the guilty plea ("Plea Allocution"), and the sentence imposed on them in the related criminal case brought by the Government against the Defendants. <u>See</u> <u>United States v. S.A.C. Capital Advisors, L.P.</u>, 13-CR-541 (S.D.N.Y.) (Dkt. Nos. 1, 24, 44). As explained below, the Court finds none of Plaintiffs' arguments persuasive.

The Court agrees with Plaintiffs' characterization that the Indictment "charged a single, unified 'Insider Trading scheme'" that, among the criminal activities allegedly involving SAC managers and analysts, specifically charged Martoma with insider trading in Elan and Wyeth. (Opposition 15.) The Indictment details Cohen's receipt of Martoma's inside information and claims that he illegally used that information. However, an indictment is simply an allegation -- a charge by the Government as to what conduct a defendant has committed. When a defendant pleads guilty and allocutes to criminal conduct, it is only that specific conduct which the guilty plea incorporates. <u>See</u> <u>Krear</u>, 961 F. Supp. at 1077

- 11 -

(finding where a defendant pleads guilty to defrauding only certain securities fraud plaintiffs as part of a plea agreement, only those plaintiffs can avail themselves of RICO's criminal conviction exception); see also S.E.C. v. 800america.com, Inc., No. 02 Civ. 9046, 2006 WL 3422670, at *3 (S.D.N.Y. Nov. 28, 2006) (finding where there is a plea allocution, its terms dictate the conduct to which a defendant pleaded guilty for collateral estoppel purposes); U.S. S.E.C. v. Monarch Funding Corp., No. 85 Civ. 7072, 1996 WL 348209, at *5 (S.D.N.Y. June 24, 1996) (determining the estoppel effect of a defendant's prior conviction requires an "analysis of the specific facts allocuted") (emphasis added). Thus, as this case law suggests, here the RICO Defendants' Plea Allocution, not the Indictment, determines the scope of the conduct to which the RICO Defendants pleaded guilty.

Plaintiffs next argue that since the RICO Defendants pleaded guilty to a scheme or artifice "as alleged in the indictment," and the Indictment alleged the Wyeth and Elan trading frauds, they have pleaded guilty to those frauds. (Opposition 15.) While the Plea Allocution may have included the phrase "as alleged in the indictment," the phrase is part of the general recitation by the prosecutor of the elements of wire fraud the Government would have to prove if the case were to go to trial. (See Dkt. No. 166, Hurwitz Decl. Ex. 4,

- 12 -

at 14:10-15:13.) The Plea Allocution then went into great detail as to what specific activity from the Indictment the RICO Defendants were pleading guilty to performing, which included no reference to Wyeth, Elan, or Martoma. (See id. at 25:12-30:4.)

The Government similarly leaves Wyeth and Elan out of its recitation in the Plea Allocution describing the Government's evidence, making only a general reference to other instances of insider trading the Government could prove. (See id. at 32:13-39:10.) Omitting reference to Wyeth and Elan from the Plea Allocution was presumably intentional, as the RICO Defendants' Plea Allocution was entered pursuant to a plea agreement that included no reference to Wyeth, Elan, or Martoma, and required only that each RICO Defendant plead guilty to the insider trading of at least one of its employees, to be decided by the RICO Defendants themselves. (See Dkt. No. 169, Wohl Decl. Ex. A, at 4). In the Plea Allocution, the RICO Defendants pleaded guilty only on the basis of corporate responsibility for the actions of three other specific SAC employees -- Noah Freeman, Donald Longueuil, and Richard Lee – whose offenses as charged in the Indictment related to insider trading in other securities. (Id. at 14:14-15:3, 25:16-26:25, 27:1-18, 27:19-28:4.) In

consequence, they did not plead guilty to any conduct involving Martoma or Elan or Wyeth.

In fact, Plaintiffs themselves urged the Court not to accept the RICO Defendants' plea agreement specifically because "[under] the Plea Agreement . . . SAC is not required to plead guilty to insider trading in Elan or Wyeth." (See DKt. No. 166, Hurwitz Decl. Ex. 5, at 1, 4) (emphasis in original.) As Plaintiffs pointed out during the plea conference, "the allocution made no reference to [the Elan and Wyeth] trades . . . . The proposed plea would let the defendants plead out without admitting that they did what the indictment charges and what the proposed penalty is based on." (Dkt. No. 166, Hurwitz Decl. Ex. 4, at 41:19-42:1.) The Court then accepted the guilty plea as allocuted, with no mention of Martoma, Elan, Wyeth, or Plaintiffs. Construing RICO's criminal conviction exception as narrowly as possible, the Court is persuaded that the RICO Defendants' Plea Allocution does not fall within the exception since, as Plaintiffs concede, it makes no mention of the conduct Plaintiffs claim defrauded them and no specific mention of Plaintiffs themselves.

Plaintiffs further argue that even if the Plea Allocution did not reference Martoma, Wyeth, or Elan, the sentence the court imposed on the RICO Defendants proves that

they were convicted of insider trading in Wyeth and Elan
because those trades accounted for the vast majority of the
Sentencing Guidelines Fine to which the RICO Defendants were
sentenced. The Government also wrote in its sentencing
memorandum that "the Stipulated Guidelines Sentence is based
on all of the conduct charged in the indictment, including
all insider trading profits earned and losses avoided by
Steinberg and Martoma." (See Dkt. No. 169, Wohl Decl. Ex. D,
at 8-9 n.1.) However, as the RICO Defendants correctly point
out in their Reply, a sentencing court may consider any
information concerning the background, character and conduct
of the defendant, including uncharged or acquitted conduct.
See 18 U.S.C. § 3661; U.S.S.G. §1B1.4 Cmt.; United States v.
Watts, 519 U.S. 148, 153-55 (1997). Moreover, in connection
with any findings the court makes relying on such information,
the applicable standard is preponderance of the evidence, not
the more rigorous criminal law test of proof beyond reasonable
doubt. That the RICO Defendants' financial penalties were
based on the Wyeth and Elan trades has no bearing on whether
the RICO Defendants, on the basis of the applicable criminal
case standard of proof, were convicted with regard to those
trades.

    RICO's criminal conviction exception is to be narrowly
construed such that a defendant must have been criminally

convicted of securities fraud encompassing the specific plaintiffs filing suit and the specific fraudulent conduct to which the defendant's conviction relates. It is clear from the record that the RICO Defendants did not plead guilty to insider trading in Wyeth and Elan stocks and therefore did not plead guilty to defrauding the Plaintiffs. To hold otherwise would mean, in essence, a defendant charged with multiple securities fraud violations cannot plead to only some of those frauds without opening the door to civil RICO claims on all of the alleged frauds. And this result would follow even if the reason the defendant did not plead guilty to the other violations was that he was in fact innocent of those allegations. Such a holding would not constitute a sensible interpretation of Section 1964(c).

It would also run counter to practical experience common in prosecution and defense strategies employed in criminal cases. Typically, plea agreements are carefully negotiated by the Government so as to limit the defendants' admissions to narrowly specified conduct. From the prosecutor's standpoint, such limitation serves as an inducement to defendants to enter into plea agreements that reflect admission of some but not necessarily all of the charges and conduct the Government alleges. From the defendants' perspective, narrowing the scope of the crimes embodied by the guilty plea constitutes

- 16 -

two forms of protection: against double jeopardy in the criminal action, and against civil liability by the potential collateral estoppel effect of the judgment of conviction. The presumptive narrow reading of the conduct and victims covered by a defendant's plea agreement is especially applicable in a case, as here, in which the plea negotiations and the defendant's admissions of guilt to criminal behavior occurs at a time when civil litigation has already been commenced in which a criminal conviction could be introduced for collateral estoppel purposes. Knowing that such litigation is already pending presumably would create powerful reason for extra caution by both the prosecution and the defense to ensure that the defendant's guilty plea does not extend to criminal conduct and victims beyond those specifically covered by the plea agreement.

Accordingly, because in United States v. S.A.C. Capital Advisors, L.P., 13-CR-541 (S.D.N.Y.), SAC was not found to have criminally defrauded Plaintiffs, Plaintiffs' RICO Claims do not fall within RICO's criminal conviction exception and are barred by Section 1964(c) as amended by Section 107 of the PSLRA.

D. THE PARTIES' OTHER ARGUMENTS

Since Plaintiffs' RICO Claims are barred in their entirety by the PSLRA and the instant Motion relates only to

- 17 -

the RICO Claims, the Court will not consider the parties'
other arguments.

## ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion filed by defendants S.A.C.
Capital Advisors, L.P., CR Intrinsic Investors, LLC, and
S.A.C. Capital Advisors, LLC (Dkt. No. 164) to dismiss Counts
Four, Five, and Six of the Joint Consolidated Second Amended
Class Action Complaint of Plaintiffs is **GRANTED.**

**SO ORDERED.**

Dated:      New York, New York
            April 27, 2015

                                        Victor Marrero
                                        U.S.D.J.