UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID E. KAPLAN, et al.,<br><br>        Plaintiffs,<br><br>        - against -<br><br>S.A.C. CAPITAL ADVISORS, L.P., et al.,<br><br>        Defendants. | No. 12 Civ. 9350 (VM)<br>(KNF) |
| BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, et al.,<br><br>        Plaintiffs,<br><br>        - against -<br><br>S.A.C. CAPITAL ADVISORS, L.P., et al.,<br><br>        Defendants. | No. 13 Civ. 2459 (VM)<br>(KNF)<br><br>Oral Argument Requested |

## SAC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS TO PRODUCE LITIGATION FUNDING DOCUMENTS

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3020

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8102

*Attorneys for Defendants S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC, and Steven A. Cohen (together, "SAC")*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY..........................................................................3

ARGUMENT ......................................................................................................................................4

    I.     Class Counsel's Financial Resources Are Relevant Under Rule 23(g)............6

    II.    Class Counsel's Financial Resources Are Relevant Under Rule 23(a)(4) ........................................................................................................................8

    III.   The Class Representatives Are Financially Responsible For Providing Notice To Absent Class Members Under Rule 23(c)(2) ................10

    IV.   Contrary To Plaintiffs' Position, Courts Do Not "Presume" Adequacy........................................................................................................12

CONCLUSION .................................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abrams v. First Tennessee Bank Nat'l Ass'n,*
    03 Civ. 428, 2007 WL 320966 (E.D. Tenn. Jan. 30, 2007) .................................................5

*Berger v. Seyfarth Shaw LLP,*
    07 Civ. 05279, 2008 WL 4681834 (N.D. Cal. Oct. 22, 2008) ...........................................5

*Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library, Inc.,*
    586 F.2d 962 (2d Cir. 1978) ..............................................................................................6

*Cohen v. Cohen,*
    09 Civ. 10230, ECF No. 151 (S.D.N.Y. Jan. 29, 2015) ....................................................4

*Dennis v. Saks & Co.,*
    20 Fed. R. Serv. 2d 994 (S.D.N.Y. 1975) .......................................................................10

*Drummond Co. v. Terrence P. Collingsworth,*
    11 Civ. 3695, ECF No. 64 (N.D. Ala Oct. 15, 2013) ........................................................5

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ........................................................................................................10

*Elster v. Alexander,*
    74 F.R.D. 503 (N.D. Ga. Nov. 23, 1976) ..........................................................................8

*Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc.,*
    439 F.3d 165 (2d Cir. 2006) ..............................................................................................2

*In re Flag Telecom Holds., Ltd. Sec. Litig.,*
    574 F. 3d 29 (2d Cir. 2009) ...............................................................................................8

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.,*
    09 Civ. 3701, 2013 WL 1896934 (S.D.N.Y. May 7, 2013) ............................................10

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ........................................................................................................12

*Guse v. J.C. Penney Co.,*
    409 F. Supp. 28 (E.D. Wis. 1976) ................................................................................9, 10

*In re Initial Pub. Offerings Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006) .......................................................................................5, 7, 12

**Page(s)**

*Kaplan* v. *S.A.C. Capital Advisors, L.P.*,
   12 Civ. 9350, 2015 WL 2337360 (S.D.N.Y. Apr. 28, 2015) .................................................3

*Mascol* v. *E & L Transp., Inc.*,
   03 Civ. 3343, 2005 WL 1541045 (E.D.N.Y. June 29, 2005) ..............................................11

*Miller UK Ltd.* v. *Caterpillar, Inc.*,
   17 F. Supp. 3d 711 (N.D. Ill. 2014) ......................................................................................5

*Moll* v. *U.S. Life Title Ins. Co. of New York*,
   113 F.R.D. 625 (S.D.N.Y. 1987) ..........................................................................................8

*Montano* v. *Chao*,
   07 Civ. 735, 2008 WL 5377745 (D. Colo. Dec. 19, 2008) .......................................7, 8, 10

*Norman D.D.S., P.C.* v. *ARCS Equities Corp.*,
   72 F.R.D. 502 (S.D.N.Y.1976) .............................................................................................2

*Piazza* v. *First Am. Title Ins. Co.*,
   2007 WL 4287469 (D. Colo. Dec. 5, 2007) .......................................................................10

*Sayre* v. *Abraham Lincoln Fed. Sav. & Loan Ass'n*,
   65 F.R.D. 379 (E.D. Pa. 1974) ...............................................................................2, 8, 9, 12

*Stephenson* v. *Dow Chem. Co.*,
   273 F.3d 249 (2d Cir. 2001) .................................................................................................2

*Thompson* v. *World Alliance Fin. Corp.*,
   08 Civ. 4951, 2010 WL 3394188 (E.D.N.Y. Aug. 20, 2010) ............................................13

*Titus* v. *Burns & McDonnell, Inc. ESOP*,
   09 Civ. 117, 2010 WL 3713666 (W.D. Mo. Sept. 13, 2010) .............................................13

*Wal-Mart Stores, Inc.* v. *Dukes*,
   131 S. Ct. 2541 (2011) ...............................................................................................1, 5, 12

*Wise* v. *Cavalry Portfolio Servs., LLC*,
   09 Civ. 86, 2010 WL 3724249 (D. Conn. Sept. 15, 2010) ................................................13

### OTHER AUTHORITIES

Fed. R. Civ. P. 23 .................................................................................................................passim

As requested by this Court by Order dated May 15, 2015 (ECF No. 179), SAC respectfully submits this memorandum of law in further support of its motion to compel the production by the Elan plaintiffs of contracts, litigation funding agreements, other similar documents executed between the Elan plaintiffs' counsel and third parties relating to this case, and correspondence with those funders or third parties about this case (the "Litigation Funding Documents").

## PRELIMINARY STATEMENT

Counsel to lead plaintiffs for the Elan shareholder class admit that they are funding this case through a litigation funding agreement with a third party, but have refused to provide any details or documents concerning that arrangement. In one month's time, plaintiffs' motion for class certification will be due, and when considering that motion, the Court will be required to conduct a "rigorous analysis" of "the resources that counsel will commit to representing the class" and the adequacy of the proposed lead plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4); Fed. R. Civ. P. 23(g)(1)(iv); *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2551 (2011). Plaintiffs' arrangements for funding this litigation are plainly relevant to these requirements. In particular, defendants are entitled to explore through discovery whether there is a risk that the Elan plaintiffs' funding arrangements could affect the strategic decisions they will make on behalf of the class, or could cause counsel's interests to differ from those of the putative class members they purport to represent, as numerous cases have recognized.

Even beyond the significant interests of the Court and defendants, it is imperative that putative class members also have access to information about the Elan plaintiffs' unconventional funding arrangement now, prior to the appointment of lead plaintiffs and lead counsel to represent them, and prior to further litigation in this action. Putative class members are entitled to understand how counsel are funding and prosecuting this case on their behalf, and

to raise any issues with the arrangement in the upcoming class certification briefing. If they only later learn, possibly years in the future, that the funding arrangement raises issues with the Elan plaintiffs' resources or adequacy, then that could have severe consequences. For example, if the arrangements create a conflict with the class, or intra-class conflicts, class members could attack the result of any settlement or trial of this case. *See, e.g., Stephenson* v. *Dow Chem. Co.*, 273 F.3d 249, 261 (2d Cir. 2001) (allowing collateral attack on class action settlement because absent class members had not been adequately represented); *see also Wolfert ex rel. Estate of Wolfert* v. *Transamerica Home First, Inc.*, 439 F.3d 165, 171 (2d Cir. 2006) ("'Final judgments . . . remain vulnerable to collateral attack for failure to satisfy the adequate representation requirement.'") (citation omitted) (alteration in original)). Similarly, if the Elan plaintiffs' counsel were to run out of funds, class members may attempt to re-litigate this case all over again with a new set of lead plaintiffs. *See Sayre* v. *Abraham Lincoln Fed. Sav. & Loan Ass'n*, 65 F.R.D. 379, 384 (E.D. Pa. 1974).

      Without discovery, the Court may also learn too late that the agreement's terms may inappropriately provide a level of control to the funders, who owe duties to neither this Court as officers nor class members as fiduciaries. *Cf. Norman D.D.S., P.C.* v. *ARCS Equities Corp.*, 72 F.R.D. 502, 504 (S.D.N.Y.1976) ("We are reluctant to permit a plaintiff to conduct litigation as a class representative, on the understanding that a related party will voluntarily pay the litigation expenses from time to time as they become due.").

      SAC respectfully submits that nobody's interests—not those of defendants, not those of putative class members, and certainly not those of the Court—will be served by keeping this information secret and running the risk that an undisclosed issue generates problems and

years of re-litigation down the line. Only the narrow and targeted discovery regarding those arrangements that SAC seeks can ensure that this does not happen.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs traded Elan and Wyeth stock at various times from August 2006 through July 2008. They assert "contemporaneous trader" insider trading claims against defendants under Sections 10(b) and 20A of the Securities Exchange Act of 1934. They purport to sue on behalf of a putative class of all traders of Elan and Wyeth stock during those time periods.

On September 3, 2014, Plaintiffs amended their complaint to add RICO claims. Those claims were recently dismissed in their entirety by Judge Marrero. *Kaplan* v. *S.A.C. Capital Advisors, L.P.*, 12 Civ. 9350, 2015 WL 2337360 (S.D.N.Y. Apr. 28, 2015) (Ex. H).[1]

On September 19, 2014, SAC served on plaintiffs its First Set of Document Requests. These Requests seek, among other things, documents relevant to plaintiffs' anticipated motion for class certification and appointment of lead plaintiffs and their counsel to represent any class that is certified. In its Requests, SAC asked that plaintiffs produce all "retainer agreements"[2] as well as "litigation funding agreements, or similar documents." (SAC's First Set of Document Requests to Plaintiff David E. Kaplan, at 12 (Nov. 19, 2014)) (Ex. A). During the meet-and-confer process, plaintiffs agreed to deem this request to include any

---

[1] Citations in the form "Ex __" refer to exhibits to the attached declaration of Kyle A. Wirshba.

[2] The Elan plaintiffs initially refused to provide either retainer agreements or litigation funding documents. With respect to retainer agreements, they expressly "acknowledge[d] the general principle that retainer agreements are subject to disclosure." (Letter from Gregg S. Levin to Michael E. Gertzman, at 3 (Jan. 23, 2015)) (Ex. C). Nevertheless, unlike the Wyeth plaintiffs (who produced complete copies of their retainer agreements), the Elan plaintiffs insisted on producing only redacted copies of the agreements, which concealed their fee arrangement, on the basis "that disclosure of the redacted matter would inappropriately inform Defendants of the economic incentives of counsel in any negotiations to compromise the claims herein." (*Id.*) When SAC indicated that it would move to compel, the Elan Plaintiffs ultimately agreed to produce complete retainer agreements. (Letter from Gregg S. Levin to Paul Paterson, at 2 (Feb. 5, 2015) (alteration in original)) (Ex. E).

3

"contracts, litigation funding agreements, and other similar documents . . . between plaintiffs' counsel and third parties." (Ex. E at 2 (alteration in original)).

With respect to the Litigation Funding Documents—the subject of this motion—the Elan plaintiffs definitively have "confirm[ed] that responsive documents exist." (*Id.*) However, they "decline[d] . . . to produce these documents on the grounds that they are not relevant." (*Id.*) The Elan plaintiffs have maintained this position, which has necessitated the present motion to compel. (The Wyeth plaintiffs confirmed that they had no responsive documents, and on the basis of that representation, this motion does not seek similar discovery from the Wyeth plaintiffs.) The Elan plaintiffs have never argued that the production of these documents would be burdensome, nor could they. SAC seeks only a discrete set of documents concerning the funding provided by third parties, not more general discovery about the assets of the Elan plaintiffs or their counsel.

On February 17, 2015, SAC filed a letter motion, pursuant to the Pilot Project Rules, to request that this Court compel the discovery of the Elan plaintiffs' Litigation Funding Documents. (*See* Letter from Audra J. Soloway to Hon. Kevin Nathanial Fox (Feb. 17, 2015)) (Ex. F). Plaintiffs submitted a letter in opposition on February 20, 2015. (*See* Letter from Ethan D. Wohl to Hon. Kevin Nathanial Fox (Feb. 20, 2015)) (Ex. G). On May 15, 2015, this Court issued an Order requesting memoranda of law concerning SAC's motion. *See* ECF No. 179. SAC files the present brief in accordance with that Order.

## ARGUMENT

Courts routinely recognize that litigation funding agreements are relevant, and order parties to produce those agreements and related documents. *See, e.g.*, *Cohen* v. *Cohen*, 09 Civ. 10230, ECF No. 151, at *1 (S.D.N.Y. Jan. 29, 2015) (ordering disclosure of

communications with litigation funder); *Drummond Co. v. Terrence P. Collingsworth*, 11 Civ. 3695, ECF No. 64, at *2-3 (N.D. Ala Oct. 15, 2013) (ordering discovery of information concerning "who financing was sought from, what payments were received, how the need for money was characterized, what the terms of the financing were, and information on actual money advanced or loaned or provided to prosecute the actions"); *Berger v. Seyfarth Shaw LLP*, 07 Civ. 05279, 2008 WL 4681834, at *3 (N.D. Cal. Oct. 22, 2008) (ordering disclosure of litigation funding agreement); *Abrams v. First Tennessee Bank Nat'l. Ass'n*, 03 Civ. 428, 2007 WL 320966, at *2 (E.D. Tenn. Jan. 30, 2007) (holding that defendants were "entitled to know the amount of legal fees" paid by a litigation funder).[3]

In this case, the Litigation Funding Documents are especially significant given plaintiffs' upcoming class certification motion. The deadline for the motion—June 29, 2015—quickly approaches. When the Court considers the motion, class certification will be appropriate only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites" to certification are established. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The Second Circuit therefore requires district courts to "receive enough evidence . . . to be satisfied that each Rule 23 requirement has been met." *In re Initial Pub. Offerings Sec. Litig.* ("*In re IPO*"), 471 F.3d 24, 41 (2d Cir. 2006), *decision clarified on other grounds*, 483 F.3d 70 (2d Cir. 2007).

---

[3] In their prior letter brief, plaintiffs cited *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill. 2014), for the proposition that litigation funding agreements are not discoverable. (Ex. G at 2 n.1). But *Miller* held only that such agreements were irrelevant to arguments about champerty and maintenance, and arguments that the funder was the real party in interest. *See* 17 F. Supp. 3d at 728-30. *Miller* said nothing about the relevance of third-party funding arrangements to Rule 23—the case was not even a class action—and has no bearing on SAC's motion to compel.

5

It follows that discovery concerning Rule 23's requirements is key—"[f]ailure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is held." *Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978). In *Chateau de Ville*, the Second Circuit reversed the district court's certification of the class because "the existing record [was] inadequate for resolving the relevant issues." *Id.* Defendants argued that plaintiffs were not adequate class representatives, and the court held that "'discovery may be necessary in order to . . . appraise the adequacy of representation.'" *Id.* (alterations in original) (quoting Marvin E. Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F. R.D. 39, 41 (1967)).

Here, the Court should grant SAC's narrow and targeted request for Litigation Funding Documents because this discovery is necessary to ensure that the Elan lead plaintiffs and their counsel can satisfy the prerequisites of Rule 23. In particular, as discussed further below, this inquiry requires the Court to assess whether plaintiffs (i) possess sufficient resources to commit to the class; (ii) will adequately represent the class; and (iii) can fund proper notice to the many thousand absent class members.

## I. Class Counsel's Financial Resources Are Relevant Under Rule 23(g)

Federal Rule of Civil Procedure 23(g) provides that "[i]n appointing class counsel, the court . . . must consider . . . the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv). While the Rule is "couched in terms of the court's duty, [it] also informs counsel seeking appointment about the topics that should be addressed in an application for appointment or in the motion for class certification." Fed. R. Civ. P. 23(g)(1)(C) ad. comm. note. Thus, "the court may direct applicants [for class counsel] to inform

the court concerning any agreements about a prospective award of attorney fees"—which would include an agreement that some portion of an award be paid to a litigation funder—"as such agreements may sometimes be significant in the selection of class counsel." *Id.*

The analysis mandated by Rule 23(g) would be impossible without appropriate information about plaintiffs' counsel's arrangements for funding the litigation. *See In re IPO*, 471 F.3d at 41. *Montano* v. *Chao*, 07 Civ. 735, 2008 WL 5377745 (D. Colo. Dec. 19, 2008), is on point. There, the court considered a motion to compel discovery from a third party responsible for paying class counsel's fees. *Id.* at *4. It held that Rule 23(g) required it "to consider all matters which may be germane to whether or not proposed class counsel . . . are able to fairly and adequately protect the interests of the class." *Id.* While it was premature, at the discovery stage, for the court to determine whether the third-party funding arrangement created an inherent conflict for class counsel, the court held that "relevant . . . discovery into whether [the funder] is funding the class action, how much money [it] has paid to the proposed class counsel, and how much money the law firm has received from [it] on other matters" was warranted. *Id.* The court found that third party funding created "a situation for which further investigation is warranted." *Id.*

The Elan plaintiffs have refused to provide information necessary to determine whether this case presents the same danger of inherent conflict that existed in *Montano*. In fact, the only information that the Elan plaintiffs have provided reveals that this case raises exactly that danger. Although counsel for the Elan plaintiffs has "represent[ed] to the Court that [their] Firm has sufficient resources to see the case through trial and appeal" (Ex. G at 2), that is only because—by their own admission—some undisclosed third party is providing funding to them specifically for this litigation. (*See id.* (acknowledging that the Elan plaintiffs' counsel have "a

7

funding agreement and related correspondence between [their] Firm and a third party")). Defendants and the Court should be entitled to understand the details of these arrangements given their relevance to the upcoming Rule 23(g) inquiry.

## II. Class Counsel's Financial Resources Are Relevant Under Rule 23(a)(4)

The Elan plaintiffs' ability to finance the prosecution of this class action is also relevant to whether or not they "will fairly and adequately protect the interests of the class," as required by Rule 23. Fed. R. Civ. P. 23(a)(4); *see also, e.g., Moll v. U.S. Life Title Ins. Co. of New York*, 113 F.R.D. 625, 632 (S.D.N.Y. 1987) (holding that information regarding plaintiff's "ability to pay for the litigation" was "relevant for discovery purposes and must be disclosed"); *Elster v. Alexander*, 74 F.R.D. 503 (N.D. Ga. Nov. 23, 1976) ("[T]he plaintiff's financial ability to 'vigorously prosecute the interests of the class through qualified counsel' is relevant to the adequacy of his purported representation of the class.").

In this case, the Elan plaintiffs' counsel—as opposed to plaintiffs themselves—are advancing the costs of litigation through some undisclosed agreement with an undisclosed non-party litigation funder. Where, as here, plaintiffs' attorneys rather than plaintiffs are advancing costs, the focus of the inquiry into plaintiffs' adequacy shifts to their attorneys' ability to pay. *See, e.g., Montano*, 2008 WL 5377745, at *4 (holding that financing of class counsel's fees by a third-party that was not a class member was "relevant to the adequacy of representation of the class" and could raise "issues with direct bearing on the loyalty interests of the proposed class counsel"); *Sayre v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 65 F.R.D. 379, 383 (E.D. Pa. 1974) ("Whether counsel can and will pay the expenses of suit, rather than whether plaintiffs can afford them, becomes the relevant question . . . ."), *amended* 69 F.R.D. 117 (E.D. Pa. 1975); *see also In re Flag Telecom Holds., Ltd. Sec. Litig.*, 574 F. 3d 29, 35 (2d Cir. 2009) ("Adequacy

'entails inquiry as to whether . . . plaintiff's attorneys are qualified, experienced, *and able to conduct the litigation.*'" (emphasis added) (quoting *Baffa* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000))). For example, in *Sayre*, the court allowed defendants to pursue discovery concerning plaintiffs' understanding of their fee arrangement with counsel and their responsibilities for costs and expenses of notice to the class. 65 F.R.D. at 386.

The only case cited by either party in the previous letter briefing that bears directly on the discovery of class counsel's funding for an adequacy inquiry is *Guse* v. *J.C. Penney Co.*, 409 F. Supp. 28 (E.D. Wis. 1976), *rev'd on other grounds*, 562 F.2d 6 (7th Cir. 1977). The *Guse* court considered an almost identical request to that made by SAC here. Defendants sought to compel the production of information concerning attorneys' ability to fund a large class action on behalf of their clients. *Id.* at 30. The court held "as to the issue whether the plaintiff is an adequate class representative for purposes of Rule 23(a)(4), the relevant inquiry concerning the ability to fund the costs of a class action focuses upon the assets of the plaintiff's attorneys." *Id.* at 30-31. The court then required the plaintiffs' attorneys to answer deposition questions regarding their financial status, because "the financial position of [plaintiffs' attorneys is] indeed within the scope of relevancy for purposes of Rule 26." *Id.*

Unlike *Guse*, the two cases previously cited by plaintiffs in their letter brief are entirely inapposite. (*See* Ex. G at 2 (citing *Fort Worth Emps. Ret. Fund* v. *J.P. Morgan Chase & Co.*, 09 Civ. 3701, 2013 WL 1896934 (S.D.N.Y. May 7, 2013); *Piazza* v. *First Am. Title Ins. Co.*, 2007 WL 4287469 (D. Colo. Dec. 5, 2007))).

*First*, both cases concern retainer agreements, which are not at issue in this motion, rather than agreements between plaintiffs' counsel and third parties. Indeed, the Elan

9

plaintiffs have expressly "acknowledge[d] the general principle that retainer agreements are subject to disclosure" and have now produced those agreements in their entirety. (Ex. C at 3).

*Second*, both cases involved motions to compel that failed to "'provide any basis for questioning counsel's ability to adequately fund the action.'" (Ex. G at 2 (quoting *Piazza*, 2007 WL 4287469, at *1)); *see also, e.g.*, *Fort Worth*, 2013 WL 1896934, at *2; *Piazza*, 2007 WL 4287469, at *1 ("The defendant presents no factual basis for speculating about conflicts of interest . . . . Nor does the defendant's motion provide any basis for questioning counsel's ability to adequately fund the action."). The same cannot be said in this case. Rather, here, the Elan plaintiffs' counsel have admitted that they have a specific litigation funding agreement for this case—meaning that they cannot, or will not, bear the costs of this litigation unassisted. Unlike the cases on which plaintiffs rely, this admission necessarily raises adequacy concerns given the potential for conflicting interests. *See, e.g.*, *Montano*, 2008 WL 5377745, at *4; *Guse*, 409 F. Supp. at 28.

### III. The Class Representatives Are Financially Responsible For Providing Notice To Absent Class Members Under Rule 23(c)(2)

Finally, plaintiffs' financial arrangements are also relevant under Rule 23(c)(2)(B), which requires class representatives to bear the costs of providing notice to all class members. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-79 (1974) ("[T]he plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit."). The costs of providing this notice in nationwide securities class actions can be high, if not prohibitive. *See id.*; *Dennis v. Saks & Co.*, 20 Fed. R. Serv. 2d 994, at *3 (S.D.N.Y. 1975) ("When as here, the potential class numbers in the hundreds of thousands, the costs of notice alone . . . will far exceed the possible recoveries of the representative parties."). When class counsel is fronting the costs of the litigation, their ability "to pay for notice and other costs of litigation is relevant to whether

10

they will fairly and adequately represent all class members." *Dennis*, 20 Fed. R. Serv. 2d at *4.; *see also Mascol* v. *E & L Transp., Inc.*, 03 Civ. 3343, 2005 WL 1541045, at *6 (E.D.N.Y. June 29, 2005) ("Courts have, however, found a class representative[']s financial resources to be a relevant factor in determining the adequacy of class representation when the ability of the class representative to finance notice to large, nationwide classes is questionable.").

Plaintiffs seek to certify a class of "thousands of members in the proposed Elan Investor Class" who traded Elan stock over a two-year period. (Second Am. Compl. ¶ 633, *Kaplan* v. *SAC Capital Advisors, L.P.*, 12 Civ. 9350, ECF No. 162 (S.D.N.Y. Sept. 3, 2014); *see also id.* ("During the Elan Class Period, Elan ADRs were actively traded on the NYSE and over 400,000,000 ADRs were then outstanding.")). Providing "the best notice that is practicable" to the proposed class, "including individual notice to all members who can be identified through reasonable effort," will inevitably be an expensive enterprise for which plaintiffs and, in this action, their counsel are financially responsible. *See* Fed. R. Civ. P. 23(c)(2)(B).

Indeed, within the last week, plaintiffs have submitted a highly unusual document purporting to dismiss Dr. Gilman as a defendant from the case on behalf of the named plaintiffs personally, but not on behalf of the class that plaintiffs purport to represent. The document does not propose giving putative class members any notice of the dismissal, even though, as a practical matter, this will effectively end their claims against Gilman. SAC will be submitting a separate response concerning plaintiffs' proposal, but the unusual nature of that proposal—possibly designed, in part, to avoid the costs of giving any notice to the class, or potential challenges by other class members to the dismissal—highlights the importance of scrutinizing plaintiffs' financial capacity and willingness to provide proper notice to class members.

Plaintiffs' counsel has admitted that a third party is involved in funding this litigation, but refuses to produce documentation bearing on the funds that this party will provide for notification to class members, and how the costs of notification will be shared. But as the above cases show, that information is relevant to the adequacy inquiry under Rule 23(c)(2)(B).

## IV.    Contrary To Plaintiffs' Position, Courts Do Not "Presume" Adequacy

The Elan plaintiffs have argued that, when determining class certification, the Court should simply "presume sufficient resources in the absence of evidence to the contrary." (Ex G at 2.) That is not a valid argument on which to oppose discovery for four reasons.

*First*, there is evidence here that the Elan plaintiffs do not themselves have sufficient resources to finance this case—*i.e.* their own admission that an unknown third party is actually financing the costs of the litigation.

*Second*, plaintiffs' position—that the Court should presume their adequacy based on their own say-so—is flatly contradicted by Supreme Court and Second Circuit precedent. "Actual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982); *see also In re IPO*, 471 F.3d at 33 (same). Thus, the Supreme Court has made clear that courts should perform a "rigorous analysis" of the class certification requirements and "'probe behind the pleadings before coming to rest.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 160). Conclusory statements by plaintiffs and their counsel attesting to their own adequacy do not pass muster. *See, e.g., Sayre*, 65 F.R.D. at 384 ("[T]his Court need not accept at face value counsel's contention that his firm will advance all the funds necessary to effectively prosecute this action in the name of the class which may ultimately be certified."). If those statements satisfied a "rigorous analysis," anything would.

12

*Third*, the three cases previously cited by plaintiffs on this point are inapplicable. (Ex. G at 1 (citing *Wise* v. *Cavalry Portfolio Servs., LLC*, 09 Civ. 86, 2010 WL 3724249 (D. Conn. Sept. 15, 2010); *Thompson* v. *World Alliance Fin. Corp.*, 08 Civ. 4951, 2010 WL 3394188 (E.D.N.Y. Aug. 20, 2010); *Titus* v. *Burns & McDonnell, Inc. ESOP*, 09 Civ. 117, 2010 WL 3713666, at *4 (W.D. Mo. Sept. 13, 2010))). In two of the three cases, defendants did not even dispute plaintiffs' adequacy. *See Thompson*, 2010 WL 3394188, at *10 (noting that defendants *agreed* that lead counsel should be appointed, did not oppose plaintiffs' class certification motion, and took no position regarding the appointment of lead counsel); *Burns*, 2010 WL 3713666, at *3 ("Defendants have not contested Plaintiff's adequacy."). In the third case, the court saw "no reason to doubt [counsel's] representation that they can finance the costs of this class action." *Wise*, 2010 WL 3724249, at *5. As discussed above, that conclusion does not apply here, when plaintiffs' counsel have conceded the existing of a litigation funding agreement.[4]

Moreover, none of these cases involved requests for discovery concerning the Rule 23 requirements—they are all class certification decisions determining whether plaintiffs actually satisfied those requirements. The cases are therefore inapposite. SAC is not currently asking this Court to declare plaintiffs or their counsel inadequate, but merely to allow the discovery of evidence that bears on the Rule 23 inquiries that the district court must ultimately

---

[4] The cases that plaintiffs previously cited in support of their argument that counsel's resources should be presumed because they have already "devoted significant effort" to this case are also inapposite. Neither class counsel nor their resources were even challenged in any of those cases (and one of the cases involved a settlement class). (*See* Ex. G at 2 (citing *Reid* v. *Donelan*, 297 F.R.D. 185, 194 (D. Mass. 2014); *Pritchard* v. *Cnty. of Erie*, 269 F.R.D. 213, 218 (W.D.N.Y. 2010); *D.S. ex rel. S.S.* v. *New York City Dep't of Educ.*, 255 F.R.D. 59, 74 (E.D.N.Y. 2008))).

13

undertake. SAC will need to be permitted to discover evidence of inadequacy if the Court is to evaluate, as required by Rule 23, whether sufficient evidence of adequacy exists.

*Fourth*, plaintiffs should not be permitted to pick and choose which information about their funding arrangements to share and which information to hide from defendants, the putative class members they purport to represent, and the Court. As discussed above, if plaintiffs' funding arrangement raises issues that are only discovered later, those issues could set this case back by years and jeopardize any resolution of the case, either in a settlement or at trial.

## CONCLUSION

For the foregoing reasons, this Court should compel the production of Plaintiffs Litigation Funding Documents.

Dated: New York, New York
May 25, 2015

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
Daniel J. Kramer
Michael E. Gertzman
Audra J. Soloway
Jonathan H. Hurwitz

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
dkramer@paulweiss.com
mgertzman@paulweiss.com
asoloway@paulweiss.com
jhurwitz@paulweiss.com

WILLKIE FARR & GALLAGHER LLP

By: _____
Martin B. Klotz
Michael S. Schachter
Sameer Advani

787 Seventh Avenue
New York, New York 10019
(212) 728-8102
mklotz@willkie.com
mschachter@willkie.com
sadvani@willkie.com

*Attorneys for Defendants S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC, and Steven A. Cohen*