UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID E. KAPLAN, et al., Individually and on
Behalf of All Others Similarly Situated,

                             Plaintiffs,

                   - against -

S.A.C. CAPITAL ADVISORS, L.P., et al.,

                           Defendants.

No. 12 Civ. 9350 (VM) (KNF)

ECF CASE

ORAL ARGUMENT REQUESTED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BIRMINGHAM RETIREMENT AND RELIEF
SYSTEM, et al., Individually and on Behalf of All
Others Similarly Situated,

                             Plaintiffs,

                   - against -

S.A.C. CAPITAL ADVISORS, L.P., et al.,

                           Defendants.

No. 13 Civ. 2459 (VM) (KNF)

ECF CASE

ORAL ARGUMENT REQUESTED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**SCOTT+SCOTT,**
**ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York  10174
Telephone: (212) 223-6444

**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina  29464
Telephone: (843) 216-9000

*Co-Lead Counsel for the* Birmingham
*Plaintiffs and the Proposed Wyeth Investor
Classes*

**WOHL & FRUCHTER LLP**
570 Lexington Avenue, 16th Floor
New York, New York  10022
Telephone: (212) 758-4000

**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York  10016
Telephone: (212) 661-1100

*Co-Lead Counsel for the* Kaplan *Plaintiffs
and the Proposed Elan Investor Classes*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

CLASS DEFINITIONS .............................................................................................................. 2

STATEMENT OF FACTS ......................................................................................................... 3

A.    Summary of the Claims .................................................................................................. 3

B.    Procedural History ......................................................................................................... 4

C.    The Proposed Class Representatives ............................................................................. 5

ARGUMENT ............................................................................................................................. 6

I.    THE CLASSES SHOULD BE CERTIFIED ................................................................. 6

    A.    Legal Standard for Class Certification .................................................................. 6

    B.    The Requirements of Rule 23(a) Are Satisfied ...................................................... 7

        1.    The Classes Are Sufficiently Numerous ...................................................... 7

        2.    Common Questions of Law or Fact Exist .................................................... 8

        3.    The Claims of the Proposed Class Representatives Are Typical of the Classes' Claims ................................................................................... 9

        4.    The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Classes ............................................................. 13

    C.    The Requirements of Rule 23(b)(3) Are Satisfied ................................................ 14

        1.    Common Questions of Law and Fact Predominate .................................... 14

        2.    A Class Action Is Superior to Other Available Methods for Adjudicating the Claims ............................................................................ 19

II.    THE PROPOSED CLASS COUNSEL SHOULD BE APPOINTED ............................. 19

CONCLUSION ......................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972).............................................................................2, 3, 4, 15

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013)................................................................................7, 16

*Anwar v. Fairfield Greenwich Ltd.*,
306 F.R.D. 134 (S.D.N.Y. 2015) ..........................................................2, 16, 17

*In re Auction Houses Antitrust Litig.*,
193 F.R.D. 162 (S.D.N.Y. 2000) ......................................................................14

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..........................................................................................19

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011)...............................................................12

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................19

*Brodzinsky v. FrontPoint Partners LLC*,
No. 3:11CV10 WWE, 2012 WL 1468507 (D. Conn. Apr. 26, 2012) ...................13

*City of Livonia Employees' Ret. Sys. v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) ......................................................................16

*In re Crocs, Inc. Sec. Litig.*,
No. 07-CV-02351-PAB-KLM, 2014 WL 4651967 (D. Colo. Sept. 18, 2014) .......11

*Dodona I, LLC v. Goldman, Sachs & Co.*,
296 F.R.D. 261 (S.D.N.Y. 2014) ..........................................2, 6, 7, 8, 9, 12, 13, 14, 15, 16, 19

*Dodona I, LLC v. Goldman, Sachs & Co.*,
847 F. Supp. 2d 624 (S.D.N.Y. 2012).................................................................16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
131 S. Ct. 2179 (2011)........................................................................................7

*Gordon v. Sonar Capital Mgmt. LLC*,
962 F. Supp. 2d 525 (S.D.N.Y. 2013)...............................................................15

*Gordon v. Sonar Capital Mgmt. LLC*,
   No. 11 Civ. 9665 (JSR), 2015 WL 1283636 (S.D.N.Y. Mar. 19, 2015) .......................9, 10, 11

*Gordon v. Sonar Capital Mgmt. LLC*,
   No. 15-1038 (2d Cir. filed Apr. 6, 2015) .............................................................................10

*In re Groupon, Inc. Sec. Litig.*,
   No. 12 C 2450, 2012 WL 3779311 (N.D. Ill. Aug. 28, 2012) ................................................20

*Harkavy v. Apparel Indus., Inc.*,
   571 F.2d 737 (2d Cir. 1978)..................................................................................................17

*Lehocky v. Tidel Techs., Inc.*,
   220 F.R.D. 491 (S.D. Tex. 2004) ..........................................................................................11

*In re LILCO Sec. Litig.*,
   111 F.R.D. 663 (E.D.N.Y. 1986) ..........................................................................................11

*In re Livent, Inc. Noteholders Sec. Litig.*,
   210 F.R.D. 512 (S.D.N.Y. 2002) ..........................................................................................13

*McIntire v. China MediaExpress Holdings, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014).......................................................................2, 8, 9, 19

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002).................................................................................................14

*In re Nigeria Charter Flights Contract Litig.*,
   233 F.R.D. 297 (E.D.N.Y. 2006) ............................................................................................7

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ............................................................................................19

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
   595 F.3d 86 (2d Cir. 2010)....................................................................................................16

*In re Oxford Health Plans, Inc.*,
   187 F.R.D. 133 (S.D.N.Y. 1999) ..........................................................................................12

*Pennsylvania Ave. Funds v. Inyx Inc.*,
   No. 08 Civ. 6857, 2011 WL 2732544 (S.D.N.Y. July 5, 2011) ...............................................9

*In re Pfizer Inc. Sec. Litig.*,
   584 F. Supp. 2d 621 (S.D.N.Y. 2008)...................................................................................12

*SEC v. Treadway*,
   430 F. Supp. 2d 293 (S.D.N.Y. 2006)..............................................................................17, 18

*SEC v. Warde*,
   151 F.3d 42 (2d Cir. 1998)..................................................................................15

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010)..................................................................................15

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   495 F.2d 228 (2d Cir. 1974)................................................................................16

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*,
   186 F.3d 157 (2d Cir. 1999)................................................................................15

*In re Smith Barney Transfer Agent Litig.*,
   290 F.R.D. 42 (S.D.N.Y. 2013) .........................................................................16

*Stengle v. Am. Italian Pasta Co.*,
   No. 05-cv-725, 2005 U.S. Dist. LEXIS 43816 (W.D. Mo. Dec. 19, 2005)...........20

*In re Sumitomo Copper Litig.*,
   262 F.3d 134 (2d Cir. 2001).................................................................................7

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008).................................................................12

*TSC Indus. v. Northway, Inc.*,
   426 U.S. 438 (1976)...........................................................................................19

*Tsereteli v. Residential Asset Securitization Trust 2006–A8*,
   283 F.R.D. 199 (S.D.N.Y. 2012) .........................................................................9

*United States v. Martoma*,
   No. 12 Cr. 973 (PGG), 2014 WL 4384143 (S.D.N.Y. Sept. 4, 2014) ...................17

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008).................................................................19

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ...........................................................................8

*Wilson v. Comtech Telecomms. Corp.*,
   648 F.2d 88 (2d Cir. 1981)..................................................................................12

**FEDERAL STATUTES AND RULES**

Fed. R. Civ. P. 23 ..............................................................................1, 7, 19, 21

Fed. R. Civ. P. 23(a) .......................................................................6, 7, 8, 9, 13, 14

Fed. R. Civ. P. 23(b) .........................................................................................6, 14

Fed. R. Civ. P. 23(c) ...................................................................................................11

Fed. R. Civ. P. 23(f) ...................................................................................................10

Fed. R. Civ. P. 23(g) ..................................................................................................19

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b)................................1, 12, 14

Securities Exchange Act of 1934, Section 20(a), 15 U.S.C. § 78t(a) .............................................1

Securities Exchange Act of 1934, Section 20A, 15 U.S.C. § 78t-1 ...................................1, 11, 12

Lead Plaintiffs David E. Kaplan, Michael S. Allen, Chi Pin Hsu, Gary W. Muensterman and Fred M. Ross in Case No. 12 Civ. 9350 (the "*Kaplan* Action"), and Lead Plaintiffs City of Birmingham Retirement and Relief System ("Birmingham") and KBC Asset Management NV ("KBC") in Case No. 13 Civ. 2459 (the "*Birmingham* Action"), respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, (i) certifying the proposed classes described below (collectively, the "Proposed Classes"), (ii) appointing three of the Lead Plaintiffs in the *Kaplan* Action, Chi Pin Hsu, Gary W. Muensterman, and Fred M. Ross (collectively, the "Proposed Elan Class Representatives"), as Class Representatives for the Proposed Elan Investor Classes (as defined below), (iii) appointing Birmingham and KBC (together, the "Proposed Wyeth Class Representatives") as Class Representatives for the Proposed Wyeth Investor Classes (as defined below), (iv) appointing Co-Lead Counsel Wohl & Fruchter LLP ("Wohl & Fruchter") and Pomerantz LLP ("Pomerantz") as Class Counsel for the Proposed Elan Investor Classes; and (v) appointing Co-Lead Counsel Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") and Motley Rice LLC ("Motley Rice") as Class Counsel for the Proposed Wyeth Investor Classes.

## INTRODUCTION

This Action asserts claims under Sections 10(b), 20A and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") arising out of insider trading in the securities of Elan Corporation, plc ("Elan") and Wyeth between 2006 and 2008 by Defendant Steven A. Cohen and entities he controlled (collectively, the "SAC Defendants"), together with Defendant Mathew Martoma.  Plaintiffs assert claims (i) on behalf of sellers of Elan and Wyeth securities during periods that Defendants were buying on inside information, and (ii) on behalf of buyers of Elan and Wyeth securities during periods that Defendants were selling on inside information.

This Court has had occasion to consider and explicate the law governing the certification of classes under the Exchange Act in a number of recent opinions. *See Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134 (S.D.N.Y. 2015); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415 (S.D.N.Y. 2014); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261 (S.D.N.Y. 2014). In *Dodona* and *Anwar*, the Court specifically addressed the certification of classes utilizing the presumption of reliance provided by *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), on which Plaintiffs rely here. Under the law, as set forth in these decisions, the Proposed Classes should be certified, the Proposed Elan and Wyeth Class Representatives should be appointed, and their selection of proposed Class Counsel should be approved.

## CLASS DEFINITIONS

The Proposed Classes for which Plaintiffs seek certification are as follows:

| | |
|---|---|
| Elan Seller Class: | All persons who sold American Depositary Receipts ("ADRs") of Elan contemporaneously with Defendants' purchases of Elan ADRs during the period August 23, 2006 through and including July 18, 2008 (the "Elan Seller Class Period"), and were damaged thereby.* |
| Elan Buyer Class: | All persons who purchased ADRs of Elan, purchased call options thereon, or sold put options thereon, contemporaneously with Defendants' sales of Elan ADRs, sale of call options thereon, or purchase of put options thereon, during the period July 21, 2008 through and including July 29, 2008 at 4:00 pm EDT (the "Buyer Class Period"), and were damaged thereby.* |
| Wyeth Seller Class: | All persons who sold shares of Wyeth contemporaneously with Defendants' purchases of Wyeth shares during the period January 14, 2008 through and including July 18, 2008 (the "Wyeth Seller Class Period"), and were damaged thereby.* |
| Wyeth Buyer Class: | All persons who purchased shares of Wyeth contemporaneously with Defendants' sales of Wyeth shares during the Buyer Class Period, and were damaged thereby.* |

\* Excluded from the Class are Defendants herein, the employees, officers and directors of the SAC Defendants during the applicable Class Period, members of their immediate families and

their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

The Elan Seller Class and Elan Buyer Class together constitute the "Proposed Elan Investor Classes." The Wyeth Seller Class and Wyeth Buyer Class together constitute the "Proposed Wyeth Investor Classes."

The Elan Seller Class Period and the Wyeth Seller Class Period together constitute the "Seller Class Periods." The Elan Seller Class Period and the Buyer Class Period together constitute the "Elan Class Periods." The Wyeth Seller Class Period and the Buyer Class Period together constitute the "Wyeth Class Periods."

## STATEMENT OF FACTS

### A.    Summary of the Claims

The factual background is set forth at length in the Court's decision on Defendants' motions to dismiss (Dkt. No. 152), *reported at* 40 F. Supp. 3d 332.

Briefly stated, Defendants' insider trading in Elan and Wyeth spanned nearly two years, from August 2006 through July 2008, and was based on inside information concerning the Phase 2 clinical trial of bapineuzumab ("bapi"), a potential Alzheimer's disease treatment. Joint Consolidated Second Amended Class Action Complaint (Dkt. No. 162) ("Compl.") ¶ 5 (p. 3). Defendant Mathew Martoma, a portfolio manager employed by the SAC Defendants, obtained the inside information at issue from two doctors involved in the bapi clinical trial: Sidney Gilman, the chair of the Safety Monitoring Committee that oversaw the clinical trial, and Joel Ross, a doctor who served as principal investigator at one of the treatment sites. *Id.*

Martoma's access to Gilman and Ross was the result of a concerted effort by him to recruit doctors involved in the trial, *id.* ¶¶ 116-22 (p. 39), and both doctors received substantial cash compensation for their consultations with Martoma. *Id.* ¶¶ 131, 157 (pp. 42, 53).

Martoma consulted with Gilman and Ross over 50 times between August 2006 and July 2008, and during this period, the SAC Defendants accumulated positions in Elan and Wyeth worth nearly $1.3 *billion* based on the positive inside information Gilman and Ross provided –

the SAC Defendants' largest position by far. *Id.* ¶¶ 7, 131, 156, 172 (pp. 4, 42, 53, 59). During the Elan and Wyeth Class Periods, bapi was a principal driver of Elan and Wyeth share prices. *Id.* ¶¶ 86-98 (pp. 24-34).

On July 17, 2008, however, Gilman obtained and shared with Martoma the full, highly confidential bapi Phase 2 trial results. After studying the results for three days and extensively questioning Gilman, Martoma determined they were below market expectations and would drive a selloff. After speaking with Cohen, Cohen and Martoma directed that the SAC Defendants liquidate their entire position in Elan and Wyeth (except for certain swaps that could not be quickly or quietly unwound) and they then massively shorted both stocks, selling over $995 million in shares in the seven trading days before the Phase 2 results were scheduled to be announced, at 5:00 pm EDT on July 29, 2008 at the International Conference on Alzheimer's Disease ("ICAD") medical conference. *Id.* ¶¶ 16-17 (p. 7).

The SAC Defendants realized profits of over $179 million from buying on inside information during the Seller Class Periods. *Id.* ¶ 30 (p. 10). The SAC Defendants later realized profits and avoided losses of over $375 million from selling on inside information during the Buyer Class Period. *Id.*

## B.   <u>Procedural History</u>

The *Kaplan* Action was originally filed on December 21, 2012 (Dkt. No. 1).

The *Birmingham* Action was originally filed on April 12, 2013 (Dkt No. 1 in Case No. 13 Civ. 2459).

On May 10, 2013, the Court issued an Order consolidating the *Kaplan* Action and the *Birmingham* Action for all pretrial purposes (Dkt. No. 56).

By Order dated August 8, 2013 (Dkt. No. 99), the Court appointed the above-mentioned Lead Plaintiffs and Co-Lead Counsel for the Proposed Elan Investor Classes.

By Order dated October 22, 2013 (Dkt. No. 115), the Court appointed the above-mentioned Lead Plaintiffs and Co-Lead Counsel for the Proposed Wyeth Investor Classes.

On March 31, 2014, after the conclusion of Martoma's criminal trial, Plaintiffs filed their Joint Consolidated Amended Class Action Complaint (Dkt. No. 127).  On August 14, 2014, the Court denied Defendants' motions to dismiss such complaint, except with respect to certain claims that the Court held to be time-barred (Dkt. No. 152), and plenary discovery then commenced in September 2014.

Lead Plaintiffs thereafter amended their complaint to plead certain claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which the Court dismissed by Decision and Order entered April 28, 2015 (Dkt. No. 176).

Pursuant to the operative Case Management Order, the Court's RICO decision triggered Plaintiffs' time to move for class certification, and this motion timely follows.

### C.    The Proposed Class Representatives

The Proposed Elan Class Representatives are Chi Pin Hsu, Gary W. Muensterman, and Fred M. Ross.

Chi Pin Hsu is retired and lives in Northbrook, Illinois.  He hold an MBA from Auburn University and his career was predominantly spent performing audit and other financial functions at several large corporations in the oil and gas and manufacturing industries.

Gary W. Muensterman is retired and lives in Richmond, Virginia.  Previously, he spent over 23 years in the healthcare industry, and held senior management positions within multi-national healthcare firms.

Fred M. Ross is retired and lives in Phoenix, Arizona.  He is an organic chemist with a BS from Michigan Technological University.  In 1978, he was honored as a Life Fellow by the

American Institute of Chemists, and in 1997 he was inducted into the Michigan Tech Academy of Sciences and Arts.

The Proposed Wyeth Class Representatives are as follows:

Birmingham has assets under management exceeding $950 million, and manages and provides retirement, disability, survivor, and other benefits for employees of the City of Birmingham, Alabama.

KBC is a large and sophisticated institutional investor headquartered in Belgium responsible for managing institutional funds, private funds, and mutual funds in Europe, the United States and throughout the world.  KBC currently manages assets of approximately $227 billion.

<b><u>ARGUMENT</u></b>

**I.**    **THE CLASSES SHOULD BE CERTIFIED**

    **A.**    **Legal Standard for Class Certification**

As the Court explained last year in *Dodona I, LLC v. Goldman, Sachs & Co.*, to certify the Proposed Classes, Plaintiffs "must satisfy all four of the requirements of Rule 23(a) and the relevant portions of Rule 23(b)(3)."  296 F.R.D. 261, 265-66 (S.D.N.Y. 2014).

To satisfy Rule 23(a), Plaintiff must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, Rule 23(b)(3) "requires that [Plaintiffs] demonstrate that common questions of law or fact 'predominate over any questions affecting individual members' and that

maintaining a class action 'is superior to other available methods' of adjudication." *Dodona*, 296 F.R.D. at 266 (quoting Fed. R. Civ. P. 23(b)(3)).

When evaluating these factors, "[t]rial courts are given substantial discretion in determining whether to grant class certification because ' "the district court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted." ' " *Id.* (quoting *In re Nigeria Charter Flights Contract Litig.,* 233 F.R.D. 297, 301 (E.D.N.Y. 2006) (ellipsis in *Nigeria Charter*), *quoting In re Sumitomo Copper Litig.,* 262 F.3d 134, 139 (2d Cir. 2001)).  In addition, "[t]he Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and, in cases such as this that involve alleged manipulation of public markets, to maximize the benefits to the public provided by class actions." *Id.* (citations omitted).

The Supreme Court has recently reaffirmed that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  Accordingly, merits issues that are common to the class are not properly adjudicated at the class certification stage, *id.* at 1191, and this specifically includes materiality, *id.*, as well as loss causation.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2186 (2011).

**B.**      **The Requirements of Rule 23(a) Are Satisfied**

**1.**      **The Classes Are Sufficiently Numerous**

As this Court explained in *McIntire v. China MediaExpress Holdings, Inc.*, "[t]o meet the requirements of Rule 23(a)(1), 'the class must be so large that joinder of all members would be

impracticable' (the 'Numerosity Requirement').  Although precise calculation of the number of potential class members is not required, 'the Second Circuit has observed that numerosity is presumed at a level of 40 members.'"  38 F. Supp. 3d 415, 423 (S.D.N.Y. 2014) (quoting *In re Vivendi Universal, S.A. Sec. Litig.,* 242 F.R.D. 76, 83 (S.D.N.Y. 2007)) (citations omitted).  "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."  *Id.* (quoting *Vivendi*, 242 F.R.D. at 84).

The Court found sufficient numerosity in *China MediaExpress* based on the fact that the defendant corporation there had approximately 33 million shares outstanding and an average weekly trading volume of approximately 6 million shares.  Here, the respective numbers are far greater:  Elan and Wyeth had over 366 million ADRs and 1.3 billion shares outstanding, respectively, and average weekly trading volumes of approximately 19 million ADRs and 47 million shares, respectively, during the Elan and Wyeth Class Periods.  *See* Declaration of Ethan D. Wohl dated June 29, 2015 ("Wohl Decl.") ¶¶ 4, 5; Declaration of Deborah Clark-Weintraub dated June 29, 2015  ("Clark-Weintraub Decl.") ¶¶ 4, 5.[1]  Accordingly, the Numerosity Requirement is satisfied.

## 2. Common Questions of Law or Fact Exist

The Court explained in *Dodona I, LLC v. Goldman, Sachs & Co.* that "Rule 23(a)(2) requires plaintiffs to demonstrate that common issues of law or fact affect all class members (the 'Commonality Requirement'), which has been characterized as a 'low hurdle.'"  296 F.R.D. at 267 (citations omitted).  The Court further held that "[w]here plaintiffs allege that class members

---

[1]     During the seven trading days comprising the Buyer Class Period, the trading volumes for Elan and Wyeth were 66.3 million ADRs and 91.5 million shares, respectively.  Wohl Decl. ¶ 5; Clark-Weintraub Decl. ¶ 5.

have been injured by similar material misrepresentations and omissions, the Commonality Requirement is satisfied." *Id. Accord China MediaExpress,* 38 F. Supp. 3d at 424.

Here, as in other securities cases, common issues of law and fact are extensive, including (1) whether the inside information supplied to Defendants was material, (2) whether Defendants acted with the requisite state of mind, (3) the standard and proof of loss causation, and (4) the appropriate measure of damages. Accordingly, the Commonality Requirement is satisfied.

### 3. The Claims of the Proposed Class Representatives Are Typical of the Classes' Claims

The Court explained in *China MediaExpress* that "Rule 23(a)(3) requires that Plaintiffs' claims be typical of the class (the 'Typicality Requirement'). The Typicality Requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Id.* at 424.

In *Dodona*, the Court further explained that "[t]he Typicality Requirement is 'not demanding.'" 296 F.R.D. at 267 (quoting *Tsereteli v. Residential Asset Securitization Trust 2006–A8,* 283 F.R.D. 199, 208 (S.D.N.Y. 2012)). In addition, "[t]ypicality 'does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Id.* (quoting *Pennsylvania Ave. Funds v. Inyx Inc.,* No. 08 Civ. 6857, 2011 WL 2732544, at *4 (S.D.N.Y. July 5, 2011)).

Here, the Proposed Class Representatives traded at the same times as the other members of the Proposed Classes, contemporaneously with and opposite to the Defendants' unlawful trades. Thus, the Proposed Class Representatives satisfy the Typicality Requirement.

"Netting" Issue. In *Gordon v. Sonar Capital Management LLC*, No. 11 Civ. 9665 (JSR), 2015 WL 1283636 (S.D.N.Y. Mar. 19, 2015), Judge Rakoff recently considered similar insider

trading claims against a hedge fund, and held that a class representative who was a net buyer during a proposed seller class period and a net seller during a proposed buyer class period (that is, traded in the same direction as the defendants, on a net basis) faced "the potentially meritorious defense that he suffered no economic loss attributable to defendants' alleged wrongdoing" and accordingly was "subject to unique defenses" that rendered him an inappropriate class representative.  2015 WL 1283636, at *6, *10 (citation omitted).

No other qualified class representative was a party in *Sonar*, and in light of this ruling, Judge Rakoff accordingly denied class certification, while affording the plaintiffs the opportunity to locate and join one or more additional plaintiffs.[2]  Judge Rakoff's decision is the subject of a pending petition for leave to appeal pursuant to Rule 23(f).  *See Gordon v. Sonar Capital Mgmt. LLC*, No. 15-1038 (2d Cir. filed Apr. 6, 2015).

Here, each of the Proposed Class Representatives was a net seller during the applicable proposed Seller Class Period and a net buyer during the proposed Buyer Class Period (i.e., traded in the opposite direction as Defendants, on a net basis), with the exception of KBC.  *See* Wohl Decl. ¶ 6; Clark-Weintraub Decl. ¶¶ 6, 7.[3]

While the absence of another qualified class representative in *Sonar* required Judge Rakoff to definitively rule on the "unique defense" issue, he observed that application of netting

---

[2]     Recognizing the appropriateness of class certification in cases such as this, Judge Rakoff also noted that "although defendants attempt to raise other objections to certification, the Court is preliminarily of the view that none of these other objections is persuasive."  *Id.* at *10.

[3]     Proposed Elan Class Representative Fred Ross also engaged in bullish trades in Elan options during the Elan Seller Class Period.

While not a net seller in the aggregate, KBC comprises distinct investment funds that have provided assignment of claims.  When viewed individually, certain of the relevant KBC funds ((a) Index Fund - United States and (b) Index Fund – World) were net sellers in the Wyeth Seller Class Period.  With respect to the Buyer Class Period, one of the two KBC funds who purchased shares of Wyeth contemporaneously with Defendants' sales of Wyeth shares (KBC Equity Fund - High Dividend) was a net purchaser.  Clark-Weintraub Decl. ¶ 7.

was discretionary, and that "the Court retains discretion regarding the appropriate measure of damages and may ultimately decide that a disgorgement measure, without any offset for countervailing gains, is appropriate."  2015 WL 1283636, at *10.

Plaintiffs believe that netting is not appropriate for insider trading claims, but submit that the issue need not be resolved now, either on the merits, or for the purposes of evaluating class representative adequacy in this case.  Here, the absence of any netting issue with respect to the other Proposed Wyeth Class Representative, Birmingham, together with the fact that Judge Rakoff's ruling is now on appeal, both support deferring ruling on the issue with respect to KBC. As other courts have recognized, the presence of other class representatives minimizes concerns about typicality, and "[a]t a later stage of the proceedings, the Court may remove a representative deemed atypical or require the addition of other, more typical class representatives."  *In re LILCO Sec. Litig.*, 111 F.R.D. 663, 673 (E.D.N.Y. 1986).  *Accord In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4651967, at *10 (D. Colo. Sept. 18, 2014) (rejecting challenge to class representative, noting that the presence of other class representatives "generally cures" the issue that had been raised); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 501 (S.D. Tex. 2004) (rejecting challenge to proposed class representative under Section 20A based on lack of a contemporaneous trade, in part, because "[r]egardless of [the proposed class representative's] standing, the section 20A claims will continue to be prosecuted because [a second proposed class representative] has standing to bring them").

If the netting issue is later decided by the Second Circuit in a manner that is adverse to KBC, or if the Court ultimately rules that netting is required, it can, of course, revisit the issue. *See* Fed. R. Civ. P. 23(c)(1)(C) (authorizing court to alter or amend a class certification decision

prior to final judgment); *Dodona*, 296 F.R.D. at 266 (noting court's ability "to alter or modify the class, create subclasses, and decertify the class whenever warranted") (citations omitted).

Contemporaneousness.  Under both Sections 10(b) and 20A, plaintiffs have standing only if they traded "contemporaneously" with the defendants.  *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 94-95 (2d Cir. 1981); Section 20A(a).  The term "contemporaneously" has not been defined by statute or definitive Second Circuit decision.  Here, with one exception,[4] each of the Proposed Class Representatives had qualifying trades on the same day as Defendants during both the Buyer and applicable Seller Class Periods.  *See* Wohl Decl. ¶ 7; Clark-Weintraub Decl. ¶¶ 8, 9.  These trades "clearly are contemporaneous under any standard."  *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 144 (S.D.N.Y. 1999).

For purposes of defining the Proposed Classes, Plaintiffs submit that, consistent with the weight of authority in this District, trades occurring up to five trading days after the date of the Defendants' trades should be deemed "contemporaneous."  *See In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 508-09 (S.D.N.Y. 2011) (Sweet, J.) (holding that "five trading days appears to be a reasonable period of time within which sales and purchases will be considered contemporaneous"); *In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 642 (S.D.N.Y. 2008) (Swain, J.) (holding that trades within six calendar days were contemporaneous and observing that "the Court cannot say as a matter of law that trades made within less than week are insufficiently contemporaneous"); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 311 (S.D.N.Y. 2008) (Kram, J.) (holding that trade five trading days later was contemporaneous); *Oxford Health Plans*, 187 F.R.D. at 144 (Brieant, J.) (same).  *See*

---

[4]     Proposed Elan Class Representative Fred M. Ross did not have a qualifying same-day sale during the Elan Seller Class Period, but sold one day after the SAC Defendants purchased, *see* Wohl Decl. ¶ 7.

*also Brodzinsky v. FrontPoint Partners LLC*, No. 3:11CV10 WWE, 2012 WL 1468507, at *5 (D. Conn. Apr. 26, 2012) (noting that courts in this Circuit "have tended to find that five or even seven days between the trades is a reasonable period" to define as contemporaneous).

The Typicality Requirement is thus satisfied as to the Proposed Class Representatives.

### 4.   The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Classes

The Court explained in *Dodona* that "Rule 23(a)(4) requires that the representative of the parties will 'fairly and adequately protect the interests of the class' (the 'Adequacy Requirement')." 296 F.R.D. at 268 (quoting Fed. R. Civ. P. 23(a)(4)). "To meet this requirement, the lead plaintiffs' counsel must be 'qualified, experienced, and generally able to conduct the proposed litigation,' and the class representatives must not have interests conflicting with the class." *Id.* (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002)).

In *Dodona*, the Court approved proposed class counsel on the basis of the fact that counsel had "vigorously pursued these claims to date," had "adequately represented classes in other securities litigation and other complex class actions," and through a declaration of counsel, had "demonstrated a commitment to continue such vigorous prosecution of the action and to devote all resources necessary in order to obtain the best possible result for Dodona and all putative members of the Proposed Class." *Id.*

Here, we respectfully submit that counsel have vigorously pursued the claims, all of the firms have substantial prior experience in securities class action litigation, and counsel have represented their commitment to vigorously prosecuting this action and devoting all necessary resources to it. *See* Wohl Decl. ¶ 9; Clark-Weintraub Decl. ¶ 10. Additionally, the Proposed

Elan and Wyeth Class Representatives face no conflicts with the other members of their respective Proposed Classes.  Accordingly, the Adequacy Requirement is satisfied.

### C.      The Requirements of Rule 23(b)(3) Are Satisfied

In addition to meeting the requirements of Rule 23(a), Plaintiffs must also satisfy the requirements of one of the paragraphs of Rule 23(b).  When, as here, the action is primarily one for money damages, the applicable provision is Rule 23(b)(3).  *See In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 165 (S.D.N.Y. 2000).

To have the Proposed Classes certified under Rule 23(b)(3), Plaintiffs must show that "'questions of law or fact common to class members predominate over any questions affecting only individual members' (the 'Predominance Requirement'), and 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy' (the 'Superiority Requirement')."  *Dodona*, 296 F.R.D. at 269 (quoting Fed. R. Civ. P. 23(b)(3)).

### 1.      Common Questions of Law and Fact Predominate

The Predominance Requirement "is a more demanding criterion than the commonality inquiry under Rule 23(a).  Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citations omitted).  *See also Dodona*, 296 F.R.D. at 269 (citing *Moore*).

As articulated by Judge Rakoff in *Sonar*, the elements of Plaintiffs' Section 10(b) insider trading claims are, as with other Section 10(b) claims: "(1) that the defendant made a material misrepresentation or omission, (2) with scienter, *i.e.,* a wrongful state of mind, (3) in connection with the purchase or sale of a security, and (4) that the plaintiff relied on the misrepresentation or

omission and thereby (5) suffered economic loss that was (6) caused by the misrepresentation or

omission." *Gordon v. Sonar Capital Mgmt. LLC*, 962 F. Supp. 2d 525, 528 (S.D.N.Y. 2013).

In addition, as summarized in *Sonar*, in an insider trading case premised on tippee

liability, as here, the plaintiffs must show:

> (1) the tipper possessed material, nonpublic information about his company;
> (2) the tipper in violation of a duty of trust and confidence owed by him to his
> company disclosed this information to the tippee; (3) the tippee traded in the
> tipper's company's securities while in possession of that non-public information;
> (4) the tippee knew or should have known that the tipper violated a relationship of
> trust or confidence by providing the non-public information; and (5) the tipper
> benefitted by the disclosure to the tippee.

*Id.* (citing *SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998)).

The issues that predominate in this Action – whether material non-public information was

supplied to Defendants, the other tipper/tippee elements listed above, and scienter – are by their

nature established through proof common to the Proposed Classes.

As noted above (at 7), the Supreme Court has held that a plaintiff is not required to

demonstrate loss causation or materiality at the class certification stage.  Likewise, the need to

calculate damages individually, where an objective, class-wide methodology is available, "is not

sufficient to defeat class certification." *Dodona*, 296 F.R.D. at 270-71 (quoting *Seijas v.

Republic of Argentina,* 606 F.3d 53, 58 (2d Cir. 2010)).

The remaining issue is reliance.  Here, Plaintiffs invoke the presumption of reliance

provided by *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972).  As the Second Circuit

has explained, while a securities fraud plaintiff ordinarily has the burden of pleading and proving

reliance, "[w]here the claim rests on an omission, however, reliance may be presumed upon a

showing that the omitted information was material.  This rule applies in the context of an insider

trading claim." *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 173

(2d Cir. 1999) (citing *Affiliated Ute*).  *Accord Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 240 (2d Cir. 1974) ("*Affiliated Ute* surely warrants our conclusion that the requisite element of causation in fact has been established by the admitted withholding by defendants of material inside information which they were under an obligation to disclose").

With respect to the "showing that the information was material" required by *Affiliated Ute*, the Supreme Court's decision in *Amgen* is dispositive: proof of materiality is "not a prerequisite to class certification," 133 S. Ct. at 1191.  This was true in *Amgen* despite the fact that materiality is "an essential predicate of the fraud-on-the-market theory" on which the plaintiff in *Amgen* relied.  *Id.* at 1195.  The same is true here.  Defendants had the opportunity to challenge materiality at the motion to dismiss stage (they chose not to); they will have the opportunity again at summary judgment.  *See Amgen*, 133 S. Ct. at 1204 (noting this fact).  Class certification does not provide them a third opportunity now.[5]

We note, however, that in some cases, this Court and others have examined materiality at the class certification stage.  *See Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134, 146-47 (S.D.N.Y. 2015) (after remand, reviewing omissions, concluding they were sufficient to invoke *Affiliated Ute*'s presumption, and finding that defendants had not rebutted the presumption); *City of Livonia Employees' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 183-84 (S.D.N.Y. 2012) (Sullivan, J.)

---

[5]     Consistent with *Amgen*, this Court and other judges in this District have applied the *Affiliated Ute* presumption of reliance at the class certification stage without revisiting prior pleading-stage rulings that an omission was material.  *See Dodona*, 296 F.R.D. at 269 (concluding that the omissions were material, without elaboration, based on the Court's motion to dismiss ruling, *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 648 (S.D.N.Y. 2012)).  *See also In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 48 (S.D.N.Y. 2013) (Pauley, J.) (concluding, without further discussion, that the omissions at issue were material based on a pleading-stage opinion by the Second Circuit, *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 95 (2d Cir. 2010)).

(pre-*Amgen*, rejecting defendants' claim that the plaintiffs had not adequately demonstrated materiality, based on the Court's review of the allegations in the complaint).

However, even if the Court chooses to address this issue now, there is ample evidence that the inside information at issue here was material.  "A fact is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.' "  *Anwar*, 306 F.R.D. at 145 (quoting *Harkavy v. Apparel Indus., Inc.,* 571 F.2d 737, 741 (2d Cir. 1978)). *See also SEC v. Treadway*, 430 F. Supp. 2d 293, 329 (S.D.N.Y. 2006) (same, citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988), and explaining that "[a] misrepresentation or omission is material when a reasonable investor would have considered it significant in making investment decisions.").

First, with respect to the Buyer Class Period, the inside information, when disclosed, drove a 41.8% price decline in Elan ADRs and a nearly 12% decline in Wyeth stock.  Compl. ¶ 21.  In a ruling rejecting Martoma's motion for a judgment of acquittal or new trial following his conviction, Judge Gardephe rejected Martoma's claim that the information provided was not material, holding that "[t]he evidence the Government offered at trial on this point is sufficient to support a conclusion that a 'reasonable investor' would have found the efficacy data disclosed at the ICAD conference [on July 29, 2008] 'material' – *i.e.,* 'significant in deciding whether to buy, sell, or hold securities, and at what price to buy or sell securities.' "  *United States v. Martoma*, No. 12 Cr. 973 (PGG), 2014 WL 4384143, at *5 (S.D.N.Y. Sept. 4, 2014) (citation omitted).

Second, with respect to the Seller Class Periods, the Phase 2 clinical trial of bapineuzumab for which Gilman and Ross provided inside information was the primary driver of Elan price gains during the period, based on statements by analysts, Compl. ¶¶ 89-90 (pp. 25-

28), and by the Defendants themselves.  *Id.* ¶ 92 (p. 29).  It also was a major source of Wyeth

price gains during the Wyeth Seller Class Period, also based on analyst reports and Defendants'

own documents.  *Id.* ¶¶ 94-97 (pp. 30-34).

The specific information Gilman supplied – concerning bapi safety data, among other

things – was, in turn, highly material to the outcome of the trial.  First, the absence of adverse

safety developments informed Defendants that there was a greater likelihood that the trial would

reach completion.  Safety issues are a common cause of clinical trials being halted, and safety

concerns were particularly acute for bapi, because the trial of its predecessor drug, AN-1792,

was halted due to "serious safety issues."  *See* Wohl Decl. Ex. 2, Elan Form 6-K, filed Oct. 12,

2004, at 1.  The safety data Gilman provided Martoma were also highly valuable to Defendants

because the data assured Defendants that they could exit their position ahead of public disclosure

in the event that negative safety developments occurred.

In addition, the safety data that Gilman provided – specifically including information

concerning a side effect called vasogenic edema – supported the view that the drug was effective.

*See* Compl. ¶¶ 126-28 (pp. 40-41) (discussing vasogenic edema and Ross's testimony that the

edema "may indicate benefit or what we call efficacy of the compound bapineuzumab").  *See

also* Wohl Decl. Ex. 3, Scott Bardo et al., *Thinking big*, Credit Suisse, March 5, 2008, at 44

(discussing issue in a section titled "Vasogenic edema may point towards efficacy").

Ample basis therefore exists for concluding, with respect to the inside information

Gilman supplied to Martoma during the Seller Class Periods, that "a reasonable investor would

have considered it significant in making investment decisions," *Treadway*, 430 F. Supp. 2d at

329, and that there is a "'substantial likelihood that the disclosure of the omitted fact would have

been viewed by the reasonable investor as having significantly altered the "total mix" of

information made available.' " *Basic,* 485 U.S. at 231-32 (quoting *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)).

Accordingly, the Predominance Requirement is satisfied here.

> **2.      A Class Action Is Superior to Other Available**
> **Methods for Adjudicating the Claims**

With respect to the Superiority Requirement, absent unusual circumstances, "[s]ecurities cases easily satisfy the superiority requirement of Rule 23." *In re NYSE Specialists Sec. Litig.,* 260 F.R.D. 55, 80 (S.D.N.Y. 2009) (quotation marks omitted). *Accord McIntire v. China MediaExpress Holdings, Inc.,* 38 F. Supp. 3d 415, 426 (S.D.N.Y. 2014) ("In general, securities suits such as this easily satisfy the superiority requirement of Rule 23.") (quoting *In re Blech Sec. Litig.,* 187 F.R.D. 97, 107 (S.D.N.Y. 1999)).  No facts here support a contrary conclusion.

## II.      THE PROPOSED CLASS COUNSEL SHOULD BE APPOINTED

In appointing Class Counsel, a court:

> (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g)(1)(A).  "Additionally, a court 'may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . .' " *Dodona,* 296 F.R.D. at 272 (quoting Fed. R. Civ. P. 23(g)(1)(B)).  In addition, in cases governed by the Private Securities Litigation Reform Act, such as this one, the Court should proceed with due regard for the fact that "[t]he PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.' " *Id.* (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (citations omitted)).

As set forth below, the law firms seeking appointment as Class Counsel – Wohl & Fruchter and Pomerantz for the Proposed Elan Investor Classes and Scott+Scott and Motley Rice for the Proposed Wyeth Investor Classes – are well-qualified and possess extensive experience in securities class action litigation.

Wohl & Fruchter focuses on the representation of plaintiffs in securities and other complex litigation, and the lead partner on this matter, Ethan Wohl, has litigated numerous securities class actions to successful resolution.  Recent accomplishments by the Firm include a $26 million recovery for the policyholders-owners of Harleysville Mutual Insurance Company in December 2012 arising from its merger with Nationwide Mutual Insurance Company, and a $7.4 million recovery for investors in NTS Realty Holdings, L.P. in June 2014, arising out of its acquisition by its chairman in a going-private transaction.

Pomerantz, established in 1940 by the late Abraham L. Pomerantz, the recognized "Dean of the Class Action Bar," has litigated securities fraud cases for nearly seventy-five years and set important precedents.  Courts routinely acknowledge Pomerantz's securities litigation strengths. *See, e.g.*, *Stengle v. Am. Italian Pasta Co.*, No. 05-cv-725, 2005 U.S. Dist. LEXIS 43816, at *27 (W.D. Mo. Dec. 19, 2005); *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2012 WL 3779311, at *5 (N.D. Ill. Aug. 28, 2012).  The National Law Journal has also named Pomerantz to the Plaintiffs' Hot List Hall of Fame for its work representing plaintiffs in securities litigation.

Scott+Scott has a long history of success in complex class action litigation, including securities class actions.  Recent achievements include securing $69 million for investors in defective Washington Mutual mortgage-backed securities, *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, NA*, No. 1:12-cv-02865 (S.D.N.Y.); and

recovering $590.5 million for investors damaged by collusive leveraged buyouts, *Dahl v. Bain Capital Partners LLC*, No. 1:07-cv-12388 (D. Mass.).

Motley Rice has served as lead counsel or co-lead counsel in a number of high profile securities class action matters.  Recent accomplishments include *Alaska Electrical Pension Fund v. Pharmacia Corp.*, Consol. No. 03-1519 (AET) (D.N.J.) ($164 million recovery); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-6324 (PAM/AJB) (D. Minn.) ($85 million recovery); *City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.*, No. 11 C 8332 (N.D. Ill.) ($60 million recovery); and *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-KMH (D. Kan.) ($131 million recovery, final approval pending).  Motley Rice was selected as one of only twelve firms spotlighted on *The National Law Journal*'s 2015 Plaintiffs' Hot List, and is one of only four firms to have been included on this list every year since 2012.

Furthermore, throughout the course of this litigation, Co-Lead Counsel has diligently represented the Class – extensively investigating the facts presented in their now-operative Second Amended Complaint, litigating numerous merits and discovery motions, and reviewing millions of pages of documents produced by the Defendants and third parties.  As set forth in their respective declarations, Wohl Decl. ¶ 9, Clark-Weintraub Decl. ¶ 10, Co-Lead Counsel expressly undertake to continue to vigorously pursue this Action and devote all resources necessary to bring this matter to a successful resolution.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, (i) certifying the Proposed Classes, (ii) appointing the Proposed Elan Class Representatives as Class Representatives for the Proposed Elan Investor Classes, (iii) appointing the Proposed Wyeth Class Representatives as Class Representatives for the Proposed Wyeth Investor Classes, (iv) appointing Wohl & Fruchter and Pomerantz as Class

Counsel for the Proposed Elan Investor Classes; and (v) appointing Scott+Scott and Motley Rice

as Class Counsel for the Proposed Wyeth Investor Classes.

Dated:  New York, New York
        June 29, 2015                          Respectfully submitted,

**SCOTT+SCOTT,**
**ATTORNEYS AT LAW, LLP**                       **WOHL & FRUCHTER LLP**


By: _Deborah Clark Weintraub /EDW_             By: _Ethan Wohl_
    Deborah Clark-Weintraub                    Ethan D. Wohl
    Max R. Schwartz                              Krista T. Rosen
    Tom Laughlin                                 Sara J. Wigmore
The Chrysler Building                           570 Lexington Avenue, 16th Floor
405 Lexington Avenue, 40th Floor                New York, New York 10022
New York, New York  10174                       Telephone: (212) 758-4000
Telephone: (212) 223-6444

Gregg S. Levin                                  Marc I. Gross
David P. Abel                                   Michele S. Carino
**MOTLEY RICE LLC**                             **POMERANTZ LLP**
28 Bridgeside Boulevard                         600 Third Avenue, 20th Floor
Mt. Pleasant, South Carolina  29464             New York, New York  10016
Telephone: (843) 216-9000                       Telephone: (212) 661-1100

*Co-Lead Counsel for the* Birmingham            *Co-Lead Counsel for the* Kaplan *Plaintiffs*
*Plaintiffs and the Proposed Wyeth Investor*    *and the Proposed Elan Investor Classes*
*Classes*

- 22 -