UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID E. KAPLAN, et al., <br><br> Plaintiffs, <br><br> - against - <br><br> S.A.C. CAPITAL ADVISORS, L.P., et al., <br><br> Defendants. | No. 12 Civ. 9350 (VM) (KNF) |
| BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, et al., <br><br> Plaintiffs, <br><br> - against - <br><br> S.A.C. CAPITAL ADVISORS, L.P., et al., <br><br> Defendants. | No. 13 Civ. 2459 (VM) (KNF) <br><br> <u>Oral Argument Requested</u> |

## SAC'S OBJECTIONS TO MAGISTRATE JUDGE FOX'S JUNE 26, 2015 ORDER DENYING PRODUCTION OF PLAINTIFFS' LITIGATION FUNDING DOCUMENTS

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3020

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8102

*Attorneys for Defendants S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC, and Steven A. Cohen* (together, "SAC")

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ............................................. 4

STANDARD OF REVIEW .................................................................................... 7

ARGUMENT .......................................................................................................... 7

    I.    SAC's Motion to Compel Should Be Granted Because Class
        Counsel's Financial Resources are Relevant to Numerous
        Requirements of Rule 23 ............................................................... 10

          A.    Class Counsel's Funding Arrangement Raises Questions
                Under Rule 23(g) ................................................................ 10

          B.    Class Counsel's Ability to Fund the Litigation is Relevant to
                Assessing Adequacy Under Rule 23(a)(4) ........................ 12

          C.    The Class and Its Counsel Are Financially Responsible For
                Providing Notice To Absent Class Members Under Rule
                23(c)(2) .............................................................................. 16

    II.    Plaintiffs' Work Product Argument Is Procedurally Improper and
        Factually Unsupported, and Should Be Rejected ......................... 17

CONCLUSION ..................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abrams* v. *First Tennessee Bank Nat'l. Ass'n*,
No. 03 Civ. 428, 2007 WL 320966 (E.D. Tenn. Jan. 30, 2007).........................................8

*Berger* v. *Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) .................................................................................14

*Berger* v. *Seyfarth Shaw LLP*,
No. 07 Civ. 5279, 2008 WL 4681834 (N.D. Cal. Oct. 22, 2008)......................................8

*Butto* v. *Collecto Inc.*,
290 F.R.D. 372 (E.D.N.Y. 2013).................................................................................15

*Charge Injection Technologies, Inc.* v. *E.I. DuPont De Nemours & Co.*,
No. CV 07C-12-134-JRJ, 2015 WL 1540520 (Del. Super. Mar. 31, 2015)....................18

*Chateau de Ville Prods., Inc.* v. *Tams-Witmark Music Library, Inc.*,
586 F.2d 962 (2d Cir. 1978) .................................................................................10

*United States* v. *Davis*,
131 F.R.D. 391 (S.D.N.Y. 1990) .............................................................................18

*Dennis* v. *Saks & Co.*,
20 Fed. R. Serv. 2d 994, at *3 (S.D.N.Y. 1975) ............................................................16

*Dilworth* v. *Goldberg*,
2014 WL 3798631 (S.D.N.Y. Aug. 1, 2014)...................................................................7

*Doe* v. *Soc'y of Missionaries of Sacred Heart*,
No. 11 Civ. 2518, 2014 WL 1715376 (N.D. Ill. May 1, 2014) .......................................18

*Drummond Co.* v. *Collingsworth*,
No. 11 Civ. 3695, ECF No. 64, at *2-3 (N.D. Ala Oct. 15, 2013) ...................................8

*Eisen* v. *Carlisle & Jacquelin*,
417 U.S. 156 (1974)...........................................................................................2, 16

*Elster* v. *Alexander*,
74 F.R.D. 503 (N.D. Ga. 1976) ...............................................................................12

*Wolfert ex rel. Estate of Wolfert* v. *Transamerica Home First, Inc.*,
439 F.3d 165 (2d Cir. 2006) .....................................................................................3

**Page(s)**

*In re Flag Telecom Holds., Ltd. Sec. Litig.*,
  574 F. 3d 29 (2d Cir. 2009) ............................................................................2

*Fort Worth Emps. Ret. Fund* v. *J.P. Morgan Chase & Co.*,
  09 Civ. 3701, 2013 WL 1896934 (S.D.N.Y. May 7, 2013) ............................13

*Gen. Tel. Co. of Sw.* v. *Falcon*,
  457 U.S. 147 (1982)........................................................................................14

*Genden* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  114 F.R.D. 48 (S.D.N.Y. 1987) ......................................................................15

*Guse* v. *J.C. Penney Co.*,
  409 F. Supp. 28 (E.D. Wis. 1976) ..................................................................13

*In re Initial Public Offerings Sec. Litig. ("In re IPO")*,
  471 F.3d 24, 41 (2d Cir. 2006) ...............................................................10, 14

*E.E.O.C.* v. *Jamal & Kamal, Inc.*,
  No. Civ.A. 05-2667, 2006 WL 2690226 (E.D. La. Sept. 18, 2006)................17

*Lopez* v. *City of New York*,
  No. 05 Civ 3624, 2007 WL 869590 (E.D.N.Y. Mar. 20, 2007)......................18

*Madanat* v. *First Data Corp.*,
  282 F.R.D. 304 (E.D.N.Y. 2012)....................................................................14

*Massie* v. *Metropolitan Museum of Art*,
  454 Fed. App'x 26 (2d. Cir. 2012) .................................................................17

*Miller UK Ltd.* v. *Caterpillar, Inc.*,
  17 F. Supp. 3d 711 (N.D. Ill. 2014)..............................................................9, 18

*Moll* v. *U.S. Life Title Ins. Co. of New York*,
  113 F.R.D. 625 (S.D.N.Y. 1987) ....................................................................12

*Mondis Tech., Ltd.* v. *LG Electronics, Inc.*,
  No. 07 Civ 565, 2011 WL 1714304 (E.D. Tex. May 4, 2011)........................18

*Montano* v. *Chao*,
  No. 07 Civ. 735, 2008 WL 5377745 (D. Colo. Dec. 19, 2008).........2, 11, 12, 13

*Norman D.D.S., P.C.* v. *ARCS Equities Corp.*,
  72 F.R.D. 502 (S.D.N.Y. 1976) ........................................................................3

*U.S. E.E.O.C.* v. *Olsten Staffing Servs. Corp.*,
  627 F. Supp. 2d 972 (W.D. Wis. 2009) ..........................................................17

**Page(s)**

*OneBeacon Ins. Co.* v. *Forman Int'l, Ltd.*,
  No. 04 Civ. 2271, 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ...................................18

*Samad Bros.* v. *Bokara Rug Co.*,
  No. 09 Civ. 5843, 2010 WL 5095356 (S.D.N.Y. Dec. 13, 2010) ....................................8

*Savitt* v. *Vacco*,
  No. 95 Civ. 1842, 1996 WL 663888 (N.D.N.Y. Nov. 8, 1996) .......................................8

*Sayre* v. *Abraham Lincoln Fed. Sa*v. *& Loan Ass'n*,
  65 F.R.D. 379 (E.D. Pa. 1974).............................................................................3, 13, 15

*Smith* v. *Phamm*,
  No. 03-3451-SAC, 2008 WL 2944905 (D. Kan. July 28, 2008)....................................17

*Stephenson* v. *Dow Chem. Co.*,
  273 F.3d 249 (2d Cir. 2001) ............................................................................................3

*Thompson* v. *World Alliance Fin. Corp.*,
  No. CV 08-4951 AKT, 2010 WL 3394188 (E.D.N.Y. Aug. 20, 2010) ..........................15

*Titus* v. *Burns & McDonnell, Inc. Employee Stock Ownership Plan*,
  No. 09 Civ. 117, 2010 WL 3713666 (W.D. Mo. Sept. 13, 2010) ..................................15

*Wal-Mart Stores, Inc.* v. *Dukes*,
  131 S. Ct. 2541 (2011).........................................................................................1, 8, 10

*Wise* v. *Cavalry Portfolio Servs., LLC*,
  No. 09 Civ. 86, 2010 WL 3724249 (D. Conn. Sept. 15, 2010) .......................................15

*Yurman Design, Inc.* v. *Chaindom Enterprises, Inc.*,
  No. 99 CIV. 9307 (JFK), 2000 WL 1871715 (S.D.N.Y. Dec. 20, 2000) .........................8

**STATUTES**

Sections 10(b) and 20A of the Securities Exchange Act of 1934............................................4

**OTHER AUTHORITIES**

7A Wright & Miller, Fed. Prac. & Proc. Civ. § 1765 (3d ed.) ..............................................14

Fed. R. Civ. P. 23 .......................................................................................................... passim

Fed. R. Civ. P. 26 ...............................................................................................................9, 13

Fed. R. Civ. P. 72 ...................................................................................................................7

iv

Defendants S.A.C. Capital Advisors, L.P., S.A.C. Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, S.A.C. Select Fund, LLC, and Steven A. Cohen (together, "SAC" or "the SAC Defendants") respectfully submit the following objections to that portion of Magistrate Judge Fox's June 26, 2015 order (the "June 26 Order") that denied SAC's motion to compel the Elan plaintiffs' litigation funding agreement and related documents (the "Litigation Funding Documents").  SAC also joins in the objections and request for a stay that are being filed today by Defendant Mathew Martoma to that portion of the June 26 Order that compelled the production of indemnification agreements between SAC and Mr. Martoma.

## PRELIMINARY STATEMENT

Lead counsel for the proposed Elan shareholder classes admit that they have been partially funding this litigation through a funding agreement with a third party who is unknown to the Court and unknown to defendants.  But the Elan plaintiffs have refused to provide the requested documents showing who is funding them, on what terms they are being funded, or whether they may have contracted away any rights belonging to absent class members.  Given the Elan plaintiffs' pending motion to certify two classes of Elan investors, appoint class representatives, and appoint class counsel (ECF No. 193), their refusal to produce such Litigation Funding Documents is manifestly improper.  These documents are highly relevant—indeed necessary—for this Court to conduct a "rigorous analysis" of the adequacy of the lead plaintiffs and proposed class counsel, including the "resources that counsel will commit to representing the class." *See* Fed. R. Civ. P. 23(a)(4); Fed. R. Civ. P. 23(g)(1)(iv); *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because Magistrate Judge Fox's June 26 Order denied discovery of this critical information, it was clear error and should be reversed.

Numerous courts have required litigation funding agreements to be produced where they are relevant to a disputed issue.  Here, plaintiffs' Litigation Funding Documents are plainly relevant to several different requirements of Rule 23:

- The proposed class representatives must demonstrate to this Court that they will "fairly and adequately" represent the classes as a whole, *see*  Fed. R. Civ. P. 23(a)(4), including by demonstrating that they have the resources necessary to pursue the litigation and have no conflicts with putative class members.  *See In re Flag Telecom Holds., Ltd. Sec. Litig.*, 574 F. 3d 29, 35 (2d Cir. 2009).

- The proposed class representatives also must show that they have the resources necessary to provide notice to the classes.  *See* Fed. R. Civ. P. 23(c)(2); *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 177-79 (1974).

- And, proposed class counsel, to secure appointment, must demonstrate that they have adequate resources to devote to the litigation.  *See* Fed. R. Civ. P. 23(g); *Montano* v. *Chao*, No. 07 Civ. 735, 2008 WL 5377745, *4 (D. Colo. Dec. 19, 2008).

Without discovery into the Litigation Funding Documents, neither this Court nor defendants can properly assess these requirements of Rule 23.  Indeed, plaintiffs have not identified a single class action in which discovery into the proposed class counsel's litigation funding agreement has been denied.

It is critical that the Elan plaintiffs' unconventional funding arrangement be evaluated *now*—prior to the appointment of class representatives and class counsel—to avoid potential problems in the future.  Putative class members are entitled to understand how counsel are funding and prosecuting this case on their behalf, and to raise any issues with the arrangement in the upcoming class certification briefing.  If putative class members only later learn, possibly years from now, that the funding arrangement raises issues with the class representatives' resources or adequacy, then that could have severe consequences.  For example, if the arrangements create a conflict between the class and its counsel, or an intra-class conflict, class members could attack the result of any settlement or trial of this case.  *See, e.g.*, *Stephenson*

2

v. *Dow Chem. Co.,* 273 F.3d 249, 258-61 (2d Cir. 2001) (allowing collateral attack on class action settlement because absent class members had not been adequately represented); *see also Wolfert ex rel. Estate of Wolfert* v. *Transamerica Home First, Inc.*, 439 F.3d 165, 171 (2d Cir. 2006) ("'Final judgments . . . remain vulnerable to collateral attack for failure to satisfy the adequate representation requirement.'" (citation omitted) (alteration in original)).  Similarly, if the proposed class counsel were to run out of funds, class members may attempt to re-litigate this case all over again with a new set of lead plaintiffs.  *See Sayre* v. *Abraham Lincoln Fed. Sav. & Loan Ass'n*, 65 F.R.D. 379, 384 (E.D. Pa. 1974).

Without discovery, this Court may also learn too late that the agreement's terms may inappropriately provide a level of control over this litigation to the funders, who owe duties neither to this Court as officers nor to class members as fiduciaries.  *Cf. Norman D.D.S., P.C.* v. *ARCS Equities Corp.*, 72 F.R.D. 502, 504 (S.D.N.Y. 1976) ("We are reluctant to permit a plaintiff to conduct litigation as a class representative, on the understanding that a related party will voluntarily pay the litigation expenses from time to time as they become due.").

In the proceedings before Magistrate Judge Fox, apparently conceding that their use of a third-party litigation funder implicates several provisions of Rule 23, plaintiffs' counsel submitted a belated reply letter brief in which they represented to the Court, for the first time, that their funding arrangement consists of a "loan agreement," which they contend "specifically disclaims" that the litigation funders have any control over strategic litigation decisions. Plaintiffs' counsel also offered, for the first time, to have the Court review the "loan agreement" *in camera*.  But self-serving representations are no substitute for actual discovery—defendants, absent class members, and this Court should be able to assess the scope of the "loan agreement"

for themselves.  The Magistrate Judge's Order declining, without any analysis, to require production of the Litigation Funding Documents constitutes clear error.

SAC respectfully submits that the June 26 Order clearly erred in allowing the proposed class representatives to keep secret this relevant and non-privileged information, thereby exposing this Court and the parties to the risk that an undisclosed issue will generate problems and years of re-litigation down the line.  Narrow and targeted discovery into the Litigation Funding Documents can ensure that this does not happen.  This Court should compel that discovery.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs traded Elan and Wyeth stock at various times from August 2006 through July 2008.  They assert "contemporaneous trader" insider trading claims against defendants under Sections 10(b) and 20A of the Securities Exchange Act of 1934.

The Elan plaintiffs have filed a motion to certify one class of *sellers* of Elan shares from August 23, 2006 to July 18, 2008, and then another class of *purchasers* of Elan shares from July 21, 2008 to July 29, 2008 at 4:00 pm EDT.  (ECF No. 192, at 2.)  The Wyeth plaintiffs have filed a motion to certify separate class of *sellers* of Wyeth shares from January 14, 2008 to July 18, 2008, and then another class of *purchasers* of Wyeth shares from July 21, 2008 to July 29, 2008 at 4:00 pm EDT.  (*Id.*)  In their motion to certify a class, plaintiffs concede that Rule 23 requires the Court to consider "the resources counsel will commit to representing the class" (*Id.* at 19), and submitted declarations by counsel representing—without any supporting documents or even any mention of the third-party funding agreement—that their firms have "sufficient resources to see the case through trial and appeal, if need be" (ECF No. 193 ¶ 10; ECF No. 194, ¶ 11).

4

In September 2014, SAC served requests for documents relevant to plaintiffs'
then-anticipated motion for class certification.  In its requests, SAC sought all "retainer
agreements"[1] as well as "litigation funding agreements, or similar documents."  (SAC's First Set
of Document Requests to Plaintiff David E. Kaplan, at 12 (Sept. 19, 2014)) (Ex. A).[2]  During the
meet-and-confer process, plaintiffs agreed to deem these requests to include any "contracts,
litigation funding agreements, and other similar documents . . . between plaintiffs' counsel and
third parties," (collectively, the "Litigation Funding Documents").  (Ex. E at 2 (alteration in
original)).

With respect to the Litigation Funding Documents—the subject of these
objections—the Elan plaintiffs "confirm[ed] that responsive documents exist."  (*Id.*)  However,
they "decline[d] . . . to produce these documents on the grounds that they are not relevant."  (*Id.*)
(The Wyeth plaintiffs confirmed that they had no responsive documents, and on the basis of that
representation, this motion does not seek similar discovery from the Wyeth plaintiffs.)  The Elan
plaintiffs have never argued that the production of these documents would be burdensome, nor
could they.  SAC seeks only a discrete set of documents concerning the funding provided by
third parties, not more general discovery about the assets of the Elan plaintiffs or their counsel.

---

[1]   The Elan plaintiffs initially refused to provide either their retainer agreements or Litigation
Funding Documents.  With respect to retainer agreements, they expressly "acknowledge[d]
the general principle that retainer agreements are subject to disclosure."  (Letter from Gregg
S. Levin to Michael E. Gertzman, at 3 (Jan. 23, 2015)) (Ex. C).  Nevertheless, unlike the
Wyeth plaintiffs (who produced complete copies of their retainer agreements), the Elan
plaintiffs insisted on producing only redacted copies of the agreements, which concealed
their fee arrangement, on the basis "that disclosure of the redacted matter would
inappropriately inform Defendants of the economic incentives of counsel in any negotiations
to compromise the claims herein."  (*Id.*)  When SAC indicated that it would move to compel,
the Elan Plaintiffs ultimately agreed to produce complete retainer agreements.  (Letter from
Gregg S. Levin to Paul Paterson, at 2 (Feb. 5, 2015) (alteration in original)) (Ex. E).

[2]   Citations in the form "Ex __" refer to exhibits to the accompanying declaration of Geoffrey
Chepiga.

On February 17, 2015, SAC filed a letter motion to request that Magistrate Judge Fox compel the production of the Elan plaintiffs' Litigation Funding Documents. (*See* Letter from Audra J. Soloway to Hon. Kevin Nathaniel Fox (Feb. 17, 2015)) (Ex. F). Plaintiffs submitted a letter in opposition on February 20, 2015. (*See* Letter from Ethan D. Wohl to Hon. Kevin Nathaniel Fox (Feb. 20, 2015)) (Ex. G).[3]

On May 15, 2015, Magistrate Judge Fox issued an Order requesting further briefing on SAC's request to compel the Litigation Funding Documents. (ECF No. 179.) In response to that Order, the parties made a simultaneous exchange of supplemental briefs on May 25, 2015. (*See* ECF No. 186, 187.) In plaintiffs' supplemental brief, (Ex. I) plaintiffs asserted for the first time a work product objection, even though they had not asserted such an objection in their initial opposition to SAC's letter motion more than three months earlier. (*Compare* Ex. G *with* Ex. I, at 8-9).

Two days later, on May 27, 2015, plaintiffs' counsel submitted a supplemental reply letter brief, which was not contemplated nor permitted by Magistrate Judge Fox's order regarding further briefing. (Letter from Ethan D. Wohl to Hon. Kevin Nathaniel Fox (May 27, 2015)) (Ex. J). In their reply letter brief, plaintiffs' counsel acknowledged that there was a "loan agreement" with a third-party funder, but argued that that the loan agreement "specifically disclaim[s]" that the litigation funders have control over litigation decisions made on behalf of

---

[3]   Also on February 17, 2015, plaintiffs filed a letter motion to compel any indemnification agreements between Defendant Mathew Martoma and SAC. (Letter from Ethan D. Wohl to Hon. Kevin Nathaniel Fox (Feb. 17, 2015)) (Ex. L). Martoma opposed the motion, arguing that any indemnification would be irrelevant and protected by applicable privileges. He argued that Plaintiffs' bald allegations of relevance to credibility were insufficient and, in any event, indemnification documents were protected by the work product doctrine. (Letter from Richard M. Strassberg to Hon. Kevin Nathaniel Fox (Feb. 20, 2015)) (Ex. M).

the proposed classes.  Plaintiffs' counsel also submitted that any question as to conflicts that

arise as a result of the loan agreement could be addressed through *in camera* review.  *Id.*

Magistrate Judge Fox denied SAC's motion to compel by order dated June 26,

2015.  (Ex. K.)  In the Order, Magistrate Judge Fox provided no analysis of how plaintiffs'

refusal to provide discovery was consistent with the requirements of Rule 23.  The June 26 Order

merely stated: "[t]he Court has considered all the submissions made in connection with the

parties' respective motions and has determined to: (1) grant the plaintiffs' request for documents

concerning the indemnification of defendant Martoma by the S.A.C. defendants; and (2) deny the

defendants' request for the Elan shareholder plaintiffs' Litigation Funding Documents."[4]  (Ex.

K, at 2.)

## STANDARD OF REVIEW

This Court's review of the June 26 Order is governed by Federal Rule of Civil

Procedure 72(a), which provides that the Court "must consider timely objections and modify or

set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P.

72(a).  A finding is "clearly erroneous" if the Court is left with a "definite and firm conviction

that a mistake has been committed, and is 'contrary to law' if it fails to apply to or misapplies

relevant statutes, case law, or rules of procedure."  *Dilworth* v. *Goldberg*, 2014 WL 3798631, at

*13 (S.D.N.Y. Aug. 1, 2014) (quoting *MASTR Adjustable Rate Mortgs. Trust* v. *UBS Real Estate*

*Sec. Inc.*, 2013 WL 6840282, at *1 (S.D.N.Y. Dec. 27, 2013)) (some internal quotation marks

omitted).  As district courts have recognized, the "application of this deferential standard is

somewhat more difficult" where, as here, "the Magistrate Judge provided no explanation for his

---

[4]   Mr. Martoma is concurrently filing objections and seeking a stay of that portion of the June 26
Order that compelled the production of indemnification agreements between Mr. Martoma
and SAC.  As set forth above, *supra* at 1, SAC joins in the arguments made by Mr. Martoma.

ruling." *Samad Bros.* v. *Bokara Rug Co.*, No. 09 Civ. 5843, 2010 WL 5095356, at *1 (S.D.N.Y. Dec. 13, 2010).  *See also Savitt* v. *Vacco*, No. 95 Civ. 1842, 1996 WL 663888, at *4 (N.D.N.Y. Nov. 8, 1996); *Yurman Design, Inc.* v. *Chaindom Enterprises, Inc.*, No. 99 CIV. 9307 (JFK), 2000 WL 1871715, at *4 (S.D.N.Y. Dec. 20, 2000).[5]

District courts have held that an order is clearly erroneous where it denies to compel the production of documents that are relevant and non-privileged.  *E.g.*, *Savitt*, 1996 WL 663888, at *4.

## ARGUMENT

The June 26 Order clearly erred in denying SAC's motion to compel plaintiffs' Litigation Funding Documents.  These documents will be critical to this Court's "rigorous analysis" of the adequacy of the proposed lead plaintiffs and their counsel and the "resources that counsel will commit to representing the class."  *See* Fed. R. Civ. P. 23(a)(4); Fed. R. Civ. P. 23(g)(1)(iv); *Dukes*, 131 S. Ct. at 2551.

Courts routinely recognize that litigation funding agreements are relevant, and order parties to produce such agreements and related documents.  *See, e.g.*, *Drummond Co.* v. *Collingsworth*, No. 11 Civ. 3695, ECF No. 64, at *2-3 (N.D. Ala Oct. 15, 2013) (ordering discovery of information concerning "who financing was sought from, what payments were received, how the need for money was characterized, what the terms of the financing were, and information on actual money advanced or loaned or provided to prosecute the actions"); *Berger* v. *Seyfarth Shaw LLP*, No. 07 Civ. 5279, 2008 WL 4681834, at *3 (N.D. Cal. Oct. 22, 2008) (ordering disclosure of litigation funding agreement); *Abrams* v. *First Tennessee Bank Nat'l.*

---

[5]  Because the June 26 Order contains no reasoning, SAC herein responds to each of plaintiffs' arguments presented below.

*Ass'n*, No. 03 Civ. 428, 2007 WL 320966, at *2 (E.D. Tenn. Jan. 30, 2007) (holding that defendants were "entitled to know the amount of legal fees" paid by a litigation funder).

Plaintiffs admit that "litigation funding agreements have been ordered [to be] produced," but they try to distinguish all these prior cases on the grounds that, in those cases, the agreements were "relevant to a specific issue in controversy" (Ex. I, at 7). This is a truism, not an argument, since Rule 26 only permits discovery into relevant matters. In any event, it completely misses the point. As set forth below, plaintiffs' Litigation Funding Documents are relevant to *numerous* issues in controversy given plaintiffs' pending motion for class certification under Rule 23. Tellingly, plaintiffs have pointed to *no* class action cases where plaintiffs' counsel employed a litigation funding agreement and discovery into that relationship has been denied.[6]

The Magistrate Judge's refusal to compel the production of such documents was particularly erroneous in light of the fact that, in the very same Order, he granted plaintiffs' motion to compel documents related to how Mr. Martoma is funding his defense of this action. Because plaintiffs are seeking class certification, which explicitly requires the Court to examine the resources that they will commit, plaintiffs' litigation funding arrangements are actually relevant to issues that need to be decided by this Court, whereas how Mr. Martoma is funding his individual defense is not.

---

[6]   Plaintiffs have also previously cited *Miller UK Ltd.* v. *Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill. 2014), for the general proposition that litigation funding agreements are not discoverable. (Ex. G at 2 n.1; Ex. I at 7). But *Miller* held only that such agreements were irrelevant to arguments about champerty and maintenance, and arguments that the funder was the real party in interest. *See* 17 F. Supp. 3d at 728-30. *Miller* said nothing about the relevance of third-party funding arrangements to Rule 23—the case was not even a class action—and has no bearing on SAC's motion to compel.

## I.   SAC's Motion to Compel Should Be Granted Because Class Counsel's Financial Resources are Relevant to Numerous Requirements of Rule 23

Class certification is appropriate only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites" to certification are established.  *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw.* v. *Falcon*, 457 U.S. 147, 161 (1982)).  Accordingly, the Second Circuit requires district courts to "receive enough evidence . . . to be satisfied that each Rule 23 requirement has been met."  *In re Initial Pub. Offerings Sec. Litig.* ("*In re IPO*"), 471 F.3d 24, 41 (2d Cir. 2006), *decision clarified on other grounds*, 483 F.3d 70 (2d Cir. 2007).  It follows that discovery concerning Rule 23's requirements is key.  Indeed, "[f]ailure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is held."  *Chateau de Ville Prods., Inc.* v. *Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978) (reversing class certification due to inadequate record and noting that discovery was necessary to evaluate adequacy of representation).

Here, SAC has shown that the Litigation Funding Documents are relevant to *numerous* Rule 23 requirements, including:  (i) that class counsel is adequate under Rule 23(g); (ii) that class representatives will adequately represent the class under Rule 23(a)(4); and (iii) that class representatives can fund proper notice to the many thousands of absent class members pursuant to Rule 23(c)(2).

### A.  Class Counsel's Funding Arrangement Raises Questions Under Rule 23(g)

Federal Rule of Civil Procedure 23(g) provides that "[i]n appointing class counsel, the court . . . must consider . . . the resources that counsel will commit to representing

10

the class."  Fed. R. Civ. P. 23(g)(1)(A)(iv).  The Advisory Committee Notes make clear that a "court may direct applicants [for class counsel] to inform the court concerning any agreements about a prospective award of attorney fees"—which would include an agreement that some portion of an award be paid to a litigation funder—"as such agreements may sometimes be significant in the selection of class counsel."  Fed. R. Civ. P. 23(g)(1)(C) ad. comm. note.  In fact, in their class certification motion, plaintiffs concede that Rule 23(g) requires the Court to consider the resources counsel will commit as well as any other matter pertinent to counsel's ability to fairly and adequately represent the class.  (ECF No. 192, at 19) (representing that counsel undertakes to "devote all resources necessary to bring this matter to a successful resolution").

The analysis mandated by Rule 23(g) is impossible without appropriate information about plaintiffs' counsel's arrangements for funding this litigation.  For example, in *Montano* v. *Chao*, the court considered a motion to compel discovery from a third party responsible for paying class counsel's fees.  2008 WL 5377745 at *4.  It held that Rule 23(g) required it "to consider all matters which may be germane to whether or not proposed class counsel . . . are able to fairly and adequately protect the interests of the class."  *Id*.  Because the third-party funder stood to benefit financially should the court certify the class, that raised a question about plaintiffs' counsel's "loyalty to [the funders] which might supercede any loyalty to the putative class members."  *Id*.  While the Court explained that it was premature, at the discovery stage, to determine whether the third-party funding arrangement in fact created a conflict, the court ordered production of "relevant . . . discovery into whether [the funder] is funding the class action, how much money [it] has paid to the proposed class counsel, and how much money the law firm has received from [it] on other matters—all issues with direct bearing

11

on the loyalty interests of the proposed class counsel." *Id.*  The court found that third-party

funding created "a situation for which further investigation is warranted." *Id.*

Here, the Elan plaintiffs' admission that they are being funded by a third-party

creates a similar situation as in *Montano*, and similarly warrants further investigation.  Just as in

*Montano*, the fact that the terms of a funding agreement are presently unknown raises important

questions about counsel's adequacy and loyalty.   While plaintiffs' counsel have stated their view

that there is nothing to see here because the loan agreement is "purely to provide financing"  (Ex.

J at 1), the June 26 Order shuts out the Court, the defendants, and all absent class members from

the information that they need to determine—for themselves—the existence and implications of

potential conflicts.  Further discovery is needed.

### B.  Class Counsel's Ability to Fund the Litigation is Relevant to Assessing Adequacy Under Rule 23(a)(4)

Further, the ability to finance the prosecution of this class action is relevant to

whether or not the Elan proposed class representatives "will fairly and adequately protect the

interests of the class," as required by Rule 23(a)(4).  *See, e.g.*, *Moll* v. *U.S. Life Title Ins. Co. of

New York*, 113 F.R.D. 625, 632 (S.D.N.Y. 1987) (granting discovery regarding plaintiff's

finances because the "ability of a class representative to defray the cost of litigation is a relevant

factor in the court's" adequacy analysis); *Elster* v. *Alexander*, 74 F.R.D. 503, 504 (N.D. Ga.

1976).

In this case, the Elan plaintiffs' counsel—as opposed to plaintiffs themselves—

are advancing the costs of litigation through some undisclosed loan agreement with an

undisclosed litigation funder.  This shifts part of the adequacy inquiry from the plaintiffs to their

attorneys' ability to pay.  *See, e.g.*, *Montano*, 2008 WL 5377745, at *4 (holding that financing of

class counsel's fees by a third-party was "relevant to the adequacy of representation of the class"

12

and could raise "issues with direct bearing on the loyalty interests of the proposed class counsel"); *Sayre*, 65 F.R.D. at 383 ("Whether counsel can and will pay the expenses of suit, rather than whether plaintiffs can afford them, becomes the relevant question . . . .").

The only case that directly addresses discovery into class counsel's funding under Rule 23(a)(4) is *Guse* v. *J.C. Penney Co.*, 409 F. Supp. 28 (E.D. Wis. 1976), *rev'd on other grounds*, 562 F.2d 6 (7th Cir. 1977).  In *Guse*, the Seventh Circuit considered an almost identical request by defendants to compel the production of information concerning plaintiffs' attorneys' ability to fund a large class action.  *Id.* at 30.  The court held "for purposes of Rule 23(a)(4), the relevant inquiry concerning the ability to fund the costs of a class action focuses upon the assets of the plaintiff's attorneys." *Id*. at 30-31.  The court then required plaintiffs' attorneys to answer deposition questions regarding their finances, because "the financial position of [plaintiffs' attorneys is] indeed within the scope of relevancy for purposes of Rule 26." *Id.*  While plaintiffs have tried to criticize *Guse* as dated and from another jurisdiction, it was correctly decided, its relevant holding has not been criticized, and it is directly applicable to this case.  Indeed, plaintiffs cite not a single case to the contrary.[7]

---

[7]   The two cases cited by plaintiffs regarding "documents concerning counsel's financial capacity" are inapposite. (*See* Ex. I at 3-4 (citing *Fort Worth Emps. Ret. Fund* v. *J.P. Morgan Chase & Co.*, 09 Civ. 3701, 2013 WL 1896934 (S.D.N.Y. May 7, 2013); *Piazza* v. *First Am. Title Ins. Co.*, 2007 WL 4287469 (D. Colo. Dec. 5, 2007))).  *First*, both cases concern retainer agreements between plaintiffs and counsel, which are not at issue in this motion and which the Elan plaintiffs have now produced in their entirety.  (Ex. E at 2).  *Second*, both cases involved motions to compel that failed to "'provide any basis for questioning counsel's ability to adequately fund the action.'"  (Ex. G at 2 (quoting *Piazza*, 2007 WL 4287469, at *1)); *see also, e.g.*, *Fort Worth*, 2013 WL 1896934, at *2.  The same is not true here:  the Elan plaintiffs' counsel have effectively admitted that they cannot, or will not, bear the costs of this litigation unassisted, because they have an agreement with a third party funder.  This admission necessarily raises adequacy concerns given the potential for conflicting interests and questions of loyalty to class members.  *See, e.g.*, *Montano*, 2008 WL 5377745, at *4; *Guse*, 409 F. Supp. at 30.

As in *Guse,* by moving for class certification, plaintiffs here have directly put at issue the adequacy of their resources to represent the proposed classes.  In fact, in connection with class certification, the Elan plaintiffs' counsel submitted a declaration representing to the Court that his firm and co-counsel have "sufficient resources to see the case through trial and appeal, if need be."  (ECF No. 193, ¶10.)  Having put their own resources at issue in this motion, as is required under Rule 23, the Elan plaintiffs cannot simultaneously deny defendants discovery of documents that would test the strength of the information they have chosen to submit to the Court.

Nor is it the law, as plaintiffs have argued, that this Court should "presume" adequacy.  (Ex G at 2.)  That proposition is flatly contradicted by the premise of Rule 23, and has no bearing on whether discovery should be granted when adequacy is contested.  *First*, it is black-letter law that "[a]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable."  *Falcon*, 457 U.S. at 160; *see also In re IPO*, 471 F.3d at 33 (same).  The Fifth Circuit has held that a district court that *presumes* adequacy commits reversible error: "[a presumption of adequacy] inverts the requirement that the party seeking certification bears the burden of proving all elements of rule 23(a) . . . [and] it effectively abdicates—to a self-interested party—the court's duty to ensure that the due process rights of the absent class members are safeguarded."  *Berger* v. *Compaq Computer Corp.*, 257 F.3d 475, 482 (5th Cir. 2001); *see also* 7A Wright & Miller, Fed. Prac. & Proc. Civ. § 1765 (3d ed.).  Thus, conclusory "representations" by plaintiffs' counsel attesting to their own adequacy do not pass muster.[8]  (Ex.

---

[8]   All the cases cited by plaintiffs on this point are inapplicable, (*see* Ex I at 6), because either defendants did not dispute adequacy or the court was not faced with a question as to counsel's ability to finance the litigation.  *See Madanat* v. *First Data Corp.*, 282 F.R.D. 304, 314 (E.D.N.Y. 2012) ("Defendants have failed to raise any . . . concerns regarding plaintiff's

14

G, at 6-7); *see also, e.g., Sayre*, 65 F.R.D. at 384 ("[T]his Court need not accept at face value counsel's contention that his firm will advance all the funds necessary to effectively prosecute this action in the name of the class which may ultimately be certified.").  *Second*, plaintiffs' decision to use a third-party litigation funder inherently raises questions about their ability to finance this case (and the terms of such funding).  No case has applied any sort of "presumption" of adequacy in these circumstances.  Until plaintiffs produce more details about their counsel's financial arrangements, it is impossible to know whether, in fact, counsel is adequate.

Finally, plaintiffs' argument that discovery is unnecessary because SAC "could not accurately contend that counsel's funding arrangement is its only source of financing," (Ex. G, at 3; ECF No. 186, at 4), misses the point.  Regardless of whether the Litigation Funding Documents concern all or only part of the financing that plaintiffs intend to commit to this case, the point is that counsel for the Elan plaintiffs have admitted that they are not financing this case alone.  It is the involvement of a third-party funder, on terms that plaintiffs' counsel refuse to

---

adequacy."); *Thompson* v. *World Alliance Fin. Corp.*, No. CV 08-4951 AKT, 2010 WL 3394188, at *10 (E.D.N.Y. Aug. 20, 2010) (same); *Titus* v. *Burns & McDonnell, Inc. Employee Stock Ownership Plan*, No. 09 Civ. 117, 2010 WL 3713666, at *3 (W.D. Mo. Sept. 13, 2010) (same); *Wise* v. *Cavalry Portfolio Servs., LLC*, No. 09 Civ. 86, 2010 WL 3724249, at *5 (D. Conn. Sept. 15, 2010) ("Defendant provides no specific information about why Ms. Wise would not be an suitable representative."); *Genden* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 53 (S.D.N.Y. 1987) ("Defendant does not deny that plaintiffs' counsel is capable of conducting the litigation."); *Butto* v. *Collecto Inc.*, 290 F.R.D. 372, 396 (E.D.N.Y. 2013) (lacking any challenge to counsel's financial capacity).  For the same reasons, the cases that plaintiffs previously cited in support of the assumption of adequacy because they have already "devoted significant effort" to this case are also inapposite (and one of the cases involved a settlement class).  (*See* Ex. I at 6; Ex. G at 2 (citing *Reid* v. *Donelan*, 297 F.R.D. 185, 194 (D. Mass. 2014); *Pritchard* v. *Cnty. of Erie*, 269 F.R.D. 213, 218 (W.D.N.Y. 2010); *D.S. ex rel. S.S.* v. *New York City Dep't of Educ.*, 255 F.R.D. 59, 74 (E.D.N.Y. 2008)).)

disclose, that creates the risk of loyalty concerns, potential conflicts of interest, and suspicions as to resources that bear on their appointment to represent the putative classes. [9]

### C.  The Class and Its Counsel Are Financially Responsible For Providing Notice To Absent Class Members Under Rule 23(c)(2)

Finally, plaintiffs' financial arrangements are also relevant to their duty to fund notice to all class members under Rule 23(c)(2)(B).  *See Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 177-79 (1974) ("[T]he plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit.").  The costs of providing this notice in nationwide securities class actions can be high, if not prohibitive.  *See id.*; *Dennis* v. *Saks & Co.*, 20 Fed. R. Serv. 2d 994, at *3 (S.D.N.Y. 1975) ("When as here, the potential class numbers in the hundreds of thousands, the costs of notice alone . . . will far exceed the possible recoveries of the representative parties.").  When class counsel fronts the costs of the litigation, their ability "to pay for notice and other costs of litigation is relevant to whether they will fairly and adequately represent all class members."  *Id.*

Plaintiffs seek to certify a class of "thousands of members in the proposed Elan Investor Class" who traded Elan stock over a two-year period almost a decade ago.  (ECF No. 162 ¶ 633; *see also id.* ("During the Elan Class Period, Elan ADRs were actively traded on the NYSE and over 400,000,000 ADRs were then outstanding.")).  Providing "the best notice that is practicable" to the proposed class, "including individual notice to all members who can be identified through reasonable effort," will inevitably be an expensive enterprise for which

---

[9]   It is similarly irrelevant that two additional firms are seeking to be appointed as counsel to the proposed *Wyeth* classes.  (Ex. G, at 3; Ex. I at 4).  The Wyeth plaintiffs and their counsel owe no fiduciary duties to the Elan plaintiffs, and the issues and time periods covered by the proposed classes are not identical.

plaintiffs and, in this action, their counsel are financially responsible.  *See* Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs should not be permitted to pick and choose which information about their funding arrangements to share and which information to hide.  This is particularly true given the waste of resources that would result from continuing to litigate this case if it were to be determined later, during a collateral attack or challenge from an absent class member, that the Elan plaintiffs' counsel was inadequate because of its financial arrangements.

For all these reasons, the Litigation Funding Documents are highly relevant, and the June 26 Order clearly erred in denying SAC's motion to compel their production.

## II.   Plaintiffs' Work Product Argument Is Procedurally Improper and Factually Unsupported, and Should Be Rejected

Nor are the Litigation Funding Documents shielded from production in any way by the work product doctrine.

*First*, plaintiffs waived any argument as to work product by failing to raise it in their February 20, 2015 response to SAC's letter motion to compel.  In that response, plaintiffs opposed production exclusively on the basis of relevance.  (Ex. G.)  Their failure to argue work product resulted in a waiver of those objections.  *See U.S. E.E.O.C.* v. *Olsten Staffing Servs. Corp.*, 627 F. Supp. 2d 972, 974 (W.D. Wis. 2009) (holding that plaintiff's failure to argue privilege in opposition to motion to compel resulted in waiver); *Smith* v. *Phamm*, No. 03-3451-SAC, 2008 WL 2944905, at *2 n.6 (D. Kan. July 28, 2008) (same); *E.E.O.C.* v. *Jamal & Kamal, Inc.*, No. Civ.A. 05-2667, 2006 WL 2690226, at *1 n.1 (E.D. La. Sept. 18, 2006) (same); *cf. Massie* v. *Metropolitan Museum of Art*, 454 Fed. App'x 26, 28 (2d. Cir. 2012).  Waiver is particularly warranted here because plaintiffs raised a work product objection for the first time in supplemental briefing, to which SAC had no opportunity to respond before the Magistrate Judge.

17

*Second*, even if plaintiffs had not waived their work product argument, they did not come close to meeting their burden to show that the Litigation Funding Documents are protected.  Cases have recognized work product protection only after a particularized showing that the documents at issue actually contain "lawyers' mental impressions, theories and strategies."  *Miller*, 17 F. Supp. 3d at 735.  *See also Charge Injection Technologies, Inc.* v. *E.I. DuPont De Nemours & Co.*, No. CV 07C-12-134-JRJ, 2015 WL 1540520, at *5 (Del. Super. Mar. 31, 2015); *Mondis Tech., Ltd.* v. *LG Electronics, Inc.*, No. 07 Civ 565, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (finding work product protection after *in camera* review "reveal[ed] [plaintiff's] overall litigation . . . strategy").  Here, plaintiffs asserted a general, blanket protection for all the Litigation Funding Documents without identifying any specific reason why any portions thereof actually reflect counsel's mental impressions or legal strategy.[10] (*See* Ex. I at 8-9).  Even if plaintiffs are correct that some of the Litigation Funding Documents actually reflect some amount of work product, it is impossible to evaluate their claims because they have provided no factual basis for this assertion in either their memorandum of law, or in their privilege logs.  Failure to provide this information constitutes an additional waiver of their work product objection.  *United States* v. *Davis*, 131 F.R.D. 391, 402 (S.D.N.Y. 1990) ("An improperly asserted claim of privilege is no claim of privilege at all.") (quotation omitted).

---

[10]  Plaintiffs' privilege log did not include any Litigation Funding Documents, depriving SAC and this Court of any basis on which to evaluate work product claims.  *See Doe* v. *Soc'y of Missionaries of Sacred Heart*, No. 11 Civ. 2518, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014) (determining applicability of work product protection to Litigation Funding Documents based on privilege log entries); *Lopez* v. *City of New York*, No. 05 Civ. 3624, 2007 WL 869590, at *3 (E.D.N.Y. Mar. 20, 2007) ("Failing to include sufficiently descriptive information may result in waiver of the privilege."); *OneBeacon Ins. Co.* v. *Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 WL 3771010, at *6 (S.D.N.Y. Dec. 15, 2006) ("Courts in this Circuit have refused to uphold a claim of privilege where privilege log entries fail to provide adequate information to support the claim.").

Accordingly, plaintiffs have not provided a sufficient basis to show that the

Litigation Funding Documents should be shielded from discovery.

## CONCLUSION

For the foregoing reasons, the June 26 Order was clearly erroneous and should be

reversed.

Dated:   New York, New York
         July 10, 2015


PAUL, WEISS, RIFKIND, WHARTON              WILLKIE FARR & GALLAGHER LLP
   & GARRISON LLP

By: _____                By: _____
       Daniel J. Kramer                            Martin B. Klotz
       Michael E. Gertzman                         Michael S. Schachter
       Audra J. Soloway                            Sameer Advani
       Geoffrey Chepiga

1285 Avenue of the Americas                787 Seventh Avenue
New York, New York 10019                   New York, New York 10019
(212) 373-3000                             (212) 728-8102
dkramer@paulweiss.com                      mklotz@willkie.com
mgertzman@paulweiss.com                    mschachter@willkie.com
asoloway@paulweiss.com                     sadvani@willkie.com
jhurwitz@paulweiss.com

*Attorneys for Defendants S.A.C. Capital Advisors, L.P., Point72 Capital*
*Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC,*
*S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies,*
*LLC, Point72 Select Investments, LLC, and Steven A. Cohen*

19