USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/2/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
DAVID E. KAPLAN, et al.,                 :
                                         :  12-cv-9350 (VM)
                  Plaintiffs,            :
                                         :
     -against-                           :
                                         :
S.A.C. CAPITAL ADVISORS, L.P, et al.,    :
                                         :
                  Defendants.            :
----------------------------------------X
BIRMINGHAM RETIREMENT AND RELIEF         :
SYSTEM, et al.,                          :  13-cv-2459 (VM)
                  Plaintiffs,            :
                                         :
     -against-                           :  **DECISION AND ORDER**
                                         :
S.A.C. CAPITAL ADVISORS, L.P., et al.,   :
                                         :
                  Defendants.            :
----------------------------------------X
**VICTOR MARRERO, United States District Judge.**

     Lead   Plaintiffs   David   E.   Kaplan,   and   others,

individually and on behalf of a putative class of investors

in  Elan  Corporation  securities  ("Elan  Investor  Class,"

collectively "Kaplan Plaintiffs") in Case No. 12-cv-9350,

brought  this  action  against  defendants  S.A.C.  Capital

Advisors, L.P. ("SAC LP"), S.A.C. Capital Advisors, Inc., CR

Intrinsic  Investors  LLC  ("CR  Intrinsic"),  CR  Intrinsic

Investments, LLC, S.A.C. Capital Advisors, LLC ("SAC LLC"),

S.A.C.   Capital   Associates,   LLC,   S.A.C.   International

Equities, LLC, S.A.C. Select Fund, LLC, and Steven Cohen

("Cohen") (collectively, "SAC"); and defendant Mathew Martoma ("Martoma").[1] Kaplan Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) ("Section 10(b)"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), violations of Section 20A of the Exchange Act, 15 U.S.C. § 78t-1 ("Section 20A"), and violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Section 20(a)").

Kaplan Plaintiffs, along with other plaintiffs[2] who are no longer pursuing class certification, filed their original motion for class certification on June 29, 2015. (Dkt. No. 191.) Kaplan Plaintiffs now move, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), to certify the "Elan Seller Class," which consists of:

> All persons who sold American Depositary Receipts ("ADRs") of Elan contemporaneously with Defendants' purchases of Elan ADRs during the period August 23, 2006 through and including July 18, 2008 (the 'Elan Seller Class Period'), and were damaged thereby.[3]

---

[1] Kaplan Plaintiffs also filed claims against defendant Sidney Gilman ("Gilman"), but those claims were voluntarily dismissed. (Dkt. No. 232.)

[2] Lead Plaintiffs City of Birmingham Retirement and Relief System, et al., individually and on behalf of a putative class of investors in Wyeth securities ("Wyeth Investor Class") in Case No. 13-cv-2459, sought certification of the Wyeth Investor Class in the original motion and are no longer seeking class certification. This Decision, therefore, addresses only Kaplan Plaintiffs' request for certification of the Proposed Elan Classes.

[3] Excluded from the Class are defendants herein, the employees, officers and directors of SAC during the applicable Class Period, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

Plaintiff's Memorandum of Law in Support of Motion for Class Certification, dated June 29, 2015. ("Pl. Mem.")(Dkt. No. 192 at 2.)

Kaplan Plaintiffs also move pursuant to Rule 23 to certify the "Elan Buyer Class", which consists of:

> All persons who purchased ADRs of Elan, purchased call options thereon, or sold put options thereon, contemporaneously with Defendants' sales of Elan ADRs, sale of call options thereon, or purchase of put options thereon, during the period July 21, 2008 through and including July 29, 2008 at 4:00 pm EDT (the 'Buyer Class Period'), and were damaged thereby.[4]

(Id. at 2.) (collectively, the Elan Buyer Class with the Elan Seller Class, "Proposed Elan Classes".)

Kaplan Plaintiffs also move pursuant to Rule 23 for the Court to appoint Chi Pin Hsu, Gary W. Muensterman, and Fred M. Ross (collectively, "Proposed Class Representatives") as Class Representatives for the Proposed Elan Classes and to appoint Co-Lead Counsel Wohl & Fruchter LLP ("Wohl & Fruchter") and Pomerantz LLP ("Pomerantz", collectively "Proposed Class Counsel") as Class Counsel for the Proposed Elan Classes.

---

[4] The Elan Buyer Class has the same exclusions as the Elan Seller Class.

The Court has reviewed the parties' submissions regarding this matter.[5] For the reasons discussed below, the Court finds that the Proposed Elan Classes satisfy all of the requirements of Rule 23(a) and the pertinent requirements of Rule 23(b). These classes are subject to further adjustment or decertification if warranted as facts develop. The Court further finds that Proposed Class Counsel satisfy the pertinent requirements of Rule 23(g). Accordingly, Kaplan Plaintiffs' motion for certification of the Proposed Elan Classes and appointment of Proposed Class Representatives and Proposed Class Counsel is GRANTED.

## I. BACKGROUND

The Court has previously addressed in detail the facts surrounding SAC's involvement in insider trading of Elan Corporation and Wyeth securities during the clinical trials of the drug bapineuzamab ("bapi") in its Decision and Order dated August 13, 2014 (Dkt. No. 152.)

Briefly restated, SAC employee Mathew Martoma obtained inside information regarding bapi's clinical trials through relationships he cultivated with Sidney Gilman ("Gilman") and

---

[5] The Court has reviewed Kaplan Plaintiffs' submissions in support of their motion (Pl.'s Mem., dated June 29, 2015, Dkt. No. 191; Pl. Reply Mem. of Law in Supp. of Mot. For Class Cert ("Pl. Reply Mem."), dated October 27, 2015, Dkt. No 233), and SAC's submission in opposition to Plaintiff's motion (Def.'s Mem. of Law in Opp. to Mot. for Class Cert. ("Def. Mem."), dated August 28, 2015, Dkt. No. 217), as well as the documents accompanying these memoranda. Unless specifically quoted, no further citation to these documents will be made.

Joel Ross ("Ross"), two doctors who were supervising the trials. Martoma allegedly provided reports containing this inside information to Steven Cohen -- SAC's founder, CEO, and owner. SAC then traded on the nonpublic information Martoma had provided, first by accumulating large positions in Elan and Wyeth and later by selling those positions just before the companies publicly disclosed negative results of the clinical trials. The negative results of the clinical trials subsequently triggered major selling and a corresponding drop in the market value of Elan and Wyeth securities.

## II.  **PROCEDURAL HISTORY**

By Order dated April 15, 2013, the Court designated David Kaplan, Roxy Sullivan, Lindsey Rankin, Michael Allen, and Chi-Pin Hsu as Lead Plaintiffs and Wohl & Fruchter and Pomerantz as Co-Lead Counsel for the Elan Investor Class. (Dkt. No. 45.) Kaplan Plaintiffs filed their motion for certification of the Proposed Elan Classes, appointment of Proposed Class Representatives as Class Representatives, and appointment of Proposed Class Counsel as Class Counsel on June 29, 2015. (Dkt. No. 191.)

## III. **DISCUSSION**

### A.   CLASS CERTIFICATION

To certify the Proposed Class, Kaplan Plaintiffs must satisfy all four of the requirements of Rule 23(a) and one of

the categories of Rule 23(b)(3). See In re Livent Noteholders

Sec. Litig., 210 F.R.D. 512, 514 (S.D.N.Y. 2002).

To meet Rule 23(a)'s prerequisites, a plaintiff must

demonstrate that:

> (1) the class is so numerous that joinder of all
> members is impracticable; (2) there are questions
> of law or fact common to the class; (3) the claims
> or defenses of the representative parties are
> typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) further requires that

the plaintiff demonstrate that common questions of law or

fact "predominate over any questions affecting only

individual members" and that maintaining a class action "is

superior to other available methods" of adjudication. Fed. R.

Civ. P. 23(b)(3).

Trial courts are given substantial discretion in

determining whether to grant class certification because

"'the district court is often in the best position to assess

the propriety of the class and has the ability . . . to alter

or modify the class, create subclasses, and decertify the

class whenever warranted.'" In re Nigeria Charter Flights

Contract Litig., 233 F.R.D. 297, 301 (E.D.N.Y. 2006) (quoting

In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir.

2001)). The Second Circuit has directed courts to adopt a

liberal interpretation of Rule 23 in order to maximize the

benefits to both private parties and to the public provided by class actions. See In re Sumitomo Copper Litig., 182 F.R.D. 85, 88-89 (S.D.N.Y. 1998); see also Eisen v. Carlisle and Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968) ("[Rule 23] should be given a liberal rather than a restrictive interpretation."). As the Second Circuit stated in Green v. Wolf Corp., "'[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" 406 F.2d 291, 298 (2d Cir. 1968) (quoting Esplin v. Hirshi, 402 F.2d 94, 99 (10th Cir. 1968)).

1.   Rule 23(a) Requirements

a.   Numerosity

Rule 23(a)(1) requires that the class be so large that joinder of all members would be impracticable (the "Numerosity Requirement"). See In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 290 (2d Cir. 1992). The Second Circuit has observed that "numerosity is presumed at a level of 40 members," Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), though plaintiffs need not provide evidence of an exact class size to establish numerosity. See Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

SAC does not dispute numerosity in their opposition. Thus, the Court finds that the Proposed Class meets the Numerosity Requirement of Rule 23(a)(1).

### b.  Commonality of Law or Fact Questions

Rule 23(a)(2) requires that the putative class members' claims must share common questions of fact or law (the "Commonality Requirement"). The Commonality Requirement has been characterized as a "low hurdle." McIntire v. China MediaExpress Holdings, Inc., 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014)(citation omitted). Commonality requires only a showing that plaintiffs' claims "depend upon a common contention . . . [that is] of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2545 (2011). The requirement is "plainly satisfied" in a securities case where "the alleged misrepresentations in the prospectus relate to all the investors, [because the] existence and materiality of such misrepresentations obviously present important common issues." Korn v. Franchard Corp., 456 F.2d 1206, 1210 (2d Cir. 1972).

Kaplan Plaintiffs propose multiple common questions of law and fact including, but not limited to, whether the inside

information supplied to SAC was material and whether SAC acted with the requisite state of mind. SAC does not dispute commonality in their opposition papers. Accordingly, because Kaplan Plaintiffs allege misconduct that is common to all members of the Proposed Elan Classes, requiring the same findings of fact and law, the Commonality Requirement of Rule 23(a)(2) is satisfied.

    c.   Typicality

Rule 23(a)(3) requires that Kaplan Plaintiffs' claims be typical of the Proposed Class (the "Typicality Requirement"). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." China MediaExpress, 38 F. Supp. 3d at 424; see also In re Drexel Burnham Lambert Group Inc., 960 F.2d 285, 291 (2d Cir. 1992).

The Typicality Requirement is "not demanding." Tsereteli v. Residential Asset Securitization Trust 2006-A8, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (internal citations omitted). "Typicality does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." Pennsylvania Ave. Funds v.

Inyx Inc., No. 08-CV-6857 PKC, 2011 WL 2732544, at *4
(S.D.N.Y. July 5, 2011)(internal citations and quotation
marks omitted).

As discussed in connection with the Commonality
Requirement, there are common questions of law and fact
affecting all class members in the Proposed Class. Moreover,
those questions of law and fact are central to the claims of
all class members of the Proposed Class. SAC does not dispute
typicality in their opposition papers nor has SAC pointed to
unique legal and factual defenses to which the claims of
Kaplan Plaintiffs, not other members of the Proposed Class,
are subject. See, e.g., Tserateli, 283 F.R.D. at 208 ("[A]
finding of typicality would not be precluded even if certain
plaintiffs are unable to demonstrate that they would recover
any damages with respect to certain certificates.") (emphasis
in original).

Accordingly, because Kaplan Plaintiffs allege common
questions of law and fact affecting all Proposed Class members
and Kaplan Plaintiffs' claims are typical of the Proposed
Class as a whole, Kaplan Plaintiffs have met the Typicality
Requirement of Rule 23(a)(3).

d.   Adequacy

Rule 23(a)(4) requires that the representative of the
parties will "fairly and adequately protect the interests of

- 10 -

the class" (the "Adequacy Requirement"). Fed. R. Civ. P. 23(a)(4). To meet this requirement, the lead plaintiff's counsel must be "qualified, experienced, and generally able to conduct the proposed litigation," and the class representative must not have interests conflicting with the class. See Livent, 210 F.R.D. at 517 (internal citations and quotation marks omitted).

SAC argues that Kaplan Plaintiffs' Proposed Class Counsel are inadequate due to their failure to provide discovery regarding a third party litigation funding agreement and related documents. (Dkt. No. 217 at 22-23.). SAC contends that without this discovery, the parties cannot know whether the Proposed Class Counsel is being influenced by nonparty outsiders to this litigation. Id.

The Court notes that it has already disposed of SAC's objection regarding the above mentioned litigation funding agreement and related documents. On June 26, 2015, Magistrate Judge Kevin Fox, to whom this matter had been referred for supervision of pretrial proceedings, issued an Order (Dkt. No. 190, "June 26 Order"), in which he denied SAC's motion to compel Kaplan Plaintiffs to produce their litigation funding agreement and related documents. SAC subsequently filed objections to the June 26 Order. (Dkt. No. 202.) This Court ordered a stay of the June 26 Order pending the resolution of

the objections raised. (Dkt. No. 206.) The Court then remanded the June 26 Order to Magistrate Judge Fox for a statement of the reasoning and findings supporting it. (Dkt. No. 214.) In response, Magistrate Judge Fox issued an Order dated September 10, 2015 ("September 10 Order"), which (1) vacated the June 26 Order, (2) again denied SAC's motion, and (3) provided the reasoning and findings supporting the decision. (Dkt. No. 222.) On September 15, 2015, this Court issued an Order (Dkt. No. 223, "September 15 Order") accepting the September 10 Order in its entirety. On September 18, 2015, SAC filed a letter with the Court ("September 18 Letter") requesting that the Court vacate its September 15 Order and allow SAC an opportunity to serve and file objections. (Dkt. No. 224.) On September 28, 2015, the Court affirmed its September 15 Order, once again denying SAC's arguments regarding the litigation funding agreement and related documents.

The Court is persuaded that the appointment of the Proposed Class Counsel is appropriate. Proposed Class Counsel have vigorously pursued the claims in this litigation and have adequately represented classes in other securities litigation and complex class actions. The Proposed Class Counsel have additionally provided the Court with representations of their commitment to vigorously prosecute

- 12 -

this action and to devote all necessary resources to it. (See Wohl Decl. at 3, Dkt. No. 193.) SAC fails to put forth any evidence to the contrary; mere speculation is insufficient. Therefore, the Court finds that Proposed Class Counsel is qualified, experienced, and able for the purposes of Rule 23(a)(4).

The Court is also persuaded that the Proposed Class Representatives have no conflicts with the other members of their respective Proposed Classes. SAC does not raise objections to adequacy vis-à-vis the Proposed Class Representatives in their opposition papers. Accordingly, the Court finds that the Proposed Class Representatives satisfy the Adequacy Requirement of Rule 23(a)(4).

### 2.   Rule 23(b)(3) Requirements

In addition to satisfying Rule 23(a), Kaplan Plaintiffs must also establish that this action may be maintained as a class action under Rule 23(b). Kaplan Plaintiffs seek to certify the Proposed Class pursuant to Rule 23(b)(3), which provides that an action is maintainable as a class action if "questions of law or fact common to class members predominate over any questions affecting only individual members" (the "Predominance Requirement") and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "Superiority

Requirement"). Fed. R. Civ. P. 23(b)(3). "A class certified pursuant to Rule 23(b)(3) is sometimes referred to as an 'opt-out' class because Rule 23(c)(2) mandates that members of a class certified under Rule 23(b)(3) be afforded the opportunity to 'request exclusion' from that class." In re Vivendi, 242 F.R.D. 76, 90 (S.D.N.Y. 2007). Should the Court certify the Proposed Class, any investor who does not opt out of the class "is bound by the final disposition of the case." Id.

a.   Predominance Requirement

The Predominance Requirement is a more demanding standard than the Commonality Requirement and is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). The Predominance Requirement does not require that every issue be subject to class-wide proof, only that common questions predominate over questions affecting only individual class members. See Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1196 (2013). That standard is met here.

Kaplan Plaintiffs' claims under Section 10(b) of the Exchange Act require proof of the following elements: "[T]he defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." In re MF Global Holdings Ltd. Secs. Litig., 982 F. Supp.2d 277, 303 (S.D.N.Y. 2013)(internal citations omitted). In addition, in an insider trading case premised on tippee liability, Kaplan Plaintiffs must show: "(1) [the tipper] possessed material, nonpublic information regarding [the company]; (2) [the tipper] disclosed this information to [the tippee] ; (3) [the tippee] traded in [the company's securities] while in possession of that non-public information provided by [the tipper]; (4) [the tippee] knew or should have known that [the tipper] violated a relationship of trust by relaying [the company] information; and (5) [the tipper] benefitted by the disclosure to [the tippee]." SEC v. Warde, 151 F.3d 42, 47 (2d Cir. 1998) (citing Dirks v. SEC, 463 U.S. 646, 654-64 (1983)).

There is no dispute as to the class-wide, generalized nature of Kaplan Plaintiffs' proffered proof with respect to the first three elements of their claims under Section 10(b) and the five elements associated with tippee liability.

SAC's two principal arguments with respect to Kaplan Plaintiffs' purported failure to meet the Predominance Requirement address the fourth and fifth elements of Kaplan Plaintiffs' Section 10(b) claim.   First, SAC argues that a class-wide presumption of reliance does not apply, thereby necessitating individualized proof of reliance on an investor-by-investor basis.   Second, SAC argues that Kaplan Plaintiffs' failure to identify a class-wide theory of damages forecloses a finding of predominance.   The Court considers, and rejects, each of these arguments in turn.

i.   Presumption of Reliance

Kaplan Plaintiffs allege that SAC failed to disclose nonpublic information and therefore Kaplan Plaintiffs' claims sound in omission.   As the Court held in Dodona I, LLC v. Goldman, Sachs & Co., "[s]ince [Plaintiff] alleges omissions rather than affirmative misstatements, the element of reliance may be presumed if the omissions were material." 847 F. Supp. 2d 624, 648 (S.D.N.Y. 2012).   This rule applies in the context of an insider trading claim.   See Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc., 186 F.3d 157, 173 (2d Cir. 1999).

With regard to whether the alleged omissions were material, a "fact is material if there is a substantial likelihood that the disclosure of the omitted fact would have

been viewed by the reasonable investor as having significantly altered the total mix of information made available." Anwar v. Fairfield Greenwich, Ltd., 306 F.R.D. 134, 145 (S.D.N.Y. 2015) (internal citations omitted). Kaplan Plaintiffs have sufficiently alleged the materiality of the omissions they allege, including, but not limited to, the price decline in Elan ADRs with respect to the Buyer Class Period, and the Elan ADR price gains resulting from the inside information with respect to the Seller Class Period. Kaplan Plaintiffs also cite to the ruling of Judge Gardephe in the related criminal case, rejecting Martoma's claim that the information he provided to Gilman and Ross was not material. See United States v. Martoma, No. 12 Cr. 973 PGG, 2014 WL 4384143, at *5 (S.D.N.Y. Sept. 4, 2014) ("The evidence the Government offered at trial on this point is sufficient to support a conclusion that a 'reasonable investor' would have found the efficacy data disclosed at the ICAD conference 'material' - i.e., 'significant in deciding whether to buy, sell, or hold securities, and at what price to buy or sell securities.'").

Accordingly, because the Court is satisfied that Kaplan Plaintiffs have sufficiently alleged the materiality of the omissions at issue, reliance may be presumed pursuant to the standard established in Affiliated Ute Citizens of Utah v.

United States. 406 U.S. 128, 153-54 (1972) ("Affiliated Ute")
(holding that in a case "involving primarily a failure to
disclose, positive proof of reliance is not a prerequisite to
recovery.  All that is necessary is that the facts withheld
be material in the sense that a reasonable investor might
have considered them important in the making of this
decision.").

SAC argues that the Affiliated Ute presumption does not
apply here because (1) there exists no general duty to the
public to disclose material, nonpublic information and (2)
any obligation to disclose the nonpublic information to the
general public was foreclosed because Gilman and Ross, the
alleged insider tippers, were legally precluded from doing so
by virtue of their positions in the company and
confidentiality agreements entered into with Elan and Wyeth,
respectively.   (Dkt. No. 217 at 4-10.) SAC has correctly
identified that the tippee's duty to disclose material,
nonpublic information prior to trading on that information is
derivative from the obligations of the tipper vis-à-vis the
company and the information. (See Dkt. No. 217 at 5-7.) As
such, the tippee assumes any fiduciary duty of the tipper to
the shareholders of a corporation not to disclose or trade
with material, nonpublic information. See id. What SAC has
failed to identify, however, is that the duty to disclose

arises where an insider tipper has breached his fiduciary duty to the shareholders by disclosing the information to the tippee; such obligation is not linked to whether or not disclosure by the tipper was feasible. It is the breach of trust and confidence between the insider tipper and the company that gives rise to the tippee's duty to disclose material, nonpublic information in advance of trading. See Chiarella v. United States, 445 U.S. 222, 230 (1980) ("Thus, administrative and judicial interpretations have established that silence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10(b). . . . [S]uch liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction."); see also Dirks v. S.E.C., 463 U.S. 646, 660-61 (1983) ("[A] tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach.").

Here, Gilman and Ross allegedly breached their fiduciary duty to Elan and Wyeth by allegedly providing SAC with material, nonpublic information in breach of their confidentiality agreements with Elan and Wyeth. The alleged

- 19 -

breach gave rise to SAC's derivative breach and as such engendered SAC's duty to disclose. Because the Court is persuaded that Kaplan Plaintiffs have sufficiently alleged materiality, it follows that Kaplan Plaintiffs are entitled under Affiliated Ute to a presumption of reliance.

Moreover, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013) (internal quotations omitted). The Court declines to rule on the merits of the reliance issue at this stage of class certification.

### ii. Damages Model

SAC argues that determination of damages will require individualized inquiries. However, this is not a case in which "[q]uestions of individual damage calculations will inevitably overwhelm issues common to the class." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013). To the contrary, Kaplan Plaintiffs make class-wide claims for damages and have demonstrated that calculation of individual class members' damages will rely on objective class-wide methodology. (See Wohl Decl., Ex. 6 at 9 n.3, Dkt. No. 234) (stating that "plaintiffs' damages under Elkind are calculated based on the overall price change from the time of

the contemporaneous trade up to 'the time [the plaintiff] learned the tipped information or at a reasonable time after it became public,' 635 F.2d at 172. . . . [T]he tippee's disgorged gain is then calculated and is 'shared pro rata.' Id.").

Next, SAC argues that a determination of damages will require a determination of how much time each investor would have reasonably needed to digest the disclosure that came out of the ICAD conference on June 29, 2008. This objection is not availing. "[I]t is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010); see also Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 181 (S.D.N.Y. 2008) ("Although the damages, if any, owed to each individual class plaintiff who succeeds on his or her claims will vary, that fact does not defeat certification if the method of calculating damages is common to the class."). Moreover, the Court is not persuaded that determination of the time by which an investor would have reasonably needed to digest the relevant disclosures requires a subjective, individualized assessment. As noted earlier, the purpose of a Rule 23(b)(3) certification is not to adjudicate the case.

As such, the Court declines to rule on the merits of the "reasonable time" issue at this stage of class certification.

Thus, in light of the class-wide methodology for calculation of damages, any necessary individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance under Rule 23(b)(3).

Accordingly, Kaplan Plaintiffs have satisfied the Predominance Requirement of Rule 23(b)(3).

b.   Superiority Requirement

When certifying a proposed class in accordance with Rule 23(b)(3), courts must consider whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Superiority Requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication. Securities suits easily satisfy the Superiority Requirement of Rule 23(b)(3) because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." Green, 406 F.2d at 301; see also In re Blech Sec. Litig., 187 F.R.D. 97, 107-08 (S.D.N.Y. 1999).

SAC does not argue that Kaplan Plaintiffs have failed to satisfy the Superiority Requirement. Accordingly, because there is a risk that, absent class action, certain Elan investors would be unable to adjudicate their claims, the Court is satisfied that Kaplan Plaintiffs have met the Superiority Requirement.

Since Kaplan Plaintiffs have satisfied all of the relevant requirements of Rule 23, the Court thus certifies the Proposed Elan Classes and appoints the Proposed Class Representatives as Class Representatives.

B.   APPOINTMENT OF CO-LEAD COUNSEL

Under Rule 23(g), a court's appointment of lead class counsel must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class . . . ." Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . ." Fed. R. Civ. P. 23(g)(1)(B).

Furthermore, the Private Securities Litigation Reform Act ("PSLRA") instructs that a lead plaintiff "shall, subject

to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. section 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (quoting In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008).

Kaplan Plaintiffs have selected Wohl & Fruchter and Pomerantz as Proposed Class Counsel. As discussed above in connection with satisfaction of the Adequacy Requirement of Rule 23(a)(4), these two firms have vigorously pursued Kaplan Plaintiffs' claims to date and have extensive experience in securities class action litigation. Kaplan Plaintiffs' counsel have demonstrated knowledge of the applicable law and have committed significant resources to its representation of Kaplan Plaintiffs. Accordingly, the Court approves Wohl & Fruchter and Pomerantz as Co-Lead Class Counsel.

## IV.  ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Motion (Dkt. No. 191) filed by Kaplan Plaintiffs for Class Certification is **GRANTED**; and it is further

ORDERED that the Motion (Dkt. No. 191) filed by Kaplan Plaintiffs for the appointment of Class Representatives for the Elan Classes and the appointment of Co-Lead Class Counsel for the Elan Classes is GRANTED in accordance with this Decision and Order.

SO ORDERED.

Dated:   New York, New York
         2 December 2015

Victor Marrero
U.S.D.J.