

**David E. Kaplan**
2831 29th Street, NW
Washington, DC 20008-4111

April 2, 2018

**BY FAX**

Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (NRB) (KNF)

Dear Judge Buchwald:

I am one of the lead plaintiffs in the above-referenced class action. I write this letter on my own behalf, respectfully asking that the Court reconsider Judge Koeltl's May 12, 2017 decision to deny me all but nominal compensation for my four and one-half years of work on this case, and also deny me reimbursement for most of my case expenses[1].

As part of the justification for my reconsideration request, I am bringing to the Court's attention additional work I have undertaken on behalf of class members over the past two months, work that obviously could not be considered by Judge Koeltl. That work, described below, has resulted in over $21 million in additional funds being made available for distribution to eligible claimants after being reclaimed from claimants deemed eligible by the claims administrator and subsequently found to be ineligible based on my review and its consequences.[2]

---

[1] I sought compensation for 1,406.25 hours I spent working on the case (excluding hours spent in support of the motion for compensation and reimbursement), at an hourly rate of $540, and reimbursement for $31,903 in case expenses. Judge Koeltl awarded me $7,500 as a compensatory award, and he approved reimbursement for less than 17% of my case expenses, only those incurred prior to December 2, 2015. The basis for my requested compensation is set out in ECF 374 and 375, filed March 23, 2017. ECF 392 at p. 68. The Defendants vigorously opposed our compensation motion in ECF 379 and 382, and we replied in ECF 384 and 385. Judge Koeltl conducted a May 12, 2017 hearing and ruled from the bench at the conclusion of the hearing. The transcript is ECF 392.

[2] Although disappointed with AB Data's claim review process, I am satisfied the review is now reasonably accurate and I support the pending motion for approval. Both Mr. Wohl and AB Data were very supportive in sorting out the issues when my concerns were brought to their attention, and without their involvement we could not have obtained the results that have been achieved.

Hon. Naomi Reice Buchwald
April 2, 2018
Page 2

## Background

In November 2012, when the SEC and the Department of Justice announced civil and criminal actions based on alleged insider trading in Elan and Wyeth stock by SAC Capital during July 2008, I realized that I had been on the other side of some of those trades, and knew many others who had also traded opposite SAC Capital through an investor network in which I had participated for nearly 20 years. I immediately contacted my colleagues to collect trade information to identify those with the largest trading volume as potential lead plaintiffs and started interviewing prospective counsel. Within a few weeks, I negotiated a retainer agreement with Ethan Wohl as our lead counsel and the Pomerantz firm providing additional resources, and shortly thereafter we filed our complaint against SAC Capital and Steven A. Cohen.

Over the ensuing five years, I have been intensely involved in overseeing every aspect of the case, including working with counsel to determine which individuals would serve as lead plaintiffs and class representatives, organizing and leading periodic conference calls with the lead plaintiffs, discussing overall strategy with counsel, reviewing every substantive filing and correspondence, participating in scores of conference calls, sitting for a full day deposition, attending all three mediation sessions, and attending meetings with both prospective and retained trial counsel as we approached our scheduled trial date in January 2017. I was deeply involved in settlement negotiations and attended the preliminary and final approval hearings before Judge Koeltl. On March 23, 2017, prior to the final approval hearing, we submitted a motion for compensatory awards and reimbursement for expenses, which was opposed by Defendants. Judge Koeltl was largely persuaded by Defendants, awarding me the same $7,500 compensatory award as the other lead plaintiffs, and reimbursing me $5,369 of my $31,903 in case expenses.[3] Following Judge Koeltl's decision, I have continued my efforts on behalf of class members, including monitoring the claims process, the related SEC Fair Fund process,[4] and communicating with many class members as the claim process moves forward.

## Recent Review of Claims Administration Process

I received a spreadsheet from Mr. Wohl in early February 2018 with approximately 4,250 claims from putative class members totaling $556,273,000 deemed eligible by the claims administrator, AB Data, for prorated distribution of the approximately $105 million available. I reviewed all claims deemed eligible, with particular attention to the largest claims.[5] The two largest sets of claims appeared out of scale with my understanding of institutional Elan holdings during the summer of 2008, and I asked Mr. Wohl and AB Data to conduct further review of the claimed trades. This review led to a finding that there was a gap in the trading records submitted by the

---

[3] As discussed below, Judge Koeltl denied any reimbursement of expenses following the date when the class representatives were appointed, despite the fact that after that date my effective role did not change.
[4] I continue to work on behalf of many Buyer Class members in challenging a tax characterization issue in the SEC Fair Fund.
[5] The twelve largest claimants accounted for over 50% of the total dollar value of claims deemed eligible by AB Data.

Hon. Naomi Reice Buchwald
April 2, 2018
Page 3

institution that had filed the largest set of claims, which totaled over $93.5 million. Based on the finding, we required that this institution, one of the largest financial institutions in the world, submit complete data and provide an affidavit from an officer attesting to the accuracy of its claims. The additional data it submitted reduced its claim by more than $87 million (more than 93%), but rather than submit the requested affidavit, the institution ultimately elected to withdraw its entire claim due to an unspecified "conflict."

My review of the second largest set of claims (totaling over $47 million) and questions about apparent discrepancies also prompted AB Data to identify an issue with its calculation of those claims. After correcting its analysis, it increased the total of those claims to over $56 million, an 18% increase.

I additionally reviewed all claims for facial discrepancies and uncovered several duplicates that AB Data's earlier reviews had missed. Those duplicate entries have now been removed.

As a direct result of my efforts, claims totaling over $94.4 million were determined to be ineligible. As distributions need to be prorated because the total dollar value of the valid claims far exceeds the available funds for distribution (approximately $105 million), the elimination of invalid claims results in all valid claims receiving an increased distribution. The $21 million that would have gone to the now-ineligible claims, but for the issues I raised, is now available for distribution to the remaining valid claims. Of that amount, my review and its consequences has resulted in $12.6 million in increased distributions going to several dozen claimants whose claims had previously been understated or rejected, and the balance is being distributed to the remaining 4,200 claimants whose claims were unchanged. Due to the allocation of distributions between the Buyer Class and the Seller Class and the fact that the largest claimant that withdrew was primarily in the Buyer Class, typical Buyer Class claimants will each receive a *43.45% increase* due to my further review and its consequences, and Seller Class claimants will receive a 6.23% increase. The now-largest claimant is now due to receive a *69.8% increase* in its distribution due to the consequences of my review, which amounts to an increase of over $8 million.

I am now satisfied that the claims review is reasonably accurate, but in light of AB Data's errors, after conferring with the other lead plaintiffs, I asked Mr. Wohl to seek a fee reduction. AB Data has agreed, making still more additional funds available for distribution to valid claimants.

### Request for Reconsideration of Compensation

I suspect Defendants' opposition to our March 2017 motion for compensation and expense reimbursement was not due to a desire to benefit class members with a nominal increase in their distributions (well below one percent), but rather arose from their realization that without my work on this case, Defendants would have saved the settlement amount of $135 million, would have avoided millions of dollars in attorneys' fees paid to Paul Weiss and Boies Schiller, and would not have had to spend countless hours and endured much distraction from their trading activities.

Hon. Naomi Reice Buchwald
April 2, 2018
Page 4

I attended the May 12, 2017 hearing before Judge Koeltl along with our counsel, one class representative, another lead plaintiff, and three partners representing Defendants.[6] Defendants cited my not being a class representative as a basis for denying me compensation.[7] Judge Koeltl partially based his decision to grant me only nominal compensation, and explicitly based his decision to only partially reimburse my case expenses, on my not having been named a class representative.[8]

The selection of class representatives was a strategic decision made by Mr. Wohl; I never "bowed out," "stepped back," or "chose not to avail [my]self of" the class representative process and procedure, as Defendants argued[9]; I submit that is an artificial distinction, and my role in the case remained unchanged from beginning to now. I was the sole initial proponent of this case, interviewing and retaining counsel and identifying, assisting with the selection of, and communicating with all the lead plaintiffs and eventual class representatives, as well as the scores of plaintiffs identified for the additional complaint filed in July 2013 to preclude a later challenge to standing (Case 13-cv-5181-VM, ECF 1). I spent perhaps ten times as much time and effort in supporting this case as the other four lead plaintiffs/class representatives combined, led and participated in strategic discussions with class counsel and other plaintiffs, actively participated in all of the mediation sessions (only one of the three class representatives did so), reviewed and commented on nearly every substantive filing and correspondence (none of the class representatives did so to any material extent), and was as involved in the settlement negotiations as any of the class representatives.[10]

Judge Koeltl issued his decision from the bench at the conclusion of the May 12, 2017 hearing, and that transcript is part of the record (ECF 392). Judge Koeltl was concerned that my fee request was "about eight times larger than any other individual has ever obtained," and that "[t]o the extent Mr. Kaplan receives that, that comes out of what the class would otherwise obtain."[11] Particularly given my subsequent work making over $21 million in additional funds available to valid claimants, I submit that my requested compensation is in fact quite modest, and given my critical role over the past five years in both this case and the related SEC Fair Fund, appropriate. I expect that my request for a compensatory award would benefit from any in depth comparison of my role in this case and the related SEC Fair Fund with any other lead plaintiff or class representative who has ever received a compensatory award. I would of course welcome any amount the Court deems advisable under the circumstances.

---

[6] See ECF 392, p. 1 and p. 3, lines 4-6, broader discussion at pp. 24 – 70.
[7] ECF 392 pp. 36-37.
[8] ECF 392 pp. 62-68.
[9] ECF 392 p. 41, lines 1 and 23, and p. 44, line 11.
[10] ECF 392 pp. 32-33.
[11] ECF 392 p. 26, lines 17-18 and 20-21, p. 64, lines 7-11.

Hon. Naomi Reice Buchwald
April 2, 2018
Page 5

### Request for Reconsideration of Expense Reimbursement

Unlike the other lead plaintiffs, I did not seek immediate reimbursement from class counsel for any of the $31,903 in case expenses I incurred [12] over the course of the case, in view of my desire not to burden class counsel with additional costs in what I know was an expensive case to litigate. In retrospect, we should have included my expenses along with those of the other lead plaintiffs in the overall expenses that were approved by Judge Koeltl, nearly $2.5 million.

The unreimbursed expenses, totaling $26,534, consist of two tranches, my travel expenses for key meetings and hearings following the date of class certification,[13] and legal expenses for expert legal ethics counsel retained by all five lead plaintiffs. Defendants and Judge Koeltl relied largely on an artificial distinction between my role as lead plaintiff and that of the class representatives. Throughout the case, my role did not change; I was far more involved than the class representatives, nearly daily and at every critical juncture of the case,[14] including attending and participating in all three mediation sessions with retired Judge Layn Phillips. Only one of the class representatives attended any of the mediation sessions, none attended meetings with prospective or actual trial counsel, and only one class representative attended any hearings and depositions (other than their own depositions). None of the class representatives expressed any interest in reviewing AB Data's eligible claims spreadsheets or any of the underlying data and documentation.

### Expenses for Ethics Inquiry Regarding Trial Counsel

The cost of the ethics review of our trial counsel was a significant portion of the excluded expenses ($22,417), and some background may be helpful to place this expense in its proper context.

As we approached our scheduled trial date, Mr. Wohl recommended that we retain counsel with recent jury trial experience to bolster our prosecution team. After conflicts of interest were raised with the initial trial law firm, we discharged them. We then retained our second-choice firm following its recertification that it was free of conflicts. Within days, after potential undisclosed conflicts were identified with this second firm, we elected to terminate their representation and commenced discussions with a third trial firm. As an attorney, I was troubled by the failure of this second trial firm to fully disclose potential conflicts when being free of potential conflicts was an essential element of our decision to retain them. I discussed this with

---

[12] Totaling just 1.06% of total case expenses, including claims administration.

[13] ECF 392 p. 66, lines 17-25, and p. 68, lines 6-12. The travel expenses excluded by Judge Koeltl, totaling $4,092, were for seven train trips from Washington, DC for my attendance at the third mediation session with Judge Phillips, an interview Mr. Wohl and I conducted with prospective trial counsel, two trial preparation conferences with our initial trial counsel, the preliminary approval hearing before Judge Koeltl, a meeting with ethics counsel, and the final approval hearing.

[14] Details are set forth in ECF 374, and my detailed time records and expenses are set forth in ECF 375-1 at pp. 69-96 and pp. 100-102, respectively. None of my time in preparing that motion and supporting declarations and other documents was included, nor of course was my subsequent time reviewing the AB Data claims administration details in February and March 2018.

Hon. Naomi Reice Buchwald
April 2, 2018
Page 6

the other lead plaintiffs, and we decided to retain an expert ethics attorney to evaluate the actions of the second trial firm, in contemplation of filing an ethics complaint. Although the ethics review was done at my initiative, it was in full consultation with, and with the support of, the three class representatives and the other lead plaintiff. All five of us retained this firm because we viewed potential ethical violations by our former trial counsel as deeply concerning, particularly when this was a key element of their being retained, but I offered to front the cost until the case ended. We did not think it was appropriate to have Mr. Wohl undertake the ethics inquiry, as we were the clients. We can provide the Court with a copy of our ethics counsel's substantive memorandum, as there were clear ethical concerns.

### Alternative Relief

In the alternative, should the Court decline to reconsider my request for compensation and/or expense reimbursement, I ask that the Court approve lead counsel's request to be able to compensate me from his approved fee.[15]

My request for reconsideration need not delay action on the pending Motion for Class Distribution Order since the proposed second distribution would not occur for several months.

I am available should the Court have questions or wish to receive further submissions concerning this letter request. If the Court prefers that I file a formal motion under Fed. R. Civ. P. 60(b)(2) and (6), I will do so.

I respectfully wish to advise the Court that I will be out of the country from April 5 though 15 on a long planned and prepaid family trip. While I will not be able to receive emails during this time, I will make myself available at the direction of the Court following my return.

I appreciate the consideration of the Court regarding these requests.

Respectfully submitted,

David E. Kaplan

cc: Counsel of Record (via email)

---

[15] ECF 392 p. 34, lines 18-23, and p. 50, lines 1-14.